Yan Ge (State Bar #236566)
  geyan@cn.kwm.com
Yiren Yu (State Bar #341245)
  yiren.yu@us.kwm.com
KING & WOOD MALLESONS LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

*Attorneys For Petitioner*
*Industrial Bank Co., Ltd. Shenzhen Branch*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,<br><br>Petitioner,<br><br>v.<br><br>FUER YUAN,<br><br>Respondent. | Case No.<br><br>**PETITION AND MOTION FOR**<br><br>**(1) CONFIRMATION OF FOREIGN ARBITRAL AWARDS;**<br><br>**(2) ENTRY OF JUDGMENT;**<br><br>**(3) INJUNCTIVE RELIEF; AND**<br><br>**(4) ATTORNEY'S FEES INCURRED IN CONFIRMING THE AWARDS** |

Petitioner Industrial Bank Co., Ltd. Shenzhen Branch ("Petitioner" or "CIB"), by and through its undersigned attorneys, respectfully petitions this Court for an order and judgment confirming two final and binding arbitration awards issued in Shenzhen, China on September 29 and September 30, 2025, respectively, against Respondent Fuer Yuan ("Respondent" or "Yuan"). This Petition is supported by the Declaration of Xi Huang, filed concurrently herewith, and all attached exhibits, which are incorporated herein by reference. Furthermore, CIB hereby moves this Court to grant worldwide injunctive relief to prevent Yuan from dissipating his assets, and grant CIB its attorneys' fees incurred in confirming the Awards. In support of this Petition and Motion, CIB respectfully asserts as follows:

**NATURE OF THE PROCEEDINGS**

1.     This is a petition to confirm two arbitral awards pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), as implemented by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 201 *et seq.* Beginning in December 2024, CIB initiated two arbitrations against its debtors, including *inter alia* Yuan, pursuant to arbitration clauses contained in a series of Guarantee Agreements (the "Guarantees") entered between CIB and Yuan. Yuan provided the Guarantees in connection with two Project Financing Loan Agreements (the "Loan Agreements") entered between CIB and Shenzhen Hazens Xinnan Investment Co., Ltd ("Hazens Xinnan"), by which CIB provided loans to Hazens Xinnan to fund its urban renewal unit project for the Xinnan Elementary School Area, Pinghu Street, Longgang District, Shenzhen City (the "Project").

2.     Both arbitrations were administered by the Shenzhen Court of International Arbitration (the "SCIA"), and were presided over respectively by two three-member tribunals. The tribunals issued the first Award on September 29, 2025, in SCIA Case No. (2025) 42 (the "First Award"), *See* Exhibit A, and the second Award on September 30, 2025, in SCIA Case No. (2025) 41 (the "Second Award") (together, the "Awards"). *See* Exhibit B.[1]

---

[1] All references to "Exhibits" are to the exhibits attached to the Declaration of Xi Huang ("Huang Decl.") filed concurrently herewith.

PETITION TO CONFIRM ARBITRAL AWARDS

3.      The Guarantees provide that any awards of the arbitrators are "final and binding upon both parties." *See* Exhibit C at p. 15[2], Article 16.2(2), Exhibit D at p. 16, Article 15.2(2).

4.      Confirmation of the two Awards is proper under the New York Convention and the FAA, both of which embody the well-recognized public policy favoring arbitration of disputes and leave the Court little discretion in declining to recognize and enforce arbitral awards.

5.      Further, CIB hereby moves this Court to grant worldwide injunctive relief to prevent Yuan from dissipating his assets, and to award Petitioner its attorneys' fees incurred in confirming the Awards.

## THE PARTIES

6.      Petitioner CIB is a Chinese bank with its principal place of business in Shenzhen City, Guangdong Province, People's Republic of China.

7.      Respondent Yuan resides in Shenzhen, China. CIB is informed and believes that Respondent Yuan also maintains a residential address at 980 Winston Avenue, San Marino, CA 91108. Yuan also owns substantial assets in the State of California.

8.      Non-party Hazens Xinnan is a Chinese company with its principal place of business in Shenzhen City, Guangdong Province, People's Republic of China. CIB is informed and believes that Yuan is the Chairman and ultimate beneficial controlling shareholder of Hazens Xinnan.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 9 U.S.C. § 203, which provides that the United States District Courts "shall have original jurisdiction" over actions that fall under the New York Convention. This action falls under the New York Convention because it concerns arbitral awards "arising out of a legal relationship . . . which is considered as commercial" and are not awards "arising out of such a relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. Here, the parties' relationship is commercial and Petitioner is not a United States citizen. Subject-matter jurisdiction also is proper pursuant to 28 U.S.C. § 1331, as under 9 U.S.C. § 203, this action is "deemed to arise under the laws and treaties of the United States."

---

[2] All page numbers of exhibits cited herein refer to the page numbers in the English translation of the exhibits.

10. This Court has personal jurisdiction because he has systematic and continuous contacts with California that render him essentially at home in this state. Yuan owns substantial assets in this District. CIB is informed and believes that Yuan is the ultimate beneficial owner and controlling shareholder of multiple entities in California. Yuan has served in executive capacities as Chairman, CEO, President, and manager of these California entities, and has personally executed major financing agreements on behalf of these California entities in California. Yuan also maintains a residence in this District, at 980 Winston Avenue, San Marino, CA 91108. Moreover, Yuan has engaged in fraudulent transfers of real property located in California, monetary funds, and interests in the California entities to his wife Ms. Celia Wen Sun ("Sun"), who also resides in this District, at 980 Winston Avenue, San Marino, CA 91108.

11. Venue in this Court is proper pursuant to 9 U.S.C. § 204, which provides that "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought." Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Yuan resides in this District and owns substantial assets in this District. Finally, venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in this District.

## BACKGROUND

**A.  The Loan Agreements and Guarantees**

12. The two arbitrations that resulted in the Awards arose from the Loan Agreements and the Guarantees.

13. Hazens Xinnan entered into the Loan Agreements with CIB on two separate occasions: January 16, 2020 and February 25, 2022 (respectively, the "First Loan Agreement" and the "Second Loan Agreement"). *See* Exhibits E, at p. 39, Exhibit F at p. 38. The Loan Agreements provided for project development financing at different stages of the Project.

14. Under the First Loan Agreement, CIB provided Hazens Xinnan financing, *inter alia*, for demolition at the Project site. *See* Exhibit E, at p. 5, Article 3. Pursuant to the First Loan Agreement, Hazens Xinnan agreed to repay the principal amount of CNY 900,000,000, equivalent to

USD 129,719,430.00,[3] according to the repayment schedule set forth in Article 8, *see* Exhibit E, at p. 15[4], with interest at the rate calculated pursuant to the calculation methods as specified in Article 5, *see* Exhibit E, at p. 7-9. The maturity date of the loan is February 20, 2024, pursuant to Article 4 of the First Loan Agreement. *See* Exhibit E, at p. 5.

15.    Following the execution of the First Loan Agreement, CIB disbursed CNY 899,621,718.25, equivalent to USD 129,664,907.23, under the First Loan Agreement to Hazens Xinnan.

