# Exhibit D

## 证明

本人王强，拥有英语翻译资格，能够流利地使用中文和英文，在北京思必锐翻译有限责任公司工作，该公司是北京市高级人民法院指定的翻译机构。本人保证所附的英文译文内容真实准确，与中文原文内容一致。

地址：北京市朝阳区东三环中路 39 号建外 SOHO 七号楼 1703 室
电话：010-58696855
邮编：100022

翻译签字：
公司盖章：



北京思必锐翻译有限责任公司
2025 年 11 月 26 日

## CERTIFICATION

I, Wang Qiang, am an accredited translator working for Beijing Spirit Translation Co., Ltd., which company is a translation service provider appointed by Beijing High People's Court, and I am fluent in the Chinese and English languages. I certify that the content of the English translation attached hereto is true and accurate and is consistent with that of the Chinese original.

Address: Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, District Chaoyang, Beijing, China
Tel: 010-58696855
Postcode: 100022

Signature of Translator: ........................................
[Wang Qiang]

Company Seal:

Beijing Spirit Translation Co., Ltd.

November 26, 2025

2021 年 12 月版

# 保 证 合 同

编　号：兴银深＿＿华富＿＿＿＿保证字（ 2022 ）第＿034-2＿号

债 权 人：兴业银行股份有限公司＿深圳分行＿＿＿＿

住　　所：深圳市福田区深南大道4013号兴业银行大厦

法定代表人/负责人：＿＿＿郭秋君＿＿＿＿

保证人（单位）：＿＿＿＿＿/＿＿＿＿＿＿

住　　所：＿＿＿＿＿＿/＿＿＿＿＿＿＿

法定代表人/负责人：＿＿＿/＿＿＿＿＿

保证人（自然人）：＿＿＿袁富儿＿＿＿＿

住　　所：深圳市福田区新闻路16号合正名园C幢五楼

证件类型：＿身份证＿＿＿证件号码：362201196303230814

合同签订地点：深圳市福田区兴业银行大厦兴业银行股份有限公司深圳分行

1

## 签约重要提示

为了维护您的权益，请您在签署本合同之前仔细阅读，检查并确认以下事宜：

一、您及贵司有权签署本合同，若依法需要取得他人同意的，您及贵司已经取得充分授权；若涉及处理他人个人信息的，您及贵司已经取得他人同意兴业银行对其个人信息处理的书面文件；

二、您及贵司已经认真阅读并充分理解合同条款，并特别注意了其中有关责任承担、免除或减轻兴业银行责任及个人信息处理等与您及贵司有重大利害关系的内容、以及加黑字体部分的内容；

三、您及贵司已经充分理解合同条款的含义及相应的法律后果，并愿意接受这些条款约定；

四、您及相关个人签署本合同即表示同意并授权兴业银行处理您及相关个人的个人信息并按照兴业银行规定期限予以保存；您及相关个人已知晓对个人信息的处理享有知情权、决定权、撤回同意权、限制或拒绝第三方处理权等权利，兴业银行已通过多样化的方式（包括但不限于现场告知）提供了个人信息处理的知情、决定等服务；如您及相关个人拟撤回、限制或拒绝对兴业银行处理个人信息的授权，可以根据本合同约定或兴业银行管理程序办理；

五、如果您及贵司对本合同还有疑问，或您及贵司发现合同及合同项下业务收费事项存在违法违规情况的，请及时拨打兴业银行电话或直接向兴业银行经营网点投诉或咨询，联系电话：_____95561_____。

2

保证人为债权人给予＿＿＿深圳市合正新南投资有限公司＿＿＿＿＿＿＿（以下简称"债务人"）的金融服务提供担保。为明确责任、恪守信用，各方经协商，订立本合同以兹共同遵守。

第一条　定义与解释

除本合同另有约定外，则：

一、主合同的定义与解释均适用于本合同。

二、"债权"：或称主债权，是指债权人依据主合同的约定为债务人提供的各类本外币借款、贸易融资（包括开立国际及国内信用证、信托收据、打包贷款、进出口押汇、透支、保理、买方信贷、订单融资、福费廷、代付以及其他国际、国内贸易融资业务等）、票据业务（包括票据承兑、票据贴现、票据回购、商票保贴、商票保证、票据保付以及其他票据业务等）、担保业务（包括国际及国内保函、备用信用证以及其他担保业务等）、贵金属交易（包括黄金租借、代理贵金属交易、贵金属质押融资以及其他贵金属业务等）、拆借、衍生品交易等表内外金融业务而形成的本外币债权（含本金、利息、罚息、复利、违约金、损害赔偿金、债权人实现债权的费用等）。主合同履行中，具体业务品种可由债权人与债务人协商调整、变更或补充，以主合同项下债权人与债务人签订的具体业务合同为准，并不限于以上明确列举的业务品种范围。

本合同下所说的债权人的"债权"和债务人的"债务"内容对应一致，债权人在主合同项下所拥有的针对债务人的债权对应于主合同项下债务人对债权人的债务。

三、本合同中"工作日"指中国国家（不含港澳台地区）法定节假日及双休日外的工作日。本合同中"营业日"指债权人银行的营业日，合同履行过程中，若某个提款、还款日为非营业日，则顺延至下一个营业日。

第二条　主合同的基本内容

一、本合同担保的主合同基本内容为：

（一）合同名称：《＿＿＿项目融资借款合同＿＿＿＿＿＿＿＿》

（二）合同编号：＿＿兴银深华富项借字（2022）第034号＿＿

（三）主债权种类：＿项目融资＿＿＿＿　币种：＿人民币＿＿

（四）主债权本金：￥1,000,000,000.00　利率：浮动利率，详见借款合同

（五）主债务履行期限：*2022.04.06 - 2025.04.06*

二、主合同实际内容与上述约定不一致时，以借款凭证等债权凭证所记载的内容为准。

第三条　保证范围

一、本合同项下的保证范围为主合同项下的主债权本金、利息（含罚息、复

利）、违约金、损害赔偿金、债权人实现债权的费用等（统称"被担保债权"）。债权人实现债权的费用，是指债权人采取诉讼、仲裁、向公证机构申请出具执行证书等方式实现债权时支付的诉讼（仲裁）费、律师费、差旅费、执行费、保全费及其他实现债权的费用。

二、为避免歧义，债权人因准备、完善、履行或强制执行本合同或行使本合同项下的权利或与之有关而发生的所有费用和支出（包括但不限于律师费用、诉讼（仲裁）费用以及申请出具执行证书的费用等）均构成被担保债权的一部分。

第四条　保证方式

一、保证人在本合同项下的保证方式为连带责任保证，即保证人和债务人对债务承担连带责任。债务人无论何种原因未按主合同约定履行到期应付的债务（包括但不限于债权人因债务人或担保人违约而要求提前收回的债务）或发生了本合同约定的情形，保证人都应按照本合同约定代为履行清偿责任。

二、主债务履行期届满，债务人未按主合同约定按期还款付息的，保证人依约承担连带清偿责任。

三、主债务履行期间，债权人依照主合同约定，宣布主债务履行期提前届满的，保证人对提前到期的主债务及其他保证范围内的债务承担连带清偿责任。

第五条　保证期间

一、保证期间为主债务履行期限届满之日起三年。

二、银行承兑汇票承兑、信用证和保函项下的保证期间为债权人垫付款项之日起三年，分次垫款的，保证期间从每笔垫款之日起分别计算。

三、商业汇票贴现的保证期间为贴现票据到期之日起三年。

四、债权人按照主合同或本合同的约定提前收贷、或发生法律、行政法规规定情况下主债务履行期提前届满时，保证期间自债权人确定的主合同债务提前届满之日起三年。

五、如主债权为分期偿还的，每期债权保证期间也分期计算，保证期间为每期债权到期之日起三年。

六、债权人与债务人就主合同债务履行期限达成展期协议的，保证人在此不可撤销地认可和同意，保证人继续承担连带保证责任，保证期间自展期协议约定的债务履行期限届满之日起三年。

七、债权人为债务人提供的其他表内外各项金融业务，保证期间为自该笔金融业务项下债务履行期限届满之日起三年。

第六条　保证责任的履行

一、保证人在本保证合同项下承担连带保证责任，只要债权人向保证人提交列明保证合同编号与主债权金额的债务催收通知文书，保证人应当在收到之

4

日立即履行清偿责任并放弃一切抗辩理由。

二、除非合同另有约定，保证人在此不可撤销地同意，债权人有权允许债务人转移全部或者部分债务，保证人对债务人转移的债务按本合同约定承担连带保证责任。

三、保证人在此特别申明，保证人知晓本合同担保的债权用途可能包括用于借新还旧，保证人同意对借新还旧用途的债权按本合同约定承担连带保证责任。

四、如债务人违反主合同的约定（包括但不限于债务人未按主合同约定的借款用途使用借款），均不影响保证人的连带保证责任，保证人不以此为由要求减轻或免除连带保证责任。

第七条　保证人声明与承诺

保证人自愿作出以下声明与承诺，并就其内容的真实性承担法律责任：

一、保证人系独立的法律主体，具备所有必要的民事权利能力和民事行为能力，具有法律规定的保证人资格和代为清偿能力，自愿承担并履行连带保证责任。如涉及保证人相关自然人或自然人保证人及其配偶等个人信息处理的，应出具个人同意债权人处理其个人信息的书面文件。

