Alejandro S. Angulo (State Bar No. 217823)
aangulo@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA  92612
Telephone:  714-641-5100
Facsimile:  714-546-9035

Attorneys for Respondent
FUER YUAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,<br><br>Petitioner,<br><br>vs.<br><br>FUER YUAN,<br><br>Respondent. | Case No. 2:26-cv-01256-ODW-ADS<br><br>Judge: Otis D. Wright II<br><br>**RESPONDENT FUER YUAN'S MOTION TO (A) DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(1)), OR IN THE ALTERNATIVE, (B) QUASH SERVICE OF PROCESS (FRCP 12(b)(5))**<br><br>[Filed concurrently with Declarations of Fuer Yuan and Alejandro S. Angulo in Support Thereof]<br><br>Date:      July 13, 2026<br>Time:     1:30 p.m.<br>Ctrm.:    5D<br><br>Date Action Filed:  February 7, 2026<br>Trial Date:     None Set |

/ / /

/ / /

/ / /

/ / /

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-1-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2026 at 1:30 p.m. or soon thereafter as this matter may be heard by the Honorable Otis D. Wright II, in Courtroom 5D of the above-entitled court, located at 350 W. 1st Street, Los Angeles, California, Respondent Fuer Yuan ("Respondent") will and hereby does move this Court for and order (a) dismissing the action for lack of personal jurisdiction (FRCP 12(b)(2)) or, in the alternative, (b) quashing service of the petition (FRCP 12(b)(2)).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declarations of Fuer Yuan and Alejandro S. Angulo filed concurrently herewith, the Court's file in this matter, and such other oral and documentary evidence as may be presented at the hearing on this Motion.

This Motion is made following the conference of counsel required by Local Rule 7-3, which occurred on April 24, 2026 via a zoom conference between counsel for Mr. Yuan and Petitioner Industrial Bank Co., Ltd., Shenzhen Branch ("Industrial") during which the parties meaningfully discussed this motion. The parties were unable to resolve this motion through the meet and confer process thereby necessitating this motion.

Dated:  May 4, 2026

RUTAN & TUCKER, LLP
ALEJANDRO S. ANGULO

By: _____ */s/ Alejandro S. Angulo*
   Alejandro S. Angulo
   Attorneys for Respondent
   FUER YUAN

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-2-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................8

II.   RELEVANT FACTS .................................................................8

III.  ARGUMENT .............................................................................13

    A.    Petitioner Failed To Properly Serve Respondent.............................13

        1.    The Hague Convention Applies And Petitioner Failed To Effect Service As Required Thereunder .................14

        2.    The Holding in *Voltage* Does Not Apply Here ........................15

        3.    Regardless, Industrial Did Not Comply With Rule 5..............18

    B.    Industrial Cannot Establish That The Court Has Personal Jurisdiction Over Mr. Yuan ......................................................19

        1.    Industrial Cannot Establish Specific Jurisdiction....................20

        2.    Industrial Cannot Establish General Jurisdiction ....................26

IV.   CONCLUSION ........................................................................28

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-3-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) ..................................................................................24, 25

*Asahi Metal Indus., Co. v. Superior Court*,
  480 U.S. 102 (1987) ...................................................................................................24

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ..............................................................................22, 23

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ...................................................................................26

*Benny v. Pipes*,
  799 F.2d 489 (9th Cir. 1986) .....................................................................................13

*Boulger v. Woods*,
  917 F.3d 471 (6th Cir. 2019) .....................................................................................13

*Brockmeyer v. May*,
  383 F.3d 798 (9th Cir. 2004) .....................................................................................13

*CE Distrib., LLC v. New Sensor Corp.*,
  380 F.3d 1107 (9th Cir. 2004) ...................................................................................20

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .....................................................................................20

*CYBERsitter, LLC v. People's Republic of China*,
  805 F. Supp. 2d 958 .....................................................................................................21

*Diamondback DTNM, LLC v. ShiftPixy, Inc.*
  (C.D. Cal.) 2024 WL 5185667 ...................................................................................26

*FDIC v. British-Am. Ins. Co., Ltd.*,
  828 F.2d 1439 (9th Cir. 1987) ...................................................................................24

*Fitbit, Inc. v. Koninklijke Phillips N.V.* (N.D. Cal. 2020)
  2020 WL 13064714 ......................................................................................................26

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-4-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

**Page(s)**

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.* (9th Cir. 2002)
284 F.3d 1114 ...................................................................................23, 26, 27

*Grober v. Mako Products, Inc.* (Fed. Cir. 2012)
686 F.3d 1335 ...........................................................................................28

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
466 U.S. 408 (1984) ...................................................................................21

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
800 F.2d 1474 (9th Cir. 1986) ..............................................................21, 22

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981) ....................................................................24

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...................................................................................20

*Lowenthal v. Quicklegal, Inc.*,
No. 16-cv-3237, 2016 U.S. Dist. LEXIS 133838, 2016 WL 5462499 (N.D. Cal.
Sept. 28, 2016).........................................................................................13

*Mattel, Inc. v. Greiner & Hausser GMbH* (9th Cir. 2003)
354 F.3d 857 .............................................................................................26

*Pac. Atl. Trading Co., Inc. v. M/V Main Exp.*,
758 F.2d 1325 (9th Cir. 1985) ....................................................................24

*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998) ....................................................................20

*ProSource Discounts, Inc. v. Dye*
(C.D. Cal.) 2019 WL 6729702 ....................................................................26

*Rocke v. Canadian Auto. Sports Club*,
660 F.2d 395 (9th Cir. 1981) ......................................................................25

