KING & WOOD LLP

Yan Ge (State Bar #236566)
geyan@cn.kingandwood.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kingandwood.com
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285

Vincent Filardo Jr. (*pro hac vice*)
Vincent.filardo@us.kingandwood.com
600 5th Avenue, 27th Floor
New York, NY 10020
Telephone: +1 347 926 7570

SPERTUS, JOSEPHS & MINNICK, LLP

Kevin J. Minnick (State Bar #269620)
kminnick@spertuslaw.com
617 W. 7th St., Ste 200
Los Angeles, CA 90017
Telephone: +1 213 205 6520

*Attorneys For Petitioner Industrial Bank Co., Ltd. Shenzhen Branch*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,<br><br>Petitioner,<br><br>v.<br><br>FUER YUAN,<br><br>Respondent. | Case No. 2:26-cv-01256-ODW-ADS<br><br>Judge: Otis D. Wright II<br><br>**PETITIONER INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH'S OPPOSITION TO RESPONDENT FUER YUAN'S MOTION TO (A) DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(1)), OR IN THE ALTERNATIVE, (B) QUASH SERVICE OF PROCESS (FRCP 12(b)(5))**<br><br>[Filed concurrently with Declarations of Binying Zhuang and Yiren Yu]<br><br>Date:      July 13, 2026<br>Time:     1:30 p.m.<br>Ctrm:    5D<br><br>Date Action Filed: February 7, 2026<br>Trial Date:    None Set |

- 1 -

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ - 1 -

BACKGROUND ................................................................................................. - 2 -

    A. Yuan's Formation of the California Hotel Enterprises ........................... - 3 -

    B. Yuan's Non-Prosecution Agreement ..................................................... - 3 -

    C. The Legend Strategy Prospectus Confirms Yuan's Ongoing Control ................................................................................... - 4 -

    D. Yuan's Fraudulent Transfer Scheme and Strategic Divorces .................................................................................................. - 5 -

    E. Yuan Divested the Hotel Assets to His Individual Ownership ............................................................................................. - 5 -

    F. Yuan's Declaration Contradicts His Own Prior Admissions and Public Records ............................................................................... - 6 -

ARGUMENT ...................................................................................................... - 7 -

    I. SERVICE OF THE PETITION ON YUAN WAS PROPER ...................... - 7 -

    A. Rule 5 Governs Service of Petitions to Confirm ................................... - 7 -

    B. The Hague Convention Does Not Apply to Service Under Rule 5 ...................................................................................... - 9 -

        1. The Structural Distinction Between Rules 4 and 5 Confirms the Convention's Inapplicability .......................................................... - 9 -

        2. The Hague Convention Is Limited to "Service of Process" in the Technical Sense and Does Not Extend to Rule 5 Service ...... - 10 -

        3. Applying the Hague Convention to Rule 5 Would Produce Absurd and Unworkable Results ....................................................... - 10 -

    C. Domestic Service Does Not Trigger The Hague Convention ................. - 11 -

    D. Petitioner's Service on Yuan Was Proper Under Rule 5 ........................ - 11 -

    E. Yuan Contractually Consented to CIB's Service ................................... - 12 -

    II. THE COURT HAS PERSONAL JURISDICTION OVER YUAN ................................................................................................... - 14 -

    A. This Court Has Quasi in Rem Jurisdiction Over Yuan's California Assets ................................................................................ - 14 -

    B. This Court Has Specific Jurisdiction Over Yuan ................................... - 15 -

1. Yuan Purposefully Availed Himself of the Privilege of Conducting Activities in California ................................................. - 16 -

2. CIB's Claims Arise Out of or Relate to Yuan's Forum-Related Activities ..................................................................................... - 17 -

3. The Exercise of Jurisdiction Is Reasonable ..................................... - 18 -

4. Yuan's Fiduciary-Shield Argument Fails ......................................... - 19 -

C. This Court Has General Jurisdiction Over Yuan .................................... - 20 -

D. Alternatively, CIB Is Entitled to Jurisdictional Discovery ..................... - 21 -

CONCLUSION ................................................................................................ - 22 -

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Watch Co., Ltd.*,
587 B.R. 598 (Bankr. S.D.N.Y. 2018) ...................................................... - 9 -, - 10 -

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
1 F.3d 848 (9th Cir. 1993) ................................................................... - 18 -

*Azod v. Robinson*,
No. 2:22-cv-05214-CAS(MRW), 2022 WL 18142560 (C.D. Cal. Nov. 9, 2022),
*aff'd*, 2024 WL 163371 (9th Cir. Jan. 16, 2024) ................................................ - 1 -

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .................................................................. - 17 -

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................ - 18 -

*Cerner Middle E. Ltd. v. iCapital, LLC*,
939 F.3d 1016 (9th Cir. 2019) ................................................................. - 15 -

*Chunghwa Telecom Glob., Inc v. Medcom, LLC*,
No. 5:13-cv-02104-HRL, 2016 WL 5815831 (N.D. Cal. Oct. 5, 2016) ........... - 20 -

*Cox v. Gritman Med. Ctr.*,
170 F.4th 724 (9th Cir. 2026) ................................................................. - 17 -

*Cox Wootton Lerner, Griffin, & Handson LLP v. Ballyhoo Media Inc.*,
No. 222CV00534CASPLAX, 2022 WL 2132126 (C.D. Cal. June 13, 2022).. - 22 -

*Crorama, Inc. v. Dominguez*,
No. 8:19-cv-00676-JLS-KES, 2020 WL 4919735 (C.D. Cal. July 6, 2020) ...... - 2 -

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ - 20 -

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) .................................................................. - 19 -

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) ............................................................................ - 17 -

*Franz Haas GmbH Srl v. Winebow Inc.*,
No. 25-4105, 2026 WL 837288 (9th Cir. Mar. 26, 2026) ................................. - 7 -

*Freedom Invs. Corp. v. Gantan*,
No. 17-cv-03914-SK, 2017 WL 8772097 (N.D. Cal. Sept. 7, 2017).................. - 7 -

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ................................................................ - 15 -, - 17 -

