# EXHIBIT C

This page is part of your document - DO NOT DISCARD

# 20180706772

Pages: 0063

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/16/18 AT 08:00AM

| | |
|---|---|
| FEES: | 270.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 495.00 |

LEADSHEET

201807160990010

00015483771

009214040

SEQ:
01

SECURE - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED

E248987

E08_180716_6023260

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

Baker & McKenzie
300 E Randolph St
#5000
Chicago Il 60601

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust

Title of Document

Stewart Title

01180-292697

PREPARED BY AND UPON
RECORDATION RETURN TO:

Baker & McKenzie LLP
300 East Randolph Street
Suite 5000
Chicago, Illinois 60601
Attention: Sarah H. Winston, Esq.

Assessor's Parcel Nos.: *see Exhibit A* *[Space Above This Line For Recorder's Use]*

JIA YUAN USA CO., INC.
(Grantor)

To

STEWART TITLE OF CALIFORNIA, INC. as trustee
(Trustee)

for the benefit of China CITIC Bank International Limited
(Beneficiary)

**CONSTRUCTION DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT,**
**FINANCING STATEMENT AND FIXTURE FILING**

Dated: As of May 23, 2018

Location: 1020 S. Figueroa Street
1046 S. Figueroa Street
1060 S. Figueroa Street
730 W. Olympic Blvd.
1049 S. Flower Street
Los Angeles, California

County: Los Angeles

File No.: ____

MERS MIN: ____

6779597-v5A\HKGDMS

1

**CONSTRUCTION DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT,**
**FINANCING STATEMENT AND FIXTURE FILING**

**THIS CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING** ("*Deed of Trust*") is made as of ______________, 2018, by **JIA YUAN USA CO., INC.**, a Delaware corporation ("*Grantor*"), with a mailing address of 801 S. Figueroa Street, Suite 1800, Los Angeles, California 90017, to Stewart Title of California, Inc., a California corporation as Trustee ("*Trustee*"), with a mailing address of 525 N. Brand Boulevard, Glendale, California 91203 for the benefit of CHINA CITIC BANK INTERNATIONAL LIMITED, in its capacity as security agent and trustee for the Secured Parties (in this capacity, "*Beneficiary*") with the mailing address of 80/F, International Commerce Centre, 1 Austin Road West, Kowloon, Hong Kong.

**W I T N E S S E T H:**

**WHEREAS**, pursuant to the terms and conditions of that certain Facility Agreement dated as of even date herewith, made by and between Jia Yuan Holdings Company Limited, a BVI business company incorporated under the laws of the British Virgin Islands ("*Borrower*"); Hazens Investment, LLC, a limited liability company incorporated under the laws of California ("*Guarantor 1*"); Hezheng Holdings Company Limited, a BVI business company incorporated under the laws of the British Virgin Islands ("*Guarantor 2*", together with Guarantor 1, the "*Guarantors*"); China CITIC Bank International Limited, as lead arranger, as agent of the Finance Parties (as defined therein) (other than itself), and as security agent and trustee for the Secured Parties (as defined therein); and the banks and financial institutions listed on Schedule 1 therein (as the same may hereafter be amended, modified, supplemented, or extended from time to time, the "*Facility Agreement*"), Beneficiary and the Finance Parties are extending financial accommodations to Borrower in the principal amount of ONE HUNDRED NINETY MILLION U.S. DOLLARS (US$190,000,000.00) (the "*Loan*"),

**WHEREAS,** the Facility Agreement provides, among other things, for final payment of principal and interest under the Loan, if not sooner paid or payable as provided therein, to be due on or before the date that falls thirty-six (36) months from the first Utilisation Date (as defined in the Facility Agreement) (the "*Final Maturity Date*") or the date that falls forty-eight (48) months from the first Utilisation Date (the "*Extended Final Maturity Date*") (as the case may be), and is hereby incorporated by this reference; and

**WHEREAS**, Beneficiary is desirous of securing the prompt payment of the Loan and other amounts due from Borrower to Beneficiary pursuant to the Facility Agreement, including, without limitation, any Secured Indebtedness as defined in the Facility Agreement, together with interest, charges and prepayment fees, if any, thereon in accordance with the terms thereof, and any additional indebtedness accruing to Beneficiary on account of any future payments, advances or expenditures made by Beneficiary pursuant to the Facility Agreement or this Deed of Trust and any additional sums with interest thereon which may be loaned to Borrower by Beneficiary or advanced under the Loan Documents (as hereinafter defined) (all hereinafter sometimes collectively referred to as the "*Indebtedness*").

2

**NOW, THEREFORE**, Grantor, to secure payment of the Indebtedness and the performance of the covenants and agreements herein contained to be performed by Grantor, for good and valuable consideration in hand paid, the receipt and sufficiency whereof are hereby acknowledged, and intending to be legally bound, hereby agrees and covenants as follows:

1. **Granting Clauses.** Grantor hereby irrevocably and absolutely does by these presents GRANT AND CONVEY, WARRANT, SET OVER, TRANSFER, ASSIGN, BARGAIN AND SELL, with power of sale and right of entry and possession, to Trustee, and its successors and assigns in trust, for the benefit of Beneficiary, its successors and assigns, with all powers of sale and all statutory rights under the laws of the State of California, and grants to Trustee, for the benefit and security of Beneficiary, its successors and assigns, a security interest in, all of Grantor's present and hereafter acquired estate, right, title and interest in, to and under the following (collectively referred to herein as the "***Premises***"):

(a) That certain real property situated in Los Angeles County, California, for the benefit of Beneficiary and its successors and assigns and more particularly described in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "***Land***"), together with all buildings, structures and improvements now or hereafter erected on the Land, together with all fixtures and items that are to become fixtures thereto (collectively, the "***Improvements***");

(b) All and singular the easements, rights-of-way, licenses, permits, rights of use or occupancy, privileges, tenements, appendages, hereditaments and appurtenances and other rights and privileges attached or belonging to the Land or Improvements or in any wise appertaining thereto, whether now or in the future, and all the rents, issues and profits from the Land or Improvements;

(c) The land lying within any street, alley, avenue, roadway or right-of-way open or proposed or hereafter vacated in front of or adjoining the Land; and all right, title and interest, if any, of Grantor in and to any strips and gores adjoining the Land;

(d) All machinery, apparatus, equipment, goods, systems, building materials, carpeting, furnishings, fixtures, fittings, appliances, furniture and property of every kind and nature whatsoever, now or hereafter located in or upon or affixed to the Land or Improvements, or any part thereof, or used or usable in connection with any construction on or any present or future operation of the Land or Improvements, now owned or hereafter acquired by Grantor, including, but without limitation of the generality of the foregoing: all right, title and interest of Grantor in and to the furnishings, fixtures and equipment owned by any operator with respect to any hotel portion of the Premises, pursuant to an operating agreement to be entered into by Grantor and such operator, and subject to the approval of Beneficiary, or otherwise, all heating, lighting, refrigerating, ventilating, air-conditioning, air-cooling, electrical, fuel, garbage, sanitary drainage, removal of dust, refuse or garbage, fire extinguishing, plumbing, cleaning, telephone, communications and power equipment, systems and apparatus; and all elevators, switchboards, motors, pumps, screens, awnings, floor coverings, cabinets, partitions, conduits, ducts and compressors; and all cranes and craneways, oil storage, sprinkler/fire protection and water service equipment; and also including any of such property stored on the Land or Improvements or in warehouses and intended to be used in connection with or incorporated into the Land or Improvements or for the pursuit of any other activity in which Grantor may be engaged on the Land or Improvements, and including without limitation all beds, bureaus, chiffonniers, chests, chairs, desks, lamps, mirrors, bookcases, tables, rugs, carpeting, drapes, draperies, curtains, shades, venetian blinds, screens, paintings, hangings, pictures, divans, couches, luggage carts, luggage racks, stools, sofas, chinaware, linens, pillows, blankets, glassware, silverware, food carts, cookware, dry cleaning facilities, dining room wagons, keys or other entry systems, bars, bar fixtures, liquor and other drink dispensers, icemakers, radios, television sets, intercom and paging equipment, electric and electronic equipment, dictating equipment, private telephone systems, medical equipment, potted plants, tools, musical instruments and systems, cabinets, awnings, window shades, venetian blinds, drapes and drapery rods and brackets, screens, carpeting and

other window and floor coverings, decorative fixtures, plants, cleaning apparatus, and cleaning equipment, refrigeration equipment, cables, computers, software, books, supplies, kitchen equipment, appliances, tractors, motor vehicles, lawn mowers, ground sweepers and tools, swimming pools, whirlpools, recreational or play equipment together with all substitutions, accessions, repairs, additions and replacements to any of the foregoing; it being understood and agreed that all such machinery, equipment, apparatus, goods, systems, fixtures, fittings, appliances, furniture, building materials and property are a part of the Improvements, and are declared to be a portion of the security for the Indebtedness (whether in single units or centrally controlled, and whether physically attached to said real estate or not), excluding, however, personal property owned by tenants and any guests of the Land or Improvements;

(e) Any and all awards, payments or insurance proceeds, including interest thereon, and the right to receive the same, which may be paid or payable with respect to the Land or Improvements or other properties described above as a result of: (1) the exercise of the right of eminent domain or action in lieu thereof; or (2) the alteration of the grade of any street; or (3) any fire, casualty, accident, damage or other injury to or decrease in the value of the Land or Improvements or other properties described above, to the extent of all amounts which may be secured by this Deed of Trust at the date of receipt of any such award or payment by Grantor or Beneficiary, and of the reasonable counsel fees, costs and disbursements incurred by Grantor or Beneficiary in connection with the collection of such award or payment. Grantor agrees to execute and deliver, from time to time, such further instruments as may be requested by Beneficiary to confirm such assignment to Beneficiary of any such award or payment;

(f) Any and all accounts receivable and any right of Grantor to payment for goods sold or leased or for services rendered, whether or not yet earned by performance, and whether or not evidenced by an instrument or chattel paper, arising from the operation of the Land or Improvements, now existing or hereafter created, substitutions therefor, proceeds thereof (whether cash or noncash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof and any or all of the foregoing and proceeds therefrom, all income, rents, room rates, issues, profits, revenues, deposits, accounts, and other benefits from the operation of any hotel on the Land and/or the Improvements, including, without limitation, all revenues and credit card receipts collected from guest rooms, restaurants, bars, mini-bars, meeting rooms, banquet rooms and recreational facilities and otherwise, all receivables, customer obligations, instalment payment obligations and other obligations now existing or hereafter arising or created out of sale, lease, sublease, license, concessions or other grant of the right of the possession, use or occupancy of all or any portion of the Land and/or Improvements, or personalty located thereon, or rendering of services by Grantor or any operator or manager of any hotel or any commercial or retail space located in the Improvements or acquired from others including without limitation, from the rental of any office space, retail space, commercial space, guest room or other space, halls, stores or offices, including any deposits securing reservations of such space, exhibit or sales space of every kind, license, lease, sublease and concession fees and rentals, health club membership fees, food and beverage wholesale and retail sales, service charges and vending machine sales;

(g) Any and all authorizations, licenses, permits, contracts, management agreements, franchise agreements, and occupancy and other certificates concerning the ownership, use and operation of the Land or Improvements

(h) All monies on deposit for the payment of real estate taxes or special assessments against the Land or Improvements or for the payment of premiums on policies of fire and other hazard insurance covering the Collateral (as hereinafter defined) or the Land or Improvements; all proceeds paid for damage done to the Collateral or the Land or Improvements; all proceeds of any award or claim for damages for any of the Collateral or the Premises taken or damaged under the power of eminent domain

or by condemnation; and all tenants' or security deposits held by Grantor in respect of the Land or Improvements;

(i) All leases, subleases, subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any person or entity is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Grantor of any petition for relief under any creditors rights laws (collectively, the "***Leases***") and all right, title and interest of Grantor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Grantor or its agents or employees from any and all sources arising from or attributable to the Land and the Improvements, including, all receivables, customer obligations, instalment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Grantor or any operator or manager of the hotel or the commercial space located in the Improvements or acquired from others including, without limitation, from the rental of any office space, retail space, commercial space, parking space, guest rooms or other space, halls, stores or offices, including any deposits securing reservations of such space, exhibit or sales space of every kind, license, lease, sublease and concession fees and rentals, health club membership fees, food and beverage wholesale and retail services, service charges, vending machine sales and proceeds, if any, from business interruption or other loss of income insurance whether paid or accruing before or after the filing by or against Grantor of any petition for relief under any creditors rights laws (collectively, the "***Rents***") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Grantor;

(j) Any and all shares of stock, membership or partnership interest or other evidence of ownership of any part of the Land or Improvements that is owned by Grantor in common with others including all water stock, water and water rights of all kinds and nature relating to the Land or Improvements, if any, and all documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Land or Improvements and any management agreements, including, without limitation, all of Grantor's right as property owner and declarant thereunder or otherwise, under any condominium declaration which may at any time affect all or any portion of the Premises;

(k) Any and all plans and specifications prepared for construction of improvements on the Land or Improvements and all studies, data and drawings related thereto; and all contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings, or to the construction of improvements on the Land or Improvements;

(l) Any and all of Grantor's right, title and interest in, to and under any and all reserve, deposit or escrow accounts made pursuant to any loan documents made between Grantor and Beneficiary with respect to the Land or Improvements, together with all income, profits, benefits and advantages arising therefrom;

5

(m) Any and all goods, accounts, general intangibles, chattel paper, instruments, documents, consumer goods, equipment and inventory (as defined in the California Uniform Commercial Code ("***UCC***")) now owned or hereafter acquired by Grantor and located on and used in the operation of the Land or Improvements;

(n) All of Grantor's right, title and interest in and to deposit accounts and letter of credit rights (as defined in the UCC);

(o) Any and all substitutions, accessions, additions and replacements to any of the foregoing;

(p) Any and all products and proceeds of any of the foregoing, or with respect to the Land or Improvements, including without limitation, insurance proceeds, proceeds of any voluntary or involuntary disposition or diminution in value of any of the foregoing or of the Land or Improvements, and any claim respecting any thereof (pursuant to judgment, condemnation award or otherwise) and all goods, accounts, general intangibles, chattel paper, instruments, documents, consumer goods, equipment and inventory, wherever located, acquired with the proceeds of any of the foregoing or proceeds thereof. For purposes of this Deed of Trust, the term "***proceeds***" means whatever is received when any of the foregoing or the proceeds thereof (including, without limitation, cash proceeds) is sold, exchanged or otherwise disposed of (including involuntary dispositions or destruction and claims for damages thereto), including without limitation cash proceeds, insurance proceeds, condemnation proceeds, and any other rights or property arising under or receivable upon any such disposition; and

(q) Any and all other rights of Grantor in and to the items set forth in subsections (a) through (p) above.

The parties intend the definition of Premises to be broadly construed and in the case of doubt as to whether a particular item is to be included in the definition of Premises, the doubt should be resolved in favor of inclusion.

**TO HAVE AND TO HOLD** the Premises with all rights, privileges and appurtenances thereunto belonging, and all income, rents, royalties, revenues, issues, profits and proceeds therefrom, unto Trustee, its successors and assigns, forever, for the uses and purposes herein expressed.

**THIS DEED OF TRUST IS GIVEN TO SECURE**: Payment of the Indebtedness; payment of such additional sums with interest thereon which may hereafter be loaned to Borrower by Beneficiary pursuant to the Facility Agreement or otherwise advanced under the Loan Documents (the "***Loan***"), including without limitation advances made by Beneficiary to protect the Premises or the lien of this Deed of Trust or to pay taxes, assessments, insurance premiums, and all other amounts that Grantor has agreed to pay pursuant to the provisions hereof or that Beneficiary has incurred by reason of the occurrence of an Event of Default (as hereinafter defined); and the due, prompt and complete performance of each and every covenant, condition and agreement contained in this Deed of Trust, and the Facility Agreement, and every other agreement, document and instrument to which reference is expressly made in this Deed of Trust or which at any time evidences or secures the Indebtedness evidenced by this Deed of Trust (this Deed of Trust, the Facility Agreement and any guaranty of the Indebtedness in favor of Beneficiary, if any, and all such other agreements, documents and instruments, including all Finance Documents set forth in the Facility Agreement, are hereinafter sometimes collectively referred to as the "***Loan Documents***"). Grantor hereby warrants that Grantor has good and marketable title to the Premises, is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that Grantor will forever warrant and defend the title to the Premises unto Beneficiary against the claims of all persons whomsoever; and that the Premises are unencumbered except as set forth on Beneficiary's title insurance policy dated on or about even date herewith regarding the Premises.

6

2. **Maintenance, Repair and Restoration of Improvements, Payment of Prior Liens, etc.** Grantor shall: (a) promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed, such Improvements to be of at least equal value and substantially the same character as prior to such damage or destruction; (b) keep the Premises in good condition and repair, without waste, and free from mechanics' liens or other liens or claims for lien (except the lien of current general taxes duly levied and assessed but not yet due and payable); (c) immediately pay when due or within any applicable grace period any indebtedness which may be secured by a lien or charge on the Premises (no such lien, except for current general taxes duly levied and assessed but not yet payable, to be permitted hereunder), and upon request exhibit satisfactory evidence to Beneficiary of the discharge of such lien; (d) complete within a reasonable time any Improvements now or at any time in process of erection upon the Land; (e) comply with all requirements of law (including, without limitation, pollution control and environmental protection laws and laws relating to the accommodation of persons with disabilities), ordinance or other governmental regulation in effect from time to time affecting the Premises and the use thereof, and covenants, easements and restrictions of record with respect to the Premises and the use thereof; (f) make no material alterations in the Premises; (g) suffer or permit no material change in the general nature of the use of the Premises, without Beneficiary's written consent; (h) initiate or acquiesce in no zoning reclassification or variance with respect to the Premises without Beneficiary's written consent; and (i) pay each item of Indebtedness when due according to the terms hereof or of the Loan Documents.

3. **Payment of Taxes.** Grantor shall pay thirty (30) days before any delinquency or any penalty or interest attaches all general taxes, special taxes, special assessments, water charges, sewer service charges, and all other charges against the Premises of any nature whatsoever when due, and shall, upon written request, furnish to Beneficiary duplicate receipts therefor.

4. **Representations and Warranties**. Grantor hereby (a) makes the representations and warranties set out in clause 18 (*Representations*) of the Facility Agreement to the Beneficiary as if it were the Borrower and the relevant clauses of the Facility Agreement shall be deemed to be incorporated into this Deed of Trust as if they are set out in full in this Deed of Trust, in each case *mutatis mutandis* and in particular as if each reference in them to the Borrower or an Obligor or the Borrower Group or a member of the Borrower Group were reference to Grantor and each reference in them to a Finance Document were reference to this Deed of Trust and (b) undertakes and agrees with Beneficiary that it will comply with each of the undertakings set out in clauses 20 (*General Undertakings*) and 21 (*Development Undertakings*) of the Facility Agreement (other than clauses 20.17 (*Intra-Group Indebtedness*), 20.19 (*Borrower DSRA Account*), 20.22 (*Dividend/distribution*), 20.24 (*Use of Proceeds of Loans*) and 21.2 (*Funding*)), in each case as if it were the Borrower and the relevant clauses of the Facility Agreement shall be deemed to be incorporated into this Deed of Trust as if they are set out in full in this Deed of Trust, in each case mutatis mutandis and in particular as if each reference in them to the Borrower or an Obligor or the Borrower Group or a member of the Borrower Group were reference to Grantor and each reference in them to a Finance Document were reference to this Deed of Trust.

5. **Beneficiary's Interest In and Use of Deposits.** Upon the occurrence of an Event of Default, Beneficiary may at its option, without being required to do so, apply any monies at the time on deposit hereunder, on any of Grantor's obligations herein or in the Loan Documents contained, in such order and manner as the Beneficiary may elect. When the Indebtedness has been fully paid, any remaining deposits shall be paid to Grantor or to the then owner or owners of the Premises. A security interest within the meaning of the UCC is hereby granted to the Beneficiary in and to any monies at any time on deposit pursuant to the terms hereof and such monies and all of Grantor's right, title and interest therein are hereby assigned to Beneficiary, all as additional security for the Indebtedness and shall in the absence of the occurrence of an Event of Default be applied by the depositary for the purposes for which made hereunder and shall not be subject to the direction or control of Grantor; provided, however, that neither Beneficiary nor said depositary shall be liable for any failure to apply to the payment of taxes and

assessments and insurance premiums any amount so deposited. Neither Beneficiary nor any depositary hereunder shall be liable for any act or omission taken in good faith or pursuant to the instruction of any party but only for its willful misconduct.

6. **Insurance.**

(a) Until the Indebtedness is fully paid, the Improvements and all fixtures, equipment and property therein contained or installed shall be insured as set forth on Exhibit B attached hereto and made a part hereof. All such insurances shall be written by a company or companies approved by Beneficiary. All policies of insurance and renewals thereof shall contain standard noncontributory mortgagee loss payable clauses to Beneficiary. Upon request by Beneficiary, Grantor shall furnish Beneficiary evidence of the replacement cost of the Improvements. In case of sale pursuant to a foreclosure of this Deed of Trust or other transfer of title to the Premises and extinguishment of the Indebtedness, complete title to all policies, other than liability insurance policies, held by Beneficiary and all prepaid or unearned premiums thereon shall pass to and vest in the purchaser or mortgagee/beneficiary. Beneficiary shall not by reason of accepting, rejecting, approving or obtaining insurance incur any liability for payment of losses.

(b) Grantor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder.

7. **Intentionally omitted.**

8. **Adjustment of Losses with Insurer and Application of Proceeds of Insurance.**

(a) In case of loss or damage by fire or other casualty, Grantor shall immediately give Beneficiary and the insurance companies that have insured against such risks written notice of such occurrence, which shall include:

(i) evidence satisfactory to Beneficiary of the cost of repair or reconstruction;

(ii) evidence satisfactory to Beneficiary that sufficient funds are available or committed for the benefit of Beneficiary, including insurance proceeds, payment and performance bonds, or otherwise, to complete the repair or reconstruction;

(iii) evidence satisfactory to Beneficiary that the repair or reconstruction may be completed in accordance with all applicable laws, rules, regulations, and ordinances and that all necessary permits and approvals have been or will be obtained; and

(iv) evidence satisfactory to Beneficiary that the take out lender has agreed to extend, if necessary, the take out commitment until the repair or reconstruction has been completed.

(b) In case of loss or damage by fire or other casualty, Grantor shall, if no Event of Default then exists hereunder, have the sole and exclusive right to settle, compromise or adjust any claim under, and receive, for the purpose of rebuilding and restoration, the proceeds arising from, any and all losses payable under insurance policies to the extent the amount thereof does not exceed Two Hundred Fifty Thousand and No/100 Dollars (US$250,000.00) and all claims for losses in excess of said amount shall be settled, compromised or adjusted only with the mutual agreement of Grantor and Beneficiary and the proceeds paid as hereinafter provided. In the event insurance proceeds in excess of Two Hundred Fifty Thousand and No/100 Dollars (US$250,000.00) are payable or if an Event of Default exists hereunder, then in either of such events, Beneficiary is authorized to collect and receipt for any insurance proceeds. Insurance proceeds collected by Beneficiary as aforesaid, after deducting therefrom any

8

expenses incurred in the collection thereof, shall, if requested by Grantor in writing within thirty (30) days after the proceeds of insurance covering such damage or destruction become available, be made available to Grantor for the purpose of paying the cost of rebuilding or restoring of the Improvements if (i) the Premises, in Beneficiary's sole and absolute discretion is capable of being restored to that condition which existed immediately prior to the damage or loss, (ii) the insurance proceeds, together with all other funds which are to be provided by Grantor, are sufficient to restore the Premises, (iii) Beneficiary determines that income from the Premises shall not be materially affected following the completion of the restoration or rebuilding; (iv) no Event of Default then exists hereunder or under any other Loan Document, and no circumstance or condition exists that would constitute an Event of Default upon the giving of notice or the passage of time, or both, and (v) the rebuilding and restoration is reasonably estimated to be completed at least one hundred eighty (180) days prior to the Maturity Date. In the event that Beneficiary makes said proceeds available to Grantor to pay the cost of rebuilding or restoring of the Improvements, such proceeds shall be made available in the manner and under the conditions that the Beneficiary may reasonably require to assure proper application of such proceeds. In the event such insurance proceeds are made available by the Beneficiary, the Grantor shall pay all costs incurred by Beneficiary in connection with the application of such insurance proceeds (including but not limited to reasonable costs incurred by Beneficiary, and a title company or agent approved by Beneficiary in overseeing the disbursement of such insurance proceeds). The Improvements shall be restored or rebuilt so as to be of at least equal value and substantially the same character as prior to such damage or destruction. If the projected cost of rebuilding, repairing or restoring of the Improvements exceeds the sum of Three Hundred Thousand Dollars (US$300,000.00), then insurance proceeds shall not be made available to Grantor unless and until Beneficiary has approved plans and specifications for the proposed rebuilding and restoration, which approval shall not be unreasonably withheld. If the proceeds are to be made available by Beneficiary to Grantor to pay the cost of said rebuilding or restoration, any surplus which may remain out of said insurance proceeds after payment of the costs of rebuilding or restoring the Premises shall, at the option of the Beneficiary, be applied on account of the Indebtedness or be paid to any party entitled thereto under such conditions as Beneficiary may reasonably require. No interest shall be allowed to Grantor on any proceeds held by Beneficiary.

(c) In the event proceeds of insurance are not made available to Grantor for the purpose of paying the cost of the rebuilding or restoring of the Improvements, Beneficiary, after deducting the costs of any collection, adjustment and compromise, shall apply such insurance proceeds upon the Indebtedness in accordance with terms of the Loan Documents.

9. **Stamp Tax.** If, by the laws of the United States of America, or of any state having jurisdiction over Grantor, any tax is due or becomes due in respect of the Facility Agreement, this Deed of Trust, or any other Loan Document, Grantor covenants and agrees to pay such tax in the manner required by any such law. Grantor further covenants to reimburse Beneficiary for any sums which Beneficiary reasonably expends by reason of the imposition of any tax on the Facility Agreement, this Deed of Trust, or the Loan Documents.

10. **Observance of Lease Assignment.**

(a) As additional security for the payment pursuant to the Facility Agreement secured hereby and for the faithful performance of the terms and conditions contained herein, Grantor, as landlord, herby assigns to Beneficiary, all of Grantor's right, title and interest as landlord in and to all leases or other rights of use and or occupancy of any part of the Premises (including, without limitation, any operating agreement with respect to any hotel portion of the Premises), both present and future (hereinafter collectively referred to as the "***Leases***") and all of the rents, issues and profits from the Leases or guaranties thereof (hereinafter collectively referred to as the "***Rents***").

9

(b) (i) Grantor will not, without Beneficiary's prior written consent, make any Leases for residential use (each, a "***Residential Lease***") except in the ordinary course for actual occupancy by a bona fide, arm's length tenant pursuant to a standard lease form approved by Beneficiary.

(ii) Unless approved in advance by Beneficiary, all Leases for retail use, including, without limitation, any lease for the restaurant portion of the Improvements (each, a "***Retail Lease***") shall (A) be bona fide arms-length transactions with a third party, (B) not contain any rental or other concessions which are not approved by Beneficiary, (C) provide that the tenant pay a pro rata share (based on square footage of space) of, or increases in, taxes, insurance or other operating expenses, and (D) be on a form approved by Beneficiary.

(iii) If required by Beneficiary, Grantor shall cause any operator under any operating agreement with respect to any hotel portion of the Premises to enter into a subordination and non-disturbance agreement with Beneficiary in a form approved by Beneficiary.

(c) All modifications to Leases that are not expressly subordinated to this Deed of Trust must be approved by Beneficiary (to the extent required by Beneficiary). Grantor acknowledges that no Lease for which Beneficiary executes a subordination non-disturbance and attornment agreement shall be considered automatically subordinate.

(d) Grantor will not, without Beneficiary's prior written consent: (i) execute an assignment or pledge of any Rents and/or any Leases; or (ii) accept any prepayment of any instalment of any Rents more than thirty (30) days before the due date of such instalment, and in any event no more than thirty (30) days in advance of the then current month. The foregoing shall not prohibit Grantor from collecting security deposits, and first and last month's rent from any residential or commercial tenant.

(e) Grantor at its sole cost and expense will: (i) at all times promptly and faithfully abide by, discharge and perform all of the covenants, conditions and agreements contained in all Leases, on the part of the landlord thereunder to be kept and performed; (ii) enforce or secure the performance of all of the covenants, conditions and agreements of the Leases on the part of the lessees to be kept and performed, but Grantor shall not modify, amend, renew, extend, cancel, terminate or accept surrender of any Lease without the prior written consent of Beneficiary; (iii) appear in and defend any action or proceeding arising under, growing out of or in any manner connected with the Leases or the obligations, duties or liabilities of landlord or of the lessees thereunder; (iv) upon written request of Beneficiary, transfer and assign to Beneficiary, any Lease or Leases heretofore or hereafter entered into, and make, execute and deliver to Beneficiary upon demand, any and all instruments required to effectuate said assignment; (v) furnish Beneficiary, within ten (10) days after a request by Beneficiary to do so, a written statement containing the names of all lessees, terms of all Leases, including the spaces occupied and the rentals payable thereunder; and (vi) exercise within five (5) days of any demand therefor by Beneficiary any right to request from the lessee under any Lease a certificate with respect to the status thereof.

(f) Nothing in this Deed of Trust or in any other documents relating to the Loan shall be construed to obligate Beneficiary, expressly or by implication, to perform any of the covenants of Grantor as landlord under any of the Leases assigned to Beneficiary or to pay any sum of money or damages therein provided to be paid by the landlord, each and all of which covenants and payments Grantor agrees to perform and pay.

(g) Grantor will not permit any Lease or any part thereof to become subordinate to any lien other than the lien hereof.

(h) Beneficiary shall have the option to declare this Deed of Trust in default because of a material default of landlord in any Lease of the Premises unless such material default is cured by Grantor pursuant to the terms of the Lease and within any applicable cure period or unless such default would not permit the tenant to terminate the Lease. It is covenanted and agreed that an Event of Default under the Facility Agreement shall constitute an Event of Default hereunder on account of which the whole of the Indebtedness shall at once, at the option of the Beneficiary, become immediately due and payable without notice to the Grantor.

(i) Grantor shall not, and shall not permit any tenant to, conduct any on-site dry cleaning operations on the Premises, without the consent of Beneficiary.

(j) In the event of the enforcement by Beneficiary of the remedies provided for by law or by this Deed of Trust, the lessee under each Lease of the Premises shall, at the option of Beneficiary, attorn to any person succeeding to the interest of Grantor as a result of such enforcement and shall recognize such successor in interest as landlord under such Lease without change in the terms or other provisions thereof; provided, however, that said successor in interest shall not be bound by any payment of rent or additional rent for more than one month in advance or any amendment or modification to any Lease made without the consent of Beneficiary or said successor in interest. Each lessee, upon request by said successor in interest, shall execute and deliver an instrument or instruments confirming such attornment.

(k) This Paragraph 10 shall be fully operative and effective to create a present security interest in existing and future Rents under California Civil Code § 2938 without any further action on the part of Grantor or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents whether or not Beneficiary takes possession of the Premises.

(l) Any entering upon and taking and maintaining of control of the Premises or the Rents by Beneficiary or the receiver and any application of Rents as provided herein shall not: (i) constitute Beneficiary as a "mortgagee in possession" unless affirmatively elected by Beneficiary in writing; (ii) make Beneficiary an agent of Grantor; (iii) constitute an action, render the Indebtedness unenforceable, violate Section 726 of the California Code of Civil Procedure, or otherwise limit any rights available to Beneficiary with respect to its security; or (iv) be deemed to create any bar to a deficiency judgment on the Indebtedness. Beneficiary shall not be liable to Grantor, anyone claiming under or through Grantor or anyone having an interest in the Property by reason of anything done or left undone by Beneficiary hereunder, except as may be due to gross negligence or intentional acts of Beneficiary, its employees or agents. Neither Beneficiary's application nor Beneficiary's failure to apply the Rents in accordance with the terms hereof shall result in a loss of any lien or security interest which Beneficiary may have in the Property, render the Indebtedness unenforceable, constitute a violation of Section 726 of the Code of Civil Procedure, or otherwise limit any right available to Beneficiary with respect to its security.

11. **Effect of Extension of Time**. If the payment of the Indebtedness, or any part thereof, is extended or varied, or if any part of any security for the payment of the Indebtedness is released, or if any person or entity liable for the payment of the Indebtedness is released, or if Beneficiary takes other or additional security for the payment of the Indebtedness, or if Beneficiary waives or fails to exercise any right granted herein, or in the Loan Documents, or in any other instrument given to secure the payment hereof, then all persons now or at any time hereafter liable for the payment of the Indebtedness, or any part thereof, or interest in the Premises shall be held to assent to such extension, variation, release, waiver, failure to exercise or the taking of additional security, and their liability and the lien and all provisions hereof shall continue in full force, the right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release, waiver, failure to exercise, or the taking of additional security.

11

12. **Effect of Changes in Laws Regarding Taxation.** In the event of the enactment after this date of any law of the state in which the Premises are located deducting from the value of the Premises for the purpose of taxation any lien thereon, or imposing upon the Beneficiary the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Grantor, or changing in any way the laws relating to the taxation of mortgages/deeds of trust or debts secured by mortgages/deeds of trust or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the debt secured hereby or the holders thereof, then, and in any such event, Grantor, upon demand by Beneficiary, shall pay such taxes or assessments, or reimburse Beneficiary therefor if Beneficiary pays such taxes and submits proof of payment to Grantor; provided, however, that if in the opinion of counsel for Beneficiary: (i) it might be unlawful to require Grantor to make such payment, or (ii) the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law; then and in such event, Beneficiary may elect, by notice in writing given to Grantor, to declare all of the Indebtedness in accordance with the Facility Agreement. Further, any gross up obligations with respect to taxes, as otherwise set forth in the Facility Agreement shall apply to Grantor with respect to any payments required pursuant to this Deed of Trust.

13. **Beneficiary's Performance of Defaulted Acts.** Upon the occurrence of an Event of Default herein, Beneficiary may, but need not, and whether electing to declare the whole of the Indebtedness due and payable or not, and without waiver of any other remedy, make any payment or perform any act herein required of Grantor in any form and manner deemed expedient, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or contest any tax or assessment or cure any default of Grantor as landlord in any Lease. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax referred to in **Paragraphs 9 or 12** hereof or to protect the Premises or the lien hereof, shall be additional Indebtedness and shall become immediately due and payable without notice and with interest thereon at the default rate of interest set forth in the Facility Agreement. Inaction of Beneficiary shall never be considered as a waiver of any right accruing to it on account of any Event of Default on the part of Grantor.

14. **Beneficiary's Reliance on Tax Bills, Etc.** Beneficiary in making any payment hereby authorized: (a) relating to taxes and assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or (b) relating to insurance premiums, may do so according to any bill or statement procured from the appropriate company without inquiry into the accuracy of such bill or statement; or (c) for the purchase, discharge, compromise or settlement of any other prior lien, may do so without inquiry as to the validity or amount of any claim for lien which may be asserted.

15. **Acceleration of Indebtedness in Event of Default.** It is expressly agreed by Grantor that time is of the essence hereof and that the whole of the Indebtedness shall become immediately due and payable without notice to Grantor at the option of the Beneficiary upon the occurrence of one or more of any "Event of Default" (as defined in the Facility Agreement, including, without limitation, any default in the due observance or performance of any covenants, agreements or conditions hereinbefore or hereinafter contained, required to be kept or performed or observed by the Grantor, and such default is not cured within seven (7) days following written notice thereof by Beneficiary to Grantor hereinbefore and hereinafter collectively referred to as "***Events of Default***" and individually referred to as an "***Event of Default***"), together with a prepayment premium in the amount, if any, required to be paid pursuant to the terms of the Facility Agreement in the event of a prepayment.

16. **Remedies.**

(a) Primary Remedies. If an Event of Default shall occur, Beneficiary may: declare the Indebtedness to be and the same shall be, immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived and without regard to the value of the Premises held as security for the Indebtedness or the solvency of any person liable for the payment of such Indebtedness; and/or exercise any other right, power or remedy available to it at law or in equity, hereunder or under any other Loan Document without demand, protest or notice of any kind, all of which are hereby expressly waived, except such as is expressly required hereby or by such other Loan Document. Without limiting the generality of the foregoing, Trustee or Beneficiary (as applicable under this Deed of Trust and under applicable law) may:

(i) to the extent permitted by applicable law, enter and take possession of the Premises or any part thereof, exclude Grantor and all persons claiming under Grantor wholly or partly therefrom, and operate, use, manage and control the same, or cause the same to be operated by a person selected by Beneficiary, either in the name of Grantor or otherwise, and upon such entry, from time to time, at the expense of Grantor and of the Premises, make all such repairs, replacements, alterations, additions or improvements thereto as Beneficiary may deem proper, and to lease the Premises or any part thereof at such rental and to such persons as it may deem proper and collect and receive the rents, revenues, issues, profits, royalties, income and benefits thereof including, without limitation, those past due and those thereafter accruing, with the right of Beneficiary to terminate, cancel or otherwise enforce any Lease or sublease for any default that would entitle Grantor to terminate, cancel or enforce same and apply the same to the payment of all expenses which Beneficiary may be authorized to incur under the provisions of this Deed of Trust and applicable laws, the remainder to be applied to the payment, performance and discharge of the Indebtedness in such order as Beneficiary may determine until the same have been paid in full.

(ii) as provided for in **Paragraph 16(h)** below, institute an action for the foreclosure of this Deed of Trust and the sale of the Premises pursuant to the judgment or decree of a court of competent jurisdiction, and in connection therewith, foreclose this Deed of Trust, at Beneficiary's option, for the entire unpaid amount of the Indebtedness;

(iii) exercise Trustee's power of sale granted under this Deed of Trust by selling the Premises to the highest bidder or bidders at public auction at a sale or sales held at such place or places and time or times and upon such notice and otherwise all of the foregoing in such manner as may be required or permitted by law;

(iv) take all action to protect and enforce the rights of Beneficiary under this Deed of Trust, by suit for specific performance of any covenant herein contained, or in aid of the execution of any power herein granted or for the enforcement of any other rights;

(v) exercise any or all of the rights and remedies available to a secured party under the UCC, including the right to (A) enter the Premises and take possession of any personal property without demand or notice and without prior judicial hearing or legal proceedings, which Grantor hereby expressly waives, (B) require Grantor to assemble any personal property, or any portion thereof, and make it available to Beneficiary at a place or places designated by Beneficiary and reasonably convenient to both parties and (C) sell all or any portion of the personal property at public or private sale, without prior notice to Grantor except as otherwise required by law (and if notice is required by law,

13

after ten (10) days' prior written notice), at such place or places and at such time or times and in such manner and upon such terms, whether for cash or on credit, as Beneficiary in its sole discretion may determine. As to any property subject to Article 9 of the UCC included in the Premises, Beneficiary may proceed under the UCC or proceed as to both real and personal property in accordance with the provisions of this Deed of Trust and the rights and remedies that Beneficiary may have at law or in equity, in respect of real property, and treat both the real and personal property included in the Premises as one parcel or package of security. Grantor shall have the burden of proving that any such sale pursuant to the UCC was conducted in a commercially unreasonable manner; and

(vi) terminate any management agreements, management contracts, or agents/managers responsible, for the property management of the Premises, if in the commercially reasonable discretion of Beneficiary such property management is unsatisfactory in any respect.

(b) Receiver. If an Event of Default shall occur, Beneficiary shall be entitled as a matter of right to the appointment of a receiver of the Premises, and the rents, revenues, issues, profits, royalties, income and benefits thereof, without notice or demand, and without regard to the adequacy of the security for the Indebtedness, the value of the Premises or the solvency of Grantor, either before or after any sale, and, Beneficiary may be appointed as such receiver. Subject to applicable law, such receiver shall have, including, without limitation, the power: (i) to collect the rents, issues and profits of the Premises during the pendency of any foreclosure proceedings whether by judicial or non-judicial foreclosure, and, in case of a sale and a deficiency, for such time when Grantor, except for the intervention of such receiver, would be entitled to collect such rents, issues and profits, to the maximum time and extent permitted by law; (ii) to extend or modify any then existing Leases and to make new leases, which extensions, modifications and new leases may provide for terms to expire, or for options to leases to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the secured obligations, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any purchaser; and (iii) all other powers which may be necessary or are usual in such case for the protection, possession, control, management, and operation of the Premises during the whole of said period. The court from time to time may authorize the receiver to apply the net income in the receiver's hands in payment in whole or in part of: (a) the Indebtedness and all obligations hereunder, or by any decree foreclosing this Deed of Trust, or in accordance with applicable non-judicial foreclosure provisions, any tax, special assessment or other lien which may be or become superior to the lien hereof or of such decree; and (b) if this is a leasehold deed of trust, all rents due or which may become due under the underlying lease. Nothing herein shall be construed to limit or otherwise waive Beneficiary's rights to obtain rents, issues and profits, deliver to one or more tenants a written demand to turn over rents, issues and profits or deliver to Grantor a written demand to turn over rents, issues and profits without appointing a receiver.

(c) Sales by Parcels. Trustee, if and as directed by Beneficiary, shall have all of the rights and may exercise all of the powers set forth in applicable Law of the State. In connection with the foregoing powers, Trustee may sell the Premises in its entirety or in parcels, and by one or by several sales, as deemed appropriate by Trustee in its sole and absolute discretion. If Trustee chooses to have more than one foreclosure sale, Trustee may cause the foreclosure sales to be held simultaneously or successively, on the same day, or on such different days and at such different times as Trustee may elect. Before any foreclosure sale, Beneficiary or Trustee shall give such notice of default and election to sell as may be required by applicable law. After the lapse of such time as may then be required by applicable law following the recordation of such notice of default, and notice of sale having been given as then required

by applicable law, Trustee shall sell the property being sold at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary shall have any obligation to make demand on Grantor before any foreclosure sale. From time to time in accordance with then-applicable law, Trustee may, and in any event at Beneficiary's request shall, postpone any foreclosure sale by public announcement at the time and place noticed for that sale. To the full extent permitted by law, Grantor waives the marshalling of assets.

(d) Effect of Sale. The purchaser at any sale made under or by virtue of this Deed of Trust or pursuant to any judgment or decree of court shall take title to the Premises or the part thereof so sold free and discharged of the estate of Grantor therein, the purchaser being hereby discharged from all liability to see to the application of the purchase money. Any person, including Beneficiary, may purchase at any such sale. Beneficiary is hereby irrevocably appointed the attorney-in-fact of Grantor in its name and stead to make all appropriate transfers and deliveries of the Premises or any portions thereof so sold and, for this purpose, Beneficiary may execute all appropriate instruments of transfer, and may substitute one or more persons with like power, Grantor hereby ratifying and confirming all that its said attorneys or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, promptly upon Beneficiary's written request, Grantor shall ratify and confirm, or cause to be ratified and confirmed, any such sale or sales by executing and delivering, or by causing to be executed and delivered, to Beneficiary or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Beneficiary, for the purpose, and as may be designated, in such request. Any sale or sales made under or by virtue of this Deed of Trust, to the extent not prohibited by law, shall operate to divest all the estate, right, title, interest, property, claim and demand whatsoever, whether at law or in equity, of Grantor in, to and under the Premises, or any portions thereof so sold, and shall be a perpetual bar both at law and in equity against Grantor, its successors and assigns, and against any and all persons claiming or who may claim the same, or any part thereof, by, through or under Grantor, or its successors or assigns. The powers and agency herein granted are coupled with an interest and are irrevocable.

(e) Eviction of Grantor After Sale. If Grantor fails or refuses to surrender possession of the Premises after any sale thereof, Grantor shall be deemed a tenant at sufferance, subject to eviction by means of forcible entry and detainer proceedings, provided that this remedy is not exclusive or in derogation of any other right or remedy available to Beneficiary or any purchaser of the Premises under any provision of this Deed of Trust or pursuant to any judgment or decree of court.

(f) Insurance Policies. In the event of a foreclosure sale pursuant to this Deed of Trust or other transfer of title or assignment of the Premises in extinguishment, in whole or in part, of the Indebtedness, all right, title and interest of Grantor in and to all policies of insurance required under the provisions of this Deed of Trust shall inure to the benefit of and pass to the successor in interest of Grantor or the purchaser or grantee of the Premises or any part thereof so transferred.

(a) Foreclosure; Expense of Litigation. As earlier provided for herein, when the Indebtedness hereby secured, or any part thereof shall become due, whether by acceleration or otherwise, Beneficiary shall have the right to foreclose the lien hereof for such Indebtedness or part thereof. In any suit to foreclose the lien hereof, there shall be allowed and included as additional Indebtedness in the decree for sale all expenditures and expenses which may be paid or incurred by or on behalf of Beneficiary for reasonable attorneys' fees, appraiser's fees, actual costs of environmental reviews or audits, outlays for documentary and expert evidence, stenographers' charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurances with respect to the title as Beneficiary may deem reasonably necessary either to prosecute such action or to evidence to bidders at any sale which may be had pursuant to such decree the true condition of the title to or the value of the Premises. All expenditures and expenses of the nature in this **Paragraph** mentioned and such expenses and fees as may be incurred in the protection of the Premises, and the maintenance of

15

the lien of this Deed of Trust, including the reasonable fees of any attorneys employed by Beneficiary in any litigation or proceeding affecting this Deed of Trust, the Loan Documents or the Premises, including appellate, probate and bankruptcy proceedings, or in preparations for the commencement or defense of any proceedings or threatened suit or proceeding shall be immediately due and payable by Grantor, with interest thereon at the default rate of interest set forth in the Facility Agreement and shall be secured by this Deed of Trust. If permitted by applicable law, Beneficiary may sue for and obtain a judgment for any deficiency remaining in the Indebtedness after applications of all amounts received from the exercise of the rights provided in this **Subparagraph 16(g).**

(g) Foreclosure Sale – Deed of Trust Act. If an Event of Default occurs and Beneficiary so requests, Trustee shall sell the Premises in accordance with applicable law. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of sale, including Trustee's fee and reasonable attorneys' fees; (ii) to all the Indebtedness, including all indebtedness secured by this Deed of Trust or any other Loan Document; (iii) the surplus, if any, shall be distributed in accordance with the applicable law. Trustee shall deliver to the purchaser at the sale its deed, without covenant or warranty of title, express or implied, which shall convey to the purchaser the interest in the Premises which Grantor had or had the power to convey at the time of its execution of this Deed of Trust and recite the facts showing that the sale was conducted in compliance with all the requirements of the law and of this Deed of Trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value. The power of sale conferred by this Deed of Trust is not an exclusive remedy, and when not exercised Beneficiary may judicially foreclose this Deed of Trust as a mortgage.

Beneficiary shall have the right to proceed as to the personal property in accordance with Beneficiary's rights and remedies in respect to real property or sell the personal property separately and without regard to the remainder of the Premises in accordance with Beneficiary's rights and remedies provided by the California Uniform Commercial Code as well as other rights and remedies available at law or in equity.

17. **Application of Proceeds.** Unless otherwise provided by applicable law, the proceeds of any sale made either under the power of sale hereby given or under a judgment, order or decree made in any action to foreclose or to enforce this Deed of Trust, shall be applied:

(a) first to the payment of (i) all costs and expenses of such sale, including reasonable attorneys' fees, environmental site assessors fees and costs, appraisers' fees and costs of procuring title searches, title insurance policies and similar items and (ii) all charges, expenses and advances incurred or made by Beneficiary in order to protect the lien or estate created by this Deed of Trust or the security afforded hereby and any expenses of entering, taking possession of and operating the Premises. If a foreclosure proceeding is commenced by the Trustee, Trustee shall be entitled to receive a commission as provided in **Paragraph 42(h)** hereof to the extent permitted by applicable law. If a foreclosure proceeding is terminated prior to its completion, Grantor shall pay all expenses incurred by the Trustee, including reasonable attorney fees, plus a partial commission computed in accordance with this **Paragraph 17** to the extent permitted by applicable law;

(b) then to the payment of any other Indebtedness in such order as Beneficiary may determine until the same have been paid in full; and

(c) any balance thereof shall be paid to Grantor, or to whosoever shall be legally entitled thereto, or as a court of competent jurisdiction may direct.

18. **Rights and Remedies Cumulative.** Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given

16

now or hereafter existing, at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

19. **Beneficiary's Right of Inspection.** Beneficiary shall, upon reasonable notice to Grantor, have the right to inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

20. **Condemnation.**

(a) The Beneficiary may, at its option, in its own name (a) appear or proceed in any condemnation proceeding, and (b) make any compromise or settlement thereof, provided that so long as the Grantor promptly prosecutes any compromise or settlement thereof, the Grantor shall control any compromise or settlement proceeding with the result thereof being subject to the Beneficiary's approval. The Grantor shall give the Beneficiary immediate notice of the initiation of any condemnation proceeding, and a copy of every pleading, notice and other items served in any condemnation proceeding. Grantor hereby assigns, transfers and sets over unto the Beneficiary the entire proceeds of any award or any claim for damages for any of the Premises taken or damaged under the power of eminent domain or by condemnation. Beneficiary may elect to apply the proceeds of the award upon or in reduction of the Indebtedness, whether due or not, or make said proceeds available for restoration or rebuilding of the Premises. In the event that Beneficiary elects, in Beneficiary's sole and absolute discretion, to make said proceeds available to reimburse Grantor for the cost of the rebuilding or restoration of the Improvements, such proceeds shall be made available in the manner and under the conditions that Beneficiary may require. In any event, the Improvements shall be restored or rebuilt in accordance with plans and specifications to be submitted to and approved by Beneficiary prior to commencement of any building or restoration. If the proceeds are made available by Beneficiary to reimburse Grantor for the cost of said rebuilding or restoration, any surplus which may remain out of said award after payment of such cost of rebuilding or restoration shall at the option of Beneficiary be applied on account of the Indebtedness or be paid to any party entitled thereto. No interest shall be allowed to Grantor on the proceeds of any award held by the Beneficiary.

(b) Grantor hereby specifically, unconditionally and irrevocably waives, to the fullest extent permitted by applicable law of the State of California, all rights of property owner granted under any federal, state or local law which now or hereafter provides for allocation of casualty and condemnation proceeds between a property owner and a lienholder, and any other law or statute of similar import.

21. **Release Upon Payment and Discharge of Grantor's Obligations.** Beneficiary shall cause Trustee to release this Deed of Trust and the lien thereof by proper instrument upon payment and discharge of all Indebtedness.

22. **Giving of Notice.**

(a) All notices, demands, requests, and other communications desired or required to be given hereunder ("***Notices***"), shall be in writing and shall be given by: (i) hand delivery to the address for Notices; (ii) delivery by overnight courier service to the address for Notices; or (iii) sending the same by United States mail, postage prepaid, certified mail, return receipt requested, addressed to the address for Notices.

17

(b) All Notices shall be deemed given and effective upon the earlier to occur of: (i) the hand delivery of such Notice to the address for Notices; (ii) one business day after the deposit of such Notice with an overnight courier service by the time deadline for next day delivery addressed to the address for Notices; or (iii) three business days after depositing the Notice in the United States mail as set forth in (a)(iii) above. All Notices shall be addressed to the following addresses:

| | |
|---|---|
| Grantor: | Jia Yuan USA Co., Inc.<br>801 S. Figueroa Street, Suite 1800<br>Los Angeles, California 90017 |
| With a copy to: | Jia Yuan USA Co., Inc.<br>8808 Mission Drive, Suite 109<br>Rosemead, California 91770<br>Attention: Carol Liu<br>Facsimile: 626-731-0915<br>Email: carolliu@hazensgroup.com |
| Beneficiary: | China CITIC Bank International Limited<br>80/F, International Commerce Centre<br>I Austin Road West<br>Kowloon, Hong Kong<br>Telephone: (852) 3603 6360 / 3603 6213<br>Fax: (852) 3603 4398<br>Email: WindySP_Lau@cncbinternational.com<br>JeanSY_Ng@cncbinternational.com<br>Loan_Agency_WBG_SFS_Agency@cncbinternational.com |
| Trustee: | Stewart Title of California, Inc.<br>525 N. Brand Boulevard<br>Glendale, California 91203 |

or to such other persons or at such other place as any party hereto may by Notice designate as a place for service of Notice. Provided, that the "copy to" Notice to be given as set forth above is a courtesy copy only; and a Notice given to such person is not sufficient to effect giving a Notice to the principal party, nor does a failure to give such a courtesy copy of a Notice constitute a failure to give Notice to the principal party.

23. **Waiver of Defense.** No action for the enforcement of the lien or of any provision hereof shall be subject to any defense which would not be good and available to the party interposing same in an action at law or in equity.

24. **Waiver of Statutory Rights.** Grantor shall not, and will not, apply for or avail itself of any homestead, appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws", now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, but to the extent lawfully allowed hereby waives the benefit of such laws. Grantor, for itself and all who may claim through or under it, waives any and all right to have the property and estates comprising the Premises marshalled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Premises sold as an entirety. To the extent permitted by law, Grantor does hereby expressly waive (i) any and all rights of redemption from sale under any order or decree of foreclosure of this Deed of Trust on behalf of Grantor, the trust estate and all persons beneficially interested therein and each and every person, acquiring any interest in or title to the Premises subsequent to the date of this Deed of Trust, (ii) the benefits of California Code of Civil

Procedure § 431.70 and any right that Grantor may have to offset any portion of the Indebtedness by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Grantor may have against Beneficiary, and (iii) the pleading of any statute of limitations as a defense to any obligations secured by this Deed of Trust.

25. **Furnishing of Financial Statements to Beneficiary.**

(a) Grantor covenants and agrees that it will keep and maintain books and records of account, or cause books and records of account to be kept and maintained in which full, true and correct entries shall be made of all dealings and transactions relative to the Premises, which books and records of account shall, at reasonable times during business hours and on reasonable notice, be open to inspection by Beneficiary and Beneficiary's accountants and other duly authorized representatives. Such books of record and account shall be kept and maintained in accordance with generally accepted accounting principles consistently applied.

(b) Grantor covenants and agrees to furnish, or cause to be furnished to Beneficiary, such financial statements, balance sheets and other reports as required in accordance with the Facility Agreement.

Beneficiary shall have the right at any time and from time-to-time to request such additional financial information as Beneficiary determines is necessary or appropriate, and updated rent rolls for the Premises for purposes of monitoring current leasing.

(c) If Grantor omits to deliver as required any report or statement required by this **Paragraph 25**, and said omission is not cured by Grantor within thirty (30) days after written notice of such omission has been given by Beneficiary to Grantor, Beneficiary may elect, in addition to exercising any remedy for an Event of Default as provided for in this Deed of Trust, to make an audit of all books and records of Grantor including its bank accounts which in any way pertain to the Premises and to prepare the statement or statements which Grantor failed to procure and deliver. Such audit shall be made and such statement or statements shall be prepared by an independent certified public accountant to be selected by Beneficiary. Grantor shall pay all reasonable expenses of the audit and other services, which expenses shall be secured hereby as additional Indebtedness and shall be immediately due and payable with interest thereon at the default rate of interest set forth in the Facility Agreement and shall be secured by this Deed of Trust.

26. **Filing and Recording Fees.** Grantor will pay all filing, registration or recording fees and all reasonable expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Deed of Trust, or as a result of the execution and delivery of the Facility Agreement.

27. **Business Purpose.** Grantor represents, covenants and agrees that Borrower has agreed that all of the proceeds of the Facility Agreement secured by this Deed of Trust will be used solely for business purposes and in furtherance of the regular business affairs of Grantor.

28. **Exculpatory.** The liability of the Grantor personally to pay amounts due under the Loan or any interest that may accrue thereon, or any Indebtedness or obligation accruing or arising hereunder is limited to the extent set forth in the Loan Documents.

19

29. **Security Agreement.**

(a) Grantor and Beneficiary agree that this Deed of Trust shall constitute a security agreement within the meaning of the UCC with respect to all sums on deposit with the Beneficiary with respect to insurance proceeds or condemnation proceeds ("***Deposits***") and with respect to any personal property and fixtures included in the definition herein of the word "Premises", which property may not be deemed to form a part of the real estate described in **Exhibit "A"** or may not constitute a "fixture" within the meaning of the UCC, and all replacements of such property, substitutions and additions thereto and the proceeds thereof, all such property being sometimes hereinafter collectively referred to as the "***Collateral***", and that a security interest in and to the Collateral and the Deposits is hereby granted to Beneficiary and the Deposits and all of Grantor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness and to secure performance by Grantor of the terms, covenants and provisions hereof. Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, pursuant to the appropriate provisions of the UCC, shall have the option of proceeding with respect to the Collateral in accordance with its rights and remedies with respect to the real property, in which event the default provisions of the UCC shall not apply. The parties agree that, in the event Beneficiary shall elect to proceed with respect to the Collateral separately from the real property, ten (10) days' notice of the sale of the Collateral shall be reasonable notice. The reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees and legal expenses incurred by Beneficiary. Grantor agrees that, without the written consent of Beneficiary, Grantor will not remove or permit to be removed from the Premises any of the Collateral except that so long as the Grantor is not in default hereunder, Grantor shall be permitted to sell or otherwise dispose of the Collateral, when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Premises, upon replacing the same or substituting for the same other Collateral at least equal in value to the initial value of that disposed of and in such a manner so that said Collateral shall be subject to the security interest created hereby, and so that the security interest of Beneficiary shall be first in priority, it being expressly understood and agreed that all replacements of the Collateral and any additions to the Collateral shall be and become immediately subject to the security interest of this Deed of Trust and covered hereby. Grantor shall, from time to time, on request of Beneficiary, deliver to Beneficiary an inventory of the Collateral in reasonable detail. Grantor covenants and represents that all Collateral, and all replacements thereof, substitutions therefor or additions thereto, unless Beneficiary otherwise consents, now are and will be free and clear of liens (other than the lien of taxes not yet due or payable), encumbrances or security interests of others. Grantor shall, upon demand execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary, and will do all such acts and things as Beneficiary may at any time, or from time to time, reasonably request or as may be necessary or appropriate to establish and maintain a first perfected security interest in the Deposits and Collateral, subject to no liens (other than the lien of taxes not yet due or payable), encumbrances, or security interests of others.

This Deed of Trust also constitutes a financing statement for the purpose of the UCC and shall constitute a "fixture filing" under California Commercial Code §§ 9102(a)(40) and 9502(c) with respect to that portion of the Premises which is or is to become fixtures and shall be filed in the real estate records of the County in which the Land is located. For such purpose, the name and address of the debtor and the secured party are as set forth below:

| | |
|---|---|
| Name of Debtor: | Jia Yuan USA Co., Inc. |
| Debtor's Mailing Address: | c/o Wen Sun<br>801 S. Figueroa Street, Suite 1800<br>Los Angeles, California 90017 |
| Address of Premises: | 1020 S. Figueroa Street, 1046 S. Figueroa |

20

| | |
|---|---|
| | Street, 1060 S. Figueroa Street, 730 W. Olympic Boulevard, and 1049 S. Flower Street Los Angeles, California |
| Name of Secured Party: | China CITIC Bank International Limited |
| Address of Secured Party: | 80/F, International Commerce Centre<br>1 Austin Road West<br>Kowloon, Hong Kong |

This financing statement covers the Collateral. Some of the items or types of property comprising the Collateral are or are to become fixtures on the real property described in this Deed of Trust. Grantor is the record owner of the real property described herein upon which the foregoing fixtures and other items and types of property are located.

(b) It is understood and agreed that in the event that (1) Grantor intends to purchase any goods which may become fixtures attached to the Premises, or any part thereof, and (2) such goods will be subject to a purchase money security interest held by a seller or any other party (in no event shall the cumulative value of such goods exceed US$50,000):

(i) Grantor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

(A) a description of the fixtures to be replaced, added to, installed or substituted;

(B) the address at which the fixtures will be replaced, added to, installed or substituted; and

(C) the name and address of the proposed holder and proposed amount of the security interest,

and any failure of Grantor to obtain such approval shall be a material breach of Grantor's covenant under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein, that Beneficiary shall be deemed to have approved such agreement if it fails to object to such agreement within thirty (30) days of its actual receipt of Grantor's written request for such approval. No consent by Beneficiary pursuant to this **subparagraph** shall be deemed to constitute an agreement to subordinate the right of the Beneficiary in fixtures or other property covered by this Deed of Trust.

(ii) If at any time Grantor fails to make any payment on an obligation secured by a purchase money security interest in the personal property or any fixtures, Beneficiary, at its option, may at any time pay the amount secured by such security interest and the amount so paid shall be (1) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (2) payable on demand with interest at the rate specified in the Facility Agreement from the time of such payment. If Grantor shall fail to make such payment to Beneficiary within ten (10) days after demand, the entire principal sum

secured hereby with all unpaid interest accrued thereon shall, at the option of Beneficiary, become due and payable immediately.

(iii) Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments, or other evidence of Grantor's indebtedness for such personal property or fixtures, and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof, in accordance with the terms and provisions of the California Uniform Commercial Code then in effect, and in accordance with any other provisions of law.

(iv) Whether or not Beneficiary has paid the indebtedness secured by or taken by an assignment of such security interest, Grantor covenants to pay all sums and perform all obligations secured thereby, and if Grantor at any time shall be in default for a period of ten (10) days under such security agreement, it shall be a material breach of Grantor's covenants under this Deed of Trust, and Beneficiary may, at its option, declare the principal sum secured hereby immediately due and payable, time being of the essence.

(c) Grantor hereby represents and warrants to Beneficiary, and covenants and agrees with Beneficiary as follows:

(i) Grantor shall not merge or consolidate into, or transfer any of the Collateral to, any other entity or person without the prior written consent of the Beneficiary.

(ii) Grantor shall not change its name unless it has given Beneficiary sixty (60) days prior written notice thereof and executed and authorized at the request of Beneficiary, such additional financing statements to be filed in such jurisdiction as the Beneficiary may deem necessary or desirable in its sole discretion.

(iii) It shall be an Event of Default hereunder if any amendment to or termination of a financing statement naming the Grantor as debtor and the Beneficiary as secured party, or any correction statement with respect thereto, is filed in any jurisdiction by Grantor without the prior written consent of the Beneficiary.

(iv) Grantor hereby authorizes the Beneficiary, its counsel or its representative, at any time and from time to time, to file financing statements and amendments that describe the collateral covered by such financing statements in such jurisdictions as the Beneficiary may deem necessary or desirable in order to perfect the security interest granted by the Grantor under this security agreement.

30. **Due on Sale or Further Encumbrance.** Except in accordance with the Facility Agreement, Grantor shall not sell or dispose of the Premises or any portion thereof or interest therein. If, without the Beneficiary's prior written consent, (i) the Premises or any part thereof or any interest in the Premises or the Grantor is sold or conveyed; (ii) title to the Premises or any interest therein is divested; (iii) the Premises or any ownership interest in the Grantor is further encumbered or pledged; (iv) any Lease which gives the lessee any option to purchase the Premises or any part thereof is entered into, or, (v) without limiting the generality of clause (i) above, the ownership of shares of the Grantor, if a corporation, or of any corporate general partner of Grantor, if a partnership, or the general partnership interests in any partnership which is a general partner of Grantor, or any membership interest in a Grantor which is a limited liability company, or any beneficial or fiduciary interest in any Grantor which is a trust or trustee,

22

is sold or conveyed, the Beneficiary shall at its sole discretion be entitled to accelerate the Indebtedness and declare the then unpaid principal balance and all accrued interest and other sums due and payable under the Facility Agreement due and payable and exercise all remedies available to Beneficiary under the Loan Documents. The Grantor understands that the present ownership of the Premises and Improvements will be a material inducement to Beneficiary in the making of the Loan.

31. **Environmental Matters; Notice; Indemnity**. Grantor covenants and agrees as follows:

(a) For purposes of this Deed of Trust, the following definitions shall apply:

(i) The term ***"Environmental Law"*** means and includes any federal, state or local law, statute, regulation or ordinance pertaining to health, industrial hygiene or the environmental or ecological conditions on, under or about the Premises, including without limitation each of the following (and their respective successor provisions): the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. sections 9601 *et seq.* (***"CERCLA"***); the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. sections 6901 *et seq.* (***"RCRA"***); the Federal Hazardous Materials Transportation Act, as amended, 49 U.S.C. sections 5101 *et seq.*; the Toxic Substance Control Act, as amended, 15 U.S.C. sections 2601 *et seq.*; the Clean Air Act, as amended, 42 U.S.C. sections 1857 *et seq.*; the Federal Water Pollution Control Act, as amended, 33 U.S.C. sections 1251 *et seq.*; and the rules, regulations and ordinances of the U.S. Environmental Protection Agency and of all other federal, state, county and municipal agencies, boards, commissions and other governmental bodies and officers having jurisdiction over the Premises or the use or operation of the Premises.

(ii) The term ***"Hazardous Substance"*** means and includes: (1) those substances included within the definitions of "hazardous substances", "hazardous materials", "hazardous waste", "pollutants", "toxic substances" or "solid waste" in any Environmental Law; (2) those substances listed in the U.S. Department of Transportation Table or amendments thereto (49 CFR 172.101) or by the U.S. Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and any amendments thereto); (3) those other substances, materials and wastes which are or become, regulated under any applicable federal, state or local law, regulation or ordinance or by any federal, state or local governmental agency, board, commission or other governmental body, or which are or become classified as hazardous or toxic by any such law, regulation or ordinance; and (4) any material, waste or substance which is any of the following: (A) asbestos; (B) polychlorinated biphenyl; (C) designated or listed as a "hazardous substance" pursuant to section 311 or section 307 of the Clean Water Act (33 U.S.C. sections 1251 *et seq.*); (D) explosive; (E) radioactive; (F) a petroleum product; (G) infectious waste; or (H) mold or other similar fungal growth. As used herein, the term "***mold or other similar fungal growth***" shall mean and include mycotoxin producing molds in amounts sufficient to create a health risk to humans. Notwithstanding anything to the contrary herein, the term "***Hazardous Substance***" shall not include commercially sold products otherwise within the definition of the term ***"Hazardous Substance"***, but (X) which are used or disposed of by Grantor or used or sold by tenants of the Premises in the ordinary course of their respective businesses, (Y) the presence of which product is not prohibited by applicable Environmental Law, and (Z) the use and disposal of which are in all respects in accordance with applicable Environmental Law.

(iii) The term ***"Enforcement or Remedial Action"*** means and includes any action taken by any person or entity in an attempt or asserted attempt to enforce, to

23

achieve compliance with, or to collect or impose assessments, penalties, fines, or other sanctions provided by, any Environmental Law.

(iv) The term "***Environmental Liability***" means and includes any claim, demand, obligation, cause of action, accusation, allegation, order, violation, damage (including consequential damage), injury, judgment, assessment, penalty, fine, cost of Enforcement or Remedial Action, or any other cost or expense whatsoever, including actual, reasonable attorneys' fees and disbursements, resulting from or arising out of the violation or alleged violation of any Environmental Law, any Enforcement or Remedial Action, or any alleged exposure of any person or property to any Hazardous Substance.

(b) Except as previously disclosed to Beneficiary in that certain Phase I Environmental Site Assessment of Industrial and Commercial Bank of China (U.S.A.) N.A., dated April 22, 2014, and prepared by CERES, Corp., Grantor, its successors and assigns, after reasonable inquiry, covenants, warrants and represents that:

(i) No Hazardous Substances have been or shall be discharged, disbursed, released, stored, treated, generated, disposed of, or allowed to escape or migrate, or shall threaten to be injected, emptied, poured, leached, or spilled on or from the Premises in violation of any Environmental Law.

(ii) No asbestos or asbestos-containing materials have been or will be installed, used, incorporated into, placed on, or disposed of on the Premises.

(iii) No polychlorinated biphenyls ("***PCBs***") are or will be located on or in the Premises, in the form of electrical transformers, fluorescent light fixtures with ballasts, cooling oils, or any other device.

(iv) No underground storage tanks are or will be located on the Premises or were located on the Premises and subsequently removed or filled.

(v) No investigation, administrative order, consent order and agreement, litigation, settlement, lien or encumbrance with respect to Hazardous Substances is proposed, threatened, anticipated or in existence with respect to the Premises.

(vi) The Premises and Grantor's operations at the Premises are in compliance with all applicable Environmental Laws including without limitation any, federal, state and local statutes, laws and regulations. No notice has been served on Grantor, or any manager or operator of the Premises, from any entity, government body, or individual claiming any violation of any law, regulation, ordinance or code, or requiring compliance with any law, regulation, ordinance or code, or demanding payment or contribution for environmental damage or injury to natural resources. Copies of any such notices received subsequent to the date hereof shall be forwarded to Beneficiary within three (3) days of their receipt.

(vii) The Grantor has no knowledge of the release or threat of release of any Hazardous Substances from any property adjoining or in the immediate vicinity of the Premises.

(viii) No portion of the Premises is a wetland or other water of the United States subject to jurisdiction under Section 404 of the Clean Water Act (33 U.S.C.

24

§ 1344) or any comparable state statute or local ordinance or regulation defining or protecting wetlands or other special aquatic areas.

(ix) There are no concentrations of radon or other radioactive gases or materials in any buildings or structures on the Premises that exceed background ambient air levels.

(x) To the best of Grantor's knowledge, there have been no complaints of illness or sickness alleged to result from conditions inside any buildings or structures on the Premises.

(c) Grantor will give prompt written notice to Beneficiary of:

(i) any proceeding, known investigation or inquiry commenced by any governmental authority with respect to the presence of any Hazardous Substance on, under or about the Premises or the migration thereof to or from adjoining property;

(ii) all claims made or threatened by any individual or entity against Grantor or the Premises relating to any loss or injury allegedly resulting from any Hazardous Substance; and

(iii) the discovery by Grantor of any occurrence or condition on any real property adjoining or in the vicinity of the Premises which might cause the Premises or any part thereof to be subject to any restriction on the ownership, occupancy, transferability or use of the Premises under any Environmental Law.

(d) Beneficiary shall have the right and privilege to: (i) join in and participate in, as a party if it so elects, any one or more legal proceedings or actions initiated with respect to the Premises; and to (ii) have all costs and expenses thereof (including without limitation Beneficiary's reasonable attorneys' fees and costs) paid by Grantor.

(e) Grantor agrees to protect, defend, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, contractors, sub-contractors, licensees, invitees, participants, successors and assigns, from and against any Environmental Liability and any and all claims, demands, judgments, settlements, damages, actions, causes of action, injuries, administrative orders, consent agreements and orders, liabilities, losses, penalties, costs, including but not limited to any cleanup costs, remediation costs and response costs, and all expenses of any kind whatsoever including reasonable attorneys' fees and expenses, including but not limited to those arising out of loss of life, injury to persons, property or business or damage to natural resources in connection with the activities of Grantor, its predecessors in interest, third parties who have trespassed on the Premises, or parties in a contractual relationship with Grantor, and any of them, whether or not occasioned wholly or in part by any condition, accident or event caused by any act or omission of Beneficiary, the foregoing being collectively referred to as "***Claims***", which:

(i) arise out of the actual, alleged or threatened migration, spill, leaching, pouring, emptying, injection, discharge, dispersal, release, storage, treatment, generation, disposal or escape of any Hazardous Substances onto or from the Premises; or

(ii) actually or allegedly arise out of, in connection with the Premises, the use, specification or inclusion of any product, material or process containing Hazardous Substances, the failure to detect the existence or proportion of Hazardous Substances in the soil, air, surface water or ground water, or the performance of or failure to perform

25

the abatement of any Hazardous Substances source or the replacement or removal of any soil, water, surface water or ground water containing any Hazardous Substances; or

(iii) arise out of the breach of any covenant, warranty or representation contained in any statement or other information given by Grantor to Beneficiary relating to environmental matters; or

(iv) arise out of any Enforcement or Remedial Action or any judicial or administrative action brought pursuant to any Environmental Law or any similar state law that relates to the Premises.

Grantor, its successors and assigns, shall bear, pay and discharge when and as the same become due and payable, any and all such judgments or claims for damages, penalties or otherwise against Beneficiary described in this **subparagraph (e)**, shall hold Beneficiary harmless for those judgments or claims, and shall assume the burden and expense of defending all suits, administrative proceedings, and negotiations of any description with any and all persons, political subdivisions or government agencies arising out of any of the occurrences set forth in this **subparagraph (e)**.

Grantor's indemnifications and representations made herein shall survive any termination or expiration of the documents evidencing or securing the Loan and/or the repayment of the Indebtedness, including, but not limited to, any foreclosure on this Deed of Trust or acceptance of a deed in lieu of foreclosure. Notwithstanding the foregoing, Grantor's indemnifications and representations shall not apply to Hazardous Substances which first originate on the Premises subsequent to Beneficiary's succession to title by virtue of a foreclosure or acceptance of a deed in lieu of foreclosure.

(f) If any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (the "***Remedial Work***") is reasonably desirable (in the case of an operation and maintenance program or similar monitoring or preventative programs) or necessary, both as determined by an independent environmental consultant selected by Beneficiary under any applicable federal, state or local law, regulation or ordinance, or under any judicial or administrative order or judgment, or by any governmental person, board, commission or agency, because of or in connection with the current or future presence, suspected presence, release or suspected release of a Hazardous Substance into the air, soil, groundwater, or surface water at, on, about, under or within the Premises or any portion thereof, Grantor shall within thirty (30) days after written demand by Beneficiary for the performance (or within such shorter time as may be required under applicable law, regulation, ordinance, order or agreement), commence and thereafter diligently prosecute to completion all such Remedial Work to the extent required by law. All Remedial Work shall be performed by contractors approved in advance by Beneficiary (which approval in each case shall not be unreasonably withheld or delayed) and under the supervision of a consulting engineer approved in advance by Beneficiary. All costs and expenses of such Remedial Work (including without limitation the reasonable fees and expenses of Beneficiary's counsel) incurred in connection with monitoring or review of the Remedial Work shall be paid by Grantor. If Grantor shall fail or neglect to timely commence or cause to be commenced, or shall fail to diligently prosecute to completion, such Remedial Work, Beneficiary may (but shall not be required to) cause such Remedial Work to be performed; and all costs and expenses thereof, or incurred in connection therewith (including, without limitation, the reasonable fees and expenses of Beneficiary's counsel), shall be paid by Grantor to Beneficiary forthwith after demand and shall be a part of the Indebtedness.

(g) In the event that any portion of the Premises is determined to be "environmentally impaired" (as defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Beneficiary's or Trustee's rights and remedies under this Deed of Trust, Beneficiary may elect to: (i) exercise its right under California Code of Civil

Procedure Section 726.5(a) to waive its lien on such environmentally impaired or affected portion of the Premises and (ii) exercise (A) the rights and remedies of an unsecured creditor, including reduction of its claim against Grantor to judgment, and (B) any other rights and remedies permitted by law. For purposes of determining Beneficiary 's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Grantor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Premises and Grantor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

32. **Captions**. The captions or headings preceding the text of the paragraphs or subparagraphs of this Deed of Trust are inserted only for convenience of reference and shall not constitute a part of this Deed of Trust, nor shall they in any way affect its meaning, construction or effect.

33. **No Waiver; Modifications in Writing**. No failure or delay on the part of Beneficiary in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies provided for herein are cumulative and are not exclusive of any remedies that may be available to any party at law or in equity or otherwise. No amendment, modification, supplement, termination or waiver of or to any provision of this Deed of Trust, nor consent to any departure therefrom, shall be effective unless the same shall be in writing and signed by or on behalf of the party to be charged with the enforcement thereof. Any amendment, modification or supplement of or to any provision of this Deed of Trust, any waiver of any provision of this Deed of Trust, and any consent to any departure from the terms of any provision of this Deed of Trust, shall be effective only in the specific instance and for the specific purpose for which made or given.

34. **Relationship**. Beneficiary is only a lender under the Loan Documents, and nothing contained in this Deed of Trust or the other Loan Documents and no action taken by the parties pursuant hereto shall be deemed to constitute the Beneficiary and any other of the parties to any of the Loan Documents a partnership, an association, a joint venture or other entity, nor constitute Beneficiary as a fiduciary for any of the parties.

35. **Governing Law**. This Deed of Trust shall be governed by the laws (excluding conflicts of laws rules) of the State of California.

36. **Time of Essence**. Time is of the essence in the performance by the parties of this Deed of Trust.

37. **Construction**. Grantor has been represented by its own counsel in this transaction, and this Deed of Trust shall not be construed more strongly against any party regardless of who was more responsible for its preparation.

38. **Gender; Number; Terms**. Words and phrases herein shall be construed as in the singular or plural number and as masculine, feminine or neuter gender, according to the context. The use of the words "herein," "hereof," "hereunder" and other similar compounds of the word "here" shall refer to this entire Deed of Trust and not to any particular section, paragraph or provision. The term "person" and words importing persons as used in this Deed of Trust shall include firms, associations, partnerships (including limited partnerships), joint ventures, trusts, corporations, limited liability companies, and other legal entities, including public or governmental bodies, agencies or instrumentalities, as well as natural persons.

27

39. **Integration**. This Deed of Trust, together with the other Loan Documents and the certain Environmental Indemnification Agreement executed by Grantor, constitute the entire agreement between the parties hereto pertaining to the subject matters hereof and thereof and supersede all negotiations, preliminary agreements and all prior or contemporaneous discussions and understandings of the parties hereto in connection with the subject matters hereof and thereof.

40. **General Indemnification**.

(a) Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (i) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (ii) any use, nonuse or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (iii) performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof; (iv) any failure of the Premises to be in compliance with any applicable laws; (v) any and all claims, demands or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (vi) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan. Any amounts payable to Beneficiary by reason of the application of this Paragraph shall become immediately due and payable and shall bear interest at the default rate of interest set forth in the Facility Agreement from the date loss or damage is sustained by Beneficiary until paid. The term "***Losses***" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense); provided, however, Losses shall not include claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense) caused by the gross negligence or intentional misconduct of Beneficiary. The term "***Indemnified Parties***" shall mean (i) Beneficiary, (ii) any prior owner or holder of the Indebtedness, (iii) any servicer or prior servicer of the Loan, (iv) any participant or any prior participant in any portion of the Loan, (v) any trustees, custodians or other fiduciaries who hold or who have held a full or partial interest in the Loan for the benefit of any participant or other third party, (vi) any receiver or other fiduciary appointed in a foreclosure or other collection proceeding, (vii) any officers, directors, shareholders, partners, members, employees, agents, servants, representatives, contractors, subcontractors, affiliates or subsidiaries of any and all of the foregoing, and (viii) the heirs, legal representatives, successors and assigns of any and all of the foregoing (including, without limitation, any successors by merger, consolidation or acquisition of all or a substantial portion of the Indemnified Parties' assets and business), in all cases whether during the term of the Loan or as part of or following a foreclosure of the Loan.

(b) Upon written request by any Indemnified Party, Grantor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of the Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Grantor shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

(c) Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Deed of Trust or any of the other Loan Documents.

41. **ERISA Representations and Warranties.** Grantor hereby represents, warrants and agrees that as of the date hereof, none of the investors in or owners of the Grantor is an employee benefit plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("***ERISA***"), a plan as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended, nor an entity the assets of which are deemed to include plan assets pursuant to Department of Labor Regulation Section 2510.3-101 (the ***"Plan Asset Regulation"***). Grantor further represents, warrants and agrees that at all times during the term of the Loan, Grantor shall not be deemed to include plan assets. If at any time during the entire term of the Loan any of the investors in or owners of Grantor shall include a plan or entity described in the first sentence of this **Paragraph**, Grantor shall as soon as reasonably possible following an investment by such plan or entity, provide Beneficiary with an opinion of counsel reasonably satisfactory to Beneficiary indicating that the assets of Grantor are not deemed to include plan assets pursuant to the Plan Asset Regulation. In lieu of such opinion, the Beneficiary may in its sole discretion accept such other assurances from Grantor as are necessary to satisfy Beneficiary in its sole discretion that the assets of Grantor are not deemed to include plan assets pursuant to the Plan Asset Regulation. Grantor understands that the representations and warranties herein are a material inducement to Beneficiary in the making of the Loan, without which Beneficiary would be unwilling to make the Loan.

Notwithstanding anything in this Deed of Trust to the contrary, any transfer permitted pursuant to the terms of this Deed of Trust (including without limitation, those described in **Paragraph 30** herein) shall be subject to compliance with the provisions of this **Paragraph**. Any such proposed transfer that would violate the terms of this **Paragraph** or otherwise cause the Loan to be characterized as a prohibited transaction under ERISA shall be prohibited under the terms of this Deed of Trust.

42. **Concerning the Trustee.**

(a) Certain Rights. Except to the extent otherwise restricted by California Civil Code Sec. 2924-2924(h), with the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution and interpretation of this Deed of Trust, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith), and (iv) any and all other lawful action that Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Premises for debts contracted for or liability or damages incurred in the management or operation of the Premises. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Grantor will, from time to

29

time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

(b) Retention of Money. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

(c) Successor Trustees. Trustee may resign by the giving of notice of such resignation in writing to Beneficiary. If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Beneficiary, in Beneficiary's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Beneficiary shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Beneficiary, and if such Beneficiary be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Grantor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Deed of Trust or applicable law. Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

(d) Substitution or Resignation of Trustee.

(i) Beneficiary may, without notice or cause and in Beneficiary's sole discretion by complying with the provisions of applicable statutes, substitute a successor or successors to any Trustee named herein or acting hereunder to execute this Deed of Trust or may fill a vacancy in the position of Trustee hereunder. Upon such appointment, and without conveyance to the successor Trustee, the latter shall be vested with the title, powers and duties conferred upon any Trustee herein named or acting hereunder. Each such appointment and substitution shall be made by written instrument executed and acknowledged by Beneficiary, containing reference to this Deed of Trust and its place of record, which, when recorded in the office in which this Deed of Trust is recorded, shall be conclusive proof of the proper appointment of such successor Trustee.

(ii) Trustee may resign by written instrument executed by Trustee, containing reference to this Deed of Trust and its place of record, which, when recorded in the office in which this Deed of Trust is recorded, and when delivered to Beneficiary in accordance with **Paragraph 22** hereof, shall be conclusive proof of the resignation of such Trustee. Upon such resignation, Beneficiary may appoint a successor Trustee in accordance with **Paragraph 42(d)** hereof.

(e) Perfection of Appointment. Should any deed, conveyance, or instrument of any nature be required from Grantor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by

30

Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Grantor.

(f) Succession Instruments. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

(g) No Representation by Trustee or Beneficiary. By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Beneficiary pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Beneficiary shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Beneficiary.

(h) Trustee's Commission. Immediately upon the first insertion of any advertisement or notice of any such sale, there shall become due and owing by the Grantor all expenses incident to such advertisement or notice, all court costs and all expenses incident to any foreclosure proceedings brought under this Deed of Trust or otherwise in connection with such sale, and a reasonable commission on the total amount of the Indebtedness then due hereunder equaling one-half of the commission allowed to trustees for making sales of property under orders or decrees of a court having competent jurisdiction, and no party shall be required to receive only the aggregate Indebtedness then secured hereby unless it is accompanied by a tender of payment of such expenses, costs and commissions. Notwithstanding anything contained herein to the contrary, in no event shall the amount of the Indebtedness be reduced as a result of such expenses, costs or commissions.

(i) Conveyance by Trustee/Defeasance. Upon receipt by Trustee of written notice from Beneficiary that the Indebtedness has been fully paid pursuant to the terms hereof and the other Loan Documents and the obligations fully performed in accordance with the provisions hereof and the other Loan Documents, Trustee shall reconvey the Premises, without warranty, to Grantor or such person or persons lawfully entitled thereto.

43. **Waiver by Grantor. TO THE EXTENT PERMITTED BY LAW, GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ANY REQUIREMENT OR OBLIGATION THAT BENEFICIARY OR TRUSTEE PRESENT EVIDENCE OR OTHERWISE PROCEED BEFORE ANY COURT, CLERK, OR OTHER JUDICIAL OR QUASI-JUDICIAL BODY BEFORE EXERCISE OF THE POWERS OF SALE CONTAINED IN THIS DEED OF TRUST AND CALIFORNIA LAW.**

**GRANTOR ACKNOWLEDGES THAT ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER CALIFORNIA LAW.**

44. Waivers and Agreements Regarding Remedies. To the full extent Grantor may do so, Grantor hereby waives and relinquishes the following:

(a) Marshalling, Etc. All rights to a marshalling of the assets of Grantor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure, and agrees not to assert any right under any law pertaining to the marshalling of assets, the sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatsoever to defeat, reduce or affect the right of Beneficiary under the terms of the Loan Documents to a sale of the Premises for the collection of the Indebtedness without any prior or different resort for collection, or the right of Beneficiary to the payment of the Indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatsoever.

(b) Rights and Remedies of Sureties. Any and all rights and remedies that Grantor may have or be able to assert by reason of the provisions of any laws pertaining to the rights and remedies of sureties.

45. Miscellaneous.

(a) Grantor shall not assign any of its rights under this Deed of Trust and the Beneficiary may assign or grant participations in or over all or any part of its rights and obligations under this Deed of Trust in accordance with the Facility Agreement. This Deed of Trust and all provisions hereof shall extend to and be binding upon Grantor and its heirs, successors, grantees and permitted assigns, any subsequent owner or owners of the Premises and all persons claiming under or through Grantor (but this clause shall not be construed as constituting the consent by Beneficiary to the transfer of any interest in the Premises), and the word "Grantor" when used herein shall include any such person and all persons liable for the payment of the Indebtedness or any part thereof. The word "***Beneficiary***", when used herein, shall include the successors and assigns of Beneficiary, and the holder or holders, from time to time, of the Facility Agreement, as transferred in accordance with the Facility Agreement. In addition, in the event Grantor is a land trust or similar entity, the term "***Grantor***" as used herein shall include the beneficiary or beneficiaries of such land trust or similar entity.

(b) In the event one or more of the provisions contained in this Deed of Trust or in any other Loan Documents given to secure the payment due under the Facility Agreement, shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Beneficiary, not affect any other provision of this Deed of Trust, and this Deed of Trust shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

(c) The Grantor will, from time to time, upon ten (10) business days' prior written request from Beneficiary, make, execute, acknowledge and deliver to Beneficiary such supplemental mortgages/deeds of trust, certificates and other documents, including without limitation UCC financing statements, as may be necessary for better assuring and confirming unto Beneficiary any of the Premises, or for more particularly identifying and describing the Premises, or to preserve or protect the priority of this Deed of Trust lien, and generally do and perform such other acts and things and execute and deliver such other instruments and documents as may reasonably be deemed necessary or advisable by Beneficiary to carry out the intentions of this Deed of Trust.

(d) Grantor shall not by act or omission permit any building or other improvement on any premises not subject to the lien of this Deed of Trust to rely on the Premises or any part thereof or any interest therein to fulfill any municipal or governmental requirement, and Grantor hereby assigns to Beneficiary any and all rights to give consent for all or any portion of the Premises or any interest therein to be so used. Similarly no building or other Improvement on the Premises shall rely on any premises not

32

subject to the lien of this Deed of Trust or any interest therein to fulfill any governmental or municipal requirement. Grantor shall not by act or omission impair the integrity of the Premises as a single zoning lot separate and apart from all other premises. Any act or omission by Grantor which would result in a violation of any of the provisions of this **Paragraph** shall be void.

(e) Grantor will, from time to time, upon ten (10) business days' prior written request by Beneficiary, execute, acknowledge and deliver to Beneficiary, a certificate stating that this Deed of Trust is unmodified and in full force and effect (or, if there have been modifications, that this Deed of Trust is in full force and effect as modified and setting forth such modifications) and stating the principal amount secured hereby and the interest accrued to date on such principal amount. The estoppel certificate from Grantor shall also state to the best knowledge of Grantor whether any offsets or defenses to the Indebtedness exist and if so shall identify them.

(f) Beneficiary shall have the right and option to exercise the power of sale or to commence a civil action to foreclose this Deed of Trust and to obtain a decree of foreclosure. The failure to join any tenant or tenants as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Grantor as a defense in any civil action instituted to collect the Indebtedness, or any part thereof, or any deficiency remaining unpaid after foreclosure and sale of the Premises, any statute or rule of law at any time existing to the contrary notwithstanding.

(g) At the option of Beneficiary, this Deed of Trust shall become, subject and subordinate, in whole or in part (but not with respect to priority of entitlement to insurance proceeds or any award in condemnation) to any one or more, or to all, Leases upon the execution by Beneficiary and recording or registration thereof, at any time hereafter, in the Office of the Recorder in and for the county wherein the Premises are situated, or such other office as determined by Beneficiary, of a unilateral declaration to that effect.

(h) In the event that maturity of the Indebtedness is accelerated by Beneficiary because of the occurrence of an Event of Default hereunder and a tender of payment is made by or on behalf of Grantor in the amount necessary to satisfy the Indebtedness at any time prior to judicial confirmation or other conclusion if confirmation is not required, of a foreclosure sale or sale under a power of sale, then such tender shall constitute a prepayment under the Facility Agreement and shall, to the extent specified in the Facility Agreement, require payment of the prepayment premium provided for therein.

(i) All agreements between Grantor and Beneficiary (including, without limitation, those contained in this Deed of Trust and the other Loan Documents) are expressly limited so that in no event whatsoever shall the amount paid or agreed to be paid to the Beneficiary exceed the highest lawful rate of interest permissible under the laws of the State of California. If, from any circumstances whatsoever, fulfillment of any provision hereof or the Loan Documents at the time performance of such provision shall be due, shall involve the payment of interest exceeding the highest rate of interest permitted by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the highest lawful rate of interest permissible under the laws of the State of California; and if for any reason whatsoever Beneficiary shall ever receive as interest an amount which would be deemed unlawful, such interest shall be applied to the payment of the last maturing instalment or instalments of the principal Indebtedness (whether or not then due and payable) and not to the payment of interest.

(j) Grantor covenants and agrees that it shall constitute an Event of Default hereunder if any of the proceeds of the Loan will be used, or were used, as the case may be, for the purpose (whether immediate, incidental or ultimate) of "purchasing" or "carrying" any "margin security"

as such terms are defined in Regulation U of the Board of Governors of the Federal Reserve System (12 CFR Part 221) or for the purpose of reducing or retiring any indebtedness which was originally incurred for any such purpose.

(k) Grantor shall exert its best efforts to include a "no lien" provision in any property management agreement hereafter entered into by Grantor or its beneficiary with a property manager for the Premises, whereby the property manager waives and releases any and all mechanics' lien rights that he, or anyone claiming through or under such manager, may have. Such property management agreement containing such "no lien" provision or a short form thereof shall, at Beneficiary's request, be recorded in the office of the recorder's office in and for the County wherein the Premises is situated, or such other office as reasonably requested by Beneficiary.

(l) Grantor has received independent advice from its attorneys with respect to the advisability of executing this Deed of Trust, each other Loan Document and related agreement to which Grantor or its affiliates are a party or are to be a party. Grantor has made such investigation of the facts pertaining to this Deed of Trust, each other Loan Document and related agreement to which Grantor or its affiliates are a party or are to be a party and of all the matters pertaining to Grantor as Grantor deems necessary. Grantor has read this Deed of Trust, each other Loan Document and related agreement to which Grantor or its affiliates are a party or are to be a party and understands their content. Beneficiary has not (nor any officer, agent, partner, employee, representative or attorney of or for beneficiary) made any statement or representation to Grantor regarding any fact relied upon by Grantor in entering into this Deed of Trust, and Grantor is not relying upon any statement, representation or promise of Beneficiary (or any principal, officer, agent, partner, employee, representative or attorney of or for Beneficiary), in executing this Deed of Trust each other Loan Document and related agreement to which Grantor or its affiliates are a party or are to be a party, except as expressly stated in this Deed of Trust.

(m) Grantor shall promptly notify Beneficiary if it becomes registered as a non-Hong Kong company in Hong Kong under Part 16 of the Companies Ordinance and procure registration of this Deed of Trust with the Companies Registry in Hong Kong within the timeframe provided under the applicable law.

46. Non-Agricultural Use. The Premises which is the subject of this Deed of Trust is not used principally or primarily for agricultural or farming purposes.

47. References to Foreclosure. References in this Deed of Trust to "foreclosure" and related phrases are references to the appropriate procedure in connection with Trustee's private power of sale, any judicial foreclosure proceeding, and any deed given in lieu of foreclosure.

48. Joinder of Foreclosure. If Beneficiary holds any other or additional security for the payment of any Indebtedness or performance of any of Grantor's obligations, its sale or foreclosure, on any default in the payment or performance, in Beneficiary's sole discretion, may be prior to, subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure. In addition to the rights in this Deed of Trust specifically conferred, Beneficiary, at any time and from time-to-time, may exercise any right or remedy now or later given by law to beneficiaries under deeds of trust generally, or to the holders of any obligations of the kind secured.

49. State Specific Provisions.

(a) Principles of Construction. In the event of any inconsistencies between the terms and conditions of this Paragraph 49 and the terms and conditions of this Deed of Trust, the terms and conditions of this Paragraph 49 shall control and be binding.

34

(b) Grantor. The word "grantor" is hereby deleted wherever it appears in this Security Instrument and the word "Grantor" is substituted therefor.

(c) Assignment of Leases and Rents. This Deed of Trust constitutes a present, absolute assignment of both the Leases and Rents from Grantor to Beneficiary. The Leases and Rents are hereby absolutely and irrevocably assigned by Grantor to Beneficiary. Beneficiary is hereby granted and assigned by Grantor the right to enter the Premises for the purpose of enforcing its right in the both the Leases and Rents. Nevertheless, subject to the terms of this Paragraph 47, Beneficiary grants to Grantor a revocable license to operate and manage the Premises and to collect Rents. Upon or at any time after the occurrence of an Event of Default, the license granted to Grantor herein may be revoked by Beneficiary, and Beneficiary may enter upon the Premises, and collect, retain and apply the Rents toward payment of the Loan in accordance with the Loan Documents. The foregoing assignment shall be fully operative without any further action on the part of either party and Beneficiary shall be entitled to the Leases and Rents whether or not Beneficiary takes possession of the Premises or any part thereof.

(d) Security Agreement. This Deed of trust is both a real property deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code the State of California and is being recorded as a fixture filing. With respect to said fixture filing, (i) the debtor is Grantor, and Grantor's name and address appear in the first paragraph of this Deed of Trust, and (ii) the secured party is Beneficiary, and Beneficiary's name and address appear in the first paragraph of this Deed of Trust. The Premises includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Grantor in the Premises, including, but not limited to, the Leases and Rents and all proceeds thereof and all fixtures.

(e) Rights of Beneficiary. Grantor authorizes Beneficiary to perform any or all of the following acts at any time in its sole discretion, all without notice to Grantor and without affecting Beneficiary's rights or Grantor's obligations under this Deed of Trust:

(i) Beneficiary may alter any terms of the Indebtedness or any part of it, including renewing, compromising, modifying, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Indebtedness or any part of it.

(ii) Beneficiary may take and hold security for the Indebtedness, accept additional or substituted security for that obligation, and subordinate, exchange, enforce, waive, release, reconvey, compromise, fail to perfect and sell or otherwise dispose of any such security.

(iii) Beneficiary may direct the order and manner of any sale of all or any part of any security now or later to be held for the Indebtedness, and Beneficiary may also bid at any such sale and may apply all or any part of the Indebtedness against the amount so bid.

(iv) Beneficiary may apply any payments or recoveries from Borrower, Grantor or any other source, and any proceeds of any security, to the Indebtedness in such manner, order and priority as Beneficiary may elect, whether that obligation is secured by this Deed of Trust or not at the time of the application.

(v) Beneficiary may substitute, add or release any one or more Borrowers, guarantors or endorsers.

(vi) In addition to the Indebtedness, Beneficiary may extend other credit to Borrower, and may take and hold security for the credit so extended, whether or not such security is also security for the Indebtedness, all without affecting Beneficiary's rights or Grantor's liability under this Deed of Trust.

(f) Deed of Trust to be Absolute. Grantor expressly agrees that until the Indebtedness is paid and performed in full, and each and every term, covenant and condition of this Deed of Trust is fully performed, Grantor shall not be released by or because of:

(i) Any act or event which might otherwise discharge, reduce, limit or modify Grantor's obligations under this Deed of Trust;

(ii) Any waiver, extension, modification, forbearance, delay or other act or omission of Beneficiary, or its failure to proceed promptly or otherwise against Borrower, Grantor or any security;

(iii) Any action, omission or circumstance which might increase the likelihood that Grantor may be called upon to perform under this Deed of Trust or which might affect the rights or remedies of Grantor against Borrower; or

(iv) Borrower becoming insolvent or subject to any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("***Insolvency Proceeding***") and as a result thereof some or all of the Indebtedness being terminated, rejected, discharged, modified or abrogated.

Grantor hereby acknowledges that absent this subsection (g), Grantor might have a defense to the enforcement of this Deed of Trust as a result of one or more of the foregoing acts, omissions, agreements, waivers or matters. Grantor hereby expressly waives and surrenders any defense to any liability under this Deed of Trust based upon any of such acts, omissions, agreements, waivers or matters. It is the express intent of Grantor that Grantor's obligations under this Deed of Trust are and shall be absolute, unconditional and irrevocable.

(g) Grantor's Waivers. Grantor waives:

(i) All statutes of limitations as a defense to any action or proceeding brought against Grantor by Beneficiary, to the fullest extent permitted by law;

(ii) Any right it may have to require Beneficiary to proceed against Borrower or any other party, proceed against or exhaust any security held from Borrower or any other party, or pursue any other remedy in Beneficiary's power to pursue;

(iii) To the extent permitted by applicable law, the benefit of all laws now existing or which may hereafter be enacted providing for any appraisement, valuation, stay, extension, redemption or moratorium;

(iv) All rights of marshalling in the event of foreclosure;

(v) Any defense based on any claim that Grantor's obligations exceed or are more burdensome than those of Borrower;

(vi) Any defense based on: (i) any legal disability of Borrower, (ii) any release, discharge, modification, impairment or limitation of the liability of Borrower to

36

Beneficiary from any cause, whether consented to by Beneficiary or arising by operation of law or from any Insolvency Proceeding and (iii) any rejection, disallowance or disaffirmance of the Indebtedness, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(vii) Any defense based on any action taken or omitted by Beneficiary in any Insolvency Proceeding involving Borrower, including, without limitation, filing, defending, settling or obtaining a judgment or order on any proof of claim or any adversary proceeding, making any election to have Beneficiary's claim allowed as being secured, partially secured or unsecured, including any election under 11 U.S.C. Section 1111(b), seeking relief from the automatic stay or adequate protection, including submitting an appraisal of any security, voting to reject or accept or failing to vote on any reorganization plan, making any extension of credit by Beneficiary to Borrower in any Insolvency Proceeding, and the taking and holding by Beneficiary of any security for any such extension of credit, whether or not such security is also security for the Indebtedness;

(viii) All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness, and demands and notices of every kind; and

(ix) Any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Indebtedness or any part of it.

(h) Waivers of Subrogation and Other Rights and Defenses.

(i) The obligations of Grantor hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought against Grantor whether or not action or suit is brought against Borrower or Borrower is joined in any such action or actions. At the option of Beneficiary, Grantor may be joined in any action or proceeding commenced by Beneficiary against Borrower in connection with or based on the Indebtedness or any security for such obligation, and recovery may be had against Grantor in such action or proceeding without any requirement that Beneficiary first assert, prosecute or exhaust any remedy or claim against Borrower.

(ii) Upon a default by Borrower, Beneficiary in its sole discretion, without prior notice to or consent of Grantor, may elect to: (i) foreclose either judicially or nonjudicially against any real or personal property security that Beneficiary may hold for the Indebtedness other than the Land and Improvements (collectively, the "***Property***") encumbered by this Deed of Trust, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Indebtedness or any part of it or make any other accommodation with Borrower or Grantor, or (iv) exercise any other remedy against Borrower or any security other than the Property encumbered by this Deed of Trust. With respect to security other than the Property encumbered by this Deed of Trust, no such action by Beneficiary shall release or limit the liability of Grantor, who shall remain liable under this Deed of Trust after the action, even if the effect of the action is to deprive Grantor of any subrogation rights, rights of indemnity, rights of contribution, or other rights to collect reimbursement from Borrower for any recovery by Beneficiary against Grantor, whether contractual or arising by operation of law or otherwise. After any foreclosure or deed in lieu of foreclosure of any real or personal property pledged to secure the Indebtedness, Grantor shall under no circumstances be deemed to have any

right, title, interest or claim in or to such property, whether it is held by Beneficiary or any third party.

(iii) Regardless of whether Beneficiary may have recovered against Grantor, Grantor hereby waives: (i) all rights of subrogation, all rights of indemnity, and any other rights to collect reimbursement or contribution from Borrower or any other party for any recovery by Beneficiary against Grantor, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise (collectively, "***Reimbursement Rights***"), (ii) all rights to enforce any remedy that Beneficiary may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Beneficiary for the Indebtedness. To the extent Grantor's waiver of Reimbursement Rights is found by a court of competent jurisdiction to be void or voidable for any reason, any Reimbursement Rights Grantor may have against Borrower or any collateral or security shall be junior and subordinate to any rights Beneficiary may have against Borrower and to all right, title and interest Beneficiary may have in any such collateral or security. If any amount should be paid to Grantor on account of any Reimbursement Rights at any time when the Indebtedness has not been paid in full, such amount shall be held in trust for Beneficiary and shall immediately be paid over to Beneficiary to be credited and applied against the Indebtedness, whether matured or unmatured, in accordance with the terms of the Loan Documents. The covenants and waivers of Grantor set forth in this subsection 5(c) shall be effective until the Indebtedness has been paid and performed in full and are made solely for the benefit of Beneficiary.

(iv) Grantor waives any rights and defenses described in Section 2856(a) of the California Civil Code that are or may become available to Grantor, including without limitation, any rights and defenses by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(v) Grantor waives all rights and defenses that Grantor may have because the Indebtedness is secured by real property. This means, among other things:

(1) Beneficiary may collect from Grantor (including enforcing this Deed of Trust against Grantor) without first foreclosing on any real or personal property collateral pledged by Borrower.

(2) If Beneficiary forecloses on any real property collateral pledged by Borrower:

(a) The amount of the Indebtedness may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b) Beneficiary may collect from Grantor (including enforcing this Deed of Trust against Grantor) even if Beneficiary, by foreclosing on the real property collateral pledged by Borrower, has destroyed any right Grantor may have to collect from Borrower.

This subsection (v) is an unconditional and irrevocable waiver of any rights and defenses Grantor may have because the Indebtedness is secured by real property. These rights and

defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(vi) Without limiting the generality of the foregoing subsection (v), Grantor understands and acknowledges that if Beneficiary forecloses judicially or nonjudicially against any real property securing the Indebtedness other than the Property hereby encumbered, that foreclosure could impair or destroy any ability that Grantor may have to seek reimbursement, contribution or indemnification from Borrower or others based on any Reimbursement Right Grantor may have for any recovery by Beneficiary under this Deed of Trust. Grantor further understands and acknowledges that in the absence of the waivers contained in this Paragraph 49, such potential impairment or destruction of Grantor's rights, if any, may entitle Grantor to assert a defense to this Deed of Trust based on Section 580d of the California Code of Civil Procedure as interpreted in **Union Bank v. Gradsky, 265 Cal.App.2d 40 (1968)**. By executing this Deed of Trust, Grantor freely, irrevocably and unconditionally: (i) waives and relinquishes that defense and agrees that Grantor will be fully liable under this Deed of Trust even though Beneficiary may foreclose judicially or nonjudicially against any real property security for the Indebtedness other than the Property; (ii) agrees that Grantor will not assert that defense in any action or proceeding which Beneficiary may commence to enforce this Deed of Trust; (iii) acknowledges and agrees that the rights and defenses waived by Grantor under this Deed of Trust include any right or defense that Grantor may have or be entitled to assert based upon or arising out of any one or more of Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure or Section 2848 of the California Civil Code; and (iv) acknowledges and agrees that Beneficiary is relying on this waiver in extending credit to Borrower in the form of the Indebtedness, and that this waiver is a material part of the consideration which Beneficiary is receiving for extending such credit to Borrower. Without limiting the generality of the foregoing, Grantor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation or the acceptance by Beneficiary or an affiliate of Beneficiary of a deed in lieu of foreclosure, has destroyed Grantor's rights of subrogation and reimbursement against Borrower by operation of California Code of Civil Procedure §580d or otherwise.

(vii) Grantor waives any right or defense it may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any property other than the Property encumbered by this Deed of Trust.

(viii) No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust.

(i) **Revival and Reinstatement.** If Beneficiary is required to pay, return or restore to Borrower or any other person any amounts previously paid on the Indebtedness because of any Insolvency Proceeding of Borrower, any stop notice or any other reason, the obligations of Grantor shall be reinstated and revived and the rights of Beneficiary shall continue with regard to such amounts, all as though they had never been paid, and this Deed of Trust shall continue to be effective or be reinstated, as the case may be.

(j) **Information Regarding Borrower.** Grantor represents that: (a) Beneficiary has made no representation to Grantor as to the creditworthiness of Borrower, and (b) no oral promises, assurances, representations or warranties have been made by or on behalf of Beneficiary to induce Grantor to execute and deliver this Deed of Trust. Grantor has received and approved copies of all other

39

requested Loan Documents. Before signing this Deed of Trust, Grantor investigated the financial condition and business operations of Borrower and such other matters as Grantor deemed appropriate to assure itself of Borrower's ability to discharge its obligations in connection with the Indebtedness. Grantor assumes full responsibility for that due diligence and for keeping informed of all matters which may affect Borrower's ability to pay and perform its obligations to Beneficiary. Beneficiary has no duty to disclose to Grantor any information which Beneficiary may have or receive about Borrower's financial condition or business operations or any other circumstances bearing on Borrower's ability to perform.

(k) **Counsel; Integration; Miscellaneous.** Grantor acknowledges that Grantor has had adequate opportunity to carefully read this Deed of Trust and to consult with an attorney of Grantor's choice prior to signing it. No consent, approval or authorization of or notice to any person or entity is required in connection with Grantor's execution of and obligations under this Deed of Trust, and Grantor acknowledges its execution and delivery of this Deed of Trust is made voluntarily without any duress or undue influence of any kind. No course of prior dealing, usage of trade, parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any of the terms hereof. This Deed of Trust is intended by the parties to be a fully integrated and final expression of their agreement. This Deed of Trust and the other Loan Documents incorporate all negotiations of the parties and constitute the parties' entire agreement. Grantor acknowledges that it is relying on no written or oral agreement, representation, warranty or understanding of any kind made by Beneficiary or any employee, attorney or agent of Beneficiary except for the agreements of Beneficiary set forth herein and in the Loan Documents.

50. Construction Provisions.

(a) Definitions. As used herein, the following terms shall have the following meanings:

(i) "***Architect***" means M. Arthur Gensler Jr. & Associates, Inc. or any other architect for the project approved by Beneficiary.

(ii) "***Architect's Contract***" means the Architect's Agreement, between Grantor and the Architect, and any other contract between Grantor and any Architect reasonably approved by Beneficiary.

(iii) "***Completion Date***" means the date that the Completion Certificate is delivered pursuant to § 21.1 of the Facility Agreement.

(iv) "***Construction Contract***" means that certain Construction Contract to be entered into between the Grantor and the Contractor, and approved by Beneficiary.

(v) "***Construction Consultant***" has the meaning set forth in the Facility Agreement.

(vi) "***Construction Consultant Service Contract***" has the meaning set forth in the Facility Agreement.

(vii) "***Contractor***" means the contractor for the Project approved by Beneficiary.

(viii) "***Development Plans***" means the plans and specifications prepared by the Architect for the Improvements as approved by Beneficiary, as the same may be amended and supplemented from time to time to reflect Change Orders approved by Beneficiary.

40

(ix) "***Force Majeure***" means any or all of the following which are beyond the reasonable control of Grantor: (a) any strikes, lockouts, or labor disputes; (b) inability to obtain labor or materials, unusual delays in transportation and adverse weather conditions not reasonably anticipatable, (c) war, governmental actions, court order, condemnation, civil unrest, riot or other casualty; (d) acts of God; and (e) other conditions similar to those set forth above.

(x) "***Golden State Claim***" shall mean the claims made under that certain Verified Petition for Writ of Mandate and Complaint Pursuant to the California Environmental Quality Act, dated as of January 11, 2018, referenced as Case No. BS172007, by Golden State Environmental Justice Alliance (Petitioner and Plaintiff) and City of Los Angeles and City Counsel of Los Angeles (Respondents and Defendants), and Grantor (Real Parties in Interest).

(xi) "***Hard Costs***" means amounts payable to the Contractor under the Construction Contract for the construction of the Improvements and other budgeted hard costs.

(xii) "***Permits***" means any and all building permits for the Improvements now in effect or hereafter issued.

(xiii) "***Permitted Encumbrances***" means with respect to the Premises, only the outstanding liens, easements, restrictions, security interests and other exceptions to title expressly set forth in Schedule B to title insurance policy (based on commitment no. 00180-292697, issued by Title Issuer) issued or to be issued promptly following the closing date by Title Insurer insuring the Deed of Trust for the benefit of Beneficiary, together with the liens and security interests in favor of Beneficiary created by the Loan Documents and such other matters as are expressly set forth in the Loan Documents.

(xiv) "***Project***" means construction of the Improvements substantially in accordance with the Development Plans.

(xv) "***Project Budget***" means the Project Budget defined in the Facility Agreement, which shall include a line item breakdown of the total direct and indirect costs of the Project, including all of the costs of all Hard Costs and Soft Costs, as the same may be amended by Beneficiary from time to time to reflect changes in the costs of the Project.

(xvi) "***Project Company DSRA***" has the meaning set forth in the Facility Agreement.

(xvii) "***Project Company Revenue Account***" has the meaning set forth in the Facility Agreement.

(xviii) "***Punch List Items***" means normal and customary construction punch list items, together with seasonal items to be completed in connection with construction of the Project that can only be or are normally accomplished at certain times of the year, and which in the aggregate would not cost more than US$300,000 to complete.

(xix) "***Soft Costs***" means amounts payable for the construction of the Improvements, which are not direct construction costs, such as architectural, engineering, financing and legal fees.

(xx) "***Substantial Completion***" shall be deemed to have occurred after (a) all Improvements are substantially completed (subject to completion of Punch List Items) lien free (unless bonded-off), in a good and workman-like manner and in substantial compliance with, as

41

reasonably determined by Beneficiary, (i) the Development Plans, (ii) the Construction Contract, and (iii) all applicable laws; (b) all costs, fees, claims and expenses related to such construction shall have been fully paid, and final lien waivers shall have been obtained from the Contractor and for each prime or major subcontractor; (c) all title insurance endorsements reasonably requested by Beneficiary have been delivered to Beneficiary and are reasonably acceptable to Beneficiary; (d) a final personal property inventory and evidence of full payment for personal property in which Beneficiary has or is to have a security interest; and (e) issuance of an unconditional final or temporary certificate of occupancy together with all other permits, licenses and approvals necessary for occupancy and use of the Premises without restriction as a first-class W hotel.

(b) Construction Funding Schedule. Each disbursement from the Project Company Revenue Account or the Project Company DSRA shall be made in accordance with the Deposit Account Control Agreement (as defined in the Facility Agreement) and the Project Budget (and if these are cost overruns, upon the consent of Lenders, as contemplated in the Deposit Account Control Agreement). If in any month the cumulative Loan draws are less than the cumulative amount of the fundings set forth in the Project Budget through and including the month in question (the "***Shortfall Amount***"), Grantor will fund the Shortfall Amount as directed by Beneficiary (the "***Loan Reserve***") (and interest shall accrue on all of the amounts funded into the Loan Reserve at the Interest Rate and be payable by Grantor in accordance with the Facility Agreement). When and if Grantor qualifies for additional disbursements from the Project Company Revenue Account or the Project Company DSRA, the funds in the Loan Reserve shall be disbursed from the Loan Reserve to Grantor (before advancing any other Loan proceeds to Grantor). The Project Budget indicates all proceeds will be disbursed by the Tranche A Availability Period (the "***Final Draw Date***"). If Grantor fails to draw all of the amounts from the Project Company Revenue Account Project Company DSRA by the Final Draw Date, Beneficiary will fund any remaining amounts into the Loan Reserve (and interest shall accrue on the Loan proceeds funded into the Loan Reserve at the Interest Rate and be payable in accordance with this Facility Agreement).

(c) Conditions to Funding from the Project Company Revenue Account and the Project Company DSRA.

(i) Conditions to Funding. Beneficiary shall have no obligation to remit any amounts out of the Project Company Revenue Account or the Project Company DSRA unless each of the following conditions has been completed to Beneficiary's and Construction Consultant's satisfaction, or waived with respect to a particular funding, each as determined in Beneficiary's sole discretion. Each of the conditions is for the benefit of Beneficiary and may be waived by Beneficiary, but only if the waiver is in writing and signed by Beneficiary. All of the documents and agreements required below shall be in form and substance satisfactory to Beneficiary, as determined in Beneficiary's sole discretion:

a. Development Plans. Beneficiary shall have received and approved, duplicate copies of the Development Plans, together with evidence that the Development Plans have been approved by Grantor and the Construction Consultant together with a certification from the Architect that the Improvements will comply with all applicable requirements of all applicable Access Laws if constructed substantially in accordance with the Development Plans.

b. Permits and Utilities. Beneficiary shall have received and approved copies of the demolition permit and other evidence satisfactory to Beneficiary evidencing that (i) the Premises complies with all applicable zoning ordinances, building and use restrictions and codes and any requirements with respect to licenses, permits, and agreements necessary for the lawful use and operation of the Premises (or as applicable with respect to the applicable funding) and (ii) necessary utilities and municipal services required for the Premises, or applicable portion thereof, are

42

in place (or a, or will be in place by the completion of construction of the Improvements and are available at budgeted cost.

c. Architect's Contract. Beneficiary shall have received and approved the Architect's Contract for the design and inspection of the Improvements.

d. Construction Contract and Construction Consultant Service Contract. Beneficiary shall have received and approved a copy of the executed Construction Contract with the Contractor for construction of the Improvements and a copy of the executed Construction Consultant Service Contract. Beneficiary's approval of the Construction Contract and Construction Consultant Service Contract shall not be deemed to modify or waive any of the provisions of the Loan Documents.

e. Subcontractors and Material Suppliers. Beneficiary shall have received and approved a list of subcontractors and material suppliers who are expected to provide labor or material in an amount exceeding US$250,000. With respect to each such subcontractor and material supplier, the list shall include the name, address and telephone number, a general statement of the nature of the work to be performed, the labor and materials to be supplied, and the cost of the labor and work. Beneficiary shall be promptly advised of new names as such subcontracts are awarded or any changes in the information given in the list.

f. Consent to Assignments. Beneficiary shall have received and approved consents from the Architect and the Contractor in such form as Beneficiary may reasonably require to assignment of the Architect's Contract, the Development Plans and the Construction Contract for the Improvements to Beneficiary as security for the Indebtedness and the Contractor and the Architect shall have subordinated all lien rights and claims to the lien of the Deed of Trust.

g. Construction Timeline. Beneficiary shall have received and approved the construction timeline (the "***Construction Timeline***"), which shall set out a realistic schedule for completion of the Improvements and for drawing the proceeds of the Loan, as may be amended from time to time, and approved by Beneficiary.

h. Project Budget. Beneficiary shall have received and approved the Project Budget approved by the Construction Consultant.

i. Zoning. Beneficiary shall have received and approved satisfactory evidence that the Premises is zoned to permit the construction and intended use of the Improvements, which evidence may include a zoning endorsement from Stewart Title Insurance Company, Inc. (the "Title Insurer"), if required by Beneficiary.

j. Parking. Beneficiary shall have received and approved evidence that there will be sufficient parking available for the intended use of the Improvements.

k. Approvals. Beneficiary shall have received evidence satisfactory to it that all consents from the relevant Governmental Agencies (as defined in the Facility Agreement) required for the Development (as defined in the Facility Agreement) have been obtained.

l. Environmental Claims. Beneficiary shall have received evidence satisfactory to it that there is no outstanding and/or ongoing Environmental Claim (as defined in the Facility Agreement) or other compliant relating to Environment (as defined in the Facility Agreement) against Grantor and that any Environmental Claim or compliant previously made against Grantor has been settled to the satisfaction of Beneficiary; provided that such requirements shall not

43

apply to the Golden State Claim so long as such claim does not result, whether directly or indirectly, in the closure and/or delay of the Project; provided further, that in no event shall Grantor be entitled to settle the Golden State Claim without the consent of Beneficiary.

m. Miscellaneous. Beneficiary shall have received such other documents and evidence required to be delivered prior to the First Disbursement Date (as defined in the Facility Agreement) pursuant to clause 20.28 of the Facility Agreement.

(d) Construction Improvements.

(i) Commencement and Completion of Construction. The Improvements shall be constructed in a good and workmanlike manner, free from all material defects in materials or workmanship. All of the Permits required for construction, shall be obtained prior to the commencement of construction of the Improvements (or the applicable part thereof) and promptly delivered to Beneficiary. Construction and use of the Improvements shall conform to the Development Plans and all applicable laws. Construction shall not be suspended for more than fifteen (15) consecutive business days except in instances caused by a Force Majeure, but in no event shall construction be suspended by more than ninety (90) consecutive days. Grantor shall complete all Punch List Items no later than six (6) months after the date on which Substantial Completion occurs.

(ii) Change Orders. All requests for changes ("***Change Orders***") in the Development Plans (other than minor field changes involving no extra cost) shall be in writing, signed by Grantor and the Architect, and delivered to Beneficiary promptly after execution. Grantor agrees to not permit any work pursuant to any "material" Change Order without Beneficiary's prior written approval. A Change Order shall be deemed "material" if (i) changes the use of the Improvements, or (ii) materially alters the square footage of the guest rooms or configuration of the Improvements, or (iii) it increases or decreases the costs of construction of the Improvements, or (iv) when added to other Change Orders, it increases or decreases the costs of construction of the Improvements, or (v) if it will materially extend the Completion Date. If the cost of construction of the Improvements is increased by any Change Order and there are insufficient Loan proceeds (after any permitted re-allocations) to pay the increased cost, Grantor shall make an equity deposit in the amount of the increased cost with Beneficiary in cash before permitting any work pursuant to the Change Order. The cash deposited with Beneficiary shall be added to the Loan Reserve.

(iii) Progress Reports. Grantor shall deliver to Beneficiary a report of the progress of construction of the Improvements, the cost of the Improvements compared to the line items in the Project Budget, the Change Order and pending Change Order logs, and such other data and information concerning the Premises as may be requested by Beneficiary. Such reports shall be provided on a quarterly basis.

(iv) Access to Grantor's Books and Records. Beneficiary or its representatives shall have unrestricted access to the books, records, contracts, sub-contracts, invoices, bills and statements of Grantor, including any supporting or related vouchers or other instruments during normal business hours and with reasonable prior notice. If Beneficiary so requires, copies of such items shall be delivered to Beneficiary or its representatives for audit, examination, inspection, and photocopying.

(v) Inspections. Beneficiary, or its representatives shall at all times during development and construction have the right of entry and free access to the Premises, and the right to inspect all work done, labor performed and materials furnished on or about the Premises. To assist in Beneficiary's administration of the Loan, Beneficiary may retain the Inspector to review the Construction Contract, the Architect's Contract, the Development Plans and the Project Budget to

determine that the stated costs are adequate to complete the Improvements and that the Development Plans conform with all applicable laws. Beneficiary may make periodic inspections of the Improvements during construction to review and comment on the construction progress and percentage of completion, the conformity with the Development Plans and applicable laws, the activity and coordination among trades, the quality of workmanship, and the accuracy of Grantor's estimates of the percentage of work completed. Beneficiary may review monthly Grantor requisitions and perform such other duties as Beneficiary deems necessary or desirable. Grantor acknowledges and agrees that all inspections by Beneficiary or its representatives are solely for the purpose of protecting the security of Beneficiary. No such inspection shall constitute a representation by Beneficiary to any person that the Improvements comply with the Development Plans and applicable laws, or that the construction is free from faulty materials or workmanship, nor shall any inspection by Beneficiary or its representatives constitute approval of any certification or representation given to Beneficiary or relieve any person making such certification or representation from the responsibility therefor.

(vi) Corrective Work. If any construction work does not conform with the requirements set forth herein in all material respects, Beneficiary shall have the right to require corrective work by delivery of written demand to Grantor. If Beneficiary reasonably determines that the corrective work may delay completion of the Improvements beyond the Completion Date, no further construction except corrective work shall be performed without the prior written consent of Beneficiary (which consent shall not be unreasonably withheld, delayed or conditioned), and the corrective work shall be completed to Beneficiary's reasonable satisfaction within fifteen (15) days from the date of the written demand or, if Beneficiary reasonably determines that the corrective work is not reasonably capable of being completed within fifteen (15) days, within such additional time as Beneficiary reasonably determines is adequate, all subject to Force Majeure.

(vii) Liens. Grantor shall keep the Premises free from all Liens, whether or not superior to this Deed of Trust, other than for Permitted Encumbrances. If any Lien is filed or placed against the Premises, Grantor shall obtain a release and satisfaction of the Lien, or provide Beneficiary with a statutory lien bond acceptable to Beneficiary in the amount of one hundred fifty percent (150%) of the Lien, within thirty (30) days of written notice by Beneficiary to Grantor of the existence of the Lien. At any time within such thirty (30) day period, Beneficiary may, at its option, restrict disbursements of Loan proceeds to reserve sufficient sums to pay one hundred fifty percent (150%) of the Lien or require that Grantor post other security satisfactory to Beneficiary. If Grantor does not post the bond or other security satisfactory to Beneficiary in accordance with aforesaid, Beneficiary may elect to disburse Loan proceeds or other security, make an advance to pay such Lien or apply such Loan proceeds or other security to the Indebtedness in any order as Beneficiary determines. Beneficiary's rights under this section shall not be affected by any claim of Grantor that the Lien is invalid, it being understood that the decision of Beneficiary to pay or withhold is to be made by Beneficiary in its sole discretion, subject only to Grantor's right to provide a bond or other security satisfactory to Beneficiary as provided above.

(viii) Disputes Endangering Completion. If disputes arise which, in the good faith opinion of Beneficiary, may endanger completion of the Improvements by the Completion Date, or the fulfilment of any condition precedent or covenant herein, Beneficiary may disburse Loan proceeds for the account of Grantor without prejudice to Grantor's rights, if any, to recover from the party to whom paid. Beneficiary may, without limitation, indemnify a title insurer against possible assertion of Liens, or agree to pay any disputed amounts to contractors or subcontractors if Grantor is unable or unwilling to pay the same. All sums paid or agreed to be paid shall be for the account of Grantor, and Grantor agrees to reimburse Beneficiary for all such payments, together with interest at the default rate of interest set forth in the Facility Agreement until the date of reimbursement. Such

45

disbursements, whether or not in excess of the principal amount of the Loan, shall be secured by the Deed of Trust.

(ix) Restriction. Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Grantor shall not purchase or install any materials, equipment, fixtures, or any other part of the Improvements under conditional sales agreements or other arrangements wherein the right is reserved to remove or repossess any such items

(x) Certificate of Occupancy. Grantor shall use its best efforts to obtain a final unconditional certificate(s) of occupancy as soon as possible after Substantial Completion. If the certificate of occupancy delivered to Beneficiary is a temporary certificate of occupancy and if there is an expiration date prior to repayment of the Loan, the expiration date must be extended or a final unconditional certificate of occupancy must be issued prior to such expiration, otherwise an Event of Default shall be deemed to occur.

(xi) Funding of Disbursements.

a. The amounts standing to the credit of the Project Company Revenue Account or the Project Company DSRA shall be disbursed on the terms and conditions herein provided. Any funds on deposit in the Loan Reserve shall be disbursed prior to any advance contemplated under the Loan Documents.

b. Each date of a withdrawal of funds from the Project Company Revenue Account or the Project Company DSRA and/or funds on deposit in the Loan Reserve is herein referred to as a "***Disbursement Date***".

(xii) General Conditions. Notwithstanding anything contained herein to the contrary, each disbursement from the Project Company Revenue Account or the Project Company DSRA is subject to satisfaction of each of the following conditions:

a. Each and every condition any such disbursement as set out herein has been satisfied or waived in writing by Beneficiary, including the delivery of evidence of the insurance policies required hereunder;

b. There exists no Event of Default and no event which would constitute an Event of Default if not cured within any applicable cure period;

c. Beneficiary has received, to the extent required by Beneficiary, an update endorsement to its title insurance policy showing no exceptions to title to the Premises other than those approved by Beneficiary;

d. Beneficiary is reasonably satisfied that the percentage of the Project Budget already disbursed is no more than the percentage of the Improvements already completed, and that aggregate of the undisbursed Loan proceeds and the amounts standing to the credit of the Project Company DSRA are sufficient to pay all the unpaid costs set out in the Project Budget;

e. Beneficiary is satisfied that such disbursement is made in accordance with the Project Budget and has received certified copies of invoices, purchase orders, contracts or other documents for payment of the Construction Costs which correspond to the amount to be disbursed, in each case, endorsed by the Construction Consultant;

46

f. With respect to a disbursement from the Project Company DSRA, there being no Cost Overrun, or if there is, the Cost Overrun has been or will be funded by the Borrower, any of the Corporate Guarantors (as defined in the Facility Agreement) and/or Grantor into the Project Company Revenue Account;

g. Beneficiary, in its reasonable opinion, is not prohibited from permitting the funds to be withdrawn from the Project Company Revenue Account or the Project Company DSRA under any applicable lien laws or stop notice statutes;

h. The Improvements have not been materially damaged by fire or other casualty (unless sufficient insurance proceeds are available to repair), and there is no eminent domain proceeding pending or threatened with respect to any material portion of the Premises;

i. All representations and warranties of Grantor hereunder and under the other Loan Documents are true and correct in all material respects as of the date of disbursement;

j. Grantor has provided Beneficiary with evidence of payment to the Contractor and each major subcontractor for the amounts covered by prior payment requests for which payment is due;

k. The Improvements are being constructed in a good and workmanlike manner by appropriate means substantially in accordance with the Development Plans and all required inspections and approvals have been obtained as and when necessary or desirable;

l. Grantor and any guarantors are solvent;

m. Grantor is substantially on time with respect to the Construction Timeline approved by Beneficiary, subject to Force Majeure; and

n. if any Permits or any evidence concerning the compliance of the Premises with applicable ordinances, laws and codes necessary for the lawful use and operation of the Premises are issued, delivered or obtained after the initial disbursement of the Loan, Beneficiary shall have received and approved copies of all such Permits and all such evidence.

(xiii) Draw Requests. No more often than once each month, Grantor shall request withdrawal from the Project Company Revenue Account and/or the Project Company DSRA to pay costs of the Premises set out in the Project Budget by delivering a draw request (a "***Draw Request***") to Beneficiary, in form reasonably acceptable to Beneficiary. Beneficiary shall use its best efforts to process the Draw Request within ten (10) days after receipt thereof. Each Draw Request shall be accompanied by a progress report and such documents and instruments as Beneficiary may reasonably request to establish that each person performing labor or supplying materials has been paid or will be paid from the disbursement for all work performed and materials supplied through the date of the Draw Request; including without limitation paid invoices for soft cost items and conditional and unconditional lien waivers, as appropriate, from the Contractor and subcontractors. Each Draw Request shall be deemed to be a renewal of all Grantor's warranties and representations herein and the other Loan Documents.

47

(xiv) Disbursements for Hard Costs.

a. Each Draw Request for Hard Costs shall be accompanied by a Contractor's application for payment (in form reasonably acceptable to Beneficiary) together with such other documentation as Beneficiary may reasonably require;

b. Each Draw Request for Hard Costs shall be based upon the percentage of completion of the Hard Cost line items. The percentage of completion shall be based upon the Architect's certificate of job progress, as verified by the Inspector;

c. If any Draw Request covers, in whole or in part, a payment for materials not incorporated into the Improvements ("***Stored Materials***"), Beneficiary shall have no obligation to make such disbursement unless Beneficiary determines, from evidence provided by Grantor, that (i) the materials are stored at a location reasonably acceptable to Beneficiary, (ii) the materials are fully insured under a satisfactory insurance policy naming Beneficiary and Grantor as loss payees, (iii) the materials are identifiable and, if stored off the Premises, are non-fungible and properly segregated from materials not intended for the construction work, (iv) Beneficiary shall have inspected such materials and verified satisfaction of the foregoing requirements, and (v) Beneficiary has a perfected security interest in the materials.

(xv) Final Disbursement for Hard Costs and Soft Costs. The final disbursement from the Project Company Revenue Account and the Project Company DSRA, attributable to construction of the Improvements, shall be disbursed only upon Beneficiary's receipt of the following:

a. Evidence that the Grantor has achieved Substantial Completion;

b. Evidence reasonably satisfactory to Beneficiary that Hard Costs other than with respect to Punch List Items shall, upon making the final disbursement, have been paid in full;

c. An endorsement to the Title Policy updating the coverage through the date of the final disbursement and showing no exceptions to title other than those previously approved by Beneficiary;

d. Evidence that Grantor has accepted the Improvements as complete, subject to completion of Punch List Items; and

e. Evidence that all necessary licenses (including, without limitation, all liquor license(s) for the Premises), permits, authorizations, registrations and approvals necessary for Grantor (and manager) to own and operate the Premises and carry on its business have been obtained and copies have been delivered to Beneficiary.

(xvi) Deliveries after Substantial Completion. Grantor shall deliver the following items in form and content acceptable to Beneficiary:

a. Within sixty (60) days of Substantial Completion, one set of "as-built" plans and specifications for the Improvements (or construction drawings marked to show changes in the course of construction);

48

b. Within thirty (30) days of Substantial Completion, a final personal property inventory and evidence of full payment for personal property in which Beneficiary has or is to have a security interest; and

c. Within thirty (30) days of Substantial Completion, such certificates and other evidence as Beneficiary may reasonably require that Grantor is in compliance with all insurance requirements and other requirements under the Loan Documents.

(xvii) Balancing; Loan Reserve. If at any time during the term of the Loan, Beneficiary determines, in its reasonable discretion and with its calculation having been provided to Grantor, that (a) the sum of the then undisbursed Loan plus all funds on deposit in the Loan Reserve are less than the projected unpaid costs to complete construction of the Improvements in accordance with the Development Plans, or (b) Grantor's funds on deposit for remaining Punch List Items are less than one hundred twenty five percent (125%) of the cost thereof, or (c) that other unpaid costs of the Premises set out in the Project Budget (including without limitation, Beneficiary's reasonable projection of interest on the Loan in excess of net operating income) exceed the Loan proceeds available for payment of such costs, Grantor shall make an additional equity deposit in an amount equal to such difference with Beneficiary for deposit into the Loan Reserve within ten (10) Business Days of demand from Beneficiary.

(xviii) Use of Loan Proceeds. All amounts remitted from the Project Company Revenue Account and the Project Company DSRA shall be used only to pay the costs set out in the Project Budget and only in accordance with a Draw Request approved in writing by Beneficiary.

(xix) Responsibility For Application of Amounts Remitted from the Project Company Revenue Account or the Project Company DSRA. Beneficiary shall not have any obligation to assure that amounts remitted from Project Company Revenue Account or the Project Company DSRA hereunder are applied against the costs shown in the Draw Request, and Grantor accepts sole and full responsibility for and warrants proper application of all such remittance. Grantor hereby releases and agrees to hold harmless, protect, indemnify, and defend Beneficiary and its officers, directors, employees, attorneys, and agents from all losses, demands, claims, and expenses that arise out of or are related to any alleged misapplication or misuse of Loan proceeds by Grantor or anyone acting on behalf of Grantor.

(xx) Governmental Set Asides. In the event that any amount are set aside ("***Set Aside Funds***") for purposes of meeting any governmental requirements that funds be set aside to be available to pay for performance obligations imposed on Grantor, such Set Aside Funds shall be treated as disbursed Loan proceeds on the date they are set aside. The set aside amounts shall be placed in a deposit account (or subaccount) with Beneficiary or its applicable beneficiary, shall be in Grantor's name, but shall be under the sole dominion and control of Beneficiary or its applicable beneficiary. Grantor hereby grants to Beneficiary a security interest in the Set Aside Funds to secure the Indebtedness.

(xxi) Punch List Sub-Reserve. Upon Substantial Completion, if adequate funds are not then on deposit in the Loan Reserve, Grantor shall deposit into the Loan Reserve (which deposit may be funded by Loan proceeds if there are such available proceeds) an amount equal to 125% of Beneficiary's reasonable estimate of costs to complete the Punch List Items. Loan proceeds on deposit for this purpose in the Loan Reserve shall be disbursed to the Grantor, in a single disbursement, upon completion of the Punch List Items, as confirmed by Beneficiary in its reasonable discretion.

49

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF DEED OF TRUST SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. GRANTOR ACKNOWLEDGES AND AGREES THAT THERE ARE NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT AND NO SUCH OTHER TERMS AND PROVISIONS MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS DEED OF TRUST ONLY BY ANOTHER WRITTEN AGREEMENT.**

Grantor acknowledges receipt of a copy of this Deed of Trust at the time of execution hereof.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

50

**IN WITNESS WHEREOF**, the Grantor has executed this instrument the day and year first above written.

**GRANTOR:**

JIA YUAN USA CO., INC., a Delaware corporation

By: ______________________

Fuer Yuan, Manager

[*Signature Page - Deed of Trust*]

51

ACKNOWLEDGMENT OF GRANTOR

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On Feb 27, 2018 before me, Leo Li, Notary Public, (here insert name and title of the officer) personally appeared Wey Yuan, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LEO LI
Commission No. 2107363
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm Expires APRIL 17, 2019

NCC1 NCC1

Signature Leo Li (Seal)

[*Acknowledgment*]

52

**EXHIBIT A**

**Legal Description**

**PARCEL 1**:

LOTS 16, 17, 18, 19, 20 AND THE SOUTH 10 FEET OF LOT 15, IN BLOCK 73 OF WILLIAM'S SUBDIVISION OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE 32, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THOSE PORTIONS OF LOTS 19 AND 20 IN BLOCK 73 W. M. WILLIAMS SUBDIVISION OF BLOCKS 73 AND 72 OF ORD'S SURVEY, AS PER MAP RECORDED IN BOOK 3, PAGES 32 AND 33, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, BOUNDED AND DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF FLOWER STREET, WITH THE CENTER LINE OF ELEVENTH STREET, AS SAID INTERSECTION IS SHOWN ON MAP OF TRACT NO. 3730, AS PER MAP RECORDED IN BOOK 39 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTHWESTERLY ALONG A CURVE TANGENT TO SAID CENTER LINE OF ELEVENTH STREET, CONCAVE TO THE NORTHEAST AND HAVING A RADIUS OF 1,000 FEET, THROUGH A CENTRAL ANGLE OF 04 DEGREES 26 MINUTES 30 SECONDS, AN ARC DISTANCE OF 77.52 FEET; THENCE NORTHWESTERLY ALONG A LINE TANGENT TO SAID CURVE, 200 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES FROM SAID TANGENT LINE 5 FEET TO A POINT IN A CURVE CONCAVE TO THE SOUTHWEST HAVING A RADIUS OF 600 FEET AND BEING TANGENT TO SAID POINT TO A LINE PARALLEL WITH SAID TANGENT LINE; THENCE NORTHWESTERLY IN A DIRECT LINE TO THE MOST WESTERLY CORNER OF SAID LOT 20, SAID MOST WESTERLY CORNER TO BE THE TRUE POINT OF BEGINNING FOR PURPOSES OF THIS DESCRIPTION; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOTS 20 AND 19 TO A POINT DISTANT 15 FEET NORTHEASTERLY, MEASURED ALONG SAID NORTHWESTERLY LINE FROM A CURVE CONCAVE TO THE SOUTHWEST, HAVING A RADIUS OF 638 FEET AND BEING CONCENTRIC WITH SAID CURVE HAVING A RADIUS OF 600 FEET; THENCE SOUTHERLY IN A DIRECT LINE TO A POINT IN SAID CURVE HAVING A RADIUS OF 638 FEET; DISTANT 15 FEET SOUTHEASTERLY, MEASURED ALONG SAID LAST MENTIONED CURVE FROM SAID NORTHWESTERLY LINE; THENCE SOUTHEASTERLY ALONG SAID LAST MENTIONED CURVE TO A POINT OF TANGENCY IN A LINE PARALLEL WITH AND DISTANT 43 FEET NORTHEASTERLY MEASURED AT RIGHT ANGLES FROM SAID TANGENT LINE HAVING A LENGTH OF 200 FEET; THENCE SOUTHEASTERLY ALONG SAID PARALLEL LINE TO THE SOUTHEASTERLY LINE OF SAID LOT 20; THENCE SOUTHWESTERLY ALONG SAID SOUTHEASTERLY LINE TO THE SOUTHWESTERLY LINE OF SAID LOT 20; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPT THEREFROM THOSE PORTIONS OF LOT 16 AND THE SOUTHERLY 10 FEET OF LOT 15, SAID BLOCK 73, INCLUDED WITHIN A STRIP OF LAND, 40 FEET WIDE LYING SOUTHEASTERLY OF AND CONTIGUOUS TO A LINE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF 10TH PLACE, FORMERLY OTTOWA STREET, 50 FEET WIDE, WITH THE CENTER LINE OF FIGUEROA STREET; 80 FEET WIDE, AS SAID INTERSECTION IS SHOWN ON MAP OF TRACT NO. 719, RECORDED IN BOOK 15 PAGE 160 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTHEASTERLY ALONG SAID LAST MENTIONED CENTER LINE 55.26 FEET; THENCE NORTHEASTERLY ALONG A TANGENT CURVE CONCAVE TO THE SOUTHEAST AND HAVING A RADIUS OF 1,500 FEET; THROUGH A CENTRAL ANGLE OF 04 DEGREES 40 SECONDS 46 MINUTES, AN ARC DISTANCE OF 122.51 FEET.

**PARCEL 2**:

LOTS 35, 36 AND 37 AND THE SOUTHWEST 20 FEET OF LOT 34 IN BLOCK 73 OF W. M. WILLIAMS SUBDIVISION OF BLOCKS 72 AND 73 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3 PAGES 32 AND 33 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHEASTERLY 5 FEET THEREOF.

ALSO EXCEPT THEREFROM THE NORTHWESTERLY 10 FEET OF LOTS 36 AND 37.

ALSO EXCEPT THEREFROM ONE-HALF OF ALL GAS OIL, HYDROCARBON SUBSTANCES AND OTHER MINERALS IN AND UNDER SAID LAND, AS RESERVED BY GEORGE H. DITTUS, IN DEED RECORDED AUGUST 5, 1964 AS INSTRUMENT NO. 2828, OF OFFICIAL RECORDS.

**PARCEL 3**:

LOT 38 IN BLOCK 73, W. M. WILLIAMS SUBDIVISION OF BLOCKS 73 AND 72 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGES 32 AND 33 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO LOT "A" OF TRACT NO. 3730 AS PER MAP RECORDED IN BOOK IN BOOK 39 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LOT "A" INCLUDED WITHIN A STRIP OF LAND 86 FEET WIDE LYING 43 FEET ON EACH SIDE OF A LINE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF FLOWER STREET WITH THE CENTERLINE OF ELEVENTH STREET AS SAID INTERSECTION IS SHOWN ON SAID MAP OF TRACT NO. 3730; THENCE NORTHWESTERLY ALONG A CURVE CONCAVE TANGENT TO SAID LAST MENTIONED CENTER LINE, CONCAVE TO THE NORTHEAST AND HAVING A RADIUS OF 1000 FEET, THROUGH A CENTRAL ANGLE OF 04 DEGREES 26 MINUTES 30 SECONDS AN ARC DISTANCE OF 77.52 FEET; THENCE NORTHWESTERLY ALONG A LINE TANGENT TO SAID CURVE 200 FEET.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LOT "A" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHEASTERLY LINE OF SAID STRIP OF LAND 86 FEET WIDE WITH THE NORTHWESTERLY LINE OF THE SOUTHEASTERLY 5 FEET OF SAID LOT "A" THENCE NORTHWESTERLY ALONG SAID NORTHEASTERLY LINE 15 FEET; THENCE EASTERLY IN A DIRECT LINE TO A POINT IN SAID NORTHWESTERLY LINE DISTANT 15 FEET NORTHEASTERLY, MEASURED ALONG SAID NORTHWESTERLY LINE FROM SAID NORTHEASTERLY LINE; THENCE SOUTHEASTERLY ALONG SAID NORTHWESTERLY LINE TO THE POINT OF BEGINNING.

ALSO EXCEPT THEREFROM THE SOUTHEASTERLY 5 FEET OF SAID LOTS.

ALSO EXCEPT THEREFROM THE NORTHWESTERLY 10 FEET OF SAID LOT 38.

ALSO EXCEPT THEREFROM ONTO THE CITY OF LOS ANGELES ITS INTEREST IN FEE OF THE ADJACENT STREETS WHICH WOULD OTHERWISE PASS WITH THE CONVEYANCE OF THE DESCRIBED REAL PROPERTY, AS PROVIDED IN DEED RECORDED DECEMBER 31, 1973 AS INSTRUMENT NO. 69, OF OFFICIAL RECORDS.

**PARCEL 4**:

THE NORTHWESTERLY 10 FEET OF LOTS 36, 37 AND 38 IN BLOCK 73, OF W. M. WILLIAMS SUBDIVISION OF BLOCKS 72 AND 73 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3 PAGES 32 AND 33 OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 5**:

THAT PORTION OF LOT A OF THE IMMANUEL PRESBYTERIAN CHURCH PROPERTY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51 PAGE 7, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHWESTERLY LINE OF SAID LOT A DISTANT THEREON SOUTH 37°46'00" WEST 50.00 FEET FROM THE MOST NORTH CORNER OF SAID LOT A; THENCE ALONG; SAID NORTHWESTERLY LINE SOUTH 37°46'00" WEST 115.00 FEET TO THE MOST NORTH CORNER OF THE LAND DESCRIBED IN PARCEL 1 OF THE DEED TO UNION BANK RECORDED ON JULY 10, 1968 AS INSTRUMENT NO. 1733; THENCE ALONG THE NORTHEASTERLY LINE OF SAID PARCEL 1 SOUTH 52°14'00" EAST 164.97 FEET TO THE SOUTHEASTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO UNION OIL COMPANY OF CALIFORNIA RECORDED ON AUGUST 7, 1956 AS INSTRUMENT NO. 3769 IN BOOK 51957 PAGE 219 OF OFFICIAL RECORDS; THENCE ALONG SAID SOUTHEASTERLY LINE NORTH 37°53'50" EAST 126.70 FEET TO THE NORTHEASTERLY LINE OF SAID LAST MENTIONED DEED THENCE ALONG SAID NORTHEASTERLY LINE NORTH 56°17'10" WEST 140.65 FEET TO THE MOST EASTERLY CORNER OF THE LAND CONDEMNED FOR STREET PURPOSES AND DESCRIBED IN PARCEL NO. 146AA OF SUPERIOR COURT CASE NO. 932,018, A CERTIFIED COPY OF WHICH WAS RECORDED ON AUGUST 11, 1969 AS INSTRUMENT NO. 2195; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL NO. 146AA SOUTH 80°44'25" WEST 21.95 FEET TO THE MOST WESTERLY CORNER THEREOF; THENCE ALONG THE NORTHWESTERLY LINE OF SAID PARCEL NO. 146AA NORTH 37° 46'00" EAST 15.00 FEET TO SAID NORTHEASTERLY LINE OF SAID LAND OF UNION OIL COMPANY OF CALIFORNIA;

THENCE ALONG SAID NORTHEASTERLY LINE NORTH 56°17'10" WEST 10.03 FEET TO THE POINT OF BEGINNING.

**PARCEL 6**:

AN EASEMENT AND RIGHT OF WAY FOR INGRESS AND EGRESS OF PERSON BY VEHICLE OR OTHERWISE AS RESERVED IN DEED RECORDED JULY 10, 1968 AS INSTRUMENT NO. 1733, OVER THAT PORTION OF THE ABOVE MENTIONED LOT A FOR THE BENEFIT OF AND APPURTENANT TO PARCEL 1 ABOVE AND DESCRIBED AS FOLLOWS:

(A) BEGINNING AT A POINT IN THE NORTHWESTERLY LINE OF SAID LOT A, THAT IS DISTANT THEREON SOUTH 37° 46' WEST 127.21 FEET FROM THE NORTHERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO THE UNION OIL COMPANY OF CALIFORNIA, RECORDED ON AUGUST 7, 1956, AS INSTRUMENT NO. 3769, IN BOOK 51957 PAGE 219, OF OFFICIAL RECORDS OF SAID COUNTY; THENCE SOUTH 52° 14' EAST 126.96 FEET; THENCE NORTH 37° 46' EAST 12.21 FEET; THENCE SOUTH 52° 14' EAST 20.00 FEET; THENCE SOUTH 37° 46' WEST 12.21 FEET; THENCE SOUTH 52° 14' EAST 3.30 FEET; THENCE SOUTH 74° 26' EAST 15.88 FEET TO A POINT IN THAT CERTAIN COURSE ABOVE DESCRIBED AS HAVING A BEARING AND LENGTH OF NORTH 37° 53' 50" EAST 37.96 FEET THAT IS DISTANT ALONG SAID COURSE SOUTH 37° 53' 50" WEST 6.21 FEET FROM THE NORTHEASTERLY TERMINUS OF SAID COURSE; THENCE ALONG SAID COURSE SOUTH 37° 53' 50" WEST 26.00 FEET; THENCE NORTH 52° 14' WEST 164.90 FEET TO A POINT IN THE NORTHWESTERLY LINE OF SAID LOT A THAT IS DISTANT ALONG SAID NORTHWESTERLY LINE NORTH 37° 46' EAST 15.51 FEET FROM THE MOST WESTERLY CORNER OF SAID LOT A; THENCE ALONG SAID NORTHWESTERLY LINE, NORTH 37° 46' EAST 20.00 FEET TO THE POINT OF BEGINNING.

(B) AN EXCLUSIVE EASEMENT TO PARK VEHICLES AND TO MOVE VEHICLES ONTO AND OFF OF THE PORTION OF THE LAND CONVEYED BY SAID DEED JULY 10, 1968 AS INSTRUMENT NO. 1733, LYING NORTH OF THE EASEMENT AND RIGHT OF WAY DESCRIBED IN (A) ABOVE WHICH IS SHOWN CROSSHATCHED ON THE PLAT ATTACHED AS EXHIBIT A THERETO.

**PARCEL 7**:

THAT PORTION OF LOT A OF THE IMMANUEL PRESBYTERIAN CHURCH PROPERTY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51, PAGE 7, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT PORTION OF BLOCK 73 OF W. M. WILLIAM'S SUBDIVISION OF BLOCKS 72 AND 73 OF ORD'S SURVEY, IN SAID CITY, COUNTY AND STATE, AS PER MAP RECORDED IN BOOK 3, PAGES 32 AND 33 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT A; THENCE NORTH 37° 48' 10" EAST ALONG THE SOUTHEASTERLY LINE OF SAID LOT A, A DISTANCE OF 9.76 FEET TO THE SOUTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED AS HAVING A BEARING AND LENGTH OF "NORTH 52° 11' 50" WEST 1.35 FEET", IN THE DEED FROM LOS NIETOS COMPANY, TO UNION OIL COMPANY OF CALIFORNIA, RECORDED ON AUGUST 7, 1956, AS INSTRUMENT NO. 3769, IN BOOK 51957, PAGE 219, OFFICIAL RECORDS OF SAID COUNTY; THENCE NORTH 52° 11' 50" WEST ALONG SAID COURSE 135 FEET; THENCE NORTH 37° 53' 50" EAST 37.96 FEET; THENCE NORTH 52° 14' 00" WEST 164.97 FEET

TO A POINT IN THE NORTHWESTERLY LINE OF SAID LOT A, THAT IS DISTANT NORTH SOUTH 37° 46' WEST ALONG SAID NORTHWESTERLY LINE 115.00 FEET FROM THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN SAID DEED TO UNION OIL COMPANY OF CALIFORNIA; THENCE ALONG THE NORTHWESTERLY LINE OF SAID LOT A, TO AND ALONG THE NORTHWESTERLY LINE OF SAID BLOCK 73, SOUTH 37° 46' WEST 228.66 FEET TO THE MOST WESTERLY CORNER OF LOT 13 IN SAID BLOCK 73; THENCE ALONG THE SOUTHWESTERLY LINE OF SAID LOT 13, SOUTH 52° 14' 00" EAST 166.12 FEET TO THE MOST SOUTHERLY CORNER OF SAID LOT 13; THENCE NORTH 37° 48' 10" EAST 180.94 FEET TO THE POINT OF BEGINNING.

EXCEPTING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS, IN, UNDER OR THAT MAY BE PRODUCED FROM SAID LAND WITH THE FREE PERPETUAL AND EXCLUSIVE RIGHT TO EXPLORE, PROSPECT FOR, DRILL, PRODUCE, TAKE AND REMOVE THE SAME FROM ONLY THAT PORTION OF SAID LAND WHICH UNDERLIES A PLANE PARALLEL TO AND 500 FEET BELOW, MEASURED VERTICALLY DOWNWARD BELOW THE SURFACE OF THE LAND, WHICH PORTION IS HEREINAFTER REFERRED TO AS "SUBSURFACE LAND", AND EXCEPT THE RIGHT TO INJECT OR INTRODUCE FROM TIME TO TIME, STORE THEREIN AND SUBSEQUENTLY REMOVE FROM SAID SUBSURFACE LAND ANY OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, MINERALS AND RIGHTS OF WAY EASEMENTS AND SERVITUDES IN AND THROUGH SAID SUBSURFACE LAND, FOR THE PURPOSE OF EXERCISING THE RIGHTS THEREIN RESERVED, INCLUDING BUT NOT LIMITED TO THE RIGHT FROM TIME TO TIME TO DRILL WELL HOLES, TO CASE THE SAME, AND OTHERWISE COMPLETE AND MAINTAIN WELLS INTO AND THROUGH SAID SUBSURFACE LANDS FROM LOCATIONS OUTSIDE THE BOUNDARIES OF SAID LAND, WITHOUT, HOWEVER THE RIGHT TO ENTER UPON THE SURFACE OF THE SAID LAND, AS RESERVED BY UNION OIL COMPANY OF CALIFORNIA, A CALIFORNIA CORPORATION, IN DEED RECORDED JULY 10, 1968 AS INSTRUMENT NO. 1733, IN BOOK D-4060, PAGE 705, OFFICIAL RECORDS.

**PARCEL 8**:

AN EASEMENT TO CONSTRUCT, MAINTAIN, REPAIR AND REBUILD A MOTOR VEHICLE PASSAGEWAY RAMP TOGETHER WITH RIGHTS OF INGRESS AND EGRESS IN AND UPON SAID RAMP OVER, ALONG AND ACROSS THAT PORTION OF LOT "A" OF THE IMMANUEL PRESBYTERIAN CHURCH PROPERTY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51, PAGE 7, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT "A"; THENCE NORTH 37° 48' 10" EAST ALONG THE SOUTHEASTERLY LINE OF SAID LOT "A", A DISTANCE OF 9.76 FEET TO

SOUTHEASTERLY TERMINUS OF THAT CERTAIN COURSE DESCRIBED AS HAVING A BEARING AND LENGTH OF "NORTH 52° 11' 50" WEST 135 FEET" IN THE DEED FROM LOS NIETOS COMPANY, TO UNION OIL COMPANY OF CALIFORNIA, RECORDED ON AUGUST 7, 1956 AS INSTRUMENT NO. 3769, IN BOOK 51957 PAGE 219, OFFICIAL RECORDS OF SAID COUNTY; THENCE NORTH 52° 11' 50" WEST ALONG SAID COURSE 1.35 FEET; THENCE NORTH 37° 53' 50" EAST 37.96 FEET TO THE TRUE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE FROM SAID TRUE POINT OF BEGINNING ALONG A LINE WHICH PASSES THROUGH A POINT IN THE NORTHWESTERLY LINE OF SAID LOT "A" THAT IS DISTANT SOUTH 37° 46' WEST ALONG SAID NORTHWESTERLY LINE 115.00 FEET FROM

THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN SAID DEED TO UNION OIL COMPANY OF CALIFORNIA NORTH 52° 14' 00" WEST 38.24 FEET; THENCE NORTH 67° 38' 58" EAST 35.16 FEET; THENCE NORTH 37° 47' 00" EAST 94.73 FEET TO THE NORTHEASTERLY LINE OF THE LAND DESCRIBED IN PARCEL 1 OF SAID DEED TO UNION OIL COMPANY OF CALIFORNIA; THENCE ALONG SAID NORTHEASTERLY LINE SOUTH 56° 17' 16" EAST 21.05 FEET TO THE NORTHEASTERLY PROLONGATION OF THAT CERTAIN COURSE HEREINABOVE DESCRIBED AS HAVING A BEARING AND LENGTH OF "NORTH 37° 53' 50" EAST 37.96 FEET; THENCE ALONG SAID PROLONGATION SOUTH 37° 53' 50" WEST 126.71 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT ALL RIGHTS TO THE AIR SPACE ABOVE A PLANE WHICH IS 27 FEET ABOVE GROUND LEVEL, AS RESERVED BY UNION OIL COMPANY OF CALIFORNIA, A CALIFORNIA CORPORATION, IN DEED RECORDED JULY 10, 1968 AS INSTRUMENT NO. 1733, IN BOOK D-4060, PAGE 705, OFFICIAL RECORDS.

**PARCEL 9**:

LOT 14 AND THE NORTH 20 FEET OF LOT 15, BLOCK 73 OF W. M. WILLIAMS SUBDIVISION OF BLOCKS 72 AND 73, ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE 32, OF MISCELLANEOUS RECORDS OF SAID COUNTY.

EXCEPTING THEREFROM THOSE PORTIONS OF LOT 14 AND OF THE NORTHERLY 20 FEET OF LOT 15, BLOCK 73, W. M. WILLIAMS SUBDIVISION OF BLOCKS 73 AND 72 OF ORD'S SURVEY, AS PER MAP RECORDED IN BOOK 3, PAGES 32 AND 33 OF MISCELLANEOUS RECORDS, INCLUDED WITHIN A STRIP OF LAND, 40 FEET WIDE, LYING SOUTHEASTERLY OF AND CONTIGUOUS TO A LINE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF 10TH PLACE, FORMERLY OTTOWA STREET, 50 FEET WIDE. WITH THE CENTER LINE OF FIGUEROA STREET, 80 FEET WIDE, AS SAID INTERSECTION IS SHOWN ON THE MAP OF TRACT NO. 719. RECORDED IN BOOK 15, PAGE 160, OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER; THENCE NORTHEASTERLY ALONG SAID LAST MENTIONED CENTER LINE 55.26 FEET THENCE NORTHEASTERLY ALONG A TANGENT CURVE CONCAVE TO THE SOUTHEAST AND HAVING A RADIUS OF 1,500 FEET, THROUGH A CENTRAL ANGLE OF 4° 40' 46", AN ARC DISTANCE OF 122.51 FEET.

| | | |
|---|---|---|
| Commonly known as: | 1020 South Figueroa Street, 1046 South Figueroa Street, 1060 South Figueroa Street, 730 West Olympic Boulevard, and 1049 South Flower Street | |
| APNs: | Parcel 1: | 5138-012-009, 5138-012-010, 5138-012-011, 5138-012-012 |
| | Parcel 2: | 5138-012-026, 5138-012-030 |
| | Parcel 3: | 5138-012-032 |
| | Parcel 4: | 5138-012-029, 5138-012-031 |
| | Parcel 5: | 5138-012-024 |
| | Parcel 7: | 5138-012-023 |
| | Parcel 9: | 5138-012-007, 5138-012-008 |

## EXHIBIT B

## INSURANCE REQUIREMENTS

### PART A - INSURANCE POLICIES DURING CONSTRUCTION OF THE W HOTEL

Without prejudice to Grantor's obligations to maintain the insurances as set out in Part B of this Exhibit B and any other provisions in the other Loan Documents, Grantor shall, on or before the commencement of the construction of W Hotel, provide Beneficiary with original or certified copies of policies and original Acord Certificates as evidence of, and shall continue to maintain until completion of construction of the W Hotel, the following types of insurance relating to the W Hotel in amounts and form with companies, all satisfactory to Beneficiary:

(a) Insurance in the "All Risk, Builders' Risk Completed Value Non-Reporting Form" including fire, collapse, explosion, earthquake, windstorm, insurance against both alien and domestic acts of terrorism, and underground hazard coverage, in an amount equal to but not less than 100% of the completed insurable value of the Improvements (except that the amount required for earthquake coverage (and flood coverage, if required) during construction shall be in an amount equal to 25% of the insurable value of the completed Improvements), in form and with endorsements acceptable to Beneficiary, including, without limitation, a deductible in an amount acceptable to Beneficiary. The interest of Beneficiary shall be protected with a standard mortgagee's clause. Upon completion of the Improvements, the insurance shall be converted to a standard "All Risk" hazard insurance policy with extended coverage, in form and substance satisfactory to Beneficiary and as described under Part B below.

(b) Commercial general liability insurance in an amount acceptable to Beneficiary (including "***umbrella coverage***") and with such companies as may be satisfactory to Beneficiary, naming Beneficiary as additional insured.

(c) Workers' Compensation insurance with statutory coverage covering all workers on the site of the Improvements in an amount acceptable to Beneficiary.

(d) Flood insurance, if the Property is located in a flood plain (as that term is used in the National Flood Insurance Program), in an amount acceptable to Beneficiary.

(e) Professional liability insurance (including errors and omissions coverage) for any architect or engineer providing services to the Property and the Improvements, in an amount acceptable to Beneficiary, such insurance to continue for at least three (3) years after completion of the Improvements.

(f) Auto liability insurance in an amount acceptable to Beneficiary.

(g) Each contractor perming work in connection with the Property shall carry policies of insurance covering worker's compensation, employer's liability, commercial general liability and comprehensive automobile liability, including a broad form umbrella/excess liability insurance policy. Contractor's coverage shall include endorsements which name Borrower and Beneficiary as additional insureds.

**PART B - INSURANCE POLICIES RELATING TO THE IMPROVEMENTS**

Without prejudice to Grantor's obligations to maintain the insurances as set out in Part A of this Exhibit B and any other provisions in the other Loan Documents, Grantor shall (with respect to the Improvements existing as of the date of this Deed of Trust, including the Luxe Hotel), on or about the date of this Deed of Trust and (with respect to any such insurances relating to the W Hotel) upon the earlier of the date of final advance of Loan proceeds and the completion of construction of the W Hotel, furnish Beneficiary with the original or certified copies of policies and original Acord 28 and Acord 25 (as to liability only) Certificates evidencing that the following insurance is in effect with respect to the Improvements and Collateral:

(a) "all risk" coverage physical hazard insurance (including vandalism and malicious mischief) for an amount equal to one hundred percent (100%) of the full replacement cost of the Improvements, written on a replacement cost basis and with a replacement cost endorsement (without depreciation), an increased cost of construction endorsement, and an agreed amount endorsement pertaining to the co-insurance clause, and containing a mortgagee clause in Beneficiary's favor; and if at any time a dispute arises with respect to replacement cost, Grantor agrees to provide at Grantor's expense, an insurance appraisal prepared by an insurance appraiser approved by Beneficiary, establishing the full replacement cost in a manner satisfactory to the insurance carrier; "***Full replacement cost***" shall mean the cost of replacing the Improvements and Collateral without deduction for physical depreciation; such insurance to cover the perils of fire, flood (if in a flood hazard zone), earthquakes (if in an earthquake zone), boiler and machinery (to include major components of HVAC systems (if not already included in the above coverage), windstorm, and such other perils as Beneficiary may require, and extended coverage in an amount at least equal to the amount of the Loan and not less than the full replacement cost of the Improvements and Collateral;

(b) business interruption or rent loss insurance insuring against loss arising out of the perils insured against in the policy or policies referred to in this Part B, in an amount equal to not less than gross revenue from the Premises for twelve (12) months from the operation and rental of all Improvements now or hereafter forming part of the Premises, based upon one hundred percent (100%) occupancy of such Improvements, less any allocable charges and expenses which do not continue during the period of restoration and naming Beneficiary in a standard mortgagee loss payable clause thereunder;

(c) commercial general liability and property damage insurance with a broad form coverage endorsement covering claims for bodily injury, death and property damage in an amount as required from time to time by and acceptable to Beneficiary and sufficient to satisfy all tenant lease requirements, with an aggregate amount and single occurrence limit acceptable to Beneficiary, for claims arising from any one (1) accident or occurrence in or upon the Premises and naming Beneficiary as an additional insured thereunder;

(d) flood insurance whenever in Beneficiary's judgment such protection is necessary and is available and in such case in an amount acceptable to Beneficiary and naming Beneficiary as the loss payee thereunder;

(e) earthquake insurance whenever in Beneficiary's judgment such protection is necessary and is available and in such case in an amount acceptable to Beneficiary and naming Beneficiary as the loss payee thereunder; notwithstanding anything to the contrary herein, in the event that any Probably Maximum Loss ("**PML**") study shows that the PML of the Improvements is less than twenty percent (20%) of the value of the Improvements, then no earthquake insurance shall be required;

(f) insurance covering pressure vessels, pressure piping and machinery, if any, and all major components of any centralized heating or air-conditioning systems located in the Improvements, in an amount satisfactory to Beneficiary, such policies also to insure against physical damage to such buildings and improvements arising out of peril covered thereunder;

(g) insurance covering windstorm in an amount reasonably acceptable to Beneficiary and naming Beneficiary as the loss payee thereunder; and

(h) such other insurance that may be reasonably required from time to time by Beneficiary.

All insurance shall be written by a company or companies satisfactory to Beneficiary. The policy shall not contain a co-insurance clause or other clause limiting the amount of coverage under any conditions. The policy must name the Beneficiary as first loss payee/mortgagee as to casualty and first loss payee/mortgagee and additional insured as to liability coverage and provide at least thirty (30) days written notice to the Beneficiary prior to any modification, termination, cancellation, or non-renewal. All Improvements and Collateral and easily removable real estate items or fixtures included as security in the Loan Documents must be covered by such insurance. Said insurance must be satisfactory to Beneficiary in all respects and must conform in all respects to Beneficiary's standard insurance criteria provided to Grantor. Grantor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained in this Part B.