# EXHIBIT D

This page is part of your document - DO NOT DISCARD

# 20190628318

Pages:
0016

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/28/19 AT 08:00AM

| | |
|---|---|
| FEES: | 154.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 379.00 |

LEADSHEET

201906280280035

00016800978

009929109

SEQ:
01

SECURE - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED

E535806

E08_190628_6000493

19011002
Stewart Title of California, Inc.

RECORDATION REQUESTED BY:
East West Bank

WHEN RECORDED MAIL TO:
East West Bank
Loan Servicing Department
9300 Flair Drive, 6th Floor
El Monte, CA 91731

SEND TAX NOTICES TO:
Jia Yuan USA Co., Inc.
6101 W. Century Blvd.
Los Angeles, CA 90045

FOR RECORDER'S USE ONLY

# DEED OF TRUST

Variable Interest Rate
Revolving Line of Credit

**THIS DEED OF TRUST is dated June 14, 2019, among Jia Yuan USA Co., Inc., a Delaware corporation, whose address is 6101 W. Century Blvd., Los Angeles, CA 90045 ("Trustor"); East West Bank, whose address is Loan Servicing Department, 9300 Flair Drive, 6th Floor, El Monte, CA 91731 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and EAST WEST INVESTMENT INC., A CALIFORNIA CORPORATION, whose address is 9300 Flair Drive, 6th Floor, El Monte, CA 91731 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

**See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 1020, 1046, 1060 South Figueroa Street, 730 West Olympic Boulevard and 1049 South Flower Street, Los Angeles, CA 90015. The Assessor's Parcel Number for the Real Property is 5138-012-009 (current); 5138-012-010 (current); 5138-012-011 (current); 5138-012-012 (current); 5138-012-026 (current); 5138-012-030 (current); 5138-012-032 (current); 5138-012-029 (current); 5138-012-031 (current); 5138-012-024 (current); 5138-012-023 (current); 5138-012-007 (current); 5138-012-008 (current); 5138-012-033 ( new).**

**REVOLVING LINE OF CREDIT. This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Note. Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total amount of the Note. The unpaid balance of the revolving line of credit under the Note may at certain times be Zero Dollars ($0.00). A zero balance does not affect Lender's agreement to make advances to Trustor under the Note. Therefore, Lender's interest under this Deed of Trust will remain in full force and effect notwithstanding a zero balance on the Note.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property;

(2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or

other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding

by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default In Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Trustor's existence as a going business, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or

warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof Any person, including Trustor, Trustee or Beneficiary may purchase at such sale After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**JUDICIAL REFERENCE.** If the waiver of the right to a trial by jury is not enforceable, the parties hereto agree that any and all disputes or controversies of any nature between them arising at any time shall be decided by a reference to a private judge, mutually selected by the parties or, if they cannot agree, then any party may seek to have a private judge appointed in accordance with California Code of Civil Procedure §§ 638 and 640 (or pursuant to comparable provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts). The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure §§ 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings The parties shall be entitled to discovery which shall be conducted in the same manner as it would be before a court under the rules of discovery applicable to judicial proceedings. The private judge shall oversee discovery and may enforce all discovery rules and orders applicable to judicial proceedings in the same manner as a trial court judge. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to California Code of Civil Procedure § 644(a). Nothing in this paragraph shall limit the right of any party at any time to exercise self-help remedies, foreclose against collateral, or obtain provisional remedies. The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph

The parties agree that time is of the essence in conducting the referenced proceedings. The parties shall promptly and diligently cooperate with one another and the referee, and shall perform such acts as may be necessary to obtain prompt and expeditious resolution of the dispute or controversy in accordance with the terms hereof. The costs shall be borne equally by the parties.

**ORAL AGREEMENTS NOT EFFECTIVE.** This Note or Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written negotiations, agreements and understandings of the parties with respect to the subject matter hereof and shall remain in full force and effect in accordance with its terms and conditions. Moreover, any subsequent oral statements, negotiations, agreements or understandings of the parties shall not be effective against Lender unless (i) expressly stated in writing, (ii) duly approved and authorized by an appropriate decision making committee of Lender on such terms and conditions as such committee shall deem necessary or appropriate in the committee's sole and absolute opinion and judgment and (iii) executed by an authorized officer of Lender. Borrower shall not rely or act on any oral statements, negotiations, agreements or understandings between the parties at anytime whatsoever, including before or during any Lender approval process stated above. Borrower acknowledges and agrees that Borrower shall be responsible for its own actions, including any detrimental reliance on any oral statements, negotiations, agreements or understandings between the parties and that Lender shall not be liable for any possible claims, counterclaims, demands, actions, causes of action, damages, costs, expenses and liability whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, at law or in equity, originating in whole or in part in connection with any oral statements, negotiations, agreements or understandings between the parties which the Borrower may now or hereafter claim against the Lender. Neither this Note or Agreement nor any other Related Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this section. Lender may from time to time, (a) enter into with Borrower written amendments, supplements or modifications hereto and to the Related Documents or (b) waive, on such terms and conditions as Lender may specify in such instrument, any of the requirements of this Note or Agreement or the Related Documents or any Event Default and its consequences, if, but only if, such amendment, supplement, modification or waiver is (i) expressly stated in writing, (ii) duly approved and authorized by an appropriate decision making committee of Lender on such terms and conditions as such committee shall deem necessary or appropriate in the committee's sole and absolute opinion and judgment and (iii) executed by an authorized officer of Lender. Then such amendment, supplement, modification or waiver shall be effective only in the specific instance and specific purpose for which given.

**CHOICE OF VENUE.** If there is a lawsuit, the undersigned, and if more than one, each of the undersigned, agree upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**ADDITIONAL RELATED DOCUMENTS.** "Related Documents" shall also include all agreements and instruments executed by Borrower in

connection with prior indebtedness by Borrower to Lender which, by the terms of such agreements and/or instruments, apply to all or part of Borrower's underlying obligations of this Indebtedness and/or applies to all future indebtedness of Borrower to Lender.

**SECURITY AGREEMENT INTEREST.** This instrument shall also constitute a security agreement with respect to the Personal Property and Trustor grants Beneficiary a security interest in the Personal Property. Without limiting the generality of the definition of the term "Personal Property" contained herein, the term Personal Property shall also include the following, which may or may not be affixed to the Property, all inventory, chattel paper, accounts, equipment, deposit accounts, and general intangibles, without limitation all building materials, located at, arising out of the operations of, or otherwise related to the Property of the business conducted at the Property, including plans and permits, insurance proceeds, trade names, and all records relating to the same; all deposit accounts of Trustor.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** **This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust

**Waive Jury.** **To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means East West Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Jia Yuan USA Co., Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means East West Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated June 14, 2019, **in the original principal amount of $20,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. However, should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Personal Property is limited to only those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended).

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents

**Trustee.** The word "Trustee" means EAST WEST INVESTMENT INC., A CALIFORNIA CORPORATION, whose address is 9300 Flair Drive, 6th Floor, El Monte, CA 91731 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Jia Yuan USA Co., Inc..

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

**JIA YUAN USA CO., INC.**

By: ______________________________
Fuer Yuan, Chief Executive Officer of Jia Yuan USA Co., Inc.

U. S. Department of State

# INDIVIDUAL ACKNOWLEDGMENT CERTIFICATE

**VENUE**

Hong Kong
(Country)
Hong Kong
(State, Province, etc.)
Consulate General of the
(City)
United States of America
(Name of consular post)

ss.

I certify that on this day the individual named below appeared before me and acknowledged to me that the attached instrument was executed freely and voluntarily.

-- Fuer YUAN --
(Typed Name of Individual

(Signature of Consular Officer)

**Harris L. Garcia**
**U.S. Vice Consul**

(Typed Name of Consular Officer)

(Title of Consular Officer)

06-25-2019
Date *(mm-dd-yyyy)*

(SEAL)

DS-1986
05-2006

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF ______________________ )
) SS
COUNTY OF ______________________ )

On ______________________, 20______ before me, ______________________________,
(here insert name and title of the officer)

personally appeared **Fuer Yuan**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

**Signature** ______________________________ **(Seal)**

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: ______________________________, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______________________________________________.

**Date:** ______________________ **Beneficiary:** ______________________

**By:** ______________________

**Its:** ______________________

LaserPro, Ver. 19.1.10.016 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - CA E:\PROD\LOANDOC\CFI\LPL\G01.FC TR-30284 PR-7

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

The land hereinafter referred to is situated in the City of Los Angeles, County of Los Angeles, State of CA, and is described as follows:

Parcel 1:

Lots 16, 17, 18, 19, 20 and the South 10 feet of Lot 15, in Block 73 of William's Subdivision of Ord's Survey, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 3, Page 32, of Miscellaneous Records, in the Office of the County Recorder of said County.

Except therefrom those portions of Lots 19 and 20 in Block 73 W. M. Williams Subdivision of Blocks 73 and 72 of Ord's Survey, as per Map recorded in Book 3, Pages 32 and 33, of Miscellaneous Records, in the Office of the County Recorder of said County, bounded and described as follows:

Commencing at the intersection of the centerline of Flower Street, with the center line of Eleventh Street, as said intersection is shown on Map of Tract No. 3730, as per map recorded in Book 39 Page 30 of Maps, in the Office of the County Recorder of said County; thence Northwesterly along a curve tangent to said center line of Eleventh Street, concave to the Northeast and having a radius of 1,000 feet, through a central angle of 04 degrees 26 minutes 30 seconds, an arc distance of 77.52 feet; thence Northwesterly along a line tangent to said curve, 200 feet; thence Northeasterly at right angles from said tangent line 5 feet to a point in a curve concave to the Southwest having a radius of 600 feet and being tangent to said point to a line parallel with said tangent line; thence Northwesterly in a direct line to the most Westerly corner of said Lot 20, said most Westerly corner to be the true point of beginning for purposes of this description; thence Northeasterly along the Northwesterly line of said Lots 20 and 19 to a point distant 15 feet Northeasterly, measured along said Northwesterly line from a curve concave to the Southwest, having a radius of 638 feet and being concentric with said curve having a radius of 600 feet; thence Southerly in a direct line to a point in said curve having a radius of 638 feet; distant 15 feet Southeasterly, measured along said last mentioned curve from said Northwesterly line; thence Southeasterly along said last mentioned curve to a point of tangency in a line parallel with and distant 43 feet Northeasterly measured at right angles from said tangent line having a length of 200 feet; thence Southeasterly along said parallel line to the Southeasterly line of said Lot 20; thence Southwesterly along said Southeasterly line to the Southwesterly line of said Lot 20; thence Northwesterly along said Southwesterly line to the true point of beginning.

Also except therefrom those portions of Lot 16 and the Southerly 10 feet of Lot 15, said Block 73, included within a strip of land, 40 feet wide lying Southeasterly of and contiguous to a line described as follows:

Beginning at the intersection of the center line of 10th place, formerly Ottowa Street, 50 feet wide, with the center line of Figueroa Street; 80 feet wide, as said intersection is shown on Map of Tract No. 719, recorded in Book 15 Page 160 of Maps, in the Office of the County Recorder of said County; thence Northeasterly along said last mentioned center line 55.26 feet; thence Northeasterly along a tangent curve concave to the Southeast and having a radius of 1,500 feet; through a central angle of 04 degrees 40 seconds 46 minutes, an arc distance of 122.51 feet.

Parcel 2:

Lots 35, 36 and 37 and the Southwest 20 feet of Lot 34 in Block 73 of W. M. Williams Subdivision of Blocks 72 and 73 of Ord's Survey, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 3 Pages 32 and 33 of Miscellaneous Records, in the Office of the County Recorder of said County.

Except therefrom the Southeasterly 5 feet thereof.

Also except therefrom the Northwesterly 10 feet of Lots 36 and 37.

Also except therefrom one-half of all gas oil, hydrocarbon substances and other Minerals in and under said land, as reserved by George H. Dittus, in Deed recorded August 5, 1964 as Instrument No. 2828, of Official Records.

Parcel 3:

Lot 38 in Block 73, W. M. Williams Subdivision of Blocks 73 and 72 of Oro's Survey, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 3, Pages 32 and 33 of Miscellaneous Records, in the Office of the County Recorder of said County.

Also Lot "A" of Tract No. 3730 as per Map recorded in Book 39 Page 30 of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of said Lot "A" included within a strip of land 86 feet wide lying 43 feet on each side of a line described as follows:

Beginning at the intersection of the center line of Flower Street with the centerline of Eleventh Street as said intersection is shown on said Map of Tract No. 3730; thence Northwesterly along a curve concave tangent to said last mentioned center line, concave to the Northeast and having a radius of 1000 feet, through a central angle of 04 degrees 26 minutes 30 seconds an arc distance of 77.52 feet; thence Northwesterly along a line tangent to said curve 200 feet.

Also except therefrom that portion of said Lot "A" bounded and described as follows:

Beginning at the intersection of the Northeasterly line of said strip of land 86 feet wide with the Northwesterly line of the Southeasterly 5 feet of said Lot "A" thence Northwesterly along said Northeasterly line 15 feet; thence Easterly in a direct line to a point in said Northwesterly line distant 15 feet Northeasterly, measured along said Northwesterly line from said Northeasterly line; thence Southeasterly along said Northwesterly line to the point of beginning.

Also except therefrom the Southeasterly 5 feet of said lots.

Also except therefrom the Northwesterly 10 feet of said Lot 38.

Also except therefrom onto the City of Los Angeles its interest in fee of the adjacent streets which would otherwise pass with the conveyance of the described real property, as provided in Deed recorded December 31, 1973 as Instrument No. 69, of Official Records.

Parcel 4:

The Northwesterly 10 feet of Lots 36, 37 and 38 in Block 73, of W. M. Williams Subdivision Blocks 72 and 73 of Ord's Survey, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 3 Pages 32 and 33 of Miscellaneous Records in the Office of the County Recorder of said County.

Parcel 5:

That portion of Lot A of the Immanuel Presbyterian Church Property, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 51 Page 7, of Maps, in the Office of the County Recorder of said County described as follows:

Beginning at a point in the Northwesterly line of said Lot A distant thereon South 37° 46' 00" West 50.00 feet from the most North corner of said Lot A; thence along; said Northwesterly line South 37° 46' 00" West 115.00 feet to the most North corner of the land described in Parcel 1 of the Deed to Union Bank recorded on July 10, 1968 as Instrument No. 1733; thence along the Northeasterly line of said Parcel 1 South 52° 14' 00" East 164.97 feet to the Southeasterly line of the land described in the Deed to Union Oil Company of California recorded on August 7, 1956 as Instrument No. 3769 in Book 51957 Page 219 of Official Records; thence along said Southeasterly line North 37° 53' 50" East 126.70 feet to the Northeasterly line of said last mentioned deed thence along said

Northeasterly line North 56° 17' 10" West 140.65 feet to the most Easterly corner of the land condemned for street purposes and described in Parcel No. 146AA of Superior Court Case No. 932,018, a Certified Copy of which was recorded on August 11, 1969 as Instrument No. 2195; thence along the Southerly line of said Parcel No. 146AA South 80° 44' 25" West 21.95 feet to the most Westerly corner thereof; thence along the Northwesterly line of said Parcel No. 146AA North 37° 46' 00" East 15.00 feet to said Northeasterly line of said land of Union Oil Company of California; thence along said Northeasterly line North 56° 17' 10" West 10.03 feet to the point of beginning.

Parcel 6:

An easement and right of way for ingress and egress of person by vehicle or otherwise as reserved in Deed recorded July 10, 1968 as Instrument No. 1733, over that portion of the above mentioned Lot A for the benefit of and appurtenant to Parcel 1 above and described as follows:

(A) beginning at a point in the Northwesterly line of said Lot A, that is distant thereon South 37° 46' West 127.21 feet from the Northerly corner of the land described in the Deed to the Union Oil Company of California, recorded on August 7, 1956, as Instrument No. 3769, in Book 51957 Page 219, of Official Records of said County; thence South 52° 14' East 126.96 feet; thence North 37° 46' East 12.21 feet; thence South 52° 14' East 20.00 feet; thence South 37° 46' West 12.21 feet; thence South 52° 14' East 3.30 feet; thence South 74° 26' East 15.88 feet to a point in that certain course above described as having a bearing and length of North 37° 53' 50" East 37.96 feet that is distant along said course South 37° 53' 50" West 6.21 feet from the Northeasterly terminus of said course; thence along said course South 37° 53' 50" West 26.00 feet; thence North 52° 14' West 164.90 feet to a point in the Northwesterly line of said Lot A that is distant along said Northwesterly line North 37° 46' East 15.51 feet from the most Westerly corner of said Lot A; thence along said Northwesterly line, North 37° 46' East 20.00 feet to the point of beginning.

(B) an exclusive easement to park vehicles and to move vehicles onto and off of the portion of the land conveyed by said Deed July 10, 1968 as Instrument No. 1733, lying North of the easement and right of way described in (A) above which is shown crosshatched on the plat attached as exhibit A thereto.

Parcel 7:

That portion of Lot A of the Immanuel Presbyterian Church Property, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 51, Page 7, of Maps, in the Office of the County Recorder of said County, together with that portion of Block 73 of W. M. William's Subdivision of Blocks 72 and 73 of Ord's Survey, in said City, County and State, as per map recorded in Book 3, Pages 32 and 33 of Miscellaneous Records, in the Office of the County Recorder of said County, described as a whole as follows:

Beginning at the most Southerly corner of said Lot A; thence North 37° 48' 10" East along the Southeasterly line of said Lot A, a distance of 9.76 feet to the Southeasterly terminus of that certain course described as having a bearing and Length of "North 52° 11' 50" West 1.35 feet", in the Deed from Los Nietos Company, to Union Oil Company of California, recorded on August 7, 1956, as Instrument No. 3769, in Book 51957, Page 219, Official Records of said County; thence North 52° 11' 50" West along said course 1.35; thence North 37° 53' 50" East 37.96 feet; thence North 52° 14' 00" West 164.97 feet to a point in the Northwesterly line of said Lot A, that is distant North South 37° 46' West along said Northwesterly line 115.00 feet from the most Southerly corner of the land described in said deed to Union Oil Company of California; thence along the Northwesterly line of said Lot A, to and along the Northwesterly line of said Block 73, South 37° 46' West 228.66 feet to the most Westerly corner of Lot 131 in said Block 73; thence along the Southwesterly line of said Lot 13, South 52° 14' 00" East 166.12 feet to the most Southerly corner of said Lot 13; thence North 37° 48' 10" East 180.94 feet to the point of beginning.

Excepting all oil, gas and other hydrocarbon substances and minerals, in, under or that may be produced from said land with the free perpetual and exclusive right to explore, prospect for, drill, produce, take and remove the same from only that portion of said land which underlies a plane parallel to and 500 feet below, measured vertically downward below the surface of the land, which portion is hereinafter referred to as "subsurface land", and except the right to inject or introduce from time to time, store therein and subsequently remove from said subsurface land any oil, gas and other hydrocarbon substances, minerals and rights of way easements and servitudes in and through said subsurface land, for the purpose of exercising the rights therein reserved, including but not limited to the right from time to time to drill well holes, to case the same, and otherwise complete and maintain wells into and through said

subsurface lands from locations outside the boundaries of said land, without, however the right to enter upon the surface of the said land, as reserved by Union Oil Company of California, a California Corporation, in Deed recorded July 10, 1968 as Instrument No. 1733, in Book D-4060, Page 705, Official Records.

Parcel 8:

An easement to construct, maintain, repair and rebuild a motor vehicle passageway ramp together with rights of ingress and egress in and upon said ramp over, along and across that portion of Lot "A" of the Immanuel Presbyterian Church Property, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 51, Page 7, of Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the most Southerly corner of said Lot "A"; thence North 37° 48' 10" East along the Southeasterly line of said Lot "A", a distance of 9.76 feet to Southeasterly terminus of that certain course described as having a bearing and length of "North 52° 11' 50" West 135 feet" in the Deed from Los Nietos Company, to Union Oil Company of California, recorded on August 7, 1956 as Instrument No. 3769, in Book 51957 Page 219, Official Records of said County; thence North 52° 11' 50" West along said course 1.35 feet; thence North 37° 53' 50" East 37.96 feet to the true point of beginning of this description; thence from said true point of beginning along a line which passes through a point in the Northwesterly line of said Lot "A" that is distant South 37° 46' West along said Northwesterly line 115.00 feet from the most Northerly corner of the land described in said Deed to Union Oil Company of California North 52° 14' 00" West 38.24 feet; thence North 67° 38' 58" East 35.16 feet; thence North 37° 47' 00" East 94.73 feet to the Northeasterly line of the land described in Parcel 1 of said Deed to Union Oil Company of California; thence along said Northeasterly line South 56° 17' 16" East 21.05 feet to the Northeasterly prolongation of that certain course hereinabove described as having a bearing and length of "North 37° 53' 50" East 37.96 feet; Thence along said prolongation South 37° 53' 50" West 126.71 feet to said true point of beginning.

Except all rights to the air space above a plane which is 27 feet above ground level, as reserved by Union Oil Company of California, a California Corporation, in Deed recorded July 10, 1968 as Instrument No. 1733, in Book D-4060, Page 705, official records.

Parcel 9:

Lot 14 and the North 20 feet of Lot 15, Block 73 of W. M. Williams Subdivision of Blocks 72 and 73, Ord's Survey, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 3, Page 32, of Miscellaneous Records of said County.

Excepting therefrom those portions of Lot 14 and of the Northerly 20 feet of Lot 15, Block 73, W. M. Williams Subdivision of Blocks 73 and 72 of Ord's Survey, as per Map recorded in Book 3, Pages 32 and 33 of Miscellaneous Records, included within a strip of land, 40 feet wide, lying Southeasterly of and contiguous to a line described as follows:

Beginning at the intersection of the center line of 10th place, formerly Ottowa Street, 50 feet wide. With the center line of Figueroa Street, 80 feet wide, as said intersection is shown on the Map of Tract No. 719, Recorded in Book 15, Page 160, of Maps, in the Office of said County Recorder; thence Northeasterly along said last mentioned center line 55.26 feet thence Northeasterly along a tangent curve concave to the Southeast and having a radius of 1,500 feet, through a central angle of 4° 40' 46", an arc distance of 122.51 feet.