**O**

# United States District Court
# Central District of California

| | |
|---|---|
| INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH<br><br>Petitioner,<br><br>v.<br><br>FUER YUAN,<br><br>Respondent. | Case № 2:26-cv-01256-ODW (ADSx)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS [13]** |

## I. INTRODUCTION

Petitioner Industrial Bank Co., Ltd. Shenzhen Branch brings the present petition against Respondent Fuer Yuan for confirmation of two arbitral awards and the entry of judgment on both awards. (Pet., Dkt. No. 1.) Yuan now moves to dismiss the petition pursuant to Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(2) and 12(b)(5). (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 13.) For the following reasons, the Court **GRANTS IN PART** the Motion to Dismiss.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Yuan is a resident of Shenzhen, China, although he spends most of his time in Hong Kong. (Decl. Fuer Yuan ISO Mot. ("Yuan Decl.") ¶ 2, Dkt. No. 13-1.) Although Yuan does not live in the United States, between 2010 to 2019, Yuan formed four companies for the purpose of acquiring and operating real estate in Southern California, including three hotels: (1) E-Central Downtown Los Angeles Hotel (formerly Luxe Hotel); (2) Sheraton Gateway LAX Hotel; and (3) Sheraton Los Angeles San Gabriel Hotel (the "Hotels"). (Yuan Decl. ¶¶ 8–10; Decl. Yiren Yu ISO Opp'n ("Yu Decl.") Ex. A ("Non-Prosecution Agreement"), Ex. A ("Statement of Facts") ¶ 1, Dkt. No. 20-3.).) Yuan subsequently assumed personal ownership of the Hotels. (Decl. Binying Zhuang ISO Opp'n ("Zhuang Decl.") ¶¶ 3–6, Dkt. No. 20-1.)

In 2020 and 2022, Industrial, a Chinese bank, entered into two separate project financing loan agreements with Chinese company Shenzhen Hazens Xinnan Investment Co. ("Hazens") for an urban renewal unit project (the "Loan Agreements"). (Pet. ¶¶ 1, 13.) As Chairman and controlling shareholder of Hazens, Yuan entered into two separate guarantee agreements with Industrial, in which Yuan agreed to be jointly and severally liable for all of Hazens's obligations under the Loan Agreements (the "Guarantee Agreements"). (*Id.* ¶¶ 16, 19; Pet. Ex. C ("Guarantee Agreement"), Dkt. No. 1-12.)

Hazens subsequently defaulted on both Loan Agreements. (Pet. ¶¶ 22, 25.) As a result, Industrial initiated two arbitration proceedings against both Hazens and Yuan with the Shenzhen Court of International Arbitration ("SCIA"). (*Id.* ¶ 26.) Hazens served Yuan with notice of the arbitrations "on more than 30 separate occasions . . . totaling more than 60 service occasions across both proceedings." (Decl. Xi Huang re Pet. ("Huang Decl.") ¶ 11, Dkt. No. 5.) However, Yuan did not appear at the arbitration proceedings. (Pet. ¶¶ 33, 35–36, 41–44.) In September 2025, the SCIA issued two arbitral awards, holding Hazens and Yuan jointly and severally liable for

Hazens' default and awarding Industrial $199,773,728.56 in damages, excluding interest. (*Id.* ¶¶ 37, 44, 47.)

To date, Yuan has not made any payment towards or satisfied either arbitration award. (*Id.* ¶ 70.) Industrial now files this Petition to confirm the two arbitral awards and enter judgment against Yuan. (*Id.* ¶¶ 74–91.) Yuan moves to dismiss, arguing that the Court does not have personal jurisdiction over him and that Industrial failed to properly serve him. (Mot. 8–28.)

## III. LEGAL STANDARD

### A. Rule 12(b)(2)—Personal Jurisdiction

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due process requirements." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the relevant forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800. The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but factual conflicts between dueling affidavits must be

resolved in the plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (citation modified).

**B. Rule 12(b)(5)—Service**

Rule 12(b)(5) allows a party to seek dismissal of a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Service of process is a prerequisite for personal jurisdiction over a defendant." *C&SM Int'l v. Prettylittlething.com Ltd.*, No. 2:19-cv-4046-CBM (KSx), 2019 WL 7882077, at *1 (C.D. Cal. Oct. 8, 2019); *see also id.* ("Defendants must be served in accordance with Rule 4 . . . or there is no personal jurisdiction." (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (holding that service of process is "fundamental to any procedural imposition on a named defendant"). Most importantly, a court may not assert personal jurisdiction on a defendant unless service of process is effectuated. *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Absent proper service, a court may not assert jurisdiction over a defendant unless the defendant consents to jurisdiction or waives service. *Id.* at 1138–39.

"Once service is challenged, plaintiffs bear the burden of establishing that service was valid." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Sufficiency of service can be "a fact-driven inquiry." *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). Courts may consider "affidavits, discovery materials, or other admissible evidence establishing the lack of proper service." *Jones v. James Trading Co.*, No. 2:19-cv-2674-MWF (JEMx), 2019 WL 6354392, at *3 (C.D. Cal. July 3, 2019). Where service is insufficient, "[t]he choice between dismissal and quashing service of process is in the district court's discretion." *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

## IV. DISCUSSION

Yuan argues that the Court must dismiss this case because the Court does not have personal jurisdiction over him. (Mot. 19–28.) Yuan also argues that the Court

should either dismiss this case or quash service because Industrial did not properly serve him pursuant to the Hague Convention or Rule 5. (*Id.* at 13–19.)

**A. Personal Jurisdiction**

Industrial argues that the Court has general or specific jurisdiction over Yuan. (Opp'n 15–21, Dkt. No. 20.) In the alternative, Industrial argues that the Court has quasi in rem jurisdiction over Yuan's California-based property. (*Id.* at 14–15.)

*1. General Jurisdiction*

A non-resident defendant may be subject to either general or specific personal jurisdiction. *FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). For an individual like Yuan, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, the parties do not dispute that Yuan resides in Hong Kong and that Hong Kong is Yuan's domicile. (Yuan Decl. ¶ 2; Opp'n 20–21.) Thus, a California court cannot exercise general jurisdiction over Yuan.

Instead, Industrial argues that general jurisdiction is established because Yuan's "contacts with California are so 'continuous and systematic' as to render him 'essentially at home' in this state." (Opp'n 20 (citing *Daimler AD v. Bauman*, 571 U.S. 117, 127 (2014)); *see Silva v. Gonzales*, 667 F. App'x 967, 968 (9th Cir. 2016) (affirming dismissal based on lack of general jurisdiction after the district court found plaintiffs failed to establish defendants had "continuous and systematic" contacts with California). The factual record belies Industrial's argument. Yuan has never resided in California. (Yuan Decl. ¶ 3.) Although he has occasionally done work in California and still owns real property in California, it is undisputed that most of Yuan's work is in China. (*Id.* ¶ 11.) Thus, the Court cannot say that Yuan's activities in California are so "substantial or continuous and systematic enough to meet the high standard of general jurisdiction." *See Harrell v. Kepreos*, 175 F. App'x 793, 794 (9th Cir. 2006) (affirming district court's dismissal on general jurisdiction

grounds even though defendant owned vehicles and real property in the forum state). Thus, the Court finds that it does not have general jurisdiction over Yuan.

2. *Specific Jurisdiction*

To determine whether a defendant's contacts with the forum state are sufficient to render the exercise of specific jurisdiction reasonable, the Ninth Circuit applies a three-prong test: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum-state, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The party asserting jurisdiction, Industrial here, bears the burden of satisfying the first two prongs of this test. *Id.* When both prongs have been satisfied, the burden shifts to the party contesting jurisdiction, Yuan here, to establish that the third prong has not been satisfied, or that jurisdiction in the forum state would be unreasonable. *Id.*

In assessing the first prong of the specific jurisdiction test, courts distinguish between contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). When a petition to confirm an arbitral award is involved, courts look to the claims underlying the arbitration to determine if the case is one of contracts or torts. *Glencore*, 284 F.3d at 1123–24. Here, the dispute underlying the arbitration sounds in contract as the dispute concerns Hazens's and Yuan's contractual obligations and their subsequent failure to perform under Loan and Guarantee Agreements with Industrial. (Pet. ¶¶ 12–25.)

For claims sounding in contract, like those in the Petition here, courts apply a "purposeful availment" analysis and "examine[] whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Roth*, 942 F.2d at 621. "In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative

conduct which allows or promotes the transaction of business within the forum state." *Id.* The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation modified). The existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over a nonresident. *Id.* at 478. However, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Id.* at 473.

Here, Industrial appears to have set forth more than enough evidence to demonstrate that Yuan purposefully availed himself of the privilege of doing business in California. For example, between 2010 to 2019, Yuan formed four companies for the purposes of acquiring and operating real estate in Southern California. (Statement of Facts ¶ 1.) Yuan also personally owns three hotels in Southern California. (Zhuang Decl. ¶¶ 3, 6.) Thus, the Court assumes that Industrial has demonstrated Yuan purposefully availed himself of California law. *See FB Pinebrook Prop, LLC v. UC Funding, LLC*, No. 5:26-cv-02131-SPG (SPx), 2026 WL 1999491, at *6–7 (C.D. Cal. July 7, 2026) (assuming purposeful availment where defendants owned real estate in the forum state).

However, Industrial has not demonstrated under the second prong that its claims arise out of or relate to Yuan's contacts with California. A plaintiff's claims are related to defendant's forum-related activities "if, but for a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (citation modified) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). Here, Industrial fails to draw this link between Yuan's contacts in California and his subsequent failure to

perform his contractual obligations to Industrial. Nor could it: the underlying claims relate to failure to make payments on loan agreements signed in China for the express purpose of funding Chinese real estate projects. (Pet. ¶¶ 1, 13.) The underlying loan agreements, and Yuan's subsequent failure to make payments on these loans, had nothing to do with Yuan's California-based projects. Thus, the Court finds that Industrial has not borne its burden of demonstrating specific jurisdiction. The Court lacks general or specific jurisdiction over Yuan.

*3. Quasi in Rem Jurisdiction*

Alternatively, Industrial argues that the Court can extend quasi in rem jurisdiction over Yuan's California-based property. (Opp'n 14–15.) Perhaps best known as the topic in civil procedure that law school professors tell you not to worry about, quasi in rem jurisdiction concerns "the court's power over property within its territory." *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977). In a quasi in rem action, the plaintiff (or petitioner here) proceeds against the "property that supports jurisdiction," as the "effect of a judgment in such a case . . . does not impose a personal liability on the property owner, since he is not before the court." *Id.*

There are two types of quasi in rem jurisdiction, and here, Industrial argues that Yuan is subject to "type two" quasi in rem jurisdiction. (Opp'n 14–15.) "Type two *quasi in rem* jurisdiction is used to establish the ownership of property in a dispute unrelated to the property." *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010). To establish quasi in rem jurisdiction over the defendant's property in an action to execute a judgment, the plaintiff must first show that there has been a "previous rendering of a judgment by a court of competent jurisdiction." *Id.* at 700. The plaintiff must then identify the defendant's assets in the forum state with something more than a "good faith" belief of its current existence to subject the defendant to quasi in rem jurisdiction. *Glencore*, 284 F.3d at 1127–128.

The parties do not dispute that the SCIA is a court of competent jurisdiction that has rendered a judgment against Yuan. (Pet. ¶¶ 1–2; *see* Reply 8, Dkt. No. 21.).

Thus, the narrow issue here is whether Industrial has identified that Yuan owns assets in California over which the Court can exercise quasi in rem jurisdiction.

The Court finds Industrial has properly identified assets over which the Court can exercise quasi in rem jurisdiction. Specifically, Industrial identifies three hotels that Yuan personally owns: (1) E-Central Downtown Los Angeles Hotel (formerly Luxe Hotel); (2) Sheraton Gateway LAX Hotel; and (3) Sheraton Los Angeles San Gabriel Hotel. (*See* Zhuang Decl. ¶¶ 3, 6; Statement of Facts ¶ 1.) This identification distinguishes this case from *Glencore*, where the Ninth Circuit rejected the exercise of quasi in rem jurisdiction because plaintiff "fail[ed] to identify any property owned by [defendant]." 284 F.3d at 1128 ("Indeed, the best [plaintiff] can say is that it believes in good faith that [defendant] has or will have assets located in the forum. This is simply not enough.").

Rather than disputing the legal merits of Industrial's argument, Yuan asserts several objections to Industrial's declaratory evidence. Specifically, Yuan objects to portions of Binying Zhuang's declaration, signed in her capacity as an employee in Industrial's Real Estate Business Department, where Zhuang states how she learned Yuan acquired the Hotels. (Zhuang Decl. Objs., Dkt. No. 21-1.)

The Court **OVERRULES** all of Yuan's objections. First, the Court finds that Zhuang sufficiently details how she learned of Yuan's acquisition of the Hotels and overrules Yuan's personal knowledge and legal conclusion objections. Second, the Court overrules Zhuang's hearsay objection, as the "Court may consider affidavits when determining whether or not [Industrial] has established a prima facie showing of jurisdiction even if the affidavits contain hearsay evidence." *Voysys Corp. v. Elk Indus., Inc.*, No. C 95-20633 JW, 1996 WL 119473, at *3 (N.D. Cal. Mar. 14, 1996); *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1546-47 (Fed. Cir. 1995) ("Hearsay bearing circumstantial indicia of reliability may be admitted for purposes of determining whether personal jurisdiction obtains." (citation modified)). Finally, the Court overrules Yuan's objection based on the best evidence rule because the rule

does not apply: Industrial does not offer Zhuang's testimony to prove the contents of a particular writing, recording, or photograph. Fed. R. Evid. 1002.

As Yuan is subject to a judgment by a court of competent jurisdiction and appears to own property in the state—specifically, the Hotels—the Court exercises quasi in rem jurisdiction over the Hotels and **DENIES** the Motion on this ground.[2]

**B. Proper Service**

Yuan also moves to either dismiss the action or quash service under Rule 12(b)(5), arguing that Industrial should have served him under Rule 4 and the Hague Convention. (Mot. 13–18.) Alternatively, Yuan argues that Industrial's service under Rule 5 was deficient. (*Id.* at 18–19.)

*1. Applicable Law*

Rule 4 governs the service of summons and complaints in federal district court. Fed. R. Civ. P. 4. However, "this case does not concern the service of summons and a complaint . . . it concerns the service of a prevailing party's notice of motion to confirm an arbitral award." *Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 825 (9th Cir. 2024). In such cases, the Federal Arbitration Act ("FAA") governs service. *Id.* at 831.

Under § 6 of the FAA, petitions to confirm arbitral awards "shall be made and heard in the manner provided by law for the making and hearing of motions." In *Voltage*, the Ninth Circuit explicitly held the language of § 6 applies to "service of notice on adverse parties who are not available for service within the United States." *Voltage*, 92 F.4th at 831. Consequently, "Rule 5(b)—the federal procedural law governing how service of a motion is made . . . is the default rule for serving notice of an application to confirm" a foreign arbitral award where the parties are outside the United States. *Id.*

[2] The upshot of this ruling is that Industrial can only enforce the arbitral awards against the Hotels. Thus, if during merits briefing, Yuan proves that he does not own the Hotels, then the Court may dismiss this Petition.

Yuan seeks to get under this "default rule" by arguing that, unlike the parties in *Voltage*, he did not waive application of the Hague Convention, which outlines its own method of serving people in foreign countries. (Mot. 14–17.) However, nothing indicates that the outcome in *Voltage* would have been any different had the parties there not waived the Hague Convention. First, the text of the Rules demonstrate that the Hague Convention is inapplicable here. While Rule 4 expressly references the Hague Convention, Rule 5 does not. *Compare* Fed. R. Civ. P. 4(f)(1), *with* Fed. R. Civ. P. 5. The absence of any mention of the Hague Convention in Rule 5 demonstrates that the Supreme Court did not intend for the Hague Convention to apply to service under Rule 5. *See Badgerow v. Walters*, 596 U.S. 1, 11 (2022) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, we generally take the choice to be deliberate." (citation modified)). As the Ninth Circuit holds that Rule 5 is the rule for serving a petition to confirm a foreign arbitral award on a person outside the United States, *Voltage*, 92 F.4th at 831, and as Rule 5 does not mention the Hague Convention, parties need not serve according to the Hague Convention.

Second, case law does not support Yuan's position. The Supreme Court has held that the Hague Convention applies only to service of *process*. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700–06 (1988) ("The negotiating history supports our view that [the Hague Convention] refers to service of *process* in the technical sense . . . [t]he Convention provides simple and certain means by which to serve *process* on a foreign national." (citation modified)). Service of process "has a well-established technical meaning": referring to the formal delivery of case-initiating documents "that is legally sufficient to charge the defendant with notice of a pending action." *Id.* at 700. But as other circuits have recognized, a petition to confirm an arbitral award is not a case-initiating document in the traditional sense, but rather a mechanism to end an existing controversy. *See, e.g.*, *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[T]he confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final arbitration award a judgment of the court."); *Teamsters Local 177 v. UPS*, 966 F.3d 245, 252 (3d Cir. 2020) ("Put another way, the dispute the parties went to arbitration to resolve is 'live' until the arbitration award is confirmed and the parties have an enforceable judgment in hand."). As courts do not treat petitions to confirm arbitral awards as case-initiating documents, the justification for requiring a party to serve according to the Hague Convention—ensuring that a foreign party learns of a *new* case—does not apply.

Finally, accepting Yuan's view that service here must have occurred under the Hague Convention would frustrate the aims of the FAA. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). As the Ninth Circuit recognized in *Voltage*, "importing Rule 4 into the FAA as the default rule for serving notice of applications to confirm arbitral awards does not streamline the confirmation of them . . . [it] hinders their confirmation." 92 F.4th at 832 n.6. While Yuan does not ask the Court to import Rule 4 into the FAA, he does ask the Court to import the Hague Convention, with service requirements that are objectively more difficult to satisfy than Rule 4, into the FAA. Needlessly injecting challenging service requirements into what should be a "summary proceeding" certainly does not comport with the overarching purpose of the FAA. *Florasynth*, 750 F.2d at 176.

For these reasons, the Court finds that Rule 5 governs the service of Industrial's petition to confirm an arbitral award and rejects Yuan's argument that Industrial was required to serve Yuan under the Hague Convention.

*2. Service Under Rule 5*

Rule 5(b) prescribes several authorized methods of service. For example, service is proper if a party serves "by any other means that the person consented to in writing." Fed. R. Civ. P. 5(b)(2)(F); *see Nat'l Equip. Rental, Ltd. v. Szukhent*,

375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance . . . to permit notice to be served by the opposing party.").

Here, Yuan consented to one of Industrial's methods of service. Specifically, in the Guarantee Agreements, Yuan provided a Chinese address for service that would "apply during both non-litigation stages and all stages after disputes." (Guarantee Agreement 13–14.) Industrial served Yuan at the address he provided in the Guarantee Agreements. (Yu Decl. ¶ 16, Dkt. No. 20-2.) Tellingly, Yuan does not address this method of service in his Reply. (*See generally* Reply.) Thus, the Court finds that Industrial has met its burden of demonstrating proper service and **DENIES** Yuan's motion to quash service.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Yuan's Motion to Dismiss. (Dkt. No. 13.) Specifically, the Court finds that it does not have personal jurisdiction over Yuan but does have quasi in rem jurisdiction over the Hotels. The Court also finds that Industrial properly served Yuan.

The Court **ORDERS** the parties file a **joint** proposed briefing schedule regarding the merits of the Petition within **seven (7) days** of the issuance of this Order. In light of the Court's jurisdictional ruling, the Court will permit Industrial leave to amend its Petition.

**IT IS SO ORDERED.**

October 7, 2026



**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**