**NORTON ROSE FULBRIGHT US LLP**
BRIAN SUN (BAR NO. 89410)
ABRAHAM CHANG (*pro hac vice forthcoming*)
ALEX SCANDROLI (BAR NO. 345278)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
brian.sun@nortonrosefulbright.com
abraham.chang@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

**LIANG LY LLP**
JASON LIANG (BAR NO. 251235)
CINDY LEE (BAR NO. 358253)
601 South Figueroa Street
Suite 1950
Los Angeles, California 90017
Telephone: (213) 262-8002
Facsimile: (213) 335-7776
jliang@lianglyllp.com
clee@lianglyllp.com

Attorneys for Proposed Intervenor CELIA WEN SUN, AS TRUSTEE OF THE YAEN IRREVOCABLE TRUST.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,

Petitioner,

v.

FUER YUAN,

Respondent.

Case No. 2:26-cv-01256-ODW(ADSx)

**CELIA WEN SUN'S, AS TRUSTEE OF THE YAEN IRREVOCABLE TRUST, NOTICE OF MOTION AND MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a)(2), OR, ALTERNATIVELY, 24(b)(1)(B); MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declaration of Alex Scandroli; and [Proposed] Order]*

Date: December 14, 2026
Time: 1:30 p.m.
Courtroom: 5D
Judge: Hon. Otis D. Wright II

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 14, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, Celia Wen Sun ("Sun"), in her capacity as Trustee of the YAEN Irrevocable Trust ("the Trust") (hereafter, "Proposed Intervenor") will and hereby does move this Court for an order permitting them to intervene in this action as respondents-in-intervention.

This Motion is made under Federal Rule of Civil Procedure 24(a)(2) on the grounds that (1) the Motion is timely; (2) Proposed Intervenor has significant protectable interests relating to the property that is the subject of this action, including San Yi's title to the Sheraton Los Angeles San Gabriel Hotel and Sun's ownership, through the Trust, of 100% of the equity in the entities that hold title to the E-Central Downtown Los Angeles Hotel and the Sheraton Gateway Los Angeles Hotel; (3) disposition of this action will impair Proposed Intervenor's ability to protect those interests absent intervention; and (4) Proposed Intervenor's interests are not adequately represented by the existing parties.

In the alternative, Proposed Intervenor moves for permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B) on the grounds that (1) Proposed Intervenor has defenses that share common questions of law and fact with the issues in dispute; (2) the Motion is timely; (3) no independent jurisdictional basis is required because this is a federal-question action and Proposed Intervenor asserts no new claims; and (4) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Alex Scandroli ("Scandroli Dec.") and exhibits thereto; all pleadings, records, and papers on file in this action; and such further evidence and argument as may be presented at or before the hearing.

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel between Petitioner and Proposed Intervenor, which took place on October 15, 2026. (Scandroli Dec. ¶ 2.) The parties did not reach agreement, and Petitioner will oppose the Motion. (*Id.*) On October 13, 2026, counsel for Respondent Fuer Yuan and Proposed Intervenor conferred regarding the Motion. (*Id.* ¶ 3.) Fuer Yuan will not oppose, and will join in, the Motion. (*Id.*)

Dated: November 2, 2026

**NORTON ROSE FULBRIGHT US LLP**
BRIAN SUN
ABRAHAM CHANG (*pro hac vice forthcoming*)
ALEX SCANDROLI

By: */s/ Brian Sun*
BRIAN SUN
Attorneys for Proposed Intervenor
CELIA WEN SUN, AS TRUSTEE OF THE YAEN IRREVOCABLE TRUST

Dated: November 2, 2026

**LIANG LY LLP**
JASON LIANG
CINDY LEE

By: */s/ Jason Liang*
JASON LIANG
Attorneys for Proposed Intervenor
CELIA WEN SUN, AS TRUSTEE OF THE YAEN IRREVOCABLE TRUST

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 7
II. RELEVANT BACKGROUND ..... 8
A. The Petition for Confirmation of the Foreign Arbitral Awards ..... 8
B. Proposed Intervenor and Her Property Interests in the Hotels ..... 10
C. CIB's Parallel State Action Challenges the Transfers to Sun, Which Were Bona Fide ..... 13
D. The Court's Order on the Motion to Dismiss the Petition ..... 13
III. LEGAL STANDARD ..... 14
IV. THE COURT SHOULD GRANT INTERVENTION AS A MATTER OF RIGHT ..... 15
A. The Motion to Intervene is Timely ..... 16
B. Proposed Intervenor Has Significantly Protectable Interests in the Hotels 18
C. Disposition of This Action Could Infringe on Proposed Intervenor's Property Interests ..... 19
D. Proposed Intervenor's Interests Are Not Adequately Represented by the Current Parties ..... 22
V. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION ..... 24
VI. RULE 24(c) DOES NOT APPLY TO CONFIRMATION PROCEEDINGS ..... 25
VII. CONCLUSION ..... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856 (5th Cir. 2019) ..... 22

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ..... 18

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ..... 22, 23

*Ass'n of Contracting Plumbers v. Loc. Union No. 2 United Ass'n of Journeymen & Apprentices*, 841 F.2d 461 (2d Cir. 1988) ..... 15

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ..... 25, 26

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) ..... 22

*Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013 (9th Cir. 2022) ..... 14, 25

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) ..... 16, 22, 23, 24

*Commonw. of Pa. v. President United States Am.*, 888 F.3d 52 (3d Cir. 2018) ..... 15

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) ..... 18

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ..... 19

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ..... 24, 25

*Industrial Bank Co., Ltd. Shenzhen Branch v. Sun, et al.*, Case No. 26STCV04248 ..... 7, 12, 13, 20, 24

*Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816 (9th Cir. 2021) ..... 16, 18

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ..... 18

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) ..... 15

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ..... 20

*Neuro Sci. Technologies LLC v. Farwell*,
2020 WL 7425603 (W.D. Wash. Dec. 18, 2020) ........ 19

*Orange Cnty. v. Air Cal.*,
799 F.2d 535 (9th Cir. 1986) ........ 25

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ........ 19

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ........ 16, 17

*Subway Int'l, B.V. v. Subway Russia Franchising Co.*,
735 F. Supp. 3d 332 (S.D.N.Y. 2024) ........ 26

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........ 15, 20

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ........ 15, 18, 20

*United States v. Oregon*,
745 F.2d 550 (9th Cir. 1984) ........ 17

*Westchester Fire Ins. Co. v. Mendez*,
585 F.3d 1183 (9th Cir. 2009) ........ 25

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) (en banc) ........ 14, 19

**Rules and Statutes**

9 U.S.C. § 6 ........ 26

9 U.S.C. § 202 ........ 21

9 U.S.C. § 203 ........ 8, 25

9 U.S.C. § 207 ........ 9

9 U.S.C. § 208 ........ 26

Fed. R. Civ. P. 24(a)(2) ........ 8, 14, 16, 19, 22, 26

Fed. R. Civ. P. 24(b)(3) ........ 24

# I. INTRODUCTION

Ms. Celia Wen Sun ("Sun" or "Proposed Intervenor"), in her capacity as trustee of the YAEN Irrevocable Trust (the "Trust"), seeks to intervene because she is the true and sole owner of the E-Central Downtown Los Angeles Hotel, the Sheraton Gateway Los Angeles Hotel, and the Sheraton Los Angeles San Gabriel Hotel (the "Hotels"). In the October 7, 2026 minute order, the Court held that, while it lacked specific and general personal jurisdiction over Respondent Fuer Yuan ("Yuan"), it could exercise *quasi in rem* jurisdiction ***as long as Yuan owned the Hotels***. (Order at 6–10, 10 n.2, 13.) But Yuan does not.

The E-Central Hotel and The Sheraton Gateway Hotel are owned by Metainfinity, Inc. ("Metainfinity") and Metanova, LLC ("Metanova"), respectively. The San Gabriel Hotel is owned by San Yi US Investment Company, Inc. ("San Yi"). Metainfinity, Metanova, and San Yi are wholly owned and held by the Trust, with Sun as trustee. In short, Yuan does not have any interest in any of these entities, or the Hotels. These facts alone should end the Court's inquiry.

Tellingly, at or about the same time when Petitioner Industrial Bank Co., Ltd. Shenzhen Branch ("CIB") sued Yuan in this matter, CIB also sued Proposed Intervenor (and other defendants) in state court alleging that she, ***in fact***, owns these Hotels and sought to obtain an order from the state court to undo the very transfers that made her so.[1] In so doing, CIB has essentially conceded that Yuan is not the owner of the Hotels and that the Court has no basis to exercise *quasi in rem* jurisdiction over Yuan.

The question over who owns the Hotels is squarely before this Court. It cannot be answered without the Proposed Intervenor's participation. Absent intervention, the harms to Proposed Intervenor are manifest. A finding that Yuan—not the Trust—beneficially owns the Hotels could adjudicate the validity of the transfers to Sun without her participation, cloud title to the Hotels, and restrain their operations through the worldwide asset freeze CIB seeks. Because

[1] *See Industrial Bank Co., Ltd. Shenzhen Branch v. Sun, et al.*, Case No. 26STCV04248 (the "State Action"); (Scandroli Dec. ¶ 4; Ex. 1 (the State Action Complaint) ¶¶ 65–67.)

the factors for intervention as of right under Fed. R. Civ. P. 24(a)(2) are readily satisfied, the Court should grant intervention as of right or, alternatively, permissive intervention.

## II. RELEVANT BACKGROUND

### A. The Petition for Confirmation of the Foreign Arbitral Awards

Proposed Intervenor is not a party to the loan agreements or guarantees at issue here. CIB has still hauled her into this dispute, which Proposed Intervenor describes as follows.

On February 7, 2026, CIB filed its Petition in this Court seeking confirmation of two awards issued by the Shenzhen Court of International Arbitration ("SCIA"), entry of judgment, a worldwide asset freeze, and attorneys' fees.[2] (Dkt. 1 at 1–2, 27–28.) The awards arise from two project-financing loan agreements (the "Loan Agreements") under which CIB lent money to a China-based Shenzhen Hazens Xinnan Investment Co., Ltd. ("Hazens Xinnan"), for an urban-renewal project in Shenzhen, China. (*Id.* ¶¶ 1–2.)

*The Loan Agreements*. Under the first Loan Agreement, CIB committed CNY 900,000,000, which it disbursed between February 2020 and February 2021. That loan originally matured on February 20, 2024, and was later extended on a remaining balance of CNY 599,551,718.25. (*Id.* ¶¶ 14–15; Dkt. 1-5 at 21.) The second Loan Agreement provided up to CNY 1,000,000,000, of which CNY 786,498,566.60 in principal remained outstanding. (Dkt. 1-9 at 16; Dkt. 1 ¶ 45.) Both loans were secured by collateral located entirely in China. (Dkt. 1-5 at 9–10; Dkt. 1-9 at 16–17.) Nothing in the Loan Agreements collateralizes the Hotels or any other California property.

*The Guarantees.* Yuan personally guaranteed each loan by separate guarantee agreements dated January 16, 2020, and March 28, 2022 (the "Guarantees"). (Dkt. 1 ¶¶ 16, 19.) Yuan was one of several guarantors. The other

[2] CIB brings its Petition under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), as implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 et seq. (Dkt. 1 ¶ 1.) CIB invokes subject-matter jurisdiction under 9 U.S.C. § 203. That section gives the district courts "original jurisdiction" over actions falling under the New York Convention. (*Id.* ¶ 9.)

guarantors included Shenzhen Hazens Real Estate Group Co., Ltd. and other Chinese affiliates. (Dkt. 1-15 at 47–48.) The Guarantees require disputes to be arbitrated before the SCIA. (Dkt. 1 ¶ 20.)

*The Arbitral Awards.* After Hazens Xinnan defaulted in December 2024, CIB commenced two SCIA arbitrations against Hazens Xinnan and against Yuan as guarantor. The SCIA accepted both arbitrations on March 5, 2025. (Dkt. 1 ¶¶ 26–27.) Hazens Xinnan and other respondents appeared through counsel. Yuan appeared at neither hearing nor submitted any defense. (*Id.* ¶¶ 29–36, 41–43, 83.) On September 29, 2025, the SCIA issued the first arbitral award, awarding CIB principal of CNY 599,541,718.25, plus interest, attorneys' fees, and arbitration fees. (*Id.* ¶¶ 37–38.) On September 30, 2025, the SCIA issued the second arbitral award, awarding CIB principal of CNY 786,498,566.60, plus interest, attorneys' fees, and arbitration fees. (*Id.* ¶¶ 44–45.) Each award holds the guarantors, including Yuan, jointly and severally liable for Hazens Xinnan's obligations. Together, the awards total $199,773,728.56, excluding interest. (Order at 1–2.) CIB pursued enforcement in China. The Chinese court closed the enforcement proceeding after finding no executable property, though it later seized about CNY 5.08 million from Yuan's personal bank accounts. (Dkt. 1 ¶¶ 72–73 & n.9.) Neither award mentions Proposed Intervenor or the Hotels.

*Confirmation Proceedings*. CIB argues that the Court "shall confirm the award[s]" unless one of the seven defenses in Article V of the New York Convention applies. (Dkt. 1 ¶¶ 78-80.) CIB further argues that "[t]he Respondent bears the burden" of proving those defenses. (*Id.*) Under CIB's own framing, the Article V defenses are for the "Respondent" to raise, and 9 U.S.C. § 207 authorizes confirmation only "as against any other party to the arbitration." Proposed Intervenor was not a party to the arbitration proceedings. Despite this, CIB alleges that Yuan transferred "beneficial ownership interests" in Metainfinity, Metanova, and San Yi to Sun, placing them under her "nominal control." (*Id.* ¶ 62.) On this basis, CIB claims that the arbitral awards should be confirmed so that they can be executed against the Hotels.

### B. <u>Proposed Intervenor and Her Property Interests in the Hotels</u>

The ownership of the Hotels is far less nefarious than CIB suggests. CIB casts the transfers of Metainfinity, Metanova, and San Yi as a scheme by Yuan to shield assets while keeping "beneficial ownership" and leaving Sun with only "nominal control." (Dkt. 1 ¶ 62.) The evidence shows otherwise. The Hotels were acquired years before the Loan Agreements, any default, or the arbitrations. They were held through an ordinary, documented chain of holding companies, and they came to rest with the Trust through regular corporate and estate-planning transactions. Nothing in that history makes the Hotels Yuan's property or makes Proposed Intervenor answerable for awards issued in proceedings she was never part of. Proposed Intervenor sets out below how the Hotels were acquired, who has owned them since, and how their ownership came to rest with the Trust, with Sun as trustee.

*<u>The Original Hotel Acquisition</u>*. Between 2013 and 2015, two Shenzhen-based real estate companies—Shenzhen Jiayuan Group Co., Ltd. ("Shenzhen Jiayuan") and its owned subsidiary, Shenzhen Hezheng Real Estate Group Co., Ltd. ("Shenzhen Hezheng")—obtained approvals to invest through three British Virgin Islands holding companies: Jia Yuan Holdings Company Limited ("Jia Yuan BVI"), Hezheng Holdings Company Limited ("Hezheng BVI"), and Hejia Investment Limited ("Hejia BVI").[3] (Dkt. 13-1 ¶ 7.) Those BVI holding companies, in turn, formed U.S.-based entities to acquire and operate hotels in the Los Angeles area:

| **<u>U.S. Hotel Owning Company</u>** | **<u>Overseas Parent Owner</u>** | **<u>Hotel Acquired</u>** | **<u>Year</u>** |
|---|---|---|---|
| Metanova, LLC (f/k/a Hazens Investment, LLC) | Hezheng BVI (100%) | Sheraton Gateway LAX Hotel | 2013 |

[3] Yuen was director of the BVI holding companies. (Dkt. 13-1 ¶ 8.)

| U.S. Hotel Owning Company | Overseas Parent Owner | Hotel Acquired | Year |
|---|---|---|---|
| Metainfinity, Inc. (f/k/a Jiayuan USA Co., Inc.) | Jia Yuan BVI (100%) | Luxe Hotel (now the E-Central Downtown Los Angeles Hotel) | 2014 |
| San Yi US Investment Company, Inc. ("San Yi") | San Yi Funding Company, LLC ("San Yi Funding") (100%) / Jia Yuan BVI (100% of San Yi Funding) | Sheraton San Gabriel Hotel | 2015 |

*Rao Yuan Acquires the Hotels in 2019*. Before 2019, as part of Yuan's estate plan, Yuan and Sun agreed that Yuan's assets based in China would pass to Yuan's son Rao Yuan ("Rao"), and assets based in the U.S. would pass to Sun and her children with Yuan. Because Yuan had more assets in China, Yuan and Sun agreed, along with Rao, to the following plan.

On December 24, 2019, Rao entered into a Framework Agreement for Equity Acquisition (the "Framework Agreement") with Shenzhen Jiayuan, Shenzhen Hezheng, and their BVI holding companies. (Scandroli Dec. ¶ 5, Ex. 3.)[4] Under the Framework Agreement, Rao acquired 100% of the equity in Hazens Investment, LLC (now Metanova), Jiayuan USA Co., Inc. (now Metainfinity), and San Yi (through acquiring its parent entities, San Yi Funding and Jia Yuan BVI), making him owner of the Hotels.[5] Yuan did not contribute any funds to the purchase of the Hotels.

*Yuan briefly became nominee owner of the Hotels, for the purposes of transferring them to the Trust*. Rao did not take title in his own name. For tax planning purposes, Rao, Sun, and Yuan agreed that Yuan should serve as grantor

[4] A certified translation of the supplemental amendment to the Framework Agreement, dated June 20, 2022 is attached to the declaration. That supplement refers to the transaction under the Framework Agreement. Proposed Intervenor is in the process of obtaining a certified translation of the December 2019 Framework Agreement and will include a copy with their reply.

[5] The Framework Agreement followed the December 22 and December 23, 2019 resolutions of the Board of Directors' for the BVI holding companies resolving to transfer interests to Rao. (Scandroli Dec. ¶ 6, Ex. 4.)

to the Trust. By a Gift Agreement signed in April 2020, just months after he acquired them from the BVI holding companies, Rao agreed to give the equity in the Hotel holding companies to Yuan, on the express condition that Yuan transfer "100% of the equity and all rights and interests" in those companies into the name of a trust within a reasonable period, not to exceed six months after the equity was registered in his name. (Scandroli Dec. ¶ 7, Ex. 5 (Gift Agreement) arts. 2, 4.) If Yuan failed to do so, Rao retained the right to revoke the gift and reclaim the companies. (*Id.* art. 2(3).)

Consistent with the Gift Agreement, on May 8, 2020, Rao directed the sellers to register Hazens Investment and Jiayuan USA in Yuan's name upon receipt of the first installment, and to register San Yi in Yuan's name upon receipt of the second installment. Yuan thus nominally held the equity only as a conduit, for a brief period, under a written obligation to pass it to the Trust.[6]

*Sun, as Trustee and Beneficiary of the YAEN Irrevocable Trust*. The Trust is an irrevocable California trust established on January 12, 2021, with Yuan as grantor and Sun as trustee, for the benefit of Sun and the couple's children. (Scandroli Dec. ¶¶ 8-9, Ex. 6 (Trust Agreement); Ex. 7 (Certification of Trust).) On or about January 12, 2021, consistent with the purpose of the Gift Agreement, Yuan assigned all of his membership interest in Metanova and all of his shares in Metainfinity to Sun as trustee of the Trust. (*Id.* ¶ 10 Ex. 8 (Assignments to Trust).) Consistent with the intent of the parties to the Gift Agreement, Yuan later assigned his equity in San Yi to Sun as trustee of the Trust on March 3, 2023. (*Id.*) Sun has held those interests as Trustee ever since. In that capacity, she holds 100% of the equity in Metanova and Metainfinity that own the Sheraton Gateway and E-Central Hotels, respectively. As CIB acknowledges, despite the equity transfers to the Trust, title ownership to each Hotel has remained with these entities. (Dkt. 20 at 3.)

---

[6] As Proposed Intervenor will ultimately prove, Rao's transfer to the Trust was made pursuant to a 2019 settlement between Rao and Sun, under which Sun relinquished rights to assets in China exceeding the value of the Hotels. Sun has since assumed and serviced the financing on the Hotels.

### C. CIB's Parallel State Action Challenges the Transfers to Sun, Which Were Bona Fide

One day prior to filing this action, on February 6, 2026, CIB filed the State Action in Los Angeles Superior Court against Sun, San Yi, Metainfinity, Metanova, and others. (Scandroli Dec. ¶ 4; Ex. 2 ¶¶ 65–66.) CIB alleges that Yuan fraudulently transferred his interests in the Hotels (among other property) to Sun to avoid his obligations on the Guarantees. CIB seeks avoidance of the transfers under California's Uniform Voidable Transactions Act, together with attachment, injunctive relief, appointment of a receiver, constructive trusts, and equitable liens. (*Id.* ¶ 67.) The State Action confirms what CIB's position here assumes: the transfers to Sun occurred, and CIB's claim that Yuan remains the beneficial owner depends on avoiding them.

Proposed Intervenor will ultimately prove that Yuan is not the beneficial owner of the Hotels; the transfers were made between spouses and children as part of a coordinated estate plan. The transfers were documented in writing and witnessed, and were accompanied by a Certification of Trust. Record title to each Hotel never moved; it remained with the operating entities. Sun, as trustee and beneficiary of the Trust, is the true owner of Metanova, Metainfinity, and San Yi.

### D. The Court's Order on the Motion to Dismiss the Petition

In this case, Yuan moved to dismiss the Petition for lack of personal jurisdiction and insufficient service, attesting that he does not own real property in California. (Dkt. 13; *see* Dkt. 20 at 6.) In opposition, CIB argued that the Court had quasi in rem jurisdiction over Yuan's California assets, relying principally on a declaration from a CIB employee claiming that a financing manager at a Chinese affiliate stated that the Hotels had been transferred to Yuan's "personal ownership."[7] (Dkt. 20 at 5–6; Dkt. 20-1 ¶¶ 3–6.)

On October 7, 2026, the Court granted the motion in part. (Order at 1.) The Court held that it lacks personal jurisdiction over Yuan because CIB's claims,

[7] Yuan objected that whether the Hotels were transferred to his personal ownership is a legal characterization about title beyond the scope of lay testimony. (Dkt. 21-1.)

which relate to loans "signed in China for the express purpose of funding Chinese real estate projects," do not arise from Yuan's California contacts. (*Id.* at 5–8.) Despite this, the Court found that CIB had made a prima facie showing that Yuan owns the Hotels and exercised quasi in rem jurisdiction "over the Hotels." (*Id.* at 8–10, 13.) The Court emphasized that CIB "can only enforce the arbitral awards against the Hotels," and that ownership remains an open question: "if during merits briefing, Yuan proves that he does not own the Hotels, then the Court may dismiss this Petition." (*Id.* at 10 n.2.) The Court ordered the parties to submit a joint proposed merits briefing schedule within seven days and granted CIB leave to amend its Petition. (*Id.* at 13.) CIB therefore seeks a judgment that can be enforced only against Proposed Intervenor's property. Proposed Intervenor filed this Motion promptly thereafter.

## III. LEGAL STANDARD

Rule 24(a)(2) provides for intervention as a matter of right, providing in relevant part that the court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies a four-part test for intervention as a matter of right: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc)).

These requirements are "broadly interpreted in favor of intervention," and the Court's analysis is "guided primarily by practical considerations, not technical

distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002). The Court must accept as true the non-conclusory allegations made in support of the intervention motion. *Berg*, 268 F.3d at 819–20.

## IV. THE COURT SHOULD GRANT INTERVENTION AS A MATTER OF RIGHT

As a threshold matter, Proposed Intervenor does not pursue new claims and will not pursue any relief separate from the question of whether the arbitral awards can be confirmed. For that reason, Proposed Intervenor need not establish Article III standing to intervene as of right. *See*, *e.g.*, *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("[u]nder our precedents, at least one party must demonstrate Article III standing for each claim for relief. An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."); *see also Commonw. of Pa. v. President United States Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) ("Because the [litigants] moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing" to intervene as of right).

Even if that were not the case, Proposed Intervenor has Article III standing to intervene in a proceeding to confirm the arbitral award if they can demonstrate a "sufficient stake in the outcome." *Ass'n of Contracting Plumbers v. Loc. Union No. 2 United Ass'n of Journeymen & Apprentices*, 841 F.2d 461, 467 (2d Cir. 1988). Proposed Intervenor has an indisputable stake in the outcome here: she is entitled to defend against execution on the Trust's real property arising from arbitral awards that she had no opportunity to contest. Proposed Intervenor, moreover, is equally entitled to defend against

confirmation when their real property has no nexus to the claims that underlie the arbitral awards.

With standing addressed, the inquiry for the Court is whether Proposed Intervenor can satisfy the factors of Rule 24(a)(2) for intervention as a matter of right or, alternatively, the factors for permissive intervention under Rule 24(b)(1)(B). As explained below, each of these balancing tests weighs overwhelmingly in favor of granting intervention.

### A. The Motion to Intervene is Timely

Because the Court has yet to engage substantively with the merits of this case and no discovery has commenced, the Motion is timely whether it is measured from the Order (October 7, 2026) or the Petition filing date (February 7, 2026).

Timeliness is assessed in light of "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). The inquiry focuses on the date the applicant "should have been aware that its interests would no longer be protected adequately by the parties," not the date the action was filed. *Id.*; *see also Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822–25 (9th Cir. 2021) (same). As applied here, each timeliness factor favors intervention.

*First*, with respect to the stage of the proceeding, the case has not reached the merits. The Court has decided only a jurisdictional motion as to Yuan and has not set a merits briefing schedule.[8] *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion timely where filed before any substantive rulings). Proposed Intervenor seeks to participate from the outset of the merits phase and will abide by any briefing schedule the Court sets.

*Second*, there is no prejudice. Intervention now will not require relitigating anything already decided. Proposed Intervenor does not seek to revisit the Court's

[8] The Court also granted CIB leave to amend its Petition. (Order at 13.) Should CIB elect to do so, that would effectively reset the case.

personal jurisdiction or service findings as to Yuan. And the mere fact that CIB will have to litigate against additional parties is not cognizable prejudice for purposes of intervention. *See Smith*, 830 F.3d at 857 (explaining that prejudice does not flow from "the fact that including another party in the case might make resolution more 'difficult'").

*Third*, there was no delay. Until October 7, 2026, this was an in personam proceeding against Yuan alone. It was the Order—holding that the Hotels are the sole basis of jurisdiction and that ownership will be resolved "during merits briefing"—that transformed the Hotels into the res of this action and placed Proposed Intervenor's property directly at issue. (Order at 10 & n.2.) Proposed Intervenor complied with the Court's order on the deadline for a motion to intervene—mere weeks after the Order. Put differently, the Order reflects a changed circumstance that resets the timeliness clock. When "a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith*, 830 F.3d at 854; *see also United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (intervention timely where changed circumstances showed applicant's interests were no longer adequately protected).

The timeliness inquiry asks when the movant should have known its interests "would no longer be protected adequately by the parties." *Smith*, 830 F.3d at 854. Here, that date is October 7, 2026, and not before. To illustrate, before the Order issued, Proposed Intervenor could rely on Yuan to defend the Petition because he faced personal liability for $209 million. Yuan had every incentive to defeat the Petition, including through defenses to confirmation that would also have protected the Hotels from being subject to the awards. The Order fundamentally changed that dynamic: it made the Hotels the only property CIB can reach and removed Yuan's personal exposure. Proposed Intervenor moved promptly once it became clear that Yuan no longer had personal exposure giving him an incentive to defend the Hotels.

Even if the Court measured timeliness from the date CIB filed its Petition, the Motion would still be timely. The Motion comes roughly nine months later. In the Ninth Circuit, the length of time since the suit was filed "is not dispositive." *Kalbers*, 22 F.4th at 826. The stage-of-proceedings factor turns instead on whether "the district court has substantively—and substantially—engaged the issues in th[e] case." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997). For that reason, the Ninth Circuit has held intervention motions timely when filed years, not months, after the case began. *Compare Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (timely more than two years after filing), *and Smith*, 830 F.3d at 854–57 (timely decades after filing), *with Wilson*, 131 F.3d at 1303–04 (untimely after 27 months, during which the court partially granted summary judgment and discovery had gone on for months), *and United States v. Alisal Water Corp.*, 370 F.3d 915, 921–22 (9th Cir. 2004) (untimely four years into the case, after liability had been determined).

In the event some delay is found, Proposed Intervenor had good reason to wait until this juncture to intervene. The Ninth Circuit "discourage[s] premature intervention" and "do[es] not require hasty intervention." *Kalbers*, 22 F.4th at 823. Had Proposed Intervenor moved while it was still uncertain whether her property was at issue, CIB would surely have opposed the motion as premature and speculative. A prospective intervenor should not be penalized for waiting to move until its interest was more clearly threatened.

### B. Proposed Intervenor Has Significantly Protectable Interests in the Hotels

Ownership of the very property that is the basis for a quasi in rem action is the clearest protectable interest there is. The second factor for intervention instructs that the movant has a significantly protectable interest if "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *City of Los Angeles*, 288 F.3d at 398 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry is "a practical, threshold inquiry," and "[n]o specific legal or equitable

interest need be established." *Wilderness Soc'y*, 630 F.3d at 1179. The relationship requirement is satisfied where "the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410. Indeed, Rule 24(a)(2) expressly references an "interest relating to the *property* . . . that is the subject of the action." Fed. R. Civ. P. 24(a)(2) (emphasis added).

Ownership of real property is therefore the paradigmatic legally protected interest for purposes of Rule 24. And here the property interest at stake is not merely related to the action—it is the action. That is because a quasi in rem proceeding is one against "property that supports jurisdiction," and its judgment operates on that property. (Order at 8 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977)).) With this in mind, Proposed Intervenor's interests in the properties at issue are indisputably significant. Sun, as trustee and beneficiary of the Trust, holds 100% of the shares of the Hotel-owning entities: Metanova, Metainfinity, and San Yi. (Scandroli ¶ 10; Ex. 8.)

CIB's own theory of jurisdiction treats beneficial ownership of the hotel-owning entities as true ownership of the Hotels. Sun is the party that actually holds that beneficial ownership through the Trust. The only way CIB can establish Yuan remains owner is by proving that the transfers to the Trust were fraudulent—a determination that operates directly on the Trust's property. That property interest more than suffices. *See Wilderness Soc'y*, 630 F.3d at 1179–80 ("[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue"); *see also Neuro Sci. Technologies LLC v. Farwell*, 2020 WL 7425603, at *2 (W.D. Wash. Dec. 18, 2020) (granting intervention as a matter of right in action to recognize arbitral awards to non-parties claiming a disputed assignment in patents because "the arbitration award [] involves the same patents.").

### C. <u>Disposition of This Action Could Infringe on Proposed Intervenor's Property Interests</u>

A judgment enforceable only against the Hotels cannot be entered without impairing the rights of the Hotels' owner. The third intervention factor asks

whether disposition of the action "may" impair the applicant's interest "as a practical matter." *City of Los Angeles*, 288 F.3d at 401. Without question, that is true here.

Once an applicant shows a significantly protectable interest, courts generally have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). The effect here would be enormous, immediate, and multifaceted.

*First*, if the Court confirms the awards and enters judgment enforceable "against the Hotels," CIB will seek to execute that judgment against property owned by the Proposed Intervenor—who was not a party to the Guarantees, the arbitrations, or this proceeding.

*Second*, a federal determination that Yuan owns the Hotels would nullify the Trust's ownership of Metanova, Metainfinity, and San Yi without Sun ever being heard, and jeopardize existing financing arrangements on the properties.

*Third*, the ownership question here overlaps with the ownership question CIB is litigating in the State Action. Because CIB's ownership theory depends on undoing the transfers to Sun, any finding here that Yuan is the beneficial owner would necessarily rest on a determination that those transfers were invalid. CIB will no doubt invoke such a finding in the State Action, creating a serious risk of inconsistent adjudications or preclusive effect against a party that was never heard.

*Fourth*, CIB has asked this Court for a worldwide asset freeze. (Dkt. 1 at 23–26, 28.) Any injunction framed around assets in which Yuan is deemed to hold an interest would restrain Proposed Intervenor's property and operations without their being heard.

*Fifth*, and most important, disposition of this action without Proposed Intervenor would foreclose defenses that belong to her as trustee and beneficial

owner, separate from any question of whether Yuan owns the Hotels. Proposed Intervenor would raise at least the following owner-specific defenses on the merits:

*Proposed Intervenor's property is not Yuan's property*. Simply, Yuan does not own the Hotels, the Trust does. CIB can reach the Hotels themselves only by (1) avoiding the January 2021 transfers to the Trust and (2) disregarding the separate existence of the hotel-owning entities. Those are fraudulent-transfer and alter-ego claims, which must be pleaded and proved against the transferee and the entities with full process. They cannot be decided in a confirmation proceeding to which Proposed Intervenor is not a party.

*No nexus between the awards and the Hotels*. The Court has already found that the Loan Agreements were "signed in China for the express purpose of funding Chinese real estate projects" and "had nothing to do with Yuan's California-based projects." (Order at 8–9.) Because the dispute underlying the arbitral awards has no relationship to the Hotels, jurisdiction rests entirely on "type two" quasi in rem jurisdiction. (*Id.*) The Court applied that doctrine because the parties "d[id] not dispute that the SCIA is a court of competent jurisdiction that has rendered a judgment against Yuan." (*Id.* at 9 (citing Dkt. 21 at 8).) Proposed Intervenor made no such concession. She contends that the SCIA did not have jurisdiction to make determinations concerning the Hotels, and, as a result, quasi in rem jurisdiction cannot justify seizing a non-party's property to satisfy Yuan's Guarantees.

*Proposed Intervenor never agreed to arbitrate*. The New York Convention covers awards arising from "an agreement in writing" to arbitrate, and an award can bind only the parties to that agreement. 9 U.S.C. § 202; New York Convention arts. II, V(1)(a), V(1)(c). The awards were rendered against Yuan, Hazens Xinnan, and other Chinese guarantors. (Order at 1–2.) Proposed Intervenor did not sign the Guarantees, agreed to arbitrate, or appeared before the SCIA. Enforcing the awards against her property would offend this forum's public policy, under Article

V(2)(b), against taking a non-party's property without notice and an opportunity to be heard.

*Existing lienholders*. The Hotels are encumbered by deeds of trust securing substantial institutional financing, including a $190 million deed of trust on the E-Central Downtown Los Angeles Hotel. (Dkt. 20 at 3–4.) Any judgment or execution against the Hotels must account for the priority and rights of those secured lenders, and for the owners' obligations to them. Yuan has no incentive to protect those rights.

At bottom, if the Court adjudicates the Petition without Proposed Intervenor, these defenses will be waived or presented only in a later collateral attack on a federal judgment. On the latter point, the fact that Proposed Intervenor might later attempt to contest an execution in a separate action does not defeat intervention. Rule 24 asks whether their ability to protect their interests ***may*** be "impair[ed] or impede[d]" "as a practical matter," not whether they would be left entirely without recourse. Fed. R. Civ. P. 24(a)(2); *see Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 867 (5th Cir. 2019) (holding that a non-party law firm with an interest in a contingency fee award could intervene as of right, notwithstanding that the firm could bring a separate action to recover its fees).

### D. Proposed Intervenor's Interests Are Not Adequately Represented by the Current Parties

CIB is Proposed Intervenor's adversary, so only Yuan could represent their interests here. He cannot. On the fourth factor for intervention, the burden of showing inadequate representation is "minimal" and is satisfied if the applicant shows that representation of its interests "may be" inadequate. *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022). Courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a

proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086.

Here, as addressed *supra* § IV.C, Yuan's interest is not such that he will make all of Proposed Intervenor's arguments. Yuan has no reason to expend any effort or resources litigating a merits fight over property he disclaims; the Order already found that he is out of reach of this Court's jurisdiction otherwise. Yuan now loses nothing personally if CIB enforces against the Hotels; after all, he disclaims owning them. (Dkt. 13 at 24; Yuan Decl. ¶ 7.) Proposed Intervenor, on the other hand, stand to lose the Hotels. Representation is inadequate when the existing party's stake in the outcome is materially smaller than the applicant's. *See Citizens for Balanced Use*, 647 F.3d at 899–900. Here, Yuan and Proposed Intervenor are not rowing in the same direction; they do not share the same boat, and will not present the same defenses.

*First*, Yuan and Proposed Intervenor do not share the same defenses. Yuan's non-ownership defense is not the same as Proposed Intervenor's defense. Yuan has told this Court that he is merely "a former executive of certain California companies that are owned by a Chinese holding company of which Mr. Yuan has no direct or indirect ownership interest." (Dkt. 13 at 24; Yuan Decl. ¶ 7.) CIB has already attacked that account by arguing that Yuan is the "ultimate beneficial controlling shareholder" of the Chinese parent. (Dkt. 20 at 21 n.6.) Yuan has not defended, and may ultimately decide not to defend, true ownership with title evidence and corporate records. For example, on the dismissal motion, Yuan answered CIB's ownership showing with evidentiary objections, contending that the Zhuang Declaration lacked personal knowledge, rested on hearsay, and violated the best-evidence rule. Yuan did not submit deeds, title reports, trust instruments, or corporate records—likely because he cannot access them—and he attests that he has had no involvement in the U.S. companies' operations since 2019. (*See* Dkt. 20 at 5–6.) Proposed Intervenor is best situated to supply this evidence.

*Second,* Yuan and Proposed Intervenor do not share aligned incentives. As explained above, Yuan has disclaimed any remaining property interest in the federal action; he has no interest in the State Action. Proposed Intervenor cannot entrust the framing of those facts to a party whose incentives are not aligned and in fact may point the other way.

*Third,* Yuan could resolve the case at the Hotels' expense. Yuan faces enforcement efforts by CIB in China and Hong Kong as well as here. (Dkt. 13 at 24–25; Yuan Decl. ¶ 15.) A party with global personal exposure may accept a resolution that concedes enforcement against the Hotels in exchange for relief elsewhere, or simply withdraw from the merits after preserving his jurisdictional objections. After all, should CIB be allowed to enforce against the Hotels, Yuan may argue that he is entitled to an offset for the value of the Hotels.

Because each of these scenarios shows that Yuan's representation "may be" inadequate, Proposed Intervenor has carried her minimal burden. *Citizens for Balanced Use*, 647 F.3d at 898.

## V. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Even if the Court were to find against intervention as of right, it should exercise its discretion to permit intervention. Rule 24(b)(1)(B) permits intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." The Ninth Circuit requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). The court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention is committed to the "broad discretion of the district court." *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986). Each requirement for permissive intervention is met here.

*First*, no independent jurisdictional basis is required. The Court has federal-question jurisdiction under 9 U.S.C. § 203, which gives federal courts original jurisdiction over actions falling under the New York Convention. Even if that were not the case, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Geithner*, 644 F.3d at 844. Proposed Intervenor asserts no new claims and appear solely for purposes of defense.

*Second*, the Motion is timely for the reasons stated *supra* § IV.A.

*Third*, Proposed Intervenor's defenses substantially overlap with the merits issues the Court identified in its Order, including (1) who owns the Hotels; (2) whether the transfers that placed the hotel-owning entities in the Trust are valid; and (3) whether those properties may be subjected to the arbitral awards under the standards of the New York Convention.

*Fourth*, intervention will not cause undue delay or prejudice for the reasons addressed *supra* § IV.A. Beyond those reasons, Proposed Intervenor's participation will promote efficiency by ensuring that the ownership question is decided once, on a complete record, with the true owners before the Court. *See Callahan*, 42 F.4th at 1022 (court may consider whether intervenors "will significantly contribute to full development of the underlying factual issues").

## VI. <u>RULE 24(C) DOES NOT APPLY TO CONFIRMATION PROCEEDINGS</u>

Rule 24(c) provides that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). In an ordinary civil action, that means attaching a complaint in intervention or an answer.[9] But Rule 24(c) has no application here because a proceeding to confirm a foreign arbitral award is a

[9] The Ninth Circuit, however, does not apply the requirement rigidly. It has repeatedly "approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474–75 (9th Cir. 1992); *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188–89 (9th Cir. 2009) (rejecting as a "purely technical defect" an intervenor's failure to attach a pleading where the court was apprised of its position).

summary proceeding conducted through motion practice, not a civil action on pleadings.

An application to confirm is "made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6; *see* 9 U.S.C. § 208. The proper response to a petition to confirm is therefore an opposition, not an answer. *See Subway Int'l, B.V. v. Subway Russia Franchising Co.*, 735 F. Supp. 3d 332, 342 (S.D.N.Y. 2024) (collecting cases holding that an answer is not a proper response to a petition to confirm). For this reason, Proposed Intervenor does not attach a responsive pleading.

The purpose of Rule 24(c) is fully served in any event. The Rule is meant to tell the court and the parties what position the intervenor will take. *See Beckman*, 966 F.2d at 474. This Motion does exactly that by identifying the known defenses Proposed Intervenor plans to assert.[10] Neither CIB nor Yuan can claim surprise.

## VII. CONCLUSION

For the foregoing reasons, Proposed Intervenor respectfully requests that the Court grant the Motion and permit her to intervene as of right under Rule 24(a)(2) or, alternatively, permissively under Rule 24(b)(1)(B).

Dated: November 2, 2026

**NORTON ROSE FULBRIGHT US LLP**
BRIAN SUN
ABRAHAM CHANG (*pro hac vice forthcoming*)
ALEX SCANDROLI

By: */s/ Brian Sun*
BRIAN SUN
Attorneys for Proposed Intervenor
CELIA WEN SUN, AS TRUSTEE OF THE YAEN IRREVOCABLE TRUST

[10] Proposed Intervenor expressly reserves the right to assert additional defenses at the merits stage.

Dated: November 2, 2026

**LIANG LY LLP**
JASON LIANG
CINDY LEE

By: */s/ Jason Liang*
JASON LIANG
Attorneys for Proposed Intervenor
CELIA WEN SUN, AS TRUSTEE OF
THE YAEN IRREVOCABLE TRUST

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Proposed Intervenor Celia Wen Sun, as Trustee of The Yaen Irrevocable Trust, certifies that this brief contains 6,874 words in compliance with L.R. 11-62.

ALEX SCANDROLI
November 2, 2026