16.    In connection with the First Loan Agreement, Yuan provided a guarantee for the First Loan by entering into a separate Guarantee Agreement with CIB on January 16, 2020 (the "Yuan First Loan Guarantee"). *See* Exhibit C, at p. 18. Pursuant to Article 4 of the Yuan First Loan Guarantee, Yuan agreed to provide joint and several liability guarantees for all obligations of Hazens Xinnan under the First Loan Agreement. *See* Exhibit C, at p. 4-5.

17.    Under the Second Loan Agreement, CIB provided Hazens Xinnan with secondary development and construction financing. *See* Exhibit F, at p. 7, Article 3. Pursuant to the Second Loan Agreement, Hazens Xinnan agreed to repay the principal amount of CNY 1 billion, equivalent to USD 144,132,700.00, according to the repayment schedule set forth in Article 8, *see* Exhibit F, at p. 16[5], with interest at the rate calculated in accordance with the calculation methods as specified in Article 5, *see* Exhibit F, at p. 8-11. The maturity date of the loan is April 6, 2025, pursuant to Article 4 of the Second Loan Agreement. *See* Exhibit F, at p. 7.

18.    Following the execution of the Second Loan Agreement, CIB disbursed CNY 786,548,566.60, equivalent to USD 113,367,368.59, under the Second Loan Agreement to Hazens Xinnan.

---

[3] For reference, the prevailing rate of exchange as of the filing date was around CNY 6.94 per United States dollar. United States Dollar/Chinese Yuan, GOOGLE FINANCE, https://www.google.com/finance/beta/quote/USD-CNY?hl=en (last accessed on February 6, 2025).
[4] Pursuant to Article 8 of the First Loan agreement, Hazens Xinnan is required to repay CNY 10,000 each on August 21, 2020, February 21, 2021, August 21, 2021, February 21, 2022, August 21, 2022, February 21, 2023, August 21, 2023, and CNY 699,930,000 and CNY 99,820,400 on February 20, 2024. *See* Exhibit E, at p. 15.
[5] Pursuant to Article 8 of the Second Loan Agreement, after disbursement, Hazens Xinnan shall repay CNY 10,000 of loan principal every six months, with the remaining balance to be paid in full in a lump sum at maturity. *See* Exhibit F, at p. 16.

19.     In connection with the Second Loan Agreement, Yuan provided a guarantee by entering into a Guarantee Agreement with CIB on March 28, 2022 [6] (the "Yuan Second Loan Guarantee"). Pursuant to Article 4 of the Yuan Second Loan Guarantee, Yuan agreed to provide joint and several liability guarantees for all obligations of Hazens Xinnan under the Second Loan Agreement. *See* Exhibit D, at p. 4-5.

20.     The Guarantees are governed by Chinese law and contain the following arbitration clauses, which are set forth in Article 16 of the Yuan First Loan Guarantee and Article 15 of the Yuan Second Loan Guarantee:

**Governing Law, Jurisdiction, and Dispute Resolution**

a.     The formation, validity, performance, discharge, interpretation, and dispute resolution of this Contract shall all be governed by the laws of the People's Republic of China (for the purposes of this Contract, excluding the laws of the Hong Kong Special Administrative Region, Macau Special Administrative Region, and Taiwan).

b.     Any dispute arising from this Contract shall be resolved through friendly negotiation between the Guarantor and the Creditor. If friendly negotiation fails, both parties agree to resolve it by the following method No.   2       :

(1) File a lawsuit with the people's court in the place where the Creditor is domiciled.

(2) Apply for arbitration with the Shenzhen Court of International Arbitration (Shenzhen Arbitration Commission), and resolve the dispute applying the arbitration rules effective at the time of arbitration of said arbitration commission. The arbitration award is final and binding on both parties. The hearing location of the arbitral tribunal shall be chosen in Shenzhen.

(3) Other methods:   /      .

*See* Exhibit C, at p. 15, Article 16, Exhibit D, at p. 16, Article 15.

---

[6] Yuan signed the Yuan Second Loan Guarantee on February 23, 2022, while CIB's representative signed on March 28, 2022.

21.     The Loan Agreements are also governed by Chinese law and contain identical arbitration clauses. *See* Exhibits E, at p. 33, Article 19, Exhibit F, at p. 32-33, Article 19.

**B.     Hazens Xinnan Defaulted**

22.     Subsequently, Hazens Xinnan defaulted on both Loan Agreements.

23.     As of the date of this Petition, the remaining overdue loan principal under both Loan Agreements totals approximately CNY 1,386,040,284.85, equivalent to USD 199,773,728.56.

24.     Articles 12 and 14.2 of each Loan Agreement require that when Hazens Xinnan fails to repay the loans pursuant to the repayment schedules or misappropriates the loaned funds in violation of the Loan Agreements, the entire unpaid principal balance, together with accrued interest and fees, becomes immediately due and payable. *See* Exhibit E, at p. 27-31, Exhibit F, at p. 27-30. Pursuant to Article 14.2(6) of each Loan Agreement, CIB has the right to require Hazens Xinnan to pay overdue penalty interest if the loan becomes overdue, to require the borrower to pay misappropriation penalty interest if Hazens Xinnan misappropriates the loan funds, and to require Hazens Xinnan to pay compound interest on unpaid interest (including interest before and after loan maturity, misappropriation penalty interest, and overdue penalty interest). *See* Exhibit E, at p. 30, Exhibit F, at p. 29-30.

25.     Pursuant to the Guarantees, Yuan is jointly and severally liable for the foregoing obligations under the respective Loan Agreements. *See* Exhibit C, at p. 4-5, Article 4, Exhibit D, at p. 4-5, Article 4.

**C.     The Arbitrations and Awards**

26.     Due to Hazens Xinnan's defaults under the Loan Agreements, CIB commenced two separate arbitration proceedings in the SCIA against the principal debtor, Hazens Xinnan, and the guarantors, including Yuan, with respect to the First Loan Agreement and Second Loan Agreement. The arbitration proceedings were initiated pursuant to the arbitration clauses cited above.

27.     The SCIA accepted both arbitration cases on March 5, 2025, and the arbitration proceedings were assigned SCIA Case No. (2025) 41, regarding the Second Loan Agreement and the Yuan Second Loan Guarantee, and SCIA Case No. (2025) 42, regarding the First Loan Agreement and the Yuan First Loan Guarantee.

28.     The SCIA made detailed findings of fact concerning the parties' disputes, which are set forth in the First and Second Awards.

29.     In each arbitration proceeding, a three-member tribunal was duly appointed in accordance with the arbitration clauses set forth in the Guarantees and Loan Agreements.

30.     Both arbitrations were thoroughly litigated by counsel.

31.     The arbitration proceedings were conducted in accordance with the SCIA Arbitration Rules (2024 Amendment) (the "Arbitration Rules") and the SCIA Financial Loan Dispute Arbitration Rules (2022 Amendment) (the "Financial Rules"). *See* Exhibit A, at p. 2, Exhibit B, at p. 2.

     *i.*     *The First Arbitration and Award*

32.     On March 6, 2025, the SCIA issued and served the Notice of Arbitration upon the respondents, including Yuan, together with the Arbitral Rules, the Financial Rules, the Panel of Arbitrators of the SCIA, the Letter Regarding Appointment of Arbitrators, and CIB's arbitration application with attached evidentiary materials. The same documents were also sent to CIB. *See* Exhibit A, at p. 2.

33.     On July 3, 2025, the tribunal held its first hearing through a hybrid online and offline format. Yuan, after being duly notified, elected not to appear at the hearing, and the tribunal proceeded with the hearing *in absentia* in accordance with law. *See* Exhibit A, at p. 3. The other respondents, including Hazens Xinnan, appeared through counsel at the hearing. *Id*. During the hearing, the CIB and the respondents present stated their respective arbitration claims and defenses, cross-examined the evidence presented by each party, responded to the tribunal's questions, and made closing statements. *Id*. The parties expressly confirmed that they had no objection to the arbitration tribunal's jurisdiction, the composition of the arbitral tribunal, or any of the arbitration procedures by which the arbitration was being conducted. *Id*.

34.     On July 10, 2025, the CIB submitted an Application for Amendment of Arbitration Request. *Id*. At the first hearing, the CIB submitted supplementary evidence, calculation tables for the requested amounts, and other explanatory materials. The respondents, including Hazens Xinnan, submitted supplementary evidence, post-hearing submissions and related explanations, cross-examination opinions, and defense statements. *Id*.

35.     On September 3, 2025, the arbitral tribunal held the second hearing through a hybrid online and offline format. *Id*. Yuan and Hazens Xinnan, after being duly notified, failed to appear at the hearing, and the tribunal proceeded with the hearing *in absentia* in accordance with law. *Id*. at p. 4. During the second hearing, the CIB and the respondents present stated their respective amended arbitration claims and defenses, cross-examined the evidence presented by each party, responded to the tribunal's questions, and made closing statements. *Id*. The parties expressly confirmed that they had no objection to the arbitration tribunal's jurisdiction, the composition of the arbitral tribunal, or any of the arbitration procedures by which the arbitration was being conducted. *Id*.

36.     All arbitration documents, including but not limited to the documents mentioned above and the Notice of Constitution of Arbitral Tribunal and Hearing, Notice of Hearing *in Absentia*, as well as the arbitration submissions and evidentiary materials filed by the parties, were duly served on all parties, including Yuan, in accordance with Article 6 of the Arbitration Rules, ensuring that all parties, including Yuan, received proper notice and adequate opportunity to present their case. *Id*. The tribunal found that Yuan, after being duly notified, failed to attend both the first and second hearings and did not submit any written defense or evidence, which it deemed a voluntary waiver of the right to defend. *Id*.

37.     On September 29, 2025, the tribunal issued the First Award totaling 138 pages[7] and detailing the procedural history of the arbitrations and each side's statements of fact and legal arguments. The tribunal carefully considered all parties' arguments and the plain language of the Loan Agreement and the Guarantees, and analyzed them under Chinese law.

38.     The tribunal concluded, *inter alia*:

    a.   The loan under the First Loan Agreement became due and payable on March 7, 2025;

    b.   Hazens Xinnan is liable to CIB for:

        (1) principal in the amount of CNY 599,541,718.25;

        (2) interest in the amount of CNY 18,508,029.46 (calculated up to December 26, 2024, with subsequent interest calculated in segments as follows: from December 27, 2024, calculated on the principal amount of CNY

---

[7] Excluding cover pages and annexes.

599,541,718.25 at the loan interest rate of 7.80% until February 21, 2025; from February 22, 2025, calculated on the principal amount of CNY 599,531,718.25 at the loan interest rate of 7.80% until March 7, 2025);

(3) default interest calculated on the principal amount of CNY 10,000 from February 22, 2025 at the default interest rate of 11.70% until March 7, 2025; and calculated on the principal amount of CNY 599,541,718.25 from March 8, 2025 at the default interest rate of 11.70% until the principal is actually paid in full; and

(4) compound interest, with compound interest prior to March 7, 2025 calculated on the basis of accrued but unpaid interest, and from March 8, 2025, calculated on the basis of the sum of all unpaid interest and default interest, in each case from the date of default at the default interest rate of 11.70% until the interest and default interest are actually paid in full.

c. Hazens Xinnan shall compensate CIB for attorney's fees in the amount of CNY 4,000,000;

d. The arbitration fees in the amount of CNY 3,246,599 shall be borne by Hazens Xinnan. CIB has prepaid CNY 3,246,599, which shall be applied to the arbitration fees. Hazens Xinnan shall pay CNY 3,246,599 directly to CIB; and

e. The Guarantors, including Yuan, shall be jointly and severally liable for the obligations of Hazens Xinnan under paragraphs (2), (3), and (4) of this award.

*See* Exhibit A, p. 136.

39. The Award stipulates that the amount payable under the Award shall be paid by Respondents, including Yuan, within ten days from the date on which the Award is rendered. *Id*. at p. 136-37.

ii. *The Second Arbitration and Award*

40. On March 5, 2025, the SCIA issued and served the Notice of Arbitration upon the respondents, including Yuan, together with the Arbitration Rules, the Financial Rules, the Panel of Arbitrators of the SCIA, the Letter Regarding Appointment of Arbitrators, and the CIB's arbitration

application with attached evidentiary materials. The same documents were also sent to the CIB. *See* Exhibit B, at p. 2.

41. On July 1, 2025, the arbitral tribunal held its first hearing through a hybrid online and offline format. Yuan, after being duly notified, elected not to appear at the hearing, and the tribunal proceeded with the hearing *in absentia* in accordance with law. The other respondents, including Hazens Xinnan, appeared through counsel at the hearing. *Id*. at p. 2-3. During the hearing, the CIB and the respondents present stated their respective arbitration claims and defenses, cross-examined the evidence presented by each party, responded to the tribunal's questions, and made closing statements. *Id*. at p. 3 The parties expressly confirmed that they had no objection to the arbitration tribunal's jurisdiction, the composition of the arbitral tribunal, or any of the arbitration procedures by which the arbitration was being conducted. *Id*.

42. On September 3, 2025, the arbitral tribunal held the second hearing through a hybrid online and offline format. Yuan and Hazens Xinnan, after being duly notified, failed to appear at the hearing, and the tribunal proceeded with the hearing *in absentia* in accordance with law. During the second hearing, the CIB and the respondents present stated their respective amended arbitration claims and defenses, cross-examined the evidence presented by each party, responded to the tribunal's questions, and made closing statements. *Id*.

43. All arbitration documents, including but not limited to the documents mentioned above and the Notice of Constitution of Arbitral Tribunal and Hearing, Notice of Hearing *in Absentia*, as well as the arbitration submissions and evidentiary materials filed by the parties, were duly served on all parties, including Yuan, in accordance with Article 6 of the Arbitration Rules, ensuring that all parties, including Yuan, received proper notice and adequate opportunity to present their case. *Id*. The tribunal found that Yuan, after being duly notified, failed to attend both the first and second hearings and did not submit any written defense or evidence, which is deemed a voluntary waiver of the right to defend. *Id*.

44. On September 30, 2025, the tribunal issued the Second Award totaling 51 pages[8] and detailing the procedural history of the arbitrations and each side's statements of fact and legal

---

[8] Excluding cover pages and annexes.

arguments. The tribunal carefully considered all parties' arguments and the plain language of the Loan Agreement and Guarantees, and analyzed them under Chinese law.

45.    The tribunal concluded, *inter alia*:

a.    The loan under the Second Loan Agreement became due and payable on March 7, 2025;

b.    Hazens Xinnan is liable to CIB for:

(1) principal in the amount of CNY 786,498,566.60;

(2) interest in the amount of CNY 31,999,972.49 (calculated up to December 26, 2024, and thereafter calculated on the principal amount of CNY 786,498,566.60 at the contractual loan interest rate of 1-year LPR + 4.3% continuing until March 7, 2025);

(3) default interest (calculated on the basis of the outstanding principal at the contractual default interest rate of loan interest rate × 150%, calculated from March 8, 2025 until actual payment in full); and

(4) compound interest (calculated on the basis of unpaid interest and overdue default interest at the contractual compound interest rate of loan interest rate × 150%, calculated from December 22, 2024 until actual payment in full).

c.    Hazens Xinnan shall compensate CIB for attorney's fees in the amount of CNY 4,000,000;

d.    The arbitration fees in the amount of CNY 4,264,103 shall be borne by Hazens Xinnan. CIB has prepaid CNY 4,264,103, which shall be applied to the arbitration fees. Hazens Xinnan shall pay CNY 4,264,103 directly to CIB; and

e.    The Guarantors, including Yuan, shall be jointly and severally liable for the obligations of Hazens Xinnan under paragraphs (2), (3), and (4) of this award.

*See* Exhibit B, at p. 49-50.

46.    The Award stipulates that the amount payable under the Award shall be paid by Respondents, including Yuan, within ten days from the date on which the Award is rendered. *Id*. at p. 50.

47.     A summary of the SCIA's Awards, as of the filing date of this Petition, is set forth below:

| Award Items | Amounts | Calculations |
|---|---|---|
| Principals | CNY 1,386,040,284.85, equivalent to USD 199,773,728.56 | First Award: CNY 599,541,718.25 + Second Award: CNY 786,498,566.60 |
| Interests | CNY 50,508,001.95 (calculated up to December 26, 2024), equivalent to USD 7,279,854.69 | First Award: CNY 18,508,029.46 (calculated up to December 26, 2024, with subsequent interest calculated in segments as follows: from December 27, 2024, calculated on the principal amount of CNY 599,541,718.25 at the loan interest rate of 7.80% until February 21, 2025; from February 22, 2025, calculated on the principal amount of CNY 599,531,718.25 at the loan interest rate of 7.80% until March 7, 2025);<br><br>Second Award: CNY 31,999,972.49 (calculated up to December 26, 2024, and thereafter calculated on the principal amount of CNY 786,498,566.60 at the contractual loan interest rate of 1-year LPR + 4.3% continuing until March 7, 2025). |
| Default interests | | First Award: Calculated on the principal amount of CNY 10,000 from February 22, 2025 at the default interest rate of 11.70% until March 7, 2025; and calculated on the principal amount of CNY 599,541,718.25 from March 8, 2025 at the default interest rate of 11.70% until the principal is actually paid in full;<br><br>Second Award: Calculated on the basis of the outstanding principal at the contractual default interest rate of loan interest rate × 150%, calculated from March 8, 2025 until actual payment in full. |
| Compound interests | | First Award: |

| | | Compound interest prior to March 7, 2025 calculated on the basis of accrued but unpaid interest, and from March 8, 2025, calculated on the basis of the sum of all unpaid interest and default interest, in each case from the date of default at the default interest rate of 11.70% until the interest and default interest are actually paid in full;<br><br>Second Award:<br>Calculated on the basis of unpaid interest and overdue default interest at the contractual compound interest rate of loan interest rate × 150%, calculated from December 22, 2024 until actual payment in full. |
|---|---|---|
| Attorney's fees | CNY 8,000,000, equivalent to USD 1,153,061.60 | First Award: CNY 4,000,000 + Second Award: CNY 4,000,000 |
| Arbitration fees | CNY 7,510,702, equivalent to USD 1,082,537.76 | First Award: CNY 3,246,599 + Second Award: CNY 4,264,103 |

48.     The above amounts granted by the Awards equate to at least CNY 1,452,058,988.8 as of December 26, 2024, which is equivalent to USD 209,289,182.62.

**D.    <u>Yuan Received Proper Notice of the Arbitration</u>**

49.     In connection with both of the arbitrations resulting in each of the Awards, the arbitral tribunal provided notice and served documents to Yuan through multiple methods and to multiple addresses associated with Yuan.

50.     Throughout the arbitration proceedings, the arbitral tribunal served Yuan with extensive documentation relating to the arbitrations, as detailed *supra*, in Section C of Background. Through service of these comprehensive arbitration materials, Yuan received full and proper notice of all aspects of the arbitration proceedings, including without limitation the claims against him, the evidence supporting those claims, the procedural schedule, and the final arbitral awards. *See* Huang Decl. at ¶10.

51.     These documents were served on Yuan on at least 30 separate occasions for each of the two arbitrations, totaling at least 60 service attempts across both proceedings. Huang Decl. at ¶11.

52. The documents were served both via text message to Yuan's mobile phone number as provided in the Guarantees and by mail to four different addresses, including Yuan's residential addresses as provided in the Loan Agreements and Guarantees and Yuan's residential address per his identification card.

53. Specifically, the arbitral tribunal served Yuan through SMS text message to the mobile phone number 15013669775, which is identified as Yuan's contact telephone number in Article 15.1(3) of the First Loan Guarantee Agreement and Article 14.1(3) of the Second Loan Guarantee Agreement. *See* Exhibits C, at p. 13, Article 15.1(3), Exhibit D, at p. 14, Article 14.1(3); *see also* Huang Decl. at ¶12.

54. Service was also effectuated by mail to the address at 5th Floor, Building C, Hazens Mingyuan, No. 16 Xinwen Road, Futian District, Shenzhen, China, which is identified as Yuan's residence address on page 1 of both the First Loan Guarantee Agreement and the Second Loan Guarantee Agreement. *See* Exhibit C, at p. 1, Exhibit D, at p. 1; *see also* Huang Decl. at ¶13.a.

55. Additionally, the arbitral tribunal served Yuan by mail at 5th Floor, Phase 2, Hazens Mingyuan, at the intersection of Xinwen Road and Jingtian Road, Futian District, Shenzhen, China, which is identified in Article 15.1(2) of the First Loan Guarantee Agreement and Article 14.1(2) of the Second Loan Guarantee Agreement as the address for receipt by Yuan's designated representative. *See* Exhibits C, at p. 13, Article 15.1(2), Exhibit D, at p. 14, Article 14.1(2); *see also* Huang Decl. at ¶13.b.

56. The arbitral tribunal also served Yuan by mail at Room 801, Building 1, Hazens Land Building, No. 3022 Qiaoxiang Road, Xiang'an Community, Xiangmihu Street, Futian District, Shenzhen, China, which is identified as Yuan's address on a Loan Extension Agreement entered into among, *inter alia*, CIB, Hazens Xinnan, and Yuan. *See* Huang Decl. at ¶13.c.

57. Finally, service was effectuated by mail to Room 203, Building 18, Ningshui Garden, Yanhe North Road, Luohu District, Shenzhen, China, which is the residential address listed on Yuan's identification card. *See* Huang Decl. at ¶13.d.

58.    Through these multiple methods of service to addresses that Yuan provided in the Loan Agreements and Guarantees, as well as to his residence per his identification documents, Yuan received actual and proper notice of the arbitration proceedings and all materials filed therein.

**E.    Yuan Fraudulently Transferred Assets to Evade Liability, and Is Now Functionally Insolvent**

59.    Both before and after Hazens Xinnan entered into the Loan Agreements with CIB and Yuan entered into the Guarantees, Yuan engaged in a coordinated scheme to fraudulently transfer assets to his wife, Sun, and other undisclosed parties, while concealing this marriage from CIB. Instead, Yuan repeatedly represented to CIB that he was married to Ms. Weiqing Rao ("Rao").

60.    First, Yuan transferred real property located in the United States through multiple spousal quitclaim deeds to Sun for inadequate consideration. In these property transfer documents, Yuan consistently signed as Sun's husband, waiving his spousal rights to facilitate transfer of the properties to Sun's sole ownership. Yuan's marriage to Sun was deliberately concealed from CIB throughout the loan and guarantee process.

61.    Second, CIB is informed and believes that Yuan fraudulently transferred substantial monetary funds to Sun, who deposited such funds into her personal bank accounts and purchased real estate with the funds, and subsequently transferred a portion of the funds to Valley SG Landplus, LLC ("VSGL"), a California limited liability company organized and controlled by Sun. VSGL then used these fraudulently transferred funds to acquire additional real property, creating further layers of asset concealment.

62.    Third, CIB is informed and believes Yuan fraudulently transferred beneficial ownership interests in three hotel-owning entities—Metainfinity, Inc., Metanova, LLC, and San Yi US Investment Company, Inc.—and Hazens Rosemead, LLC, which owns an office building, to Sun and other undisclosed nominees. Upon information and belief, the hotel assets were divested to Yuan's individual ownership, and subsequently transferred to Sun's nominal control while Yuan maintained actual beneficial ownership through coordinated management arrangements across the entities as a single business enterprise.

63.    Yuan's scheme extended to systematic misrepresentations about his marital status. While secretly married to Sun, Yuan represented to CIB that he was married to Rao. Upon information and belief, Yuan strategically divorced both Rao and Sun in calculated efforts to shield fraudulently transferred assets from recovery by CIB or other creditors. Yuan divorced Rao on or around September 12, 2023, and subsequently divorced Sun in 2024. These divorces coincided in time with Yuan's increasing financial difficulties and exposure to liability under the Guarantees, and were designed to convert marital community property subject to creditor claims into separate property of Yuan's former spouses.

64.    By systematically transferring these valuable assets—including real property, monetary funds, and beneficial ownership interests in hotel assets—without receiving reasonably equivalent value in return, Yuan has deliberately rendered himself unable to satisfy legitimate creditor claims. CIB is informed and believes that Yuan's financial condition has been severely exacerbated by these transfers, rendering Yuan functionally insolvent with insufficient remaining disclosed assets to satisfy his obligations to CIB under the Guarantees or otherwise.

**F.    Parallel Litigation in California Superior Court**

65.    To protect its rights and prevent further dissipation of the fraudulently transferred assets, CIB is going to file a complaint in the Superior Court of the State of California, County of Los Angeles, against Sun, VSGL, Metainfinity, Inc., Metanova, LLC, San Yi US Investment Company, Inc., Hazens Rosemead, LLC, and Burgeon Hotel Group Corporation (the "State Court Action"). The State Court Action seeks to avoid Yuan's fraudulent transfers under the California Uniform Voidable Transfer Act (the "UVTA") and recover the assets that Yuan systematically transferred to evade his guarantee obligations.

66.    The State Court Action asserts seven causes of action against the defendants: (1) Avoidance of Constructive Voidable Transfer pursuant to the UVTA; (2) Avoidance of Actual Voidable Transfer pursuant to the UVTA; (3) Fraudulent Transfer Under Common Law; (4) Constructive Trust; (5) Unjust Enrichment; (6) Civil Conspiracy; and (7) Aiding and Abetting Fraudulent Transfer.

67.     In the State Court Action, CIB seeks relief including: (a) avoidance of all fraudulent transfers to the extent necessary to satisfy CIB's claims; (b) attachment and other provisional remedies against the transferred assets; (c) injunctive relief against further disposition of the transferred assets by Yuan, Sun, or any of the corporate defendants; (d) appointment of a receiver to take charge of the transferred assets; (e) imposition of constructive trusts over all fraudulently transferred property; (f) equitable liens against all transferred assets; (g) monetary damages equal to the value of the fraudulently transferred assets; and (h) disgorgement of all benefits obtained through the fraudulent transfer scheme.

68.     CIB is also going to request that the Los Angeles Superior Court grant preliminary and permanent injunctive relief to restrain and enjoin the defendants in the State Court Action from facilitating any further transfers, encumbrances, concealment, or disposition of the fraudulently transferred assets, including but not limited to the real property and monetary funds transferred to Sun and VSGL, the real property purchased with other fraudulently transferred funds, and the beneficial ownership interests in the hotel and office building assets held by Yuan's network of entities operating as a single business enterprise.

**G.     Respondents' Noncompliance with the Awards**

69.     Both Awards expressly stipulate that all amounts payable as determined therein shall be paid by the respondents, including Yuan and Hazens Xinnan, within ten days from the date the Awards are rendered. Exhibit A, at p. 136-37; Exhibit B, at p. 50. The First Award was rendered on September 29, 2025, Exhibit A, at p. 138, and the Second Award was rendered on September 30, 2025. Exhibit B, at p. 51. The ten-day payment deadlines have expired.

70.     To date, Yuan has not made any payment toward the principal, interest, default interest, compound interest, attorney's fees, or arbitration costs awarded in either the First Award or the Second Award. Yuan has failed to satisfy any portion of his obligations under the Awards, despite the clear payment deadlines set forth therein and the finality and binding effect of the Awards. *See* Huang Decl. at ¶14.

71.     Furthermore, none of the other Respondents in the two arbitration proceedings have made any payment toward the principal, interest, default interest, compound interest, attorney's fees, or arbitration costs awarded under either the First Award or the Second Award. *See id*.

72.     In November 2025, CIB was compelled to file an application for compulsory enforcement of the Awards with Guangdong Province Shenzhen Intermediate People's Court after receiving no payment from any of the respondents. Even then, after determining that no executable property suitable for disposal was discovered, the Court closed the enforcement proceeding—while nonetheless ruling that CIB retains the right to demand that the respondents, including Fuer Yuan, continue fulfilling the debt obligations, and that the respondents remain obligated to do so.[9] *See id*. The enforcement proceedings in China may be reopened once CIB finds enforceable assets in China and resubmit the enforcement application. *See id*.

73.     As a result, CIB is compelled to seek confirmation and enforcement of the Awards through this Court to recover the amounts rightfully owed to it.

## ARGUMENT

**I.     The Awards Should Be Confirmed Pursuant to the New York Convention**

74.     China acceded to the New York Convention on January 22, 1987.[10]

75.     Yuan and CIB entered into the Yuan First Loan Guarantee in January 2020 and the Yuan Second Loan Guarantee in March 2022, long after China acceded to the New York Convention. Thus, the New York Convention governs the recognition and enforcement of the arbitration agreement contained in the Guarantees and any awards arising therefrom.

76.     The FAA provides that, within three years of the issuance of an arbitral award falling under the New York Convention, "any party to the arbitration may apply . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. Pursuant to Article IV of the New York Convention, which is incorporated into Chapter 2 of the FAA, *see* 9 U.S.C. § 201, the

---

[9] Through the effort of the judicial assistant of the Court, after the Court closed the enforcement proceeding, the Court has located and seized CNY 5,081,346.54, equivalent to USD 732,388.20, from Fuer Yuan and Weiqing Rao's personal bank accounts.

[10] *See* United Nations Treaty Collection, Status of Treaties, Chapter XXII (Commercial Arbitration and Mediation), *available at* https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XXII-1&chapter=22&clang=_en.

1  petitioning party must provide "[t]he duly authenticated original award or a duly certified copy

2  thereof," and "[t]he original agreement" or "a duly certified copy thereof." *See* Exhibits A-D.

3       77.    A petition to confirm a foreign arbitral award is an expedited, summary proceeding

4  that is treated as a motion under the Federal Rules of Civil Procedure. *See* 9 U.S.C. § 6 (under Chapter

5  1 of the FAA, a petition to enforce a domestic arbitral award is treated as a motion); 9 U.S.C. § 208

6  (providing that Chapter 1 of the FAA applies to proceedings for recognition and enforcement of

7  foreign arbitral awards unless inconsistent with Chapter 2 of the FAA or the New York Convention);

8  *see also Cypress Equip. Fund, Ltd. v. Royal Equip., Inc.*, No. C-96-3783 MMC, 1997 WL 106137, at

9  *7 (N.D. Cal. Jan. 13, 1997) ("Both parties agree that arbitration confirmation proceedings are

10  intended to be expedited proceedings."); *Fuchs v. State Farm Gen. Ins. Co.*, No. CV 16-01844-BRO-

11  GJS, 2017 WL 10403357, at *2 (C.D. Cal. Apr. 27, 2017) ("The proceeding to confirm an arbitration

12  award is intended to be summary.").

13       78.    A district court's "review of a foreign arbitration award is quite circumscribed."

14  *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc. ("Gould")*, 969 F.2d 764, 770 (9th Cir.

15  1992) ("[T]he policy in favor of international arbitration is strong."); *see also Scherk v. Alberto-*

16  *Culver Co.*, 417 U.S. 506, 519–20, 520 n.15 (1974) ("The goal of the Convention, and the principal

17  purpose underlying American adoption and implementation of it, was to encourage the recognition

18  and enforcement of commercial arbitration agreements in international contracts."). "The district

19  court has little discretion: '[t]he court *shall* confirm the award unless it finds one of the grounds for

20  refusal or deferral of recognition or enforcement of the award specified in the [New York]

21  Convention.'" *Gould*, 969 F.2d at 770 (citing 9 U.S.C. § 207) (emphasis in original); *see also*

22  *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835–36 (9th Cir. 2010) (same).

23       79.    The New York Convention enumerates seven defenses to the recognition or

24  enforcement of an arbitral award: (1) lack of capacity of a party or invalidity of the arbitration

25  agreement; (2) lack of proper notice or inability to present a case; (3) the award goes beyond the scope

26  of the submission to arbitration; (4) the composition of the arbitral tribunal or the arbitral procedures

27  were not in accordance with the parties' agreement or the applicable law; (5) the award has not yet

28  become binding or has been set aside by a competent authority; (6) the subject matter of the dispute

is not capable of being arbitrated; and (7) recognition of the award would be contrary to public policy of the enforcing country. New York Convention, Art. V; *see also Galaxia Elecs. Co. v. Luxmax, U.S.A.*, No. LACV1605144JAKGJSX, 2023 WL 2347085, at *26 (C.D. Cal. Feb. 1, 2023) (summarizing available defenses under the New York Convention).

80. The Respondent bears the burden of showing the existence of a defense. *See Polimaster*, 623 F.3d at 836. In light of the policy in favor of confirming foreign arbitral awards, these grounds "should be construed narrowly." *See Gould*, 969 F.2d at 770 (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papeir*, 508 F.2d 969, 974, 976 (2nd Cir. 1974)); *see also Galaxia Elecs.*, 2023 WL 2347085, at *26 ("These defenses are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies.").

81. The Guarantees themselves further confirm the narrow scope of judicial review by providing that the Awards shall be "final and binding upon the Parties." *See* Exhibit C, at p. 15, Article 16, Exhibit D, at p. 16, Article 15.

82. Here, the Awards are not subject to challenge under any of the seven grounds enumerated in the New York Convention, or otherwise under the relevant agreements. Each Award was made in accordance with the terms of the Guarantees and Chinese law. The parties prepared and presented their cases to the tribunal over the course of multiple hearings. The Awards total 138 pages and 51 pages respectively, are thoroughly reasoned, and carefully apply Chinese law to each side's arguments and the Loan Agreements and Guarantees. *See generally* Exhibits A, Exhibit B.

83. Yuan was duly notified of the arbitration proceedings, and all arbitration documents, including but not limited to the Arbitration Notices and all parties' arbitration submissions and evidentiary materials, were duly served upon Yuan. Yuan voluntarily elected not to participate in the arbitration, even though Hazens Xinnan, an entity controlled and owned by Yuan, and its affiliated entities and subsidiaries actively participated in the arbitration and were represented by counsel therein.

84. Specifically, Yuan has received comprehensive notice of the arbitration proceedings through more than 30 service attempts for each of the two arbitrations, totaling more than 60 service attempts using multiple methods to numerous addresses. Service was effectuated by SMS text

message to Yuan's mobile phone number listed in the Guarantees, and by mail to four separate addresses including the residential address Yuan provided in the First and Second Loan Guarantee Agreements; the address for Yuan's designated representative; the address Yuan provided in the Loan Extension Agreement; and the residential address listed on Yuan's identification card. Yuan was served with all arbitration documents including the Arbitration Notice, Arbitration Rules, Request for Arbitration, evidentiary materials, tribunal formation notices, arbitrators' Declarations, all other parties' submissions and evidence, procedural orders, Hearing Notices, and the Arbitral Awards. *See* Huang Decl. at ¶¶10-13.

85.     As such, proper notice of the appointment of the arbitrators and of the arbitration proceedings was provided to Yuan. *See* New York Convention, Art. V(1)(b); *see also Linley Invs. v. Jamgotchian*, No. LACV1100724JAKRZX, 2012 WL 12953824, at *6 (C.D. Cal. May 11, 2012) (finding notice adequate when petitioners sent notice to respondent's email address "that was the typical method of communication between parties," sent notice to respondent's "P.O. Box address that was listed in the" agreements, and sent notice to respondent's attorney whom petitioners "had no reason to doubt . . . represented respondent"); *MBA Cmty. Loans PLC v. Castellani*, No. 20-CV-02359-MMC, 2020 WL 4464909, at *2 (N.D. Cal. Aug. 4, 2020) (finding notice adequate when petitioners provided notice by email to respondent's confirmed addresses pursuant to the rules of the arbitral tribunal which provides that "[a]ny written communication . . . may be delivered . . . by email" to "an address agreed or designated by the receiving party for that purpose").

86.     Thus, Yuan's failure to appear at the arbitration hearings cannot constitute a defense to confirmation and enforcement of the Awards. *See Linley Invs.*, 2012 WL 12953824, at *6, 9 (granting petition to confirm arbitration awards under the New York Convention when respondent, with proper notice, did not respond to the arbitration notice and did not participate in the arbitration proceedings); *Castellani*, 2020 WL 4464909, at *1, 3 (N.D. Cal. Aug. 4, 2020) (same); *Cerner Middle E. Ltd. v. iCapital, LLC*, No. 3:16-CV-01631-YY, 2021 WL 5112007, at *6-8 (D. Or. Aug. 23, 2021), *report and recommendation adopted*, No. 3:16-CV-01631-YY, 2021 WL 4948209 (D. Or. Oct. 24, 2021) ("defendants have not met their burden to show that the Award should not be enforced under

1  the notice defense in Article V, Section (1)(b) of the Convention" when "despite being aware of the

2  proceedings, [] defendants simply chose not to appear").

3      87.    The Awards have not been set aside by any competent authority. Indeed, even if the

4  Awards were still being litigated by Chinese Courts (which they are not), "'American judges hold –

5  virtually unanimously – that under the New York Convention an arbitration award becomes binding

6  when no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)' and

7  that 'a court maintains the discretion to enforce an arbitral award even when nullification proceedings

8  are occurring in the country where the award was rendered.'" *Iraq Telecom Ltd. v. IBL Bank S.A.L.*,

9  597 F. Supp. 3d 657, 665 (S.D.N.Y. 2022) (citing cases).

10      88.    Finally, confirming the Awards and holding Yuan liable to CIB under the Guarantees

11  would not be contrary to public policy in the United States.

12      89.    Accordingly, the Awards should be confirmed.

13  **II.     Judgment Should Be Entered Concurrently with Confirmation of the Awards**

14      90.    Petitioner respectfully requests that judgment be entered concurrently with the

15  confirmation of the Awards.

16      91.    As Petitioner seeks only an order requiring payment of "a sum certain," it would be

17  appropriate for the clerk of this Court, "without awaiting the court's direction, [to] promptly prepare,

18  sign, and enter the judgment." *See* Fed. R. Civ. P. 58(b)(1)(B); *see also Ministry of Defense and*

19  *Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc. ("Cubic*

20  *Defense")*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011) ("Confirmation is a summary proceeding that

21  converts a final arbitration award into a judgment of the court. . . . Once the award is confirmed, the

22  judgment has the same force and effect of a judgment in a civil action and may be enforced by the

23  means available to enforce any other judgment.") (citations omitted); *see also Pharmaniaga Berhad*

24  *v. E\*HealthLine.com, Inc.*, 344 F. Supp. 3d 1136, 1145-46 (E.D. Cal. 2018) (judgment entered

25  concurrently with confirmation of an arbitral award).

26  **III.    Injunctive Relief Should Be Entered to Stop Respondent from Dissipating Assets**

27      92.    "[T]his Court's injunctive authority may reach worldwide. 'Once personal jurisdiction

28  of a party is obtained, the District Court has authority to order it to "freeze" property under its control,

PETITION TO CONFIRM ARBITRAL AWARDS

whether the property be within or without the United States.'" *Smagin v. Yegiazaryan*, No. 2:14-CV-09764-R, 2016 WL 11676607, at *2 (C.D. Cal. Nov. 14, 2016), *aff'd,* 733 F. App'x 393 (9th Cir. 2018) (citing *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1478 (9th Cir. 1994)). This Court should exercise this authority here and grant injunctive relief in the form of a worldwide asset freeze effective immediately until Respondent has paid Petitioner the amount due under the Awards. *Id*. at *1 (multiple Circuit Courts "have issued or affirmed similar asset freezes 'where waste, dissipation, or transfer of assets by [judgment debtor] has a direct impact on appellee's potential ultimate recovery.'") (citations omitted).

93.     In order to grant injunctive relief, Petitioner "must establish that (1) [it] has succeeded on the merits of the confirmation claim [(or that they have a likelihood of success on the merits)][11], (2) [it] is likely to suffer irreparable harm absent an injunction, (3) the balance of the equities tips in favor of an injunction, and (4) an injunction is in the public interest." *Id.*

94.     Here, Petitioner has a clear likelihood of success on the merits as "[n]ormally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *Vivi Robyn Stafford v. Baart Behav. Health Servs., Inc.*, No. CV 15-252-GW (MRWX), 2020 WL 9172809, at *3 (C.D. Cal. Mar. 11, 2020), *aff'd sub nom. Stafford v. BAART Behav. Health Servs., Inc.*, 855 F. App'x 426 (9th Cir. 2021) (citations omitted); *see also supra* at Section I of Arguments.

95.     Petitioner is likely to suffer irreparable harm absent injunctive relief in the form of a worldwide asset freeze. As discussed above, Yuan has already systematically transferred valuable real property, substantial monetary funds, and beneficial ownership interests in hotel and office building assets through his coordinated scheme involving strategic divorces and deliberate misrepresentations about his marital status, and through the operation of his single business enterprise. This pattern establishes that he will continue placing assets beyond creditors' reach if not

---

[11] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Id*. (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)).

restrained by court order. If his assets are further dissipated, no monetary damages can substitute for the lost recovery opportunity, particularly where Yuan is already functionally insolvent. *See Smagin*, 2016 WL 11676607, at *3 ("In terms of irreparable injury, [Respondent] has fought long and hard to prevent enforcement of [the] award and judgment."); *see also Fid. Nat. Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 5882878, at *6 (N.D. Cal. Nov. 23, 2011) ("when allegations of past fraud are coupled with supplemental evidence that demonstrates a likelihood of dissipation, courts may freeze assets.").

96.     Finally, the balance of equities and public interest weigh in favor of an injunction because Yuan breached the Guarantees and fraudulently transferred his assets to evade liability under the Guarantees, and thus the "injunction will preserve the assets, preventing the 'irreparable harm' of those assets being dissipated." *Sec. & Exch. Comm'n v. Bivona*, No. 16-CV-01386-EMC, 2016 WL 2996903, at *2 (N.D. Cal. May 25, 2016) (citing Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009)); *see also Candid Ventures, LLC v. Dew Ventures, Inc.*, No. 24-CV-07800-HSG, 2024 WL 4909010, at *3 (N.D. Cal. Nov. 27, 2024) ("the balance of the equities tips sharply in Plaintiff's favor. Without an order enjoining Defendants from transferring [assets], Defendants would be free to transfer the contested assets to a third party beyond this Court's jurisdiction, forcing Plaintiff to continue chasing them from one venue to another"); *DeGiacomo Tr. for Est. of RMA Strategic Opportunity Fund, LLC v. Montoya*, No. CV 18-650-R, 2018 WL 6264972, at *1 (C.D. Cal. Sept. 19, 2018) ("The balance of equities and public interest are also strongly in favor of granting the preliminary injunction, given the strong public interest in ensuring that funds obtained from a fraudulent scheme are returned to the victims and not dissipated."); *Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*, No. 5:12-CV-01864 EJD, 2012 WL 1309151, at *3 (N.D. Cal. Apr. 16, 2012) ("[I]ssuance of a TRO serves the overarching public interest of enforcing contracts.")[12]; *Creative Power Sols. v. Energy Servs. Grp.*, No. CV-21-01559-PHX-DLR, 2021 WL 4503455, at *2 (D. Ariz. Oct. 1, 2021) ("[T]he balance of hardships tips in [plaintiff]'s favor. . . . the TRO serves the

---

[12] "The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Townsend v. Parrish*, No. 2:22-CV-1278 AC P, 2025 WL 277466, at *1 (E.D. Cal. Jan. 23, 2025), *report and recommendation adopted*, No. 2:22-CV-1278 DJC AC P, 2025 WL 588665 (E.D. Cal. Feb. 24, 2025).

public interest by ensuring that potentially harmed plaintiffs have a meaningful opportunity to recover their losses."). Moreover, Yuan would not be harmed by the injunction "because the injunction operates only to ensure that [Yuan] lives up to his obligations under the arbitration award." *Smagin*, 2016 WL 11676607, at *4; *see also Candid Ventures*, 2024 WL 4909010, at *3 ("Defendants have not shown how such an order simply maintaining the status quo and keeping the assets in their possession and control would harm them."). The balance of equities is in favor of granting the requested injunction under these circumstances.

97.     Accordingly, this Court should grant worldwide injunctive relief to preserve Petitioner's ability to recover on the Awards. *See Smagin*, 2016 WL 11676607, at *4. (granting a worldwide injunction to prevent Respondent from dissipating assets); *see also Shanghai Lan Cai Asset Mgmt. Co, Ltd. v. Jia Yueting*, No. 218CV10255SJOMRWX, 2018 WL 10151034, at *4 (C.D. Cal. Dec. 13, 2018) (issuing a TRO "enjoining Respondent from transferring, concealing, reducing, encumbering, or otherwise making unavailable" specific property to "preserv[e] the status quo" until petitioner's motion to confirm its arbitral award could be adjudicated and a final judgment reached); *Shanghai Lan Cai Asset Mgmt. Co. v. Jia Yueting*, No. 218CV10255SJOMRWX, 2019 WL 11273229, at *3 (C.D. Cal. Sept. 3, 2019) (granting a preliminary injunction post-confirmation of arbitral awards to enjoin "Respondent from taking any step to transfer, conceal, reduce, encumber, or otherwise make unavailable—either personally or through instructions to another—any non-exempt assets up to the value of this Court's judgment against Respondent.").

## IV.     Petitioner Should Be Awarded Its Fees Incurred in Confirming the Awards

98.     "It is well settled [that] federal courts have authority to award attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Cubic Defense*, 665 F.3d at 1104. The Ninth Circuit has held that "unjustified refusal to abide by an arbitrator's award [] may equate an act taken in bad faith, vexatiously or for oppressive reasons", and thus "federal law permits an award of attorney's fees in an action under the [New York] Convention." *Id*. (citation omitted).

99.     The Court should exercise that authority here. Despite that the Awards clearly stipulate that all amounts payable thereunder shall be paid by the respondents, including Yuan, within ten days

from the date the Awards are rendered (Exhibit A, at p. 136-37; Exhibit B, at p. 50), no payment has been made from Yuan whatsoever. *See* Huang Decl. at ¶14. Enforcement proceedings in China has also been futile. *See id*.

100.    "Generally, when a defendant simply refuses to pay an arbitration award and forces the plaintiff to file a petition to confirm the award, courts grant attorney's fees based on a finding of bad faith." *Gen. Marine II, LLC v. Kelly*, No. 3:21-CV-1425-W-DEB, 2022 WL 4488003, at *2 (S.D. Cal. Sept. 27, 2022); *see also Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Arizona*, 84 F.3d 1186, 1192 (9th Cir. 1996) (affirming award of attorney's fees where "[t]he court found it significant that [Respondent] simply refused to honor the award rather than filing a petition to vacate it, and requested a vacation of the award only in response to [Petitioner's] petition to confirm it); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, No. 98-CV-1165-B DHB, 2013 WL 55828, at *6 (S.D. Cal. Jan. 3, 2013) (awarding attorneys' fees because defendant willfully ignored the validity of the award and its "opposition to confirmation of the award was weak"); *Pharmaniaga Berhad*, 344 F. Supp. 3d at 1146 ("A refusal to pay is unjustified where a party 'simply ignored the validity of the Arbitration Award and sought to avoid payment,' forcing the creditor 'to expend resources to litigate' the award's enforcement.").

101.    Furthermore, Yuan's bad faith conduct is exemplified by his sophisticated scheme to fraudulently transfer assets to evade his obligations under the Awards and the Guarantees. *See supra* at Section E of Background.

102.    CIB reserves its right to bring a timely motion for fees following the entry of judgment under Federal Rule of Civil Procedure 54(d)(2)(B). However, this Court "may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). *See Pharmaniaga Berhad*, 344 F. Supp. 3d at 1146 (ordering petitioner to "file a motion pursuant to Rule 54(d) of the Federal Rules of Civil Procedure to address the amount of the attorney's fees and other costs it seeks. That motion need not address [the party's] entitlement to attorney's fees, which is established by this Order").

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner Industrial Bank Co., Ltd. Shenzhen Branch prays for an order and for entry of judgment on the following terms:

(1) Confirming and enforcing the Awards against Respondent Fuer Yuan;

(2) Compelling Respondent to pay Petitioner the amounts due and owing to Petitioner under the Awards;

(3) Granting Petitioner injunctive relief in the form of a worldwide asset freeze of Respondent's assets until Respondent pays the Awards and any other amounts due and owing to Petitioner in full;

(4) Compelling Respondent to pay Petitioner's costs incurred in this action pursuant to Federal Rule of Civil Procedure 54(d)(1);

(5) Compelling Respondent to Petitioner's attorney's fees incurred in this action;

(6) Any and all other relief that the Court deems just and proper.

Dated: February 6, 2026

Respectfully submitted,
KING & WOOD MALLESONS LLP

By: /s/ *Ge Yan*

Yan Ge (State Bar #236566)
  geyan@cn.kwm.com
Yiren Yu (State Bar #341245)
  yiren.yu@us.kwm.com
KING & WOOD MALLESONS LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

*Attorneys For Petitioner*
*Industrial Bank Co., Ltd. Shenzhen Branch*

PETITION TO CONFIRM ARBITRAL AWARDS