二、保证人为单位的，保证人签署本合同完全符合保证人有关章程、内部决定以及股东会、董事会的决议。签署本合同也不与保证人之任何章程、合同和股东会、董事会决议以及本公司的政策相冲突或相违背。

三、保证人签署和履行本合同，不违反任何对其资产有约束力的规定或约定，不违反任何保证人与他人签署的担保协议、其他协议以及其他任何对保证人有约束力的文件、约定和承诺的内容。

四、保证人向债权人提供的所有文件、资料、报表和凭证等是准确、真实、完整和有效的，并接受债权人对其生产经营活动和财务状况的检查、监督。

五、保证人知悉并同意主合同的全部条款，自愿为主合同债务人提供保证，并按本合同约定履行连带清偿义务。保证人为自然人的，保证人进一步承诺，如发生保证人失踪或被宣告失踪、无法正常联系、下落不明、丧失必要的民事行为能力等情形，则将由其监护人、财产接管人以保证人的财产为限对债权人承担本合同项下的连带保证责任；如保证人死亡或被宣告死亡的，将以其遗产对债权人承担本合同项下的连带保证责任。

六、保证人未隐瞒任何已发生或即将发生的有可能使债权人不接受其为保证人的下列事件：

（一）与保证人或其主要管理人员有牵连的重大违纪、违法或被索赔事件；

（二）未结案的诉讼、仲裁事件；

5

（三）保证人承担的各类债务、或有负债或向第三人提供的保证、抵（质）押担保；

（四）保证人在与债权人或其他任何债权人的合同项下所发生的违约事件；

（五）其他影响保证人财务状况或担保能力的情况。

七、保证人履行了保证责任后，在不影响债务人今后偿还债务的前提下，有权向债务人追偿款项。但如果债务人同时面临保证人的追偿和债权人在主合同项下的任何支付要求，保证人同意债务人优先偿付其对债权人的债务。

八、如果债务人与保证人已经或将要就本合同项下的担保义务签订反担保合同，则该反担保合同不得在法律或事实上损害债权人在本保证合同项下享有的任何权利。

九、担保债务清偿完毕前，无论任何原因导致保证人保证能力减少至不足以担保全部债务时，债权人有权要求保证人提供新的足额、有效的担保。

十、若主合同项下还存在其他担保，则保证人对债权人承担的连带保证责任不受其他任何担保人所提供的担保的影响，也不因之而免除或减少，其连带保证责任的承担也不以债权人向其他任何担保人提出权利主张或进行诉讼/仲裁/强制执行为前提。

十一、如主合同项下还存在其他担保（包括但不限于保证、抵押、质押、备用证及其他任何形式的担保），保证人同意，债权人可以放弃部分担保物权或者担保物权的顺位（包括该担保物是由债务人提供的情况），也可以放弃/减免部分保证人的担保责任，债权人与任意担保人（包括该抵押人/出质人等为债务人本人的情况）可以协议变更担保物权的顺位以及被担保的债权数额等内容，债权人即使作出上述行为，保证人仍应当依据本合同承担全部连带保证责任。

十二、在本合同项下全部义务履行完毕之前，保证人如进行任何产权变动或经营方式调整（包括但不限于与外商、港澳台商签订合资、合作合同；撤销、关闭、停产、转产、变更；分立、合并、兼并、被兼并；重组、组建或改建为股份制公司、投资公司；以房屋、机器、设备等固定资产或商标、专利、专有技术、土地使用权等无形资产入股或投资于股份公司，以租赁、承包、联营、托管等方式进行产权、经营权的交易；进行其他任何机构变更或改变经营性质），保证事先提前一个月书面通知债权人。如债权人要求追加或更换担保方式和主体，保证人保证落实为债权人所接受的新的担保方式和主体。

十三、保证人对在本合同项下及保证人与债权人任何部门或机构（包括兴业银行子公司）、其他银行、非银行金融机构或单位签订的合同、担保合同或其他合同项下所发生的违约事件，保证立即以书面形式通知债权人。

十四、保证人如在国家工商行政管理部门或国家其他有关部门进行任何设

6

立、变更或注销登记，其应当于申请登记前通知债权人，并在登记完成后立即将有关登记副本送达债权人。

十五、保证期间内，保证人保证不以任何方式转移、隐匿财产，或放弃、消极行使债权。

十六、保证期间内，保证人发生股权变更（包括但不限于股权转让、托管、代管、质押等），应在事件发生之日立即书面通知债权人；当变更的股权达到百分之____/____时，应事先取得债权人的书面同意。

十七、保证人为单位的，承诺其在全国企业信用信息公示系统公示的信息是真实、完整、合法有效的，保证人承诺持续地同意债权人查询该系统中企业选择公示及不公示的信息。若债权人要求验资，保证人同意按照债权人的要求进行验资并提供专业机构出具的验资报告。

十八、保证人停业、歇业、被宣告破产、解散、被吊销营业执照、被撤销、财务状况恶化，或发生任何可能影响或严重影响其责任承担能力的其他重大事件，均应在事件发生之日立即书面通知债权人。

十九、目前没有发生、也不存在未结的，或，就保证人所知，可能发生的针对其或其财产的任何诉讼、仲裁或行政处罚，并且，无论是主动或是由第三方提出，未发生任何针对保证人的清算或歇业或其他类似程序。当保证人和任何第三方发生重大诉讼、仲裁案件或其他重大纠纷，或保证人重大资产被扣押、查封、冻结、强制执行或被采取了具有同等效力的其他措施，可能影响或严重影响其责任承担能力，保证人应在事件发生之日立即书面通知债权人。

二十、如债权人因履行本合同项下义务而与保证人或与保证人有关的任何第三方当事人之间发生诉讼或仲裁或其他纠纷，导致债权人被迫卷入保证人与任何第三方之间的纠纷之中，债权人因此支付的诉讼或仲裁费用、律师费等其他费用，均由保证人承担。

二十一、主合同项下债务人对债权人债权的清偿给付不足以或有可能不足以清偿全部债务的，或本合同项下保证人给付不足或有可能不足以清偿全部担保债权的，由债权人决定具体的清偿或扣收顺序。

二十二、保证人在此声明并授权：债权人有权根据国家法律法规及相关政策对保证人的信用情况进行必要的调查，包括向国家设立的金融信用信息基础数据库查询保证人的信用信息，并可根据人民银行关于建设企业及个人征信工作的需要，将相关信用信息向国家金融信用信息基础数据库报送，并在此允许相关信息在授权范围内被合法查询。

二十三、保证人在此声明并授权：债权人有权根据行政/司法/监察等部门、银行监管机构、银行业协会等有关信息管理工作的需要，将有关本合同的信息

和其他有关信息向上述部门、机构及其所建立或认可的信息管理系统报送，并在此允许相关信息被合法查询。

二十四、保证人已充分认识主合同项下的汇率风险，自愿承担因汇率变化而增加的担保责任。

第八条  债权人权利

一、当债务人未依主合同约定履行债务或保证人未履行本合同项下约定时，保证人和保证人配偶在此不可撤销地授权债权人无须经过诉讼或仲裁等法律程序，有权直接扣划保证人和保证人配偶开立在债权人处和兴业银行所有分支机构及子公司的任何账户的款项用于偿还被担保债权，保证人和保证人配偶同意债权人有权决定具体扣收顺序。债权人在保证人和保证人配偶账户中扣划款项时，账户中的币种与被担保债权币种不同的，按扣划当天债权人公布的中间价折算。本款约定的账户若涉及理财产品或结构性存款等产品，保证人和保证人配偶在此一并不可撤销地授权债权人有权直接代为发起相关产品赎回申请或采取其他必要措施，以确保债权人顺利扣划上述款项，保证人和保证人配偶应提供一切必要配合。

二、债权人有权随时要求保证人提供反映其经营情况及资信情况的财务报告、财务报表、个人信息及其他资料。

三、当主债务人未依约履行债务或未履行本合同各项约定时，无论债权人对主合同项下的债权是否拥有其他担保权利（包括债务人自己提供物的担保以及第三人提供物的担保或保证，具体担保方式包括但不限于保证、抵押、质押、保函、备用证及其他任何形式的担保方式），债权人均有权先要求保证人承担本合同项下全部连带保证责任，而无须先行使其他担保权利。保证人自愿放弃要求债权人先履行债务人提供物的担保的抗辩以及其他一切法律法规针对债权人的抗辩。

四、债权人有权将主合同项下部分或全部债权及其相应担保权益转让给第三方（或设立信托、资产管理计划等特殊目的载体），无须经过保证人同意。保证人同意对已转让（或设立信托、资产管理计划等特殊目的载体）的和未转让（如有）的债权，仍按本合同约定为债权受让人（或设立信托、资产管理计划等特殊目的载体）和原债权人（如有）提供连带责任保证担保。

五、保证人为单位的，若保证人在本合同项下违约，或发生可能危害债权人实现债权的情形时，债权人有权要求保证人及其股东认缴出资义务加速到期，保证人应按债权人要求及时认缴资本。债权人有权要求保证人及其股东不分红。

第九条  主合同的变更

保证人同意并确认：债权人与债务人协商修改、变更主合同，或主合同项

下融资、担保及其他表内外金融业务展期，均视为已征得保证人事先同意，无需通知保证人，保证人的连带保证责任不因此而减免。

第十条　违约事件和违约责任

一、本合同生效后，债权人和保证人各方均应履行本合同约定的义务，任何一方不履行或不完全履行本合同约定义务的，应当承担相应的违约责任。

二、保证人发生下列任一情形，即构成违约：

（一）保证人向债权人提交的任何证明和文件及本合同第七条的声明与承诺中的任何一项被证明为不真实、不准确、不完整、故意使人误解或未履行；

（二）保证人停业、歇业、被宣告破产、解散、被吊销营业执照、被撤销等；

（三）保证人或保证人控股股东、实际控制人或其关联人涉及重大诉讼、仲裁或其他纠纷，或其重大资产被扣押、查封、冻结、强制执行或被采取了具有同等效力的其他措施；

（四）保证人或保证人法定代表人、实际控制人、董事、监事、高级管理人员被刑事拘留或被采取其他强制措施，失踪或被宣告失踪、丧失必要的民事行为能力、无法正常联系、死亡或被宣告死亡、死亡或被宣告死亡后无继承人、受遗赠人、财产接管人或继承人、受遗赠人拒绝接受继承、遗赠的或监护人、继承人、受遗赠人或财产接管人拒绝继续履行本合同的、假借婚姻关系变更转移资产或试图转移资产等，导致对保证人的偿债能力产生不利影响；

（五）保证人在本合同项下及与兴业银行的任何部门或机构（包括兴业银行子公司）、其他银行、非银行金融机构或单位签订的融资合同、担保合同或其他合同项下发生任何违约事件；

（六）保证人发生危及、损害或可能危及、损害债权人权益的其它事件或违反本合同其他条款。

三、保证人违约，债权人有权采取下列一项或几项措施：

（一）要求保证人限期纠正违约；

（二）宣布主债务履行期提前届满；

（三）要求保证人提供新的足额、有效的担保；

（四）要求保证人立即履行连带保证责任；

（五）要求保证人赔偿因违约而导致债权人产生的一切损失；

（六）依法撤销保证人损害债权人利益的行为；

（七）直接扣划保证人和保证人配偶开立在债权人处和兴业银行所有分支机构及子公司的任何账户的款项用于偿还被担保债权，保证人和保证人配偶同意债权人有权决定具体扣收顺序。债权人在保证人和保证人配偶账户中扣划款项时，账户中的币种与被担保债权币种不同的，按扣划当天债权人公布的牌价中间价折

算；扣划账户若涉及理财产品或结构性存款等产品，债权人有权代保证人和保证人配偶发起相关产品赎回申请或采取其他必要措施，以确保债权人顺利扣划款项，保证人和保证人配偶应提供一切必要配合；

（八）以其他法律手段追究保证人违约责任。

保证人承诺配合执行债权人的上述措施并放弃一切抗辩理由。

四、如保证人资信及财务状况恶化，或丧失商业信誉、清偿能力（包括或有负债）明显减弱，或因保证人以外的其他因素导致可能丧失保证能力，债权人有权宣布主债务提前到期，要求保证人立即承担连带保证责任。

第十一条　义务的连续性

一、本合同项下保证人的一切义务均具有连续性，对其监护人、继承人、有权人、接管人、受让人及其合并、改组、更改名称等后的主体均具有完全的、同等的约束力。

二、如果基于任何支付、担保或其他处置而解除或清偿全部或部分被担保债权，但该等支付、担保或其他处置却因破产、清算或其他类似程序而被宣布无效或必须偿还，则保证人在本合同项下的责任应继续有效，如同上述解除或清偿未曾发生一样。

第十二条　代位权的安排

保证人在此特别申明，一旦保证人未能承担连带保证责任，或保证人存在本合同约定的可能影响连带保证责任承担以及债权人债权实现的情形，或保证人本身又无足够的财产偿还债务时，对于保证人拥有的任何针对第三方的债权、应收账款以及其他财产权益，债权人均有权行使代位权。保证人将自愿放弃针对债权人的抗辩。

第十三条　抵销的安排

债权人对保证人在本合同项下或者其他交易项下任何权利不受保证人或任何第三人针对债权人任何抵销权的抵销。

第十四条　文件往来、通讯和通知

一、保证人同意并确认下列地址作为本合同项下通知事项以及发生纠纷时相关诉讼（仲裁）、公证等法律文书（包括但不限于签约各方的各类通知、文件；法院或仲裁庭送达的起诉状（或仲裁申请书）及证据、传票、应诉通知书、举证通知书、开庭通知书、支付令、判决书（裁决书）、裁定书、调解书、执行通知书、限期履行通知书等诉讼或仲裁审理、实现担保物权程序以及执行阶段法律文书；公证机构送达的各类通知和法律文书）的有效送达地址，并进一步同意债权人、公证机构、法院等司法机关以及其他通知和法律文书送达人均有权选择纸质或电子方式送达，其中，电子送达方式包括但不限于电子邮箱、中国

10

审判流程信息公开网、全国统一送达平台、地方性或专门性的法院网络服务平台以及送达人的电子网络平台、电子APP等：

（一）保证人为单位：

1. 收件人单位名称：_____/_____；

收件人单位地址：_____/_____；

邮编：_____/_____；    联系电话：_____/_____；

联系人：_____/_____。

2. 指定代收人名称（如有）：_____/_____；

代收人地址：_____/_____；

邮编：_____/_____；    联系电话：_____/_____。

（二）保证人为自然人：

1. 收件人姓名：_____/_____；

收件人地址：_____/_____；

邮编：_____/_____；    联系电话：_____/_____。

2. 指定代收人（如有）：_____翁晓娟_____；

代收人地址：_____深圳市福田区新闻路与景田路交汇处合正名园二期五楼_____；

邮编：_____518000_____；    联系电话：_____15013669755_____。

（三）保证人同意并确认债权人可采用以下任一电子通讯地址送达：

1. 传真接收，号码：_____/_____；

2. 电子邮件，地址：_____/_____；

3. 手机短信，接收号码：_____15013669755_____；

4. 微信，微信号码：_____/_____；

5. QQ接收，号码：_____/_____；

6. 其他电子通讯地址：_____/_____。

（四）保证人配偶：

1. 收件人姓名：_____/_____；

收件人地址：_____/_____；

邮编：_____/_____；    联系电话：_____/_____。

2. 保证人配偶同意并确认以下任一电子通讯地址亦为有效送达地址：

传真接收，号码：_____/_____；

电子邮件，地址：_____/_____；

手机短信，接收号码：_____/_____；

微信，微信号码：_____/_____；

QQ接收，号码：_____/_____；

11

其他电子通讯地址：＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿。

二、本条第一款约定的送达地址适用期间包括非诉阶段和争议进入仲裁、诉讼程序后的一审、二审、再审、执行、实现担保物权程序、督促程序以及强制执行公证等所有阶段。如上述送达地址有变更的，保证人应当提前以书面方式通知债权人（诉讼或仲裁期间还应提前书面通知仲裁庭或法院，已办理强制执行公证的还应书面通知原公证机构）重新确认送达地址并取得回执。如未提前通知的，视为未变更，相应法律后果由保证人自行承担，本条第一款约定的送达地址仍视为有效送达地址。

三、任何文件、通讯、通知及法律文书，只要按照本条第一款约定的任一地址发送，即应视作在下列日期被送达（向指定代收人送达视为向本人送达）：

（一）邮寄（包括特快专递、平信邮寄、挂号邮寄），以邮寄之日后的第五个工作日视为送达日；

（二）传真、电子邮件、手机短信、微信、QQ 或其他电子通讯地址，以发送之日视为送达日；

（三）专人送达，以收件人签收之日视为送达日。收件人拒收的，送达人可采取拍照、录像方式记录送达过程，并将文书留置，亦视为送达。

四、因保证人提供或确认的送达地址不准确、不真实，或送达地址变更后未及时通知对方和仲裁机构、人民法院、公证机构导致无法实际送达的，保证人应自行承担相应法律后果，并视为已有效送达：

（一）邮寄送达的，以文书退回之日视为送达日；

（二）专人送达的，送达人当场在送达回证上记明情况之日为送达日；

（三）电子方式送达的，以发送之日为送达日。

五、债权人以合同载明的住所地为送达地址。债权人在其网站、网上银行、电话银行或营业网点发布公告的方式发送通知的，以公告发布之日视为送达日。债权人在任何情况下均无需对邮递、传真、电话或任何其他通讯系统所出现的任何传送失误、缺漏或延迟承担任何责任。

六、各方约定，各方的单位公章、办公室印章、财务专用章、合同专用章、收发章及债权人的信贷业务专用章等均是各方通知或联系、法律文书送达、信函往来的有效印章。保证人单位所有工作人员是文件往来、通讯和通知的有权签收人。

七、本条约定为合同中独立存在的条款，不受本合同及合同其他条款效力的影响。

第十五条　法律适用、管辖及争议解决

一、本合同的订立、生效、履行、解除、解释及争议的解决等均适用中华人

民共和国法律（为本合同之目的，不包括香港特别行政区、澳门特别行政区和台湾地区的法律）。

二、凡因本合同发生的任何争议，保证人和债权人各方应通过友好协商解决；友好协商不成的，各方均同意以如下第____贰____种方式解决：

（壹）向债权人住所地之人民法院提起诉讼。

（贰）向深圳国际仲裁院申请仲裁，并适用其在仲裁时有效的仲裁规则解决纠纷。该仲裁裁决是终局的，对各方均有约束力。仲裁庭的开庭地点选择在深圳市开庭。

（叁）其他方式：_____/_____
_____。

三、在争议期间，本合同不涉及争议部分的条款仍须继续履行。保证人不得以解决争议为由拒不履行其在本合同项下的任何义务。

第十六条  合同生效以及其他事项

一、本合同自立约各方签名或盖章或按指印之日起生效，有效期至全部被担保债权清偿完毕为止。

二、对本合同的任何修改和补充，经保证人和债权人各方协商同意并采用书面形式，经各方法定代表人/负责人或其授权代表签名或盖章或按指印后生效。

三、债权人已提请保证人特别注意了合同"签约重要提示"内容，保证人已充分阅读本合同的所有条款，并特别注意了本合同字体加黑的条款以及有关责任承担、免除或减轻债权人责任等与保证人有重大利害关系的内容，应保证人要求，债权人已经就本合同相应条款及个人信息处理规则做了充分的说明和解释，保证人对本合同条款的含义及相应的法律后果已全部通晓并充分理解。双方对本合同各条款的理解完全一致，对合同内容无异议。保证人自愿为主合同债务人提供连带责任保证，并按本合同约定履行连带保证责任。

四、在本合同有效期内，债权人给予债务人、保证人的任何宽容、宽限、优惠或延缓行使本合同中享有的权益或权利，均不损害、影响或限制债权人依有关法律、行政法规规定和本合同约定应享有的一切权益和权利，不应视为债权人对本合同项下权利、权益的放弃，也不影响保证人在本合同项下的任何义务。

五、债权人有权根据经营管理需要授权或委托兴业银行其他分支机构履行主合同及本合同项下权利和义务（包括但不限于委托兴业银行其他分支机构签订相关合同等），或将主合同及本合同项下权利和义务划归兴业银行其他分支机构承接管理，债权人的上述行为无需另行征得保证人同意，保证人仍按本合同约定承担连带保证责任。债权人授权或承接管理的兴业银行其他分支机构有权就主合同及本合同项下纠纷向法院提供诉讼或提交仲裁机构裁决。

13

六、主合同为债权人向债务人开立信用证、保函或备用信用证业务的，债权人与债务人对主合同项下信用证、保函或备用信用证的任何修改、补充、延期或进行信用证项下融资等，该等修改或融资视为已征得保证人的事先同意，保证人仍应当按本合同承担连带保证责任。

七、本合同附件（如有）是本合同不可分割的组成部分，与本合同正文具有同等法律效力。

八、本合同正本壹式＿＿肆＿＿份，债权人执＿叁＿份，保证人执＿壹＿份，＿＿＿＿＿＿＿＿＿＿＿＿/＿＿＿＿＿＿＿＿＿＿＿＿执＿/＿份，债务人持副本壹份，副本根据需要增订，各方应妥善保管所持合同文本。如办理了合同公证的，公证机构留存一份。

第十七条 公证与自愿接受强制执行

一、如本合同任何一方提出公证要求，另一方同意按对方要求在国家规定的公证机构进行公证。

二、办理了强制执行公证的合同具有强制执行效力。保证人不履行或不适当履行债务，或出现法律法规规定、本合同约定的债权人实现债权的情形时，保证人同意债权人向公证机构申请出具具有强制执行效力的执行证书，保证人自愿接受债权人持该执行证书向有管辖权的人民法院直接申请的强制执行措施，知悉相应法律后果，保证人承诺不提出任何异议或抗辩。

三、各方同意：公证机构出具执行证书前，有权按本合同约定的"文件往来、通讯和通知"条款，采取邮寄、电话、传真、电子邮件、手机短信、微信、QQ、专人送达及面谈等任何一种或多种方式对保证人不履行或者不适当履行债务等相关违约事实进行核实。采用电话或面谈方式核实的，面谈或通话结束即视为送达；采用邮寄、传真、电子邮件、手机短信、微信、QQ、专人送达等方式核实的，送达日执行本合同"文件往来、通讯和通知"条款约定。

四、保证人如对上款核实的违约事实有异议，应自送达之日起五个工作日内，向公证机构书面举证并提出充足证据。如未按期举证或公证机构认为证据不足以支持其主张，则视为保证人确认不履行或不适当履行债务等相关违约事实，同意公证机构依据债权人申请出具执行证书。公证机构对核实方式及举证期间另有规定的，按公证机构的规定执行。

第十八条 补充条款

14

债权人（单位印章）：          负责人或有权签字人（签章）：

2022 年 03 月 28 日

保证人为单位：

保证人（公章）：          法定代表人或有权签字人（签章/指印）：

年 月 日

保证人为自然人：

保证人（签名/指印）：

证件类型及证件号码：身份证：362201196303230814

2022年 02月 23 日

15

Guarantee Contract

No.: Xing Yin Shen Hua Fu Bao Zheng Zi (2022) No. <u>034-2</u>

Creditor: Industrial Bank Co., Ltd. <u>Shenzhen Branch</u>
Domicile: <u>Industrial Bank Building, No. 4013 Shennan Avenue, Futian District, Shenzhen</u>
Legal Representative/Responsible Person: <u>Guo Qiujun</u>

Guarantor (Entity): <u>___/___</u>
Domicile: <u>/___</u>
Legal Representative/Responsible Person: <u>___/___</u>

Guarantor (Natural Person): <u>Yuan Fu'er</u>
Domicile: <u>5th Floor, Building C, Hazens Mingyuan, No. 16 Xinwen Road, Futian District,</u>
<u>Shenzhen</u>
ID Type: <u>ID Card</u>
ID Number: <u>362201196303230814</u>

Place of Signing: <u>Industrial Bank Co., Ltd. Shenzhen Branch, Industrial Bank Building,</u>
<u>Futian District, Shenzhen</u>



1

Important Notice Before Signing

To protect your rights and interests, please carefully read, check, and confirm the following matters before signing this Contract:

1.  You and your company have the authority to sign this Contract. If authorization from others is required by law, you and your company have obtained sufficient authorization; if it involves processing personal information of others, you and your company have obtained written documents consenting to Industrial Bank's processing of their personal information.

2.  You and your company have carefully read and fully understood the contract terms, paying particular attention to the content concerning liability assumption, exemption or limitation of Industrial Bank's liability, personal information processing, and other matters of significant interest to you and your company, as well as the content in bold font.

3.  You and your company have fully understood the meaning of the contract terms and the corresponding legal consequences, and are willing to accept these terms.

4.  By signing this Contract, you and the relevant individuals agree to and authorize Industrial Bank to process your and the relevant individuals' personal information and retain it for the period specified by Industrial Bank; you and the relevant individuals are aware that you have the right to be informed, the right to decide, the right to withdraw consent, the right to restrict or refuse processing by third parties, etc., regarding the processing of personal information. Industrial Bank has provided services such as informing and decision-making for personal information processing through diversified methods (including but not limited to on-site notification); if you and the relevant individuals intend to withdraw, restrict, or refuse the authorization for Industrial Bank to process personal information, you may do so according to the provisions of this Contract or Industrial Bank's management procedures.

5.  If you and your company have any questions regarding this Contract, or if you and your company discover any illegal or non-compliant situations concerning the contract or the business fees under the contract, please promptly call Industrial Bank's telephone number or complain or consult directly at an Industrial Bank business outlet. Contact number: 95561.



2

The Guarantor provides a guarantee to the Creditor for the financial services provided to <u>Shenzhen Hazens Xinnan Investment Co., Ltd.</u> (hereinafter referred to as the "Debtor"). To define responsibilities and uphold credit, the parties have negotiated and entered into this Contract for mutual compliance.

Article 1 Definitions and Interpretation

Unless otherwise agreed in this Contract:

1. The definitions and interpretations in the Principal Contract shall apply to this Contract.

2. "Claim": or Principal Claim, refers to all types of domestic and foreign currency loans, trade financing (including but not limited to the issuance of international and domestic letters of credit, trust receipts, packing loans, import/export bill advances, overdrafts, factoring, buyer's credit, order financing, forfaiting, agency payments, and other international and domestic trade financing businesses), bill business (including but not limited to bill acceptance, bill discounting, bill repurchase, commercial bill discounting guarantee, commercial bill guarantee, bill payment guarantee, and other bill businesses), guarantee business (including but not limited to international and domestic guarantees, standby letters of credit, and other guarantee businesses), precious metals transactions (including but not limited to gold lending, agency precious metals trading, precious metals pledge financing, and other precious metals businesses), interbank lending, derivative transactions, and other on-balance-sheet and off-balance-sheet financial services formed by the Creditor for the Debtor according to the Principal Contract (including the principal, interest, penalty interest, compound interest, default penalties, compensation for damages, and the Creditor's expenses for realizing the claim, etc.). During the performance of the Principal Contract, specific business types may be adjusted, modified, or supplemented through negotiation between the Creditor and the Debtor, based on the specific business contracts signed between the Creditor and the Debtor under the Principal Contract, and are not limited to the business types explicitly listed above.

   The "Claim" of the Creditor and the "Debt" of the Debtor mentioned under this Contract correspond consistently. The Claim held by the Creditor against the Debtor under the Principal Contract corresponds to the Debt of the Debtor to the Creditor under the Principal Contract.

3. "Working Day" in this Contract refers to a working day excluding statutory holidays and weekends in China (excluding Hong Kong, Macau, and Taiwan). "Business Day" in this Contract refers to a business day of the Creditor's bank. During the performance of the Contract, if any drawdown or repayment date falls on a non-business day, it shall be postponed to the next business day.

Article 2 Basic Content of the Principal Contract

3

1. The basic content of the Principal Contract guaranteed under this Contract is as follows:

    (1) Contract Name: "Project Financing Loan Contract"

    (2) Contract No.: Xing Yin Shen Hua Fu Xiang Jie Zi (2022) No. 034

    (3) Type of Principal Claim: Project Financing; Currency: Renminbi (RMB)

    (4) Principal Amount of the Claim: RMB 1,000,000,000.00; Interest Rate: Floating Rate, as detailed in the Loan Contract

    (5) Term of the Principal Claim: April 6, 2022, to April 6, 2025

2. If the actual content of the Principal Contract differs from the above stipulations, the content recorded in the debt instruments such as the loan certificate shall prevail.

Article 3 Scope of Guarantee

1. The scope of guarantee under this Contract covers the principal amount of the claim, interest (including penalty interest and compound interest), default penalties, compensation for damages, and the Creditor's expenses for realizing the claim (collectively referred to as the "Guaranteed Claim") under the Principal Contract. The Creditor's expenses for realizing the claim refer to the litigation (arbitration) fees, attorney fees, travel expenses, execution fees, preservation fees, and other expenses incurred by the Creditor when realizing the claim through litigation, arbitration, application to a notary public for an execution certificate, etc.

2. To avoid ambiguity, all costs and expenses incurred by the Creditor in preparing, perfecting, performing, or enforcing this Contract, or exercising rights under this Contract or related thereto (including but not limited to attorney fees, litigation (arbitration) fees, and fees for applying for an execution certificate, etc.) shall constitute part of the Guaranteed Claim.

Article 4 Method of Guarantee

1. The Guarantor assumes joint and several liability under this Contract. If the Debtor fails to perform any debt due under the Principal Contract for any reason (including but not limited to debts that the Creditor demands early repayment of due to breach by the Debtor or guarantor), or if any circumstance stipulated in this Contract occurs, the Guarantor shall perform the repayment obligation on behalf of the Debtor in accordance with this Contract.

2. Upon the expiry of the term for the performance of the principal debt, if the Debtor fails to repay the principal and pay interest on time as agreed in the Principal Contract, the Guarantor shall assume joint and several repayment liability as agreed.

3. During the term of the principal debt, if the Creditor declares the term for the performance of the principal debt expired in advance according to the Principal

4

Contract, the Guarantor shall assume joint and several repayment liability for the principal debt due in advance and other debts within the guarantee scope.

Article 5 Guarantee Period

1.  The guarantee period is three years, commencing from the date of expiry of the term for the performance of the principal debt.

2.  For guarantees under bank acceptance drafts, letters of credit, and guarantees, the guarantee period is three years from the date the Creditor makes an advance payment. If advances are made in installments, the guarantee period shall be calculated separately from the date of each advance payment.

3.  For the discounting of commercial drafts, the guarantee period is three years from the maturity date of the discounted instrument.

4.  If the Creditor demands early repayment of the loan according to the Principal Contract or this Contract, or if the term for the performance of the principal debt expires early due to circumstances stipulated by laws and administrative regulations, the guarantee period shall be three years from the date the Creditor determines the Principal Contract debt is due early.

5.  If the principal claim is repaid in installments, the guarantee period for each installment shall be calculated separately, being three years from the due date of each installment.

6.  If the Creditor and the Debtor agree on an extension of the term for the performance of the Principal Contract debt, the Guarantor shall continue to bear the guarantee liability, and the guarantee period shall be three years from the expiry date of the extended performance term as agreed in the extension agreement.

7.  For other financial services, on or off-balance-sheet, provided by the Creditor to the Debtor, the guarantee period shall be three years from the date of expiry of the debt performance term under such financial service.

Article 6 Payable on Demand

1.  The Guarantor's liability under this Guarantee Contract is joint and several. Provided that the Creditor submits a debt collection notice to the Guarantor stating the Guarantee Contract number and the principal claim amount, the Guarantor shall immediately fulfill the repayment liability upon receipt and waive all defenses.

2.  Unless otherwise agreed in the Contract, the Guarantor hereby irrevocably agrees that the Creditor has the right to allow the Debtor to transfer all or part of the debt, and the Guarantor shall assume joint and several guarantee liability for the debt transferred by the Debtor in accordance with this Contract.

5

3. The Guarantor hereby specially declares that the Guarantor is aware that the purpose of the debt guaranteed under this Contract may include repaying old loans with new borrowings, and the Guarantor agrees to assume joint and several guarantee liability for debt used to repay old loans with new borrowings in accordance with this Contract.

4. If the Debtor violates the provisions of the Principal Contract (including but not limited to the Debtor's failure to use the loan for the purpose agreed in the Principal Contract), it shall not affect the Guarantor's joint and several guarantee liability, and the Guarantor shall not request a reduction or exemption of the joint and several guarantee liability on this basis.

Article 7 Guarantor's Declarations and Undertakings

The Guarantor voluntarily makes the following declarations and undertakings and assumes legal responsibility for their authenticity:

1. The Guarantor is an independent legal entity, possesses all necessary civil capacity for rights and civil capacity for conduct, has the legal qualifications and solvency to act as a guarantor, and voluntarily assumes and fulfills the joint and several guarantee obligation. If it involves the processing of personal information of natural persons related to the Guarantor or natural person guarantors and their spouses, etc., written documents consenting to the Creditor's processing of their personal information shall be issued.

2. If the Guarantor is an entity, the execution of this Contract by the Guarantor fully complies with the Guarantor's relevant articles of association, internal decisions, and resolutions of the shareholders' meeting and board of directors. The execution of this Contract does not conflict with or violate any of the Guarantor's articles of association, contracts, resolutions of the shareholders' meeting or board of directors, or the company's policies.

3. The execution and performance of this Contract by the Guarantor do not violate any provisions or agreements binding on its assets, nor do they violate any guarantee agreements, other agreements, or any other documents, agreements, or commitments binding on the Guarantor that the Guarantor entered into with others.

4. All documents, materials, statements, and certificates provided by the Guarantor to the Creditor are accurate, true, complete, and valid, and the Guarantor accepts the Creditor's inspection and supervision of its production, operation activities, and financial status.

5. The Guarantor is aware of and agrees to all terms of the Principal Contract, voluntarily provides a guarantee for the Debtor of the Principal Contract, and agrees to perform the joint and several repayment obligation according to this Contract. If the Guarantor is a natural person, the Guarantor further undertakes that if the Guarantor disappears or is declared missing, cannot be contacted normally, whereabouts are unknown, loses necessary civil capacity, etc., the guardian or property administrator shall bear the

6

guarantee obligation under this Contract to the Creditor using the Guarantor's property as the limit; if the Guarantor dies or is declared dead, the estate shall bear the guarantee obligation under this Contract to the Creditor.

6. The Guarantor has not concealed any occurred or impending event that might cause the Creditor to reject the Guarantor, including:

   (1) Major disciplinary violations, illegal activities, or claim events involving the Guarantor or its key management personnel;

   (2) Pending litigation or arbitration events;

   (3) Various debts, contingent liabilities undertaken by the Guarantor, or guarantees, mortgages/pledges provided to third parties;

   (4) Default events occurring under contracts between the Guarantor and the Creditor or any other creditors;

   (5) Other circumstances affecting the Guarantor's financial condition or guarantee capacity.

7. After fulfilling the guarantee obligation, the Guarantor has the right to seek recovery from the Debtor, provided it does not affect the Debtor's future debt repayment. However, if the Debtor faces both the Guarantor's recovery claim and any payment demand from the Creditor under the Principal Contract, the Guarantor agrees that the Debtor shall prioritize repaying its debt to the Creditor.

8. If the Debtor and the Guarantor have entered or will enter into a counter-guarantee contract for the guarantee obligation under this Contract, such counter-guarantee contract shall not legally or factually impair any rights enjoyed by the Creditor under this Guarantee Contract.

9. Before the guaranteed debt is fully repaid, if the Guarantor's guarantee capacity is reduced to a level insufficient to guarantee the entire debt for any reason, the Creditor has the right to require the Guarantor to provide new sufficient and effective guarantees.

10. If other guarantees exist for the Principal Contract, the Guarantor's joint and several guarantee liability to the Creditor shall not be affected by any guarantees provided by other guarantors, nor shall it be exempted or reduced thereby. The assumption of the joint and several guarantee liability shall not be conditional upon the Creditor asserting rights against or initiating litigation/arbitration/enforcement against any other guarantor.

11. If other guarantees exist for the Principal Contract (including but not limited to suretyship, mortgage, pledge, standby letters of credit, and any other forms of guarantee), the Guarantor agrees that the Creditor may waive part of the guarantee interests or the priority of guarantee interests (including situations where the collateral is provided by the Debtor itself), may waive/reduce the guarantee liability of part of the guarantors. The Creditor and any guarantor (including situations where the

7

mortgagor/pledgor is the Debtor itself) may agree to change the priority of guarantee interests and the amount of the claim secured, etc. Even if the Creditor takes the above actions, the Guarantor shall still assume full joint and several guarantee liability according to this Contract.

12. Before all obligations under this Contract are fully performed, if the Guarantor undergoes any property right changes or operational method adjustments (including but not limited to entering into joint venture or cooperation contracts with foreign, Hong Kong, Macao, or Taiwanese partners; revocation, closure, cessation of production, change of production, change; division, merger, acquisition, being acquired; reorganization, establishment, or restructuring into a joint-stock company, investment company; contributing fixed assets such as houses, machinery, equipment, or intangible assets such as trademarks, patents, proprietary technology, land use rights as capital or investment in a joint-stock company; trading property rights or operational rights through leasing, contracting, joint operation, trusteeship, etc.; any other organizational changes or changes in business nature), the Guarantor shall provide written notice to the Creditor one month in advance. If the Creditor requires additional or replacement guarantee methods or entities, the Guarantor shall ensure the implementation of new guarantee methods or entities acceptable to the Creditor.

13. The Guarantor undertakes to immediately notify the Creditor in writing of any default events occurring under this Contract or under any contracts, guarantee contracts, or other agreements signed between the Guarantor and any department or institution of the Creditor (including subsidiaries of Industrial Bank), other banks, non-bank financial institutions, or entities.

14. If the Guarantor undergoes any establishment, change, or cancellation registration with the State Administration for Market Regulation or other relevant state departments, it shall notify the Creditor before applying for registration and deliver a copy of the registration documents to the Creditor immediately after registration is completed.

15. During the guarantee period, the Guarantor undertakes not to transfer, conceal property, or abandon or passively exercise claims in any manner.

16. During the guarantee period, if the Guarantor undergoes equity changes (including but not limited to equity transfer, trusteeship, custodianship, pledge, etc.), it shall immediately notify the Creditor in writing on the date the event occurs; when the changed equity reaches ____/____ percent, prior written consent from the Creditor must be obtained.

17. If the Guarantor is an entity, it guarantees that the information publicized in the National Enterprise Credit Information Publicity System is true, complete, legal, and valid. The Guarantor guarantees to continuously agree to the Creditor querying both the publicized and non-publicized information of the enterprise in this system. If the Creditor requires capital verification, the Guarantor agrees to conduct capital

8

verification as required by the Creditor and provide a capital verification report issued by a professional institution.

18. If the Guarantor ceases business, suspends operations, is declared bankrupt, dissolved, has its business license revoked, is canceled, its financial condition deteriorates, or any other major event occurs that may affect or significantly affect its ability to assume liability, it shall immediately notify the Creditor in writing on the date the event occurs.

19. Currently, there are no occurring, pending, or, to the Guarantor's knowledge, potentially occurring litigations, arbitrations, or administrative penalties against the Guarantor or its property, and no liquidation, cessation of business, or similar procedures have been initiated against the Guarantor, whether voluntarily or by a third party. When the Guarantor is involved in major litigation, arbitration cases, or other major disputes with any third party, or if the Guarantor's major assets are seized, attached, frozen, subject to enforcement, or other measures with equivalent effect are taken, which may affect or significantly affect its ability to assume liability, the Guarantor shall immediately notify the Creditor in writing on the date the event occurs.

20. If the Creditor becomes involved in litigation, arbitration, or other disputes with the Guarantor or any third party related to the Guarantor due to the Creditor's performance of its obligations under this Contract, resulting in the Creditor being forced into disputes between the Guarantor and any third party, all litigation or arbitration costs, attorney fees, and other expenses paid by the Creditor shall be borne by the Guarantor.

21. If the Debtor's payment to the Creditor for the debt under the Principal Contract is insufficient or potentially insufficient to repay the entire debt, or if the Guarantor's payment under this Contract is insufficient or potentially insufficient to repay the entire guaranteed debt, the Creditor shall decide the specific order of repayment or deduction.

22. The Guarantor hereby declares and authorizes: The Creditor has the right to conduct necessary investigations into the Guarantor's credit status according to national laws, regulations, and related policies, including inquiring about the Guarantor's credit information from the National Financial Credit Information Basic Database, and may, according to the needs of the People's Bank of China for the construction of enterprise and personal credit systems, report relevant credit information to the National Financial Credit Information Basic Database, and hereby allows such information to be legally queried within the authorized scope.

23. The Guarantor hereby declares and authorizes: The Creditor has the right, according to the needs of administrative/judicial/supervisory departments, banking regulatory agencies, banking associations, etc., regarding information management work, to report information related to this Contract and other relevant information to the above.

9

departments, institutions, and the information management systems they establish or recognize, and hereby allows such information to be legally queried.

24. The Guarantor has fully understood the exchange rate risk under the Principal Contract and voluntarily assumes the increased guarantee liability due to exchange rate fluctuations.

Article 8 Creditor's Rights

1. When the Debtor fails to perform its obligations under the Principal Contract or the Guarantor fails to perform its obligations under this Contract, the Guarantor and the Guarantor's spouse hereby irrevocably authorize the Creditor, without going through legal procedures such as litigation or arbitration, to directly deduct funds from any accounts held by the Guarantor and the Guarantor's spouse with the Creditor, all branches, and subsidiaries of Industrial Bank to repay the Guaranteed Claim. The Guarantor and the Guarantor's spouse agree that the Creditor has the right to determine the specific order of deduction. When the Creditor deducts funds from the accounts of the Guarantor and the Guarantor's spouse, if the currency in the account is different from the currency of the Guaranteed Claim, the conversion shall be based on the middle exchange rate published by the Creditor on the day of deduction. If the accounts mentioned in this clause involve wealth management products or structured deposits, etc., the Guarantor and the Guarantor's spouse hereby also irrevocably authorize the Creditor to directly initiate redemption applications for the relevant products or take other necessary measures to ensure the Creditor's smooth deduction of the aforementioned funds, and the Guarantor and the Guarantor's spouse shall provide all necessary cooperation.

2. The Creditor has the right to require the Guarantor to provide financial reports, statements, and other materials reflecting its operating and credit status at any time.

3. When the principal Debtor fails to perform its obligations as agreed, regardless of whether the Creditor holds other guarantee rights over the claim under the Principal Contract (including but not limited to suretyship, mortgage, pledge, guarantee, standby letters of credit, and any other forms of guarantee), the Creditor has the right to first demand the Guarantor to assume the full guarantee liability under this Contract, without first exercising other security rights. The Guarantor voluntarily waives the defense requiring the Creditor to first enforce the guarantee provided by the Debtor, as well as all other defenses against the Creditor under guarantee law and property law.

4. The Creditor has the right to transfer part or all of the claim under the Principal Contract and its corresponding guarantee interests to a third party (or establish a special purpose vehicle such as a trust or asset management plan) without the Guarantor's consent. The Guarantor agrees to continue providing the guarantee according to this Contract for both the transferred (or used to establish a special purpose vehicle such as a trust or asset management plan) and non-transferred (if any)

10

claims to the claim transferee (or establish a special purpose vehicle such as a trust or asset management plan) and the original Creditor (if any).

5.  If the Guarantor is an entity and defaults under this Contract, or if circumstances occur that may harm the Creditor's realization of the claim, the Creditor has the right to require the Guarantor and its shareholders to accelerate the payment of capital contributions. The Guarantor shall pay up the capital promptly as required by the Creditor. The Creditor has the right to require the Guarantor and its shareholders not to distribute dividends.

## Article 9 Amendment of the Principal Contract

The Guarantor agrees and confirms: any modification or amendment of the Principal Contract negotiated between the Creditor and the Debtor, or the extension of financing, guarantees, or other on/off-balance-sheet financial services under the Principal Contract, shall be deemed to have obtained the prior consent of the Guarantor. No notice to the Guarantor is required, and the Guarantor's joint and several guarantee liability shall not be reduced or exempted thereby.

## Article 10 Default Events and Liability for Breach

1.  After this Contract takes effect, both the Creditor and the Guarantor shall perform their obligations under this Contract. Any party failing to perform or fully perform its obligations shall bear corresponding liability for breach.

2.  The occurrence of any of the following circumstances with respect to the Guarantor shall constitute a default:

    (1) Any certificate or document submitted by the Guarantor to the Creditor, or any declaration or undertaking in Article 7 of this Contract, is proven to be untrue, inaccurate, incomplete, deliberately misleading, or not fulfilled;

    (2) The Guarantor ceases business, suspends operations, is declared bankrupt, dissolved, has its business license revoked, or is canceled, etc.;

    (3) The Guarantor, its controlling shareholder, actual controller, or their affiliates are involved in major litigation, arbitration, or other disputes, or their major assets are seized, attached, frozen, subject to enforcement, or other measures with equivalent effect are taken;

    (4) The Guarantor or its legal representative, actual controller, director, supervisor, or senior management personnel is subject to criminal detention or other compulsory measures, disappears or is declared missing, loses necessary civil capacity, cannot be contacted normally, dies or is declared dead, has no heir, legatee, or property administrator after death or declaration of death, or the heir or legatee refuses to accept the inheritance or legacy, or the guardian, heir, legatee, or property administrator refuses to continue performing this Contract, or transfers or attempts

11

to transfer assets under the guise of marital relationship changes, etc., adversely affecting the Guarantor's debt repayment ability;

(5) Any default event occurs under this Contract or under any financing contracts, guarantee contracts, or other contracts signed by the Guarantor with any department or institution of Industrial Bank (including subsidiaries), other banks, non-bank financial institutions, or entities;

(6) The Guarantor engages in any other event that endangers, damages, or may endanger or damage the Creditor's rights and interests, or violates other terms of this Contract.

3. If the Guarantor defaults, the Creditor has the right to take one or more of the following measures:

(1) Demand the Guarantor to rectify the breach within a specified time limit;

(2) Declare the term for the performance of the principal debt expired in advance;

(3) Demand the Guarantor to provide new sufficient and valid guarantees;

(4) Demand the Guarantor to immediately perform the joint and several guarantee obligation;

(5) Demand the Guarantor to compensate for all losses incurred by the Creditor due to the default;

(6) Rescind in accordance with law acts by the Guarantor that harm the Creditor's interests;

(7) Directly deduct funds from any accounts held by the Guarantor and the Guarantor's spouse with the Creditor, all branches, and subsidiaries of Industrial Bank to repay the Guaranteed Claim. The Guarantor and the Guarantor's spouse agree that the Creditor has the right to determine the specific order of deduction. When the Creditor deducts funds from the accounts of the Guarantor and the Guarantor's spouse, if the currency in the account is different from the currency of the Guaranteed Claim, the conversion shall be based on the middle exchange rate published by the Creditor on the day of deduction. If the deducted accounts involve wealth management products or structured deposits, etc., the Creditor has the right to initiate redemption applications for the relevant products on behalf of the Guarantor and the Guarantor's spouse or take other necessary measures to ensure the Creditor's smooth deduction of funds. The Guarantor and the Guarantor's spouse shall provide all necessary cooperation;

(8) Pursue the Guarantor's liability for breach by other legal means.

The Guarantor guarantees to cooperate with the execution of the Creditor's above measures and waives all defenses.

4. If the Guarantor's creditworthiness and financial condition deteriorate, or its commercial reputation or solvency (including contingent liabilities) significantly

12

weakens, or if other factors beyond the Guarantor's control lead to a potential loss of guarantee capacity, the Creditor has the right to declare the principal debt due in advance and demand the Guarantor to immediately assume joint and several guarantee liability.

## Article 11 Continuity of Obligations

1. All obligations of the Guarantor under this Contract are continuous and shall be fully and equally binding upon its guardians, heirs, authorized persons, administrators, assignees, and any successors resulting from merger, reorganization, name change, etc.

2. If the discharge or repayment of all or part of the Guaranteed Claim based on any payment, guarantee, or other disposition is declared void or must be repaid due to bankruptcy, liquidation, or other similar proceedings, the Guarantor's liability under this Contract shall continue as if such discharge or repayment had not occurred.

## Article 12 Arrangement for Priority Subrogation Right

The Guarantor hereby specially declares that once the Guarantor fails to assume the joint and several guarantee liability, or circumstances stipulated in this Contract occur that may affect the assumption of joint and several guarantee liability and the realization of the Creditor's claim, or if the Guarantor itself lacks sufficient assets to repay the debt, the Creditor shall have the right to exercise subrogation regarding any claims, receivables, and other property rights that the Guarantor holds against any third party. The Guarantor voluntarily waives defenses against the Creditor.

## Article 13 Arrangement for Set-off

Any rights of the Creditor against the Guarantor under this Contract or other transactions shall not be subject to set-off by any right of set-off that the Guarantor or any third party may have against the Creditor.

## Article 14 Document Exchange, Communication, and Notices

1. The Guarantor agrees and confirms the following addresses as the effective addresses for service of notices under this Contract and relevant legal documents (including but not limited to various notices and documents from the contracting parties; complaint (or arbitration application), evidence, summons, notice of defense, notice for providing evidence, hearing notice, payment order, judgment (award), ruling, mediation agreement, notice of execution, notice demanding performance within a certain time, and other legal documents in litigation or arbitration proceedings, procedures for realizing guarantee interests, and execution stages; various types of notices or legal documents served by the notary institution) in case of disputes, and further agree that the Creditor, notary institutions, courts and other judicial organs, as

13

well as other notice and legal document service persons, all have the right to choose paper or electronic means for service, wherein the electronic service methods include but are not limited to emails, the China Trial Process Information Disclosure Network, the National Unified Service Platform, local or specialized court network service platforms, as well as the service person's electronic network platforms, electronic apps, etc.:

(1) If the Guarantor is an entity:

    a.  Addressee Entity Name: __/____ ;

       Addressee Entity Address: ____/____ ;

       Postal Code: _/____ ; Contact Phone No.: _/____ ;

       Contact Person: ___/____ .

    b.  Designated Recipient Name (if any): _/____ ;

       Recipient Address: _/____ ;

       Postal Code: _/____ ; Contact Phone No. : _/____ .

(2) If the Guarantor is a natural person:

    a.  Addressee Name: __/____ ;

       Addressee Address: ____/____ ;

       Postal Code: _/____ ; Contact Phone No.: _/____ .

    b.  Designated Recipient (if any): _Weng Xiaojuan_ ;

       Recipient Address: 5th Floor, Phase 2, Hazens Mingyuan, Intersection of Xinwen Road and Jingtian Road, Futian District, Shenzhen ;

       Postal Code: 518000 ; Contact Phone No.: 15013669775 .

(3) The Guarantor agrees and confirms that the Creditor may use any of the following electronic communication addresses for service:

    a.  Fax reception, number: __/____ ;

    b.  Email, address: ___/____ ;

    c.  SMS, receiving number: 15013669775 ;

    d.  WeChat, WeChat ID: ___/____ ;

    e.  QQ reception, number: __/____ .

(4) Guarantor's Spouse:

    a.  Addressee Name: _____/_____ ;

       Addressee Address: ____/__ ;

       Postal Code: _/___ ; Contact Phone No.: __/____ .

14

b. The Guarantor's spouse agrees and confirms that any of the following electronic communication addresses are also effective for service:

Fax reception, number: __/____;

Email, address: ___/____;

SMS, receiving number: _/____;

WeChat, WeChat ID: ___/____;

QQ reception, number: __/____.

2. The service addresses stipulated in Paragraph 1 of this Article apply during both non-litigation stages and all stages after disputes enter arbitration or litigation proceedings, including first instance, second instance, retrial, execution, procedures for realizing guarantee interests, payment order procedures, and enforcement of notarized documents, etc. If the aforementioned service addresses change, the Guarantor shall notify the Creditor in writing in advance (during litigation or arbitration, also notify the arbitral tribunal or court in writing in advance; if enforcement notarization has been conducted, also notify the original notary office in writing) to reconfirm the service address and obtain a receipt. Failure to notify in advance shall be deemed as no change, and the corresponding legal consequences shall be borne by the Guarantor. The service addresses stipulated in Paragraph 1 of this Article shall still be deemed effective service addresses.

3. Any document, communication, notice, or legal document shall be deemed served on the following dates as long as it is sent to any address specified in Paragraph 1 of this Article (service to a designated recipient is deemed service to the principal):

(1) For mail (including express mail, ordinary mail, registered mail), the fifth business day after the mailing date shall be deemed the service date;

(2) For fax, email, SMS, WeChat, QQ, or other electronic communication addresses, the sending date shall be deemed the service date;

(3) For personal delivery, the date of receipt and signature by the addressee shall be deemed the service date. If the addressee refuses to accept, the server may record the service process by taking photos or videos and leaving the document, which shall also be deemed service.

4. If the service address provided or confirmed by the Guarantor is inaccurate or untrue, or if the service address changes and the other party and the arbitral institution, people's court, or notary office are not notified in time, resulting in unsuccessful service, the Guarantor shall bear the corresponding legal consequences, and it shall be deemed effectively served:

(1) For mail service, the date the document is returned shall be deemed the service date;

(2) For personal delivery, the date the server records the situation on the service certificate on the spot shall be the service date;

(3) For electronic service, the sending date shall be the service date.

5. The Creditor's address as stated in the Contract shall be its service address. If the Creditor sends notices by posting announcements on its website, online banking, telephone banking, or business outlets, the announcement release date shall be deemed the service date. The Creditor shall not be liable for any transmission errors, omissions, or delays in postal, fax, telephone, or any other communication system under any circumstances.

6. The parties agree that the official seals, office seals, financial special seals, contract special seals, receipt and dispatch seals of the parties, and the Creditor's credit business special seal, etc., are all valid seals for notices, communications, legal document service, and correspondence. All staff members of the Guarantor entity are authorized recipients for document exchange, communications, and notices.

7. The provisions of this Article are independent clauses within the Contract and shall not be affected by the validity of this Contract or its other clauses.


Article 15 Governing Law, Jurisdiction, and Dispute Resolution

1. The formation, validity, performance, discharge, interpretation, and dispute resolution of this Contract shall be governed by the laws of the People's Republic of China (for the purpose of this Contract, excluding the laws of the Hong Kong Special Administrative Region, the Macao Special Administrative Region, and Taiwan).

2. Any dispute arising from this Contract shall be resolved through friendly negotiation between the Guarantor and the Creditor. If friendly negotiation fails, the parties agree to resolve it by the following method No. ___2___:

(1) File a lawsuit with the people's court in the place where the Creditor is domiciled.

(2) Apply for arbitration with the Shenzhen Court of International Arbitration, and resolve the dispute applying the arbitration rules effective at the time of arbitration of said arbitration commission. The arbitral award is final and binding upon both parties. The hearing location of the arbitral tribunal shall be chosen in Shenzhen.

(3) Other methods:___/___.

3. During the dispute period, the clauses of this Contract not involved in the dispute shall continue to be performed. The Guarantor shall not refuse to perform any of its obligations under this Contract on the grounds of resolving the dispute.


Article 16 Effectiveness of the Contract and Other Matters

1. This Contract shall become effective upon signature or seal or fingerprinting by all contracting parties and remain valid until all Guaranteed Claims are fully repaid.

16

2.  Any amendment or supplement to this Contract shall be agreed upon by the Guarantor and the Creditor in writing and shall become effective upon signature or seal or fingerprinting by the legal representatives/responsible persons or their authorized representatives of all parties.

3.  The Creditor has drawn the Guarantor's particular attention to the content of the "Important Notice Before Signing" in the contract. The Guarantor has fully read all terms of this Contract and has paid particular attention to the terms in bold font in this Contract and the content concerning liability assumption, exemption or limitation of the Creditor's liability, and other matters of significant interest to the Guarantor. At the Guarantor's request, the Creditor has provided sufficient explanations and clarifications of the terms of this Contract and personal information processing rules. The Guarantor fully understands and knows the meaning of the terms of this Contract and the corresponding legal consequences. The parties have a completely consistent understanding of all terms of this Contract and have no objections to the contract content. The Guarantor voluntarily provides a joint and several liability guarantee for the Debtor of the Principal Contract and agrees to perform the joint and several guarantee liability according to this Contract.

4.  During the validity period of this Contract, any tolerance, grace, favor, or delay in exercising rights or interests under this Contract granted by the Creditor to the Debtor or the Guarantor shall not prejudice, affect, or limit any rights and interests enjoyed by the Creditor according to relevant laws, administrative regulations, and the terms of this Contract. It shall not be considered a waiver by the Creditor of its rights and interests under this Contract, nor shall it affect any obligations of the Guarantor under this Contract.

5.  The Creditor has the right, based on operational management needs, to authorize or entrust other branches of Industrial Bank to exercise the rights and perform the obligations under the Principal Contract and this Contract (including but not limited to entrusting other branches of Industrial Bank to sign relevant contracts, etc.), or to assign the rights and obligations under the Principal Contract and this Contract to other branches of Industrial Bank for management. The Creditor's above actions do not require separate consent from the Guarantor, and the Guarantor shall still bear the guarantee liability according to this Contract. The authorized or managing other branches of Industrial Bank have the right to initiate litigation with the court or submit disputes under the Principal Contract and this Contract to an arbitration institution for ruling.

6.  If the Principal Contract involves the Creditor issuing a letter of credit, guarantee, or standby letter of credit for the Debtor, any amendment, supplement, extension, or financing under such letter of credit between the Creditor and the Debtor shall be deemed to have obtained the prior consent of the Guarantor, and the Guarantor shall still bear the joint and several guarantee liability according to this Contract.

17

7. The appendices to this Contract (if any) are an integral part of this Contract and have the same legal effect as the main body of this Contract.

8. This Contract is made in ___4___ originals. The Creditor holds ___3___ copies, the Guarantor holds ___1___ copy, ___/___ holds ___/___ copy/copies, and the Debtor holds 1 duplicate. Duplicates may be added as needed. All parties shall properly keep the contract copies they hold. If the contract is notarized, the notary office shall retain one copy.

Article 17 Notarization and Voluntary Acceptance of Enforcement

1. If any party requests notarization of this Contract, the other party agrees to undergo notarization at a notary office stipulated by the state as requested.

2. A contract that has undergone compulsory enforcement notarization has enforceability. If the Guarantor fails to perform or improperly performs its obligations, or if circumstances specified by laws and regulations or this Contract occur that allow the Creditor to realize the claim, the Guarantor agrees that the Creditor may apply to the notary office for an execution certificate with  compulsory enforceability. The Guarantor voluntarily accepts the enforcement measures directly applied for by the Creditor holding such execution certificate to the competent people's court, is aware of the corresponding legal consequences, and guarantees not to raise any objection or defense.

3. The parties agree: Before issuing the execution certificate, the notary office has the right to verify the relevant default facts such as the Guarantor's failure to perform or improper performance of obligations through any one or more methods stipulated in the "Document Exchange, Communication, and Notices" article of this Contract, such as mail, phone, fax, email, SMS, WeChat, QQ, personal delivery, and face-to-face interviews. For verification by phone or face-to-face interview, the end of the conversation or interview shall be deemed service; for verification by mail, fax, email, SMS, WeChat, QQ, personal delivery, etc., the service date shall follow the stipulations of the "Document Exchange, Communication, and Notices" article of this Contract.

4. If the Guarantor has objections to the default facts verified in the preceding paragraph, it shall provide written evidence and sufficient proof to the notary office within five (5) business days from the date of service. If evidence is not provided on time or the notary office deems the evidence insufficient to support its claim, it shall be deemed that the Guarantor confirms the default facts such as failure to perform or improper performance of obligations and agrees that the notary office issues the execution certificate based on the Creditor's application. If the notary office has other regulations regarding verification methods and the evidence provision period, such regulations shall apply.

18

Article 18 Supplementary Terms

_____/_____



Creditor (Official Seal): [Special Seal for Corporate Business of Industrial Bank Co., Ltd. Shenzhen Branch]

Responsible Person or Person Authorized to Sign (Signature/Seal): [Signature]

March 28, 2022

If the Guarantor is an Entity:

Guarantor (Official Seal):

Legal Representative or Person Authorized to Sign (Signature/Seal):

Year   Month   Day

If the Guarantor is an Individual:

Guarantor (Signature): [Signature: Yuan Fu'er] [Fingerprint]

ID Type and ID No.:

ID Card: 362201196303230814

February 23, 2022





20