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ......................................................................21

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ......................................................................20

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-5-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

**Page(s)**

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ............................................................................. 13

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................................ 21

*Sinatra v. Nat'l Enquirer*,
    854 F.2d 1191 (9th Cir. 1988) ........................................................................... 25

*Taubler v. Giraud*,
    655 F.2d 991 (9th Cir. 1981) ............................................................................. 20

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................... 26

*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988)
    486 U.S. 694 (1988) ............................................................................................ 14

*Voltage Pictures, LLC v. Gussi, S.A. DE C.V.* (9th Cir. 2024)
    92 F.4th 815 .......................................................................13, 14, 15, 16, 17, 19

*Yao v. Crisnic Fund, S.A.*,
    2011 WL 3818406 (C.D. Cal. 2011) ........................................................... 19, 20

**STATE CASES**

*Inversiones Papaluchi S.A.S. v. Superior Court*,
    20 Cal.App.5th 1055 (Cal. 2018) ...................................................................... 14

*Lebel v. Mai*,
    210 Cal.App.4th 1154 (Cal. 2012) .................................................................... 14

*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020)
    9 Cal.5th 125................................................................................................ 15, 16

**STATE STATUTES**

California Code of Civil Procedure
    section 410.10 ..................................................................................................... 20

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

**Page(s)**

**RULES**

Federal Rules of Civil Procedure
    rule 4 ........................................................................................... 13, 16, 17
    rule 5 ........................................................................................... 13, 17, 18
    rule 5(b)(1) .......................................................................................... 14, 17
    rule 5(b)(2) ................................................................................................ 18
    rule 5(b)(2)(B)(i) ...................................................................................... 19
    rule 5(b)(2)(B)(ii) ..................................................................................... 13
    rule 5(b)(2)(C) ......................................................................................... 19
    rule 12(b)(2) ............................................................................................. 19
    rule 12(b)(5) ............................................................................................. 13

Independent Film & Television Alliance Rules for International Arbitration
    rule 12 ...................................................................................................... 15
    rule 12.5 .............................................................................................. 15, 16
    rule 13 ...................................................................................................... 16
    rule 13.1 ................................................................................................... 16

**CONSTITUTIONAL PROVISIONS**

Due Process Clause of the U.S. Constitution ......................................................... 19

**OTHER AUTHORITIES**

Hague Convention Article 10 ............................................................................... 15

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-7-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Petitioner Industrial Bank Co., Ltd., Shenzhen Branch ("Industrial") seeks to confirm two arbitral awards totaling more than $209 million against Respondent Fuer Yuan ("Mr. Yuan") that were obtained by *default* in arbitration proceedings conducted in Shenzhen, China (the "Awards").  Putting aside the procedural defects of the Awards, which are reserved for a later stage of these proceedings, Industrial did not properly serve Mr. Yuan with its Petition and accompanying papers (the "Petition") initiating this action.  Service was neither attempted nor accomplished pursuant to the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").

Further, Industrial cannot satisfy the personal jurisdiction requirements.  Mr. Yuan's contacts with the forum state do not meet the required threshold to satisfy due process.  The underlying dispute arose in China, pertained to a transaction entered into and performed (and allegedly breached) in China, and was the subject of arbitral proceedings in China.  There are simply no connections to this dispute with California, much less of any alleged contacts that Mr. Yuan has here.  Moreover, the alleged nature and extent of Mr. Yuan's contacts with California do not rise to the level of making Mr. Yuan "at home" in the forum state to justify the exercise of general jurisdiction.

The issues presented for the Court to decide are: (a) whether Mr. Yuan was properly served; and (b) whether personal jurisdiction may be exercised over Mr. Yuan here.  As explained below, Mr. Yuan was not properly served, and personal jurisdiction may not be exercised over him.  Thus, the Court should dismiss the matter, or at a minimum (and in the alternative), quash service of the Petition.

## II.   RELEVANT FACTS

Petitioner Industrial Bank Co., LTD Shenzhen Branch ("Industrial") filed its

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-8-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

petition (the "Petition") on February 7, 2026, seeking to confirm foreign arbitral awards (the "Awards") and related relief thereto.  (Dk. 1 [Petition, ¶ 1 and p. 28, prayer for relief].)  The arbitrations were conducted in China and the transactions at issue therein pertain to loans that respondent Fuer Yuan allegedly guaranteed for certain real estate development projects in China.  (Petition, ¶¶ 1-2 & 12 – 19.)  The loans and guarantees were entered into in China and were to be repaid in China using China's currency.  (Petition, ¶¶ 12 – 19, Exs. D, E, & F.)

Industrial has filed two proofs of service regarding its attempts to serve Mr. Yuan.  (Dk. Nos. 11 & 12.)  First, Industrial purported to serve Mr. Yuan at a business located at 135 E. Live Oak Ave., Arcadia, California ("Live Oak").  (Dk. 11., p. 3.)  Three service attempts were made at this location.  (*Ibid.*)  During the first service attempt, the process server was unable to confirm or deny Mr. Yuan's employment at the Live Oak location.  During the second service attempt, the process server was advised that Mr. Yuan "does not work at this building and is not associated with the location."  (*Ibid.*)  The staff also "indicated that they did not know her [sic]."  (*Ibid.*)  The process server returned the next day (for a third service attempt) and purportedly served the petition and related papers by substituted service by leaving those papers with a "John Doe."  (*Ibid.*)  Second, Industrial purported to serve Mr. Yuan by mail at several locations, including at 980 Winston Ave., San Marino, California (the "San Marino Home"), locations in Hong Kong, and locations in China.  (Dk. 12, p. 2.)

Mr. Yuan has resided in Shenzhen, China since the 1980s. (Fuer Yuan Decl. ["Yuan Decl."], ¶ 2.) In the last couple of years, he has lived most of the time in Hong Kong. (*Ibid.*) Mr. Yuan has never resided in California, including at the San Marino Home. (Yuan Decl., ¶ 3.) In or about 2013, Mr. Yuan did, however, purchase the San Marino Home with his then-wife, Wen Sun, to be the residence for Ms. Sun and their two young children. (*Ibid.*) Ms. Sun and Mr. Yuan were married in China.  (*Ibid.*) A few months after purchasing the San Marino Home in 2013 with

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-9-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

Ms. Sun, Mr. Yuan deeded the home to her as her sole and separate property because it was intended to be the permanent residence for her and their children. (*Ibid.*) Since 2013, from time to time when he visited Ms. Sun and their children, he would stay at the San Marino Home. (*Ibid.*) Mr. Yuan has never used the San Marino Home as his residential address, nor has it ever been his residence. (*Ibid.*)

In 2015, Mr. Yuan abandoned his U.S. permanent residency because he did not intend to live in California or the United States. (*Ibid.*) Mr. Yuan does not own any real property in California. (Yuan Decl., ¶ 4.) Aside from the San Marino Home, he signed a deed sometime in 2013 relinquishing any community property claim to a property in Pasadena, California with the street address on Michigan Blvd. (the "Pasadena Property"). (*Ibid.*) The Pasadena Property had been purchased in 2013 by Ms. Sun with her own funds as an investment. (*Ibid.*) She asked Mr. Sun to sign a deed disclaiming any interest in the property to make clear it was her sole and separate property and Mr. Yuan agreed to do so. (*Ibid.*) Ms. Sun took title to the property in her own name from the sellers, and Mr. Sun was never on title to this property. (*Ibid.*)

Mr. Sun does not have an office or work in California, including at Live Oak location. (Yuan Decl., ¶ 5.) Mr. Yuan has a business office in Shenzhen, China and in Hong Kong. (*Ibid.*) To date, no one from the Central Authority of China has attempted to serve him with any papers relating to this proceeding. (Yuan Decl., ¶ 6.)

In 2013, Shenzhen Jiayuan Group Co., Limited, a Chinese company owned by Mr. Yuan's brother, Anru Yuan, and Zhibing Wang ("Shenzhen Jiayuan"), became interested in investing in real estate in the United States. (Yuan Decl., ¶ 7.) As a result, Shenzhen Jiayuan, along with a related Chinese company also owned by them, called Shenzhen Hezheng Real Estate Group ("Shenzhen Hezheng"), created two British Virgin Island companies, Jia Yuan Holdings Company Limited ("Jia Yuan BVI") and Hezheng Holdings Company Limited ("Hezheng BVI", Jia Yuan

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-10-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

BVI and Hezheng BVI are collectively referred to herein as, the "BVI Companies"). (*Ibid.*) The BVI Companies were formed for the purpose of investing in real estate in the United States. (*Ibid.*)

Mr. Yuan was a director for the BVI Companies and was tasked with exploring potential real estate investment opportunities. (Yuan Decl., ¶ 8.) In furtherance of the BVI Companies' real estate investment ventures, three U.S. companies were then formed, two of which were formed in Delaware, Jia Yuan USA Co., Inc. ("Jia Yuan") and San Yi US Investment Company, Inc. ("San Yi") and one of which was formed in California, Hazens Investment, LLC ("Hazens"). (*Ibid.*)

In 2013, Hazens purchased the Sheraton LAX Hotel in Los Angeles. (Yuan Decl., ¶ 9.) In or about 2014, Jia Yuan purchased the Luxe City Center Hotel, which is now known as the E-Central Downtown Hotel. (*Ibid.*) In or about 2014 or 2015, San Yi purchased vacant land in San Gabriel for the construction of the Sheraton San Gabriel Hotel. (*Ibid.*)

In or about late 2013 or early 2014, managers and employees were hired to operate each of the U.S. companies locally. Greg Sun (no relation to Mr. Yuan) served as the local general manager of Jia Yuan. (Yuan Decl., ¶ 10.) Mr. Yuan's then-wife served as the local general manager of San Yi and Hazens. (*Ibid.*) As a director for the BVI companies, Mr. Yuan oversaw the companies' operations from Shenzhen, China and worked with Mr. Sun and his then wife remotely. (*Ibid.*)

Starting in 2019, Mr. Yuan devoted all of his focus on real estate projects in China. (Yuan Decl., ¶ 11.) After the COVID-19 pandemic struck in late 2019, he was no longer involved in the operations or management of the U.S. companies, with the exception of assisting Jia Yuan resolve a federal investigation as discussed below. (*Ibid.*) Mr. Yuan's then wife and a local team took over all operations and management of the companies when Mr. Yuan stepped away. (*Ibid.*)

In 2019, Jia Yuan was the subject of an investigation by the Department of

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-11-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

Justice relating to activities of a consultant that Jia Yuan had hired to assist in its re-entitlement of the Luxe City Center Hotel. (Yuan Decl., ¶ 12.) The government was investigating a Los Angeles City councilmember, Jose Huizar, for corruption and bribery. (*Ibid.*) Because the Luxe City Center Hotel's re-entitlement process was pending before Mr. Huizar's district, the government was investigating Jia Yuan's dealings with him through one of its consultants. (*Ibid.*) The government eventually resolved its investigation of Jia Yuan through a non-prosecution agreement and payment of a penalty by the company. (*Ibid.*) At that time, Mr. Sun was no longer the general manager of Jia Yuan because he moved back to Canada, and thus, Mr. Yuan helped guide the company through that investigative process and signed a non-prosecutorial agreement in October 2020 on behalf of Jia Yuan to do so. (*Ibid.*)

Even though Mr. Yuan ceased any involvement in the management and operations of Jia Yuan, San Yi, and Hazens in the 2019-2020 timeframe, he recently learned in these proceedings that the companies did not formally remove him from the positions he held with the companies until a few years later (in or about 2023). (Yuan Decl., ¶ 13.)

Following the resolution of the DOJ investigation, and due to the amount of press and media the Huizar investigation received, Mr. Yuan was informed that the local team decided to change Hazens' and Jia Yuan's company names to Metanova, LLC and Metainfinity, LLC, respectively, for public relations purposes. (Yuan Decl., ¶ 14.)

Industrial is actively enforcing the Award they obtained against Mr. Yuan by default in China as well as in Hong Kong.  Mr. Yuan has retained legal counsel in China and Hong Kong to represent him in those proceedings.  Most recently, the Hong Kong court denied Industrial's attempt to obtain a world-wide injunction against him for purposes of enforcing the awards.  (Yuan Decl., ¶ 15.)

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-12-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

## III.    ARGUMENT

### A.    Petitioner Failed To Properly Serve Respondent

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served...." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986); *SEC v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007) (service of process is the means by which court asserts personal jurisdiction); *Boulger v. Woods*, 917 F.3d 471, 476 (6th Cir. 2019) (court may not exercise personal jurisdiction over named defendant absent proper service of process, consent, waiver, or forfeiture).  Neither actual notice nor simply naming the defendant in the complaint will suffice to establish proper service.  *Benny*, *supra*, 799 F.2d at 492 quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

The Federal Rules of Civil Procedure ("Rule") Rule 12(b)(5) allows the defendant to attack the manner in which service was, or was not, attempted and permits a court to dismiss an action for insufficiency of service of process.  Fed. R. Civ. P. 12(b)(5).  When the validity of service is contested, the burden is on the plaintiff to prove that service was valid.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process.  *Lowenthal v. Quicklegal, Inc.*, No. 16-cv-3237, 2016 U.S. Dist. LEXIS 133838, 2016 WL 5462499, at *14 (N.D. Cal. Sept. 28, 2016).

During the meet and confer conference between counsel, Industrial asserted Mr. Yuan was properly served pursuant to Rule 5(b)(2)(B)(ii) and as support, Industrial cited to *Voltage Pictures, LLC v. Gussi, S.A. DE C.V.* (9th Cir. 2024) 92 F.4th 815 ("*Voltage*").  In *Voltage*, the Ninth Circuit held that service of a motion to confirm an arbitration award can be made on the party's attorney under the default rule of Rule 5 because it is more akin to a motion, instead of Rule 4, which governs service of a summons and complaint. *Voltage, supra*, 92 F.4th at 831-832.

The holding in *Voltage*, however, does not control here because its facts are

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-13-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

distinct and inapposite. Unlike here, the respondent in *Voltage* expressly waived the procedures of the Hague Convention for service of process and was served pursuant to Rule 5(b)(1) through respondent's attorneys located in California, who had represented respondent in the underlying arbitration that, also unlike here, was conducted in Los Angeles. Stating the obvious, the service in *Voltage* occurred within California, not abroad, and certainly did not, also unlike here, trigger the required application of the Hague Convention.

### 1. The Hague Convention Applies And Petitioner Failed To Effect Service As Required Thereunder

It is axiomatic that the Hague Convention applies to "*all* cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 699 (1988) (emphasis added). This language "is mandatory." *Id*. 699. The Hague Convention provides a specific and required mechanism for signatory nations to serve process abroad, of which China is a member. It applies when the forum state's internal law requires transmittal of documents abroad as a necessary part of service of process. *Volkswagenwerk, supra,* 486 U.S. at 700. "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Id*.

Compliance with the Hague Convention is required where, like here, the responding party is a resident of another country, or, at a minimum, the plaintiff must show why it does not apply. *Lebel v. Mai*, 210 Cal.App.4th 1154, 1160 (Cal. 2012). Importantly, failure to comply with the Hague Convention's procedures voids the service, *even if the defendant has actual notice of the suit*. *Inversiones Papaluchi S.A.S. v. Superior Court*, 20 Cal.App.5th 1055, 1064 (Cal. 2018) (emphasis added).

Here, there is no dispute that Industrial *did not* effectuate service of process as required under the Hague Convention; indeed, Industrial admits as much. That ends

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-14-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

the inquiry and requires that service be quashed.[1]

## 2. The Holding in *Voltage* Does Not Apply Here

Industrial contends that *Voltage* saves its otherwise improper service. Industrial is wrong.  In *Voltage*, the parties' arbitration provision stated that, "[a]ny dispute arising out of or relating to this Agreement will be resolved by final binding arbitration under the [Independent Film & Television Alliance (IFTA)] Rules [for International Arbitration] ... in effect at the time of the notice of arbitration is filed ...."  *Voltage*, *supra*, 92 F.4th at 820.  The parties' agreement further stated that respondent "consents and submits to the jurisdiction of the state and federal courts located in Los Angeles County, California with respect to any action arising out of or relating to this Agreement or the Picture," and that the parties' agreement "shall be covered by and interpreted in accordance with the laws of the State of California (without regard to the conflict of laws provisions thereof)."  *Id*.  It also provided that "[t]he Parties hereby submit to the jurisdiction of the courts in [Los Angeles County, California] to compel arbitration or to confirm an arbitration award."  *Id*.  The *Voltage* Court found that most significantly, the arbitration provision declared that "[t]he Parties agree to accept service of process in accordance with the IFTA Rules." *Id*.  Of course, these facts in *Voltage* are not remotely similar to the facts here.

The *Voltage* Court then turned its analysis to IFTA Rule 12, which is titled "The Award." *Id*.  It noted that IFTA Rule 12.5 provides, in part, that: "[s]ervice of any petition, summons or other process necessary to obtain confirmation of the Arbitrator's award may be accomplished by any procedure authorized by applicable law, Treaty or Convention, <u>except that the parties waive application of the Hague Convention for Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters with respect to service of process</u>." *Id*. (emphasis added.)

---

[1]  Service by mail is insufficient to satisfy service of an individual in China, like Mr. Yuan.  *See*, *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 136-137 (noting that China objected to Hague Convention Article 10, which permits service by mail, such that service by mail is not permitted).

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-15-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

Immediately below IFTA Rule 12.5 is IFTA Rule 13, titled "Applicable Law." IFTA Rule 13.1 provides, in full, that: "[t]he Arbitrator shall apply the laws of the State of California to all arbitrations conducted under these Rules unless the parties by mutual agreement or by the contract to be enforced provide that the Arbitrator shall apply the law of one other jurisdiction, or the Arbitrator for good cause designates another location to be the situs of the arbitration in which case the Arbitrator shall have the discretion to apply for good cause the law of the situs of the arbitration." *Voltage*, *supra*, 92 F.4th at 820. Again, none of these facts are remotely similar to the facts here.

The *Voltage* Court explained that, when a party files an action in federal district court, federal procedural law generally governs service. *Id*. at 824 (citing *Brockmeyer v. May*, 383 F.3d 798, 799–800 (9th Cir. 2004)) (ruling that Federal Rule of Civil Procedure 4 governs service of a summons and complaint in federal district court), unless the party-to-be-served waived its protections.) "[P]arties to a contract may agree in advance ... to permit notice to be served by the opposing party, or even to waive notice altogether." *Rockefeller Tech. Invs. (Asia) VII v. Changzhou SinoType Tech. Co.*, 9 Cal. 5th 125, 140–41 (Cal. 2020). The Court found that the petitioner and respondent clearly "agree[d] to accept service of process in accordance with the IFTA Rules. Therefore, whether respondent consented to accept service of the motion pursuant to California law (even if the motion is filed in federal court) hinged on [the Court's] interpretation of the IFTA Rules governing service." *Voltage*, *supra*, 92 F.4th at 824.

The Court found that, by incorporating IFTA Rule 12.5 into their agreement, petitioner and respondent both agreed – unlike here – to accept service of a confirmation motion pursuant to any law, treaty, or convention (except for the Hague Convention) that applies to such motions in the prevailing party's chosen confirmation forum. *Id*. at 824-825. Because petitioner filed its confirmation motion in a federal court, the Court analyzed whether service of the motion on

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-16-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

respondent complied with whatever federal law applies to such motions. *Id*. The Court then concluded that service of the petitioner's motion to confirm on respondent's attorney located in California prior to filing the motion with the District Court complied with Rule 5(b)(1), which was the default rule for service of such motions, instead of Rule 4. *Id*. at 832.

The default rule of service through Rule 5 does not apply here. The *Voltage* Court never analyzed the interplay of Rule 5 and the Hague Convention or the circumstance of whether Rule 5 could be used to sidestep the Hague Convention's mandatory requirements as to service abroad, including service in China. Indeed, such an analysis was not necessary given the Court's finding in *Voltage* that – unlike here – the respondent in *Voltage* was properly served through its attorneys located in California *because* – unlike here – the parties expressly waived service through the Hague Convention. *Voltage* does not apply here.

Here, as explained below, Industrial's proofs of service confirm that it served Mr. Yuan at places where he neither lives, nor works. And unlike the respondent in *Voltage*, Mr. Yuan (a) never waived – and does not waive – the due process protections under the Hague Convention, (b) did not agree to be served under California law or any law of the United States, (c) did not agree to submit to jurisdiction of the courts in California, (d) did not agree that California would be the location of any arbitration between him and Industrial, (e) and did not agree to be bound by the IFTA or any other similar rules that would permit Industrial to sidestep the requirements of the Hague Convention.

Moreover, unlike in *Voltage*, Industrial did not commence or conduct the arbitration proceedings against Mr. Yuan in California; Industrial proceeded with arbitration in Shenzhen, China. Even more, Industrial obtained its awards through default (which alone raises additional due process concerns). And finally, Mr. Yuan had no legal counsel in California in conjunction with the underlying arbitration for which service of the Petition could be effectuated. As a result, service of the

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-17-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

Petition and accompanying papers on Mr. Yuan were required to be made abroad in China per the Hague Convention.

### 3. Regardless, Industrial Did Not Comply With Rule 5

Industrial has filed two Proofs of Service indicating that Mr. Yuan was served by: (1) substituted service by leaving a copy at, followed by mailing to, a business at 135 E Live Oak Ave., Arcadia, CA 91006-5281 ("Arcadia Office") (Dkt 11), and (2) mail to numerous addresses (Dkt. 12), all of which are all located abroad in China or Hong Kong, except for 980 Winston Ave., San Marino, CA 91108-1431 ("San Marino Home").  These service attempts do not comply with Rule 5 even if it did apply (which it does not).  Rule 5 (b)(2) provides in part:

> (2)   Service in General. A paper is served under this rule by:
>
> (A)   handing it to the person;
>
> (B)   leaving it:
>
> > (i)   at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
> >
> > (ii)   if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>
> (C)   mailing it to the person's last known address—in which event service is complete upon mailing.

The Arcadia Office is not Mr. Yuan's office, and he does not work there. (Yuan Decl., ¶ 5.) In fact, he does not maintain an office anywhere in California since he does not work in California.  (*Ibid*.)  The process server's diligence declaration admits that he spoke with Carol Liu at the Arcadia Office, who informed him that Mr. Yuan does not work there, and further, that he is not associated with that location.  (Dkt. 11, p. 3.)  But the process server inexplicably returned the

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-18-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

following day and left the papers at the Arcadia Office knowing that Mr. Yuan neither works at, nor is associated with, that location. This does not remotely comply with Rule 5(b)(2)(B)(i).

Industrial's mailing of the papers to the San Marino Home is also defective. (Dkt. 12) Industrial concedes – as it must – that Mr. Yuan is a resident of Shenzhen, China. (Dkt. 1 [Pet., ¶ 7 ("Yuan resides in Shenzhen, China"].) He does not live at the San Marino Home and never has. (Yuan Decl., ¶¶ 2-3.) He does not maintain a home or residence in California. (*Ibid*.) Only Mr. Yuan's ex-wife and children live at the San Marino House. (*Ibid*.) Thus, mailing the documents to a residence where Mr. Yuan has never lived fails to comply with Rule 5(b)(2)(C).

Finally, Industrial's attempt to mail service to Mr. Yuan at the various addresses located in China and Hong Kong clearly fail to comply with the mandates of the Hague Convention. As detailed above, the Hague Convention applies here, the holding in *Voltage* does not apply, and Industrial has no evidence – because there is none – that it made any effort to comply with the Hague Convention. Thus, the Court should dismiss this action due to defective service.

### B. Industrial Cannot Establish That The Court Has Personal Jurisdiction Over Mr. Yuan

The Due Process Clause of the U.S. Constitution "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Yao*, 2011 WL 3818406, at *11 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)). "Lawful exercise of jurisdiction over a nonresident defendant must comport with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Rule 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Although the defendant is the moving party, the plaintiff bears the burden of establishing personal jurisdiction."

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-19-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

*Yao v. Crisnic Fund, S.A.*, 2011 WL 3818406, at \*10 (C.D. Cal. 2011) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).  Due to "important sovereignty concerns," litigation against an alien defendant "creates a higher jurisdictional barrier than litigation against a citizen from a sister state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).  If the defendant produces evidence controverting allegations in the complaint, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Amba Mktg. Sys, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

When, as here, no federal statute specifically confers personal jurisdiction, the district court applies the law of the forum state.  *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004).  California's long-arm statute permits California courts to exercise jurisdiction on any basis consistent with the Constitutions of California and the United States, *i.e.*, to the limits of due process.  Cal. Code Civ. Proc. § 410.10; *see also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n.2 (9th Cir. 1998).  Because the California long-arm statute allows for personal jurisdiction over a defendant to the full extent permitted by due process, the court may directly consider whether personal jurisdiction over a defendant comports with due process.  *Taubler v. Giraud*, 655 F.2d 991, 993 (9th Cir. 1981).  A court may exercise personal jurisdiction over a non-resident defendant consistent with due process only if it has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two forms of personal jurisdiction that a forum state may exercise over a non-resident defendant—general jurisdiction and specific jurisdiction.  Mr. Yuan is subject to neither.

### 1. <u>Industrial Cannot Establish Specific Jurisdiction</u>

A federal court may assert specific jurisdiction over a non-resident defendant

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-20-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

if his activities in the forum give rise to or are related to the litigation. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984). A court's inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Courts within the Ninth Circuit apply the following three-prong test to evaluate whether the nature and quality of those contacts justify the assertion of limited jurisdiction: (1) the non-resident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the protections and benefits of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.*, 802; *see also*, *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986) and *CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 967 (citing *Schwarzenegger*). The burden shifts to defendant as to prong three if, and only if, "plaintiff succeeds in satisfying both of the first two prongs." *Schwarzenegger*, *supra*, at 802.

### a. <u>Mr. Yuan has not availed himself of the privilege of conducting activities in the forum.</u>

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state. The phrase 'purposeful availment' includes both purposeful availment and purposeful direction, which are distinct concepts. While a purposeful availment analysis is used in suits sounding in contract, a purposeful direction analysis is used in suits sounding in tort." *CYBERsitter*, *supra,* at 968. Here, there can be no purposeful availment since the claim at issue neither sounds in contract, nor in tort. Rather, Industrial seeks to confirm a foreign arbitral award. And the

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-21-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

conclusion is the same even if a petition to confirm a foreign arbitral award sounds in contract.

"The due process clause protects a defendant's right to receive fair warning that his actions might subject him to suit in a given jurisdiction. This safeguard allows him to structure his conduct with a degree of assurance as to what will flow from his conduct. Thus, the court's focus in due process analysis 'is on the defendant's relationship to the forum, _and_ the litigation… 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State....' Therefore, the purposeful availment analysis turns upon whether the defendant's contacts are attributable to "actions by the defendant _himself_...The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." _Hirsch v. Blue Cross, Blue Shield of Kansas_ (9th Cir. 1986) 800 F.2d 1474, 1478 (emphasis added).

Here, the antithesis exists. Mr. Yuan has taken deliberate actions against creating continuing obligations within the forum. (Yuan Decl., ¶ 2, 3, 4, 5, 11, & 13.) Even if his prior attenuated contacts are material (they are not), he has spent his time disassociating himself from those attenuated contacts. (_Ibid_.) And perhaps stating the obvious, those de minimis contacts have no "relationship to…the litigation" and certainly do not create "continuing obligations to forum residents." _Hirsch_, at 1478. Thus, Mr. Yuan has not availed himself to California.

### b.   Industrial's claims do arise out of Mr. Yuan's forum-related activities.

Here, Mr. Yuan's de minimis contacts are wholly unrelated to – and certainly do not arise out of – the allegations here. The Ninth Circuit employs a "but for" test to determine whether a claim arises from the alleged forum-related activities of a defendant contesting personal jurisdiction. _Ballard v. Savage_, 65 F.3d 1495, 1500 (9th Cir. 1995). "The question, therefore, is this: but for [defendant's] contacts with

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-22-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

the United States and California, would Plaintiff's claims [] have arisen?" *Id*. at 1500. In *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.* (9th Cir. 2002) 284 F.3d 1114, the court stated:

> We apply a "but for" test to assess whether Glencore Grain's claims "arise out of" Shivnath Rai's forum conduct: Glencore Grain must show that it would not have been injured "but for" Shivnath Rai's contacts with California. The contracts giving rise to this dispute were negotiated abroad, involved foreign companies, and required performance (i.e., delivery of rice) in India. In short, Glencore Grain's claim does not arise out of conduct directed at or related to California. Thus, due process forbids the exercise of specific jurisdiction.

*Id*. at 1123-1124 (internal citations omitted).

Here, the claims underlying the petition arise out of events that occurred in China, not in the United States, much less California: (a) the Guarantees were signed *in China*, (b) the related loans were funded *in China*, (c) the alleged breach occurred *in China*, (d) underlying arbitrations took place *in China*; and (e) the defaults were entered *in China*. Simply put, Industrial's claims against Mr. Yuan have *nothing* to do with California and certainly do not rise out of Mr. Yuan's forum conduct. Thus, Industrial cannot satisfy the "but for" test for the second prong.

### c.    It would not be reasonable to exercise jurisdiction.

Even assuming that Industrial could establish that its claims arise out of Mr. Yuan's forum-related contacts (it cannot), it is manifestly unreasonable to exercise specific jurisdiction here. The Ninth Circuit has identified the following factors to determine whether, on balance, jurisdiction is reasonable: (1) extent of purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-23-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

convenient and effective relief; and (7) the existence of an alternative forum. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851-853 (9th Cir. 1993). "[D]ue process require[s] that the defendant's expectations and burdens should be weighed more heavily than the plaintiff's hardships." *Pac. Atl. Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985). As to the extent of purposeful interjection, this inquiry "parallels the inquiry of minimum contacts." *Amoco Egypt*, *supra*, 1 F.3d at 852. "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).

At best, Mr. Yuan's de minimis contacts consists of activities as a *former* executive of certain California companies that are owned by a Chinese holding company of which Mr. Yuan has no direct or indirect ownership interest. (Yuan Decl., ¶ 7.) In his personal capacity, his contacts consist of visiting his family in Los Angeles from time-to-time and purchasing the San Marino Home for his family over a decade ago in September 2013, which he then deeded a few months later to his now ex-wife, Ms. Sun, so that she could live there with the children after he returned to China (where he resides). (*Id.*, ¶¶ 3 – 4.) Mr. Yuan also executed a deed relating to a property located at 879 Michigan Blvd., Pasadena, California that was purchased solely by Ms. Sun in late 1993 as her separate property, for the purpose of confirming it was not community property. (*Ibid.*)

As to the second factor, the burden on Mr. Yuan weighs heavily in his favor. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus., Co. v. Superior Court*, 480 U.S. 102, 114 (1987). "In a case such as this, in which the defendant 'has done little to reach out to the forum state,' the burden of defending itself in a foreign forum militates against exercising jurisdiction." *FDIC v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1444 (9th Cir. 1987). Industrial is

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26                    -24-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

actively enforcing the Awards in China and has commenced enforcement actions in Hong Kong as well.  (Yuan Decl., ¶ 15.)  Most recently, the Hong Kong court denied Industrial's attempt to obtain a world-wide injunction against Mr. Yuan for purposes of enforcing the Awards.  (*Ibid*.)  In short, Mr. Yuan is defending himself in China and Hong Kong and forcing him to defend a third front here would be unreasonably burdensome and manifestly unfair.

As to the third factor, the extent of conflict with China's sovereignty also weighs in favor of Mr. Yuan.  "Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction."  *Amoco Egypt*, *supra*, 1 F.3d at 852.  "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."  *Sinatra v. Nat'l Enquirer,* 854 F.2d 1191, 1199 (9th Cir. 1988); *see also Rocke v. Canadian Auto. Sports Club*, 660 F.2d 395, 399 (9th Cir. 1981) ("Because [defendants] are unquestionably residents of Canada, we must observe that this factor tends also to undermine the reasonableness of personal jurisdiction in this case.")  Given that the Awards were rendered in China, that Industrial is actively enforcing the Awards in China, and that Mr. Yuan is a resident of China with no assets in California, it makes sense to allow the courts in China to oversee Industrial's enforcement of the Awards.

Factors four through seven also weigh in Mr. Yuan's favor.  Mr. Yuan's contacts with the forum are episodic and not extensive, such that the forum should feel the need to interject itself into the dispute.  As for Industrial's claims that Mr. Yuan owned and then fraudulently conveyed or transferred California real properties to others, these are merely unproven allegations.  The instances where Mr. Yuan deeded the San Marino Home and Pasadena Residence occurred in 2013, more than 13 years ago, and do not support a basis for Industrial's fraudulent conveyance claim.  Reliance on mere allegations as proof of alleged wrongs is not appropriate

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-25-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

and certainly wholly insufficient to establish personal jurisdiction.

Thus, it would not be reasonable to exercise jurisdiction here.

### 2.   Industrial Cannot Establish General Jurisdiction

"The standard for establishing general jurisdiction is 'fairly high,' [] and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Minimum contacts for general jurisdiction exist where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, even if the case is unrelated to those contacts.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citation omitted); *see also*, *Glencore Gran Rotterdam B.V. v. Shivnath Rai Harnarain Co.* (9th Cir. 2002) 284 F.3d 1114, 1124. ("*Glencore*"); *see also*, *Diamondback DTNM, LLC v. ShiftPixy, Inc.* (CD Cal.) 2024 WL 5185667, p. 8 (citing *Glencore* with approval), *Fitbit, Inc. v. Koninklijke Phillips N.V.* (ND Cal. 2020) 2020 WL 13064714, p. 1 (citing *Glencore* with approval), and *ProSource Discounts, Inc. v. Dye* (CD Cal.) 2019 WL 6729702, p. 2 (citing *Glencore* with approval).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft*, *supra*, 223 F.3d at 1086. Conversely, "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Id*.  Importantly, "the relevant contacts between the defendant and the forum state *must not have been weakened by the passage of time*." *Mattel, Inc. v. Greiner & Hausser GMbH* (9th Cir. 2003) 354 F. 3d 857, 866 (emphasis added).

*Glencore* is instructive here.  In *Glencore*, petitioner (Glencore) sought an order to confirm a foreign arbitration award against respondent (Shivnath Rai). *Glencore*, 284 F.3d at 1118.  The award was the product of foreign contracts that were performed and were required to be performed in India.  *Id*. The arbitration was

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-26-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

also conducted abroad (in England). *Id*. Glencore also filed suit in India to enforce the award. *Id.*, p. 1118-1119. With the matter in India pending, Glencore filed a petition in the Northern District of California to confirm the award. *Id.*, p. 1119. Shivnath Rai moved to dismiss the petition for lack of personal jurisdiction. Glencoe opposed it showing that Shivnath Rai (a) had delivered a shipment into the Port of Los Angeles thirteen years before the filing of the petition, (b) had delivered seven shipments through the East Coast between 1993 through 1995, (c) had delivered fifteen shipments into the Port of San Francisco from 1993 to 1995, and (d) had an independently owned sales agent in California for its product sales into the United States. *Id*. Based on these facts, the Court affirmed the trial court's order dismissing the petition on jurisdictional grounds. *Id*.

Specifically, the Court affirmed the decision that the trial court did not have specific or general jurisdiction over Shivnath Rai and further, that it would be unreasonable to exercise jurisdiction over it. *Id.*, p. 1128. As to general jurisdiction, the Court reasoned that while Shivnath Rai had stepped "through the door, there is no indication that it has sat down and made itself at home" in the forum. *Id.*, p. 1125. It also noted that there is no evidence that Shivnath Rai "owns property, keeps bank accounts, has employees, solicits business, or has designated an agent for service of process in California." *Id.*, p. 1125.

Like in *Glencoe*, here Mr. Yuan does not own property (whether real or personal, like and including interests in any business), keep bank accounts, have employees, solicit business, or has designated an agent for service of process in California; that is, while Mr. Yuan may have stepped through the door, he has not sat down and made himself at home in California. Indeed, Mr. Yuan surrendered his U.S. citizenship, and his contacts have been limited to visiting his children from time to time when they are unable to travel to Asia to see him. Also, the fact that Mr. Yuan may have taken some action in California in his capacity as a CEO or representative of some companies (i.e., management, cooperating with prosecutors,

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-27-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

etc.) is immaterial because of the fiduciary shield doctrine. *Grober v. Mako Products, Inc.* (Fed. Cir. 2012) 686 F.3d 1335, 1347 ("The fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state.")

For these reasons, Industrial cannot establish personal jurisdiction.

## IV.    CONCLUSION

Industrial has failed to properly effectuate service on Mr. Yuan. Based on the foregoing, Mr. Yuan respectfully requests that this Court grant this motion and dismiss the action. At a minimum, the Court should issue an order quashing service, requiring Industrial to comply with the Hague Convention, and setting a deadline by which Mr. Yuan must be properly served.

Dated:  May 4, 2026

RUTAN & TUCKER, LLP
ALEJANDRO S. ANGULO

By:    */s/ Alejandro S. Angulo*
Alejandro S. Angulo
Attorneys for Respondent
FUER YUAN

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-28-

Case No. 2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Respondent Fuer Yuan, certifies that this brief contains 6,995 words, which:

<u>X</u> complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated _____ [date].

Counsel relies on the word count of the word-processing application used to prepare the brief.

Dated:  May 4, 2026

RUTAN & TUCKER, LLP
ALEJANDRO S. ANGULO

By:____ */s/ Alejandro S. Angulo*_____
Alejandro S. Angulo
Attorneys for Respondent
FUER YUAN

Rutan & Tucker, LLP
attorneys at law

1063/040389-0002
23729680.1 a05/04/26

-29-

Case No.  2:26-cv-01256-ODW-ADS
FUER YUAN MOTION TO DISMISS
AND/OR QUASH SERVICE OF PROCESS