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) .................................................................... - 21 -

*Lustig v. AzGen Sci. Holdings PLC*,
  No. 18-cv-07503-HSG, 2020 WL 2614778 (N.D. Cal. May 21, 2020)............. - 9 -

*Mitan v. Feeney*,
  497 F. Supp. 2d 1113 (C.D. Cal. 2007)........................................................ - 22 -

*Motu Novu, LLC v. Percival*,
  No: 4:16-cv-06545-SBA, 2017 WL 7243462 (N.D. Cal. Dec. 1, 2017)........... - 14 -

*Office Depot Inc. v. Zuccarini*,
  596 F.3d 696 (9th Cir. 2010) ..................................................................... - 15 -

*Peterson v. Highland Music, Inc.*,
  140 F.3d 1313 (9th Cir. 1998) ................................................................... - 14 -

*Russello v. United States*,
  464 U.S. 16 (1983)..................................................................................... - 10 -

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade* Co.,
  53 F.4th 1136 (9th Cir. 2022) .................................................................... - 11 -

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................... - 14 -, - 15 -, - 16 -

*Shaffer v. Heitner*,
  433 U.S. 186 (1977)................................................................................... - 14 -

*Trade Well Int'l v. United Cent. Bank*,
  825 F.3d 854 (7th Cir. 2016) ....................................................................... - 9 -

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)........................................................................ - 10 -, - 11 -

*Voltage Pictures, LLC v. Gussi, S.A. de C.V.*,
  92 F.4th 815 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 158 (2024) ..................*passim*

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977) ..................................................................... - 21 -

**Statutes**

9 U.S.C. §§ 1-16 ............................................................................................ - 7 -

9 U.S.C. § 6........................................................................... - 1 -, - 7 -, - 8 -

9 U.S.C. § 9........................................................................... - 7 -, - 8 -, - 9 -

- 5 -

9 U.S.C. § 10................................................................................................ - 22 -

Cal. Code Civ. Proc. § 410.10 ..................................................................... - 14 -

**Other Authorities**

Fed. R. Civ. P. 4................................................................. - 1 -, - 7 -, - 8 -, - 9 -

Fed. R. Civ. P. 5.....................................................................................*passim*

Fed. R. Civ. P. 12 ........................................................................ - 1 -, - 14 -

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Industrial Bank Co., Ltd. Shenzhen Branch ("Petitioner" or "CIB"), by and through its undersigned attorneys, respectfully submits this memorandum in opposition to Respondent Fuer Yuan's ("Respondent" or "Yuan") Motion to (A) Dismiss For Lack of Personal Jurisdiction (FRCP 12(b)(1)[1]), or in the Alternative, (B) Quash Service of Process (FRCP 12(b)(5)) ("Motion," Dkt. 13)[2] and in support of its Petition and Motion for Confirmation of Arbitral Awards ("Petition," Dkt. 1).

## INTRODUCTION

Yuan's Motion should be denied. Yuan's challenge to service of process is meritless under binding authorities which establish service of petitions to confirm arbitral awards is governed by Federal Rule of Civil Procedure 5—not Rule 4—and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") does not apply. Petitioner properly served Respondent under Rule 5(b)(2), including by service at Yuan's California businesses' offices, mailing to his last known addresses, and delivery to addresses designated by Yuan himself in certain Guarantees (defined herein) in which Yuan waived any objections to service at those addresses.

Yuan's jurisdictional challenge is also meritless. This Court has personal jurisdiction over Yuan under three independent bases: (1) quasi in rem jurisdiction because Yuan owns substantial assets in this district against which CIB seeks to enforce its arbitral Awards; (2) specific jurisdiction because CIB's Petition arises out

---

[1] The Motion's caption cites Rule 12(b)(1), but a challenge to personal jurisdiction is properly brought under Rule 12(b)(2), and Petitioner addresses it accordingly.

[2] As an initial matter, Respondent's Motion is an inappropriate vehicle for responding to a petition and motion to confirm and should be denied on that basis. *See* 9 U.S.C. § 6 (any application "shall be made and heard in the manner provided by law for the making and hearing of motions"); Fed. R. Civ. P. 12(b) (motion to dismiss responds to a pleading stating a claim for relief, not to a motion); C.D. Cal. L.R. 7-9 (proper response to a motion is an opposition); *Azod v. Robinson*, No. 2:22-cv-05214-CAS(MRW), 2022 WL 18142560, at *2 (C.D. Cal. Nov. 9, 2022), *aff'd*, 2024 WL 163371 (9th Cir. Jan. 16, 2024) (denying motion to dismiss as inappropriate vehicle for responding to motion to confirm arbitration award).

of and relates to Yuan's extensive California contacts; and (3) general jurisdiction because Yuan's continuous and systematic contacts with California render him essentially at home here.

Yuan's Motion rests on a declaration (Dkt. 13-1) that is riddled with material omissions and misrepresentations. The assertions therein are directly contradicted by public records. *See generally* Exs. A-I.[3] Yuan's unsupported, self-serving declaration should be disregarded, and without it, his Motion must fail. *Crorama, Inc. v. Dominguez*, No. 8:19-cv-00676-JLS-KES, 2020 WL 4919735, at *4 (C.D. Cal. July 6, 2020) (Defendants' "self-serving declarations are insufficient to overcome uncontested allegations of the SAC and jurisdictional evidence in the record showing that [they] are subject to specific jurisdiction in the forum").

The Court should deny the Motion in its entirety, and grant CIB's Petition in full. In the alternative, the Court should permit Petitioner to take jurisdictional discovery from Yuan.

## BACKGROUND

Yuan beneficially owns and controls Shenzhen Hazens Real Estate Group Co., Ltd. ("Hazens Group" or "Shenzhen Hazens"), Shenzhen Hazens Xinnan Investment Co., Ltd. ("Hazens Xinnan"), and California entities including Metainfinity, Inc. ("Metainfinity," f/k/a Jia Yuan USA Co., Inc.), Metanova, LLC ("Metanova," f/k/a Hazens Investment, LLC), San Yi US Investment Company, Inc. ("San Yi US," f/k/a Jia Jia US Investment Company, Inc.), and Hazens Rosemead, LLC ("Hazens Rosemead"). Exs. A at 10-11; B at 6, 60; H; I. Through these entities, Yuan owns and controls significant California real estate assets, including three major hotels and an office building. Yuan also fraudulently transferred certain real property assets to his

---

[3] All references to "Exhibits" or "Ex." are to the exhibits attached to the Declaration of Yiren Yu ("Yu Decl.") filed concurrently herewith. Unless otherwise noted, all page citations to exhibits refer to the PDF page numbers rather than any pagination appearing on the documents themselves.

titular ex-wife, who resided in California, while personally appearing before a notary public in California. Ex. J at 3.

### A.    Yuan's Formation of the California Hotel Enterprises

Beginning in approximately 2010, Yuan began expanding his business into the United States. Ex. A at 11. Yuan formed four entities—Metainfinity, Metanova, San Yi US, and Hazens Rosemead—to build, acquire, and operate several properties in the Los Angeles area, including three hotels: the E-Central Downtown Los Angeles Hotel (owned by Metainfinity), the Sheraton Gateway Los Angeles Hotel (owned by Metanova), and the Sheraton Los Angeles San Gabriel Hotel (owned by San Yi US). *Id*. Hazens Rosemead owns an office building at 135 E. Live Oak Avenue, Arcadia, California, which serves as the principal address and central hub for Yuan's California entities.

Yuan served as CEO and CFO of Metainfinity and San Yi US as provided in their 2023 statements of information. Exs. H, I. Yuan personally executed major loan documents on behalf of these entities, including a $190 million deed of trust for Metainfinity in May 2018 (Ex. C at 53), a revolving line of credit deed of trust for Metainfinity in June 2019 (Ex. D at 10), a $55 million deed of trust for Metanova in October 2013 (Ex. E at 35), a $20 million revolving line of credit for Metanova in May 2016 (Ex. F at 35), and an amendment of the Metanova loan in November 2018 (Ex. G at 12).

### B.    Yuan's Non-Prosecution Agreement

On October 5, 2020, Yuan signed the NPA as the chairman of Jia Yuan USA Co., Inc. (now known as Metainfinity) with the U.S. Government. Ex. A at 10.

The NPA arose from a bribery scheme directed at California public officials in connection with the redevelopment of what is now the E-Central Hotel. *See generally* Ex. A, Statement of Facts. The NPA's Statement of Facts confirms that Yuan personally directed the corrupt activities. *Id*. Specifically, Yuan attended dinners with

- 3 -

Los Angeles City Councilmember Jose Huizar, directed an employee to facilitate introductions as part of an indirect bribery scheme, instructed Hazens employees to host and entertain Huizar in China, expressed willingness to support the campaign of Huizar's relative, and received WeChat messages from Huizar celebrating official acts taken to benefit Metainfinity's hotel project. *Id.*

The NPA identifies Yuan as "Chairman of Hazens," states that he "became interested in expanding his business to the U.S.," and "ultimately formed" the California subsidiaries. Ex. A at 10. Yuan confirmed that "[a]t all times relevant to this Statement of Facts, Chairman Yuan acted on behalf of [Metainfinity] in his capacity as the Chairman of [Metainfinity]." *Id*. at A-2.

### C.    The Legend Strategy Prospectus Confirms Yuan's Ongoing Control

On March 5, 2025, Legend Strategy International Holdings Group Company Limited ("Legend"), a Cayman Islands company, issued a rights offering prospectus. Ex. B. The prospectus identifies "Mr. Yuan Fuer" as "the chairman of the Board and a non-executive Director" of Legend. *Id*. at 8.

The prospectus states that Yuan is "the ultimate beneficial controlling shareholder of Shenzhen Hazens" and "founded Shenzhen Hazens Real Estate Group Company Limited ('Shenzhen Hazens') in 1996." *Id*. at 60. The prospectus further discloses that "Shenzhen Hazens . . . holds interests in several hotels which are located in the United States of America and managed by multinational hotel management groups through its subsidiaries." *Id*.

Yuan signed the prospectus as Chairman, and all directors "collectively and individually accept[ed] full responsibility" for its accuracy and confirmed it was "accurate and complete in all material respects and not misleading or deceptive." *Id*. at 54.

- 4 -

**D.      Yuan's Fraudulent Transfer Scheme and Strategic Divorces**

As detailed in CIB's Petition (Dkt. 1), Yuan entered Guarantee Agreements ("Guarantees") in connection with CIB's extension of multimillion dollar loans to Hazens Xinnan to fund a real estate development project. Dkt. 1 at ¶¶ 12-21. Hazens Xinnan defaulted, and under the Guarantees Yuan was jointly and severally liable for the amount owed. *Id*. at ¶¶ 22-25. CIB initiated arbitration to recover the debt and ultimately prevailed. *See* Dkts. 1-1–1-11.

Rather than pay CIB what he owes, Yuan orchestrated a sophisticated scheme to place his assets beyond CIB's reach by transferring them to his second wife who resides in California, Celia Wen Sun ("Sun"). Although Yuan had been married to Weiqing Rao since 1987, he secretly married Sun—his former secretary at Hazens Group—in California by 2007, and concealed that second polygamous marriage from CIB throughout the loan application process and duration of the Loan Agreements. Yuan then used this marriage to funnel assets to Sun to frustrate CIB's recovery. *See* Ex. J. (reflecting that Yuan "personally appeared" before a notary public in California to transfer assets). Yuan then strategically divorced both wives in 2023 and 2024 to create additional legal barriers to creditor recovery.

To protect its rights and prevent further dissipation of assets, CIB filed a complaint in the Los Angeles County Superior Court, seeking to avoid Yuan's fraudulent transfers and recover the transferred assets.

**E.      Yuan Divested the Hotel Assets to His Individual Ownership**

In or about 2021, CIB learned that the ownership interests in the hotels owned by Metainfinity, Metanova, and San Yi US were transferred to Yuan's individual ownership. Declaration of Binying Zhuang, ¶¶ 3-6. When CIB reviewed the annual reports of the Hazens Group, it discovered the California hotels had been excised from the reports. *Id*. at ¶ 4. Upon CIB's inquiry, Hazens Group's principal liaison

confirmed that the hotels had been transferred to Yuan's personal ownership and thus were removed from the reports. *Id.* at ¶ 5.

F.    **Yuan's Declaration Contradicts His Own Prior Admissions and Public Records**

Yuan filed a Declaration in support of his Motion, in which he makes several claims that are directly contradicted by the record described above:

- Yuan asserts he "do[es] not own any real properties in California," (Yuan Decl. ¶ 4), yet public records show he owns significant real property assets in California.

- Yuan asserts that "[s]tarting in 2019, I devoted all my focus on real estate projects in China" and had "no longer had any involvement in the operations or management of the U.S. companies." (Yuan Decl. ¶ 11). Yet Yuan signed the NPA as Chairman in October 2020, was listed as CEO and CFO in 2023, and signed the Legend prospectus in March 2025, which all reflect his continued substantial involvement in the operations of California entities.

- Yuan minimizes his involvement in the DOJ investigation by stating he merely "helped guide the company through that investigative process." (Yuan Decl. ¶ 12). Yet the NPA's Statement of Facts reveals Yuan personally participated in and directed the bribery scheme.

- Yuan claims he "do[es] not have an office or work in California, including [the Arcadia address]." (Yuan Decl. ¶ 5). Yet that address is the principal address for all of Yuan's California entities, and Hazens Rosemead itself owns the building.

- Yuan asserts he has "never resided in California" and the San Marino home "was intended to be the permanent residence for [Sun] and [their] children."

(Yuan Decl. ¶ 3). But he admits that he continued to "stay at the San Marino home." *Id*.

- Yuan's declaration deliberately omits his personal execution of major loan agreements in California, his bigamous marriage to Sun, and his transfer of properties to Sun in California.

These omissions and contradictions demonstrate that Yuan's Declaration lacks credibility, deserves no weight, and cannot provide a basis for dismissal.

## ARGUMENT

## I.    SERVICE OF THE PETITION ON YUAN WAS PROPER

### A.    *Rule 5 Governs Service of Petitions to Confirm*

Yuan's challenge to the sufficiency of service is meritless because binding Ninth Circuit authority establishes that service here is governed by Federal Rule of Civil Procedure 5—not Rule 4. *See Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 830-32 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 158 (2024).

A petition to confirm an arbitral award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is an "application" to the court, not a plenary civil action initiated by a complaint. 9 U.S.C. § 6 ("[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); *Franz Haas GmbH Srl v. Winebow Inc.*, No. 25-4105, 2026 WL 837288, at *1 (9th Cir. Mar. 26, 2026) (citing *Voltage*, 92 F.4th at 825-26) ("[a] confirmation petition is treated procedurally as a motion rather than a pleading."). Section 9 of the FAA reinforces this understanding. For resident respondents, Section 9 provides that "such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court." 9 U.S.C. § 9. Courts applying this provision have found service under Rule 5 proper. *See*, *e.g.*, *Freedom Invs. Corp. v. Gantan*, No. 17-cv-03914-SK, 2017 WL 8772097, at *1 (N.D. Cal. Sept. 7, 2017).

- 7 -

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

For nonresident respondents, Section 9 provides that "the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. § 9. This nonresident provision does not provide a viable method of service for parties who are not available for service within the United States, creating a statutory gap. *Voltage*, 92 F.4th at 831.

The Ninth Circuit addressed this gap in *Voltage* and held that when Section 9 does not apply (e.g., when the respondent is located overseas), Section 6's statutory mandate fills the gap, and it "plainly refers to the reigning rules governing service of written motions and notices in federal court, which today is found in Rule 5." *Voltage*, 92 F.4th at 831. This reasoning proceeded from the statutory text: "[b]y referring to the 'law for the making . . . of motions' in § 6, Congress clearly invoked the procedural law governing the making of motions in federal court." *Id.*

The Ninth Circuit further emphasized that a "prevailing party [in the arbitration proceedings] need not serve an adverse party with summons for the forum court to exercise personal jurisdiction over the adverse party. All that needs to be served is '[n]otice of the application.'" *Id.* Rule 4 governs service of a summons and complaint, while Rule 5 governs service of motions and other papers. Because confirmations are "applications" treated as "motions," Rule 5 is the appropriate procedural mechanism for service.

The Ninth Circuit's holding in *Voltage* rests on statutory interpretation that turns entirely on the text of Sections 6 and 9 of the FAA, not the underlying facts. *Voltage*, 92 F.4th at 830-31. The court's analysis does not depend on the content of the agreement to arbitrate, the type of arbitral award, the situs of the arbitration, the place of service, or any other case-specific factual circumstance. *Id.* The Court explained that "[e]ven the most formidable policy arguments cannot overcome [the FAA's] clear statutory directive," and courts "have no warrant to redline the FAA . . .

- 8 -

importing Rule 4's procedural protections, which generally apply to the service of summons into § 9 of the FAA, which does not require the service of summons." *Id*. at 831-32 (citing *Badgerow v. Walters*, 596 U.S. 1, 16 (2022)). Yuan cannot escape this binding precedent, including by referring to irrelevant factual differences that have no bearing on the court's statutory analysis. Applying the FAA and *Voltage*, CIB had to serve Yuan under Rule 5, and it did so. Yu Decl. ¶¶ 13-16.

### B.    The Hague Convention Does Not Apply to Service Under Rule 5

Yuan's argument that service of the Petition must comply with the Hague Convention is misplaced because the Hague Convention is inapplicable to Rule 5 service.

#### 1.    The Structural Distinction Between Rules 4 and 5 Confirms the Convention's Inapplicability

The structure of Rules 4 and 5 confirms that the Hague Convention has no bearing on Rule 5 service. Rule 4(f)(1) expressly references the Hague Convention, providing that service in a foreign country may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Rule 4(f)(1). Rule 5, by contrast, contains no reference to the Hague Convention or any special procedural requirements for international service. *See Advance Watch*, 587 B.R. at 605 ("Rule 5 does not distinguish between domestic and foreign defendants, such that Rule 5(b) also applies to service of judicial documents other than the summons and complaint to foreign defendants."); *Lustig v. AzGen Sci. Holdings PLC*, No. 18-cv-07503-HSG, 2020 WL 2614778, at *5 (N.D. Cal. May 21, 2020) (Rule 5 service was proper where motion papers were mailed to defendant's last known address in Ireland); *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 860 (7th Cir. 2016) (upholding Rule 5 service to a foreign party's last known address while differentiating between Rule 4 service under the Hague Convention and Rule 5(b)(2)(C) service).

- 9 -

This structural distinction is not accidental: Congress's decision *not* to reference the Hague Convention in Rule 5 reflects the deliberate judgment that service of other judicial documents does not implicate the Hague Convention. Where Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

> 2. The Hague Convention Is Limited to "Service of Process" in the Technical Sense and Does Not Extend to Rule 5 Service

The Hague Convention applies only to service of a summons and complaint.

The Supreme Court has made clear that the Hague Convention's scope is confined to "service of process in the technical sense," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988), and does not extend to service of documents other than a summons and complaint. *See In re Advance Watch Co., Ltd.*, 587 B.R. 598, 604-05 (Bankr. S.D.N.Y. 2018) ("[T]he Hague Convention only applies to service of process on foreign defendants, and thus excludes service of judicial documents other than the summons and complaint.").

This principle is dispositive here. Service of a petition to confirm under the FAA does not involve—and does not require—a complaint or a summons (*see Voltage*, 92 F.4th at 831) and therefore the Hague Convention does not apply.

> 3. Applying the Hague Convention to Rule 5 Would Produce Absurd and Unworkable Results

Extending the Hague Convention to documents served under Rule 5—petitions, motions, notices, and applications—would lead to untenable results, because the Convention's Central Authority procedures can take months or even years to complete, depending on the receiving country. Litigation involving any foreign party would grind to a halt, with even the most ministerial filings routed

through Convention channels before they could be addressed. This would nullify the practical utility of Rule 5 in any case with an international dimension, a result neither the Federal Rules nor the Convention contemplates or necessitates.

### C. Domestic Service Does Not Trigger The Hague Convention

Even assuming *arguendo* that the Hague Convention applies to the service of the Petition, it would not be triggered here because CIB completed service on Yuan within the United States. *See San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*, 53 F.4th 1136, 1143 (9th Cir. 2022) (citing *Volkswagenwerk*, 486 U.S. at 700) ("When the law of the forum state permits service through means that do not require the international transmittal of documents, the Convention is not triggered . . . [Service accomplished domestically] falls outside the scope of the Convention").

Here, Petitioner served Yuan at his domestic addresses: his residence in San Marino, California, and the offices of his California entities. Dkt. 11, 12. Service at these addresses was effectuated within the U.S. and the Hague Convention is therefore not implicated.

Furthermore, even service by mail to Yuan's foreign addresses is, under Rule 5(b)(2)(C), "complete upon mailing", which occurred entirely within the U.S. Because the place where service is legally completed controls the Convention's applicability, and mailing from the U.S. is not a "transmittal of documents abroad", the Hague Convention presents no obstacle. *See Volkswagenwerk*, 486 U.S. at 707; *San Antonio Winery*, 53 F.4th at 1143.

### D. Petitioner's Service on Yuan Was Proper Under Rule 5

Rule 5(b)(2) provides several methods for serving papers, including *inter alia*: (B) leaving at the recipient's office; (C) mailing to the recipient's last known address, with service complete upon mailing; and (F) delivering by any other means the recipient consented to in writing. Fed. R. Civ. P. 5(b)(2).

Petitioner served Yuan using these authorized methods, each of which independently constitutes valid service:

*Service under Rule 5(b)(2)(B)(i):* Petitioner left copies of the Petition at the office of Yuan's California entities. Dkt. 11; Yu Decl. ¶ 14. While Yuan suggests that service at this office was inappropriate based on a representation made by Carol Liu, her unsupported assertion that Yuan is not associated with the address is contradicted by the factual record directly tying Yuan to these California entities and this office address. *See supra*, at 3-4.

*Service under Rule 5(b)(2)(C):* Petitioner served the Petition by mail to Yuan's last known addresses, including: (i) his residence in San Marino, California; (ii) three of his Hong Kong residences, and (iii) two of his residences in Shenzhen, China. Dkt. 12; Yu Decl. ¶ 15; *See also* Dkt. 5, ¶ 13. Service was complete upon mailing to each of these addresses.

*Service under Rule 5(b)(2)(F):* Petitioner served Yuan by postal delivery to addresses that Yuan designated as his contact addresses in the Guarantees, Dkt. 12; Yu Decl. ¶ 16, including Yuan's specified residential address, Dkt. 1-12 at 17, Dkt. 1-13 at 18, and the address he designated as "effective addresses for service of . . . relevant legal documents". Dkt. 1-12 at 28, Dkt. 1-13 at 30. By stipulating to these addresses in the Guarantees, Yuan consented in writing to service at these locations.

### E.    *Yuan Contractually Consented to CIB's Service*

Yuan's entry into the Guarantees provides an independent basis to find service was proper. "[P]arties to a contract may agree in advance . . . to permit notice to be served by the opposing party, or even to waive notice altogether." *Voltage*, 92 F.4th at 824 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)). As in *Voltage*, where the parties agreed to accept service under IFTA Rules, Yuan agreed to accept mail service pursuant to the Guarantees.

In both Guarantees, Yuan expressly consented to service provisions more comprehensive than those at issue in *Voltage*. Dkt. 1.12 at 28-31, Dkt. 1-13 at 30-33. Each Guarantee provides that the designated service addresses "apply during both non-litigation stages and all stages after disputes enter arbitration or litigation proceedings, including first instance, second instance, retrial, execution, procedures for realizing guarantee interests, payment order procedures, and enforcement of notarized documents, etc." Dkt. 1-12 at 30, Dkt. 1-13 at 32. Yuan designated a specific address for service: 5th Floor, Phase 2, Hazens Mingyuan, Intersection of Xinwen Road and Jingtian Road, Futian District, Shenzhen. The Guarantees provide that mail service is "deemed served" on the fifth business day after mailing, and SMS service is deemed served on the sending date. Dkt. 1-12 at 29, Dkt. 1-13 at 31. These provisions are irrevocable absent written notice: the Guarantees state that failure to notify of an address change "shall be deemed as no change" and the original addresses "shall still be deemed effective service addresses." Dkt. 1-12 at 30, Dkt. 1-13 at 32. Yuan has provided no such notice.

Under the *Voltage* framework, this contractual consent is dispositive. Yuan's consent to mail service independently displaces the Hague Convention. *See Voltage*, 92 F.4th at 824-25 (contractual agreement to specific service mechanisms overrides default procedural requirements, including the Convention). Yuan's Guarantees go further than the IFTA provisions at issue in *Voltage*: they establish a complete, self-contained service regime specifying addresses, methods, and deemed-service dates for all stages of disputes. By agreeing that mail to the designated address "shall be deemed served" five days after mailing, Yuan consented to that service regardless of the Hague Convention—an independent basis for upholding Petitioner's service.

Yuan's challenge to the sufficiency of service should therefore be denied as a matter of law.

## II.   THE COURT HAS PERSONAL JURISDICTION OVER YUAN

The Court has jurisdiction over Yuan on three separate bases: (1) quasi in rem jurisdiction because Yuan owns substantial assets in this district against which CIB seeks enforcement; (2) specific jurisdiction because CIB's claims arise out of and relate to Yuan's extensive California contacts; and (3) general jurisdiction because Yuan's systematic and continuous contacts with California render him at home in this state. Any one of these bases independently supports the Court's exercise of jurisdiction over Yuan.

California's long-arm statute permits California courts to exercise jurisdiction on any basis consistent with the Constitutions of California and the United States— *i.e.*, to the full limits of due process. Cal. Code Civ. Proc. § 410.10; *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n.2 (9th Cir. 1998). CIB need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations in the Petition are taken as true, and conflicts between the parties' affidavits are resolved in the petitioner's favor. *Id.*

### A.   *This Court Has Quasi in Rem Jurisdiction Over Yuan's California Assets*

Under *Shaffer v. Heitner*, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." 433 U.S. 186, 207 (1977) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."); *Motu Novu, LLC v. Percival*, No: 4:16-cv-06545-SBA, 2017 WL 7243462, at *4 (N.D. Cal. Dec. 1, 2017) (denying Rule 12(b)(2) motion to

- 14 -

dismiss; "so long as Defendant has property situated within this district, the court may exercise *quasi in rem* jurisdiction over that property").

Courts have recognized that quasi in rem jurisdiction is particularly appropriate in the context of enforcement of arbitral awards and money judgments where the defendant's assets are in the forum. *See, e.g.*, *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 703 (9th Cir. 2010) (affirming district court's exercise of quasi in rem jurisdiction over debtor's intangible property within the district); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) (citing *Shaffer*, 433 U.S. at 210 n.36) ("Considerable authority supports [the] position that [petitioner] can enforce the award against [respondent]'s property in the forum even if that property has no relationship to the underlying controversy between the parties."); *Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016, 1029 (9th Cir. 2019) ("Because the Arbitration Award is enforceable, [Plaintiff] has established both elements of *quasi in rem* jurisdiction . . . : [Plaintiff] possesses a valid judgment against [Defendant], and [Defendant] owns property that is located [in-state]."[4]).

Yuan's assets in this district include his ownership of interests in California entities and the hotels. The presence of these assets in the forum alone provides a sufficient basis for quasi in rem jurisdiction.

**B.    This Court Has Specific Jurisdiction Over Yuan**

Courts within the Ninth Circuit apply a three-prong test to evaluate whether specific jurisdiction exists: (1) the non-resident defendant must purposefully avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 801-02. CIB bears the

---

[4] Although the Chinese court closed its compulsory enforcement proceedings for lack of executable assets, it ruled that CIB retains the right to demand performance and that Yuan remains obligated to satisfy his debt to CIB. *See* Dkt. 1 at ¶ 72; Dkt. 5 at ¶ 14. Both elements of quasi in rem jurisdiction are thus met: CIB holds a valid, enforceable Award, and Yuan owns property in California.

- 15 -

burden on the first two prongs; if both are satisfied, the burden shifts to the defendant to "present a compelling case" that jurisdiction would not be reasonable. *Id*. at 802. CIB has satisfied that burden.

1.    <u>Yuan Purposefully Availed Himself of the Privilege of Conducting Activities in California</u>

Yuan's Motion mischaracterizes his California contacts as "de minimis" and "attenuated." Mot. at 22, 24. These assertions are contradicted by the factual record, which reveals Yuan's decade-long deliberate engagement with California.

Yuan is the beneficial owner of California entities that own and operate three major Los Angeles-area hotels. Exs. A, B, H, I. Yuan personally directed the expansion of his companies' real estate empire into California, forming U.S. subsidiaries to acquire and operate these hotels. Ex. A at 11. Yuan served in executive capacities across these California entities (Exs. H, I) and personally executed loan agreements involving hundreds of millions of dollars on their behalf (Exs. C-G). Yuan also orchestrated a coordinated scheme to fraudulently transfer assets to his ex-wife in California to evade his debt obligations and "personally appeared" before a notary public in Los Angeles County to execute at least one transfer. Ex. J at 3.

Yuan's history of acquiring, managing, and profiting from hundreds of millions of dollars in California real estate, followed by his calculated scheme to place assets beyond creditors' reach through fraudulent transfers executed within California, reflect his purposeful availment of the privileges and protections of conducting business in California. He cannot now disclaim the jurisdiction he deliberately invoked through participation in those activities.

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

2.     CIB's Claims Arise Out of or Relate to Yuan's Forum-Related Activities

Yuan's motion speciously relies on the narrow "but for" causation test articulated in *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995), and applied in *Glencore*, 284 F.3d at 1123-24, to argue that CIB's claims do not arise from his California contacts because the Guarantees were signed in China and the arbitrations occurred there.[5] Mot. at 22-23.

Yuan misstates the law currently governing the exercise of specific jurisdiction. In *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court held that specific jurisdiction requires only that the plaintiff's claims "arise out of *or relate to*" the defendant's forum contacts. 592 U.S. 351, 361 (2021) (emphasis added). The Supreme Court stated unequivocally: the "causation-only approach finds no support . . . . None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id*. at 361-62. The "relate to" language "contemplates that some relationships will support jurisdiction without a causal showing." *Id*. at 362; *see also, e.g.*, *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 739 (9th Cir. 2026) (rejecting Defendants' argument "that Plaintiffs' allegations are based on 'allegedly negligent decisions . . . made in Idaho' and therefore do not relate to their contacts with Washington . . . because a 'strict causal relationship' is not required to establish that a claim is 'relate[d] to the defendant's contacts with the forum.'") (quoting *Ford*, 592 U.S. at 362).

---

[5] Yuan's reliance on *Glencore* is also misplaced because, in *Glencore*, the court dismissed for lack of jurisdiction where the respondent's contacts consisted only of sporadic commodity shipments and an independent sales agent, and—critically—the petitioner "fail[ed] to identify any property owned by [respondent] in the forum against which [petitioner] could attempt to enforce its award." 284 F.3d at 1125. CIB has identified significant California assets beneficially owned by Yuan, Yuan's executive leadership of California entities, and Yuan's extensive personal contacts with California.

Under this framework, CIB's Petition easily satisfies the "relates to" prong of the standard for specific jurisdiction. The Petition alleges—and publicly available evidence confirms—that Yuan beneficially owns three hotel properties in California, and that Yuan fraudulently transferred property to his ex-wife in California. Yuan's California contacts—and the assets CIB seeks to reach—are precisely why CIB must confirm and enforce the Awards in this forum. This creates an unmistakable "connection" between CIB's claims and Yuan's activities in the forum.

Even under the narrower "arises out of" prong, CIB can satisfy a but-for test. But for Yuan's decision to invest in California real estate, create California entities, and transfer assets to his ex-wife in California, CIB would have no need to confirm the Awards here. Thus, either prong supports specific jurisdiction.

### 3. The Exercise of Jurisdiction Is Reasonable

CIB satisfies the first two prongs, therefore the burden shifts to Yuan to present a "compelling case" that jurisdiction is unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Yuan cannot carry this burden.

The Ninth Circuit evaluates reasonableness under seven factors:

> [T]he extent of purposeful interjection[;] the burden on the defendant to defend the suit in the chosen forum[;] the extent of conflict with the sovereignty of the defendant's state[;] the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851-53 (9th Cir. 1993).

As to the first factor, Yuan's purposeful activities in California are extensive. *See supra* at II.B.1. As to the second factor, Yuan has retained experienced California counsel and demonstrated his ability to litigate in this forum by filing the present Motion. Any burden Yuan faces attendant to defending in California is self-inflicted—Yuan voluntarily invested in California and maintained contacts here for over a decade—and, in any event, is not unreasonable. As to the third factor, CIB's

enforcement action does not conflict with China's sovereignty: China has closed its compulsory enforcement proceedings because Yuan has placed his assets beyond the reach of Chinese courts. The fourth and fifth factors strongly favor CIB: California has a substantial interest in adjudicating disputes involving multimillion dollar California real property. Furthermore, the most efficient resolution of this dispute requires a forum with jurisdiction over the assets in question, which California clearly has. The sixth factor also favors CIB: this forum is critically important to CIB's interest in effective relief because the assets against which CIB seeks enforcement are located here. As to the seventh factor, there is no adequate alternative forum. Yuan suggests that CIB should "allow the courts in China to oversee Industrial's enforcement of the Awards." Mot. at 25. The Chinese courts, however, have already tried to do so, and Chinese courts do not have jurisdiction over Yuan's assets in California. In these premises, Yuan cannot demonstrate that the Court's exercise of personal jurisdiction is unreasonable.

### 4. Yuan's Fiduciary-Shield Argument Fails

Invoking the fiduciary shield doctrine, Yuan contends that his California contacts cannot support jurisdiction because he undertook them in a corporate capacity. Mot. at 28 (citing *Grober v. Mako Products*, Inc., 686 F.3d 1335, 1347 (Fed. Cir. 2012)). Yuan misapplies the doctrine.

The fiduciary shield doctrine provides only that "a person's *mere association* with a corporation that causes injury in the forum state is not sufficient in itself" to confer jurisdiction. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (emphasis added). It does not render irrelevant the purposeful acts an individual personally undertakes in the forum merely because he undertook them on a corporation's behalf. "Each defendant's contacts with the forum State must be assessed individually," and corporate "status . . . does not somehow insulate" an officer from jurisdiction. *Id*. at 521 (quoting *Calder v. Jones*, 465 U.S. 783, 790

(1984)). As long as the officer himself has sufficient contacts with the forum state, the fiduciary shield doctrine does not bar the exercise of jurisdiction. *Chunghwa Telecom Glob., Inc v. Medcom, LLC*, No. 5:13-cv-02104-HRL, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016) (fiduciary shield doctrine inapplicable where officer defendant "personally directed, participated in, and ratified the alleged fraudulent acts giving rise to this lawsuit").

As shown above, Yuan's deliberate contacts far surpass the passive affiliation the fiduciary shield addresses. *See supra* at II.B.1. Accordingly, the doctrine does not bar jurisdiction over him here.

### C.    This Court Has General Jurisdiction Over Yuan

This Court has general jurisdiction over Yuan because his contacts with California are so "continuous and systematic" as to render him "essentially at home" in this state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For an individual, the paradigmatic bases for general jurisdiction are domicile. *Id*. at 137. However, in an "exceptional case," a defendant's operations within a forum may be "so substantial and of such a nature as to render the corporation [or individual] at home in that State." *Id*. at 139 n.19.

This is such an exceptional case: Yuan's contact with California is so substantial that the exercise of general jurisdiction over him is warranted. For over a decade, Yuan has owned and controlled California entities holding assets including three major hotels and an office building (Exs. A, B, H, I); served as Chairman, CEO, CFO, and Manager of multiple California entities (Exs. A, C-I); personally signed the NPA in 2020 on behalf of a California entity as its Chairman (Ex. A); personally executed loan agreements and deeds of trust totaling hundreds of millions of dollars on behalf of California entities (Exs. C-G); and purchased residences in California in

- 20 -

which he and his family lived (Yuan Decl. ¶ 3) ("Since 2013, from time to time when I visited Ms. Sun and my children, I would stay at the San Marino Home").[6]

Yuan's attempt to rely on the passage of time is equally unavailing. Mot. at 26. While he claims he ceased involvement in 2019-2020 (Yuan Decl. ¶ 13), public records tell a different story: he served as an officer of California entities through 2023; he executed quitclaim deeds in California as recently as 2024; and his hotels continue to operate in California today. His contacts have not been "weakened by the passage of time"—they are ongoing.

Thus, Yuan is essentially at home here after such a long period of extensive contact with California, and the Court may exercise general jurisdiction over him.

### D.     Alternatively, CIB Is Entitled to Jurisdictional Discovery

In the event the Court does not deny Yuan's Motion in its entirety, the Court should permit jurisdictional discovery.

The Ninth Circuit has held that "[w]here pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary, discovery should be permitted." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) ("discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed."); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (refusal to grant jurisdictional discovery constitutes an abuse of discretion when there was a question as to whether jurisdiction could be established). A plaintiff seeking jurisdictional discovery need only make a "colorable" showing of jurisdiction—a standard lower than the prima facie standard, which "could be equated as requiring the plaintiff to

---

[6] Yuan's general jurisdiction argument rests on a distorted characterization of his contacts. He describes himself as merely "a former executive of certain California companies that are owned by a Chinese holding company of which Mr. Yuan has no direct or indirect ownership interest." Mot. at 24; Yuan Decl. ¶ 7. However, publicly available evidence, including the NPA, corporate filings, and Legend's 2025 prospectus, demonstrate Yuan is the "ultimate beneficial controlling shareholder" of Metainfinity, Metanova, and San Yi US (which own the three hotels).

- 21 -

come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007).

CIB has satisfied both conditions. Yuan's Motion and Declaration place the jurisdictional facts squarely in dispute: the Declaration is crafted to minimize his California contacts and is materially contradicted by public records. CIB has come forward with more than "some evidence": it has shown that Yuan personally directed the formation of the California entities, managed the entities since then, and purchased and systematically transferred property in California to evade his debt obligations.[7] The facts bearing on jurisdiction are thus controverted and must be developed through discovery. The Court should permit jurisdictional discovery rather than dismiss the Petition.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court deny Respondent's Motion in its entirety. Moreover, the Court should grant CIB's Petition and confirm the underlying arbitral Awards, because Yuan has not raised any other valid statutory basis for the Court to deny confirmation. *Cox Wootton Lerner, Griffin, & Handson LLP v. Ballyhoo Media Inc.*, No. 222CV00534CASPLAX, 2022 WL 2132126, at *5 (C.D. Cal. June 13, 2022) ("Ballyhoo has not raised any other basis for the Court to deny the arbitration award. *See* 9 U.S.C. § 10(a). As such, and in accordance with the considerable deference the Court must afford to the arbitrator's decision, the Court grants Cox LLP's motion to confirm[.]"). In the alternative, CIB respectfully requests that the Court authorize jurisdictional discovery.

---

[7] Those transfers are themselves forum-related conduct supporting jurisdiction, yet the details of their scope lie within Yuan's exclusive knowledge.

Dated: June 22, 2026

Respectfully submitted,
KING & WOOD LLP

By: /s/ *Ge Yan*

Yan Ge (State Bar #236566)
geyan@cn.kingandwood.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kingandwood.com
KING & WOOD LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226
Vincent Filardo Jr. (*pro hac vice*)
Vincent.filardo@us.kingandwood.com
600 5th Avenue, 27th Floor
New York, NY 10020
Telephone: +1 347 926 7570

SPERTUS, JOSEPHS & MINNICK, LLP

Kevin J. Minnick (State Bar #269620)
kminnick@spertuslaw.com
617 W. 7th St., Ste 200
Los Angeles, CA 90017
Telephone: +1 213 205 6520

*Attorneys For Petitioner*
*Industrial Bank Co., Ltd. Shenzhen Branch*

- 23 -

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Petitioner Industrial Bank Co., Ltd. Shenzhen Branch, certifies that this submission uses generative artificial intelligence. If generative artificial intelligence was used, following drafting, I reviewed, revised, and supplemented all portions of the brief, including those that were informed by the use of Artificial Intelligence or based on prior templates. I independently verified the factual and legal accuracy of the content and confirmed that all arguments and authorities were appropriate to the issues presented.

The undersigned, counsel of record for Petitioner Industrial Bank Co., Ltd. Shenzhen Branch, also certifies that this brief contains 6962 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

____Complies with the word limit set by court order dated _____ [date].

Counsel relies on the word count of the word-processing application used to prepare the brief.

Case No.  2:26-cv-01256-ODW-ADS
CIB'S OPPOSITION TO FUER YUAN'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS

Dated: June 22, 2026          KING & WOOD LLP
Yan Ge

By: /s/ *Yan Ge*

Yan Ge (State Bar #236566)
geyan@cn.kingandwood.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kingandwood.com
KING & WOOD LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

Vincent Filardo Jr. (*pro hac vice*)
Vincent.filardo@us.kingandwood.com
600 5th Avenue, 27th Floor
New York, NY 10020
Telephone: +1 347 926 7570

SPERTUS, JOSEPHS & MINNICK, LLP

Kevin J. Minnick (State Bar #269620)
kminnick@spertuslaw.com
617 W. 7th St., Ste 200
Los Angeles, CA 90017
Telephone: +1 213 205 6520

*Attorneys For Petitioner*
*Industrial Bank Co., Ltd. Shenzhen Branch*

- 25 -