# EXHIBIT 1

KING & WOOD MALLESONS LLP
Yan Ge (State Bar #236566)
geyan@cn.kwm.com
Ellis E. Herington (State Bar #343085)
ellis.herington@us.kwm.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kwm.com
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

Electronically FILED by Superior Court of California, County of Los Angeles 2/06/2026 8:06 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Cwikla, Deputy Clerk

Attorneys for Plaintiff, INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,<br><br>Plaintiff,<br><br>v.<br><br>CELIA WEN SUN a/k/a WEN SUN a/k/a CELIA SUN, VALLEY SG LANDPLUS, LLC, METAINFINITY, INC., METANOVA, LLC, SAN YI US INVESTMENT COMPANY, INC., HAZENS ROSEMEAD, LLC, BURGEON HOTEL GROUP CORP. and John Does 1-20<br><br>Defendants. | Case No. 26STCV04248<br><br>COMPLAINT FOR:<br><br>1. AVOIDANCE OF CONSTRUCTIVE VOIDABLE TRANSFERS PURSUANT TO UVTA;<br>2. AVOIDANCE OF ACTUAL VOIDABLE TRANSFERS PURSUANT TO UVTA;<br>3. AVOIDANCE OF VOIDABLE TRANSFERS PURSUANT TO COMMON LAW;<br>4. CONSTRUCTIVE TRUST;<br>5. CIVIL CONSPIRACY;<br>6. AIDING AND ABETTING;<br>7. UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Industrial Bank Co., Ltd. Shenzhen Branch ("CIB" or "Plaintiff") alleges for its Complaint against Defendants Celia Wen Sun a/k/a Wen Sun a/k/a Celia Sun ("Sun"), Metainfinity, Inc. ("Metainfinity", f/k/a Jia Yuan USA Co., Inc.), Metanova, LLC ("Metanova", f/k/a Hazens Investment, LLC), San Yi US Investment Company, Inc. ("San Yi US", f/k/a Jia Jia US Investment Company, Inc.), Valley SG Landplus, LLC ("VSGL"), Hazens Rosemead, LLC ("Hazens Rosemead"), Burgeon Hotel Group Corporation ("BHG") and John Does 1-20 (collectively, "Defendants"), upon information and belief unless otherwise stated or in the personal knowledge of Plaintiff, as follows:

## INTRODUCTION

1. CIB brings this action to recover the value of numerous fraudulent transfers carried out by all of the Defendants in furtherance of their conspiracy with non-party Fuer Yuan ("Yuan"), the ringleader of an international fraud scheme designed to evade his multimillion dollar debt obligations to CIB.

2. Yuan is the Chairman and ultimate beneficial controlling shareholder of Shenzhen Hazens Real Estate Group Co., Ltd. ("Hazens Group"), Shenzhen Hazens Xinnan Investment Co., Ltd ("Hazens Xinnan"), and Defendants Metainfinity, Metanova, San Yi US, Hazens Rosemead, and BHG, among other entities.

3. Yuan married Weiqing Rao ("Rao") on or about August 10, 1987. They were divorced on or about September 12, 2023.

4. Yuan and Rao executed written guarantee agreements ("Guarantees") and related documents in connection with certain loan agreements entered between CIB and Hazens Xinnan between 2020 and 2024 ("Loan Agreements"). Specifically, under the various Guarantees, Yuan unconditionally guaranteed the full payment of all obligations of Hazens Xinnan under all three Loan Agreements, and Rao unconditionally guaranteed the obligations of Hazens Xinnan under the first Loan Agreement. The total principal disbursed to Hazens Xinnan under the Loan Agreements is CNY 1,935,548,308.22, equivalent to USD 278,975,803.64.[1]

[1] For reference, the prevailing rate of exchange as of the filing date was around CNY 6.94 per United States dollar. United States Dollar/Chinese Yuan, GOOGLE FINANCE, https://www.google.com/finance/beta/quote/USD-CNY?hl=en (last accessed on February 6, 2025).

5. Under the Guarantees, Yuan and Rao agreed to joint and several liability for all amounts due under the Loan Agreements, including principal, interest, fees, and costs. The Guarantees were intended to induce CIB to disburse the principal amounts to Hazens Xinnan.

6. During the loan application and disbursement process and the subsequent performance of the Loan Agreements, Hazens Xinnan misappropriated loan funds and violated the Loan Agreements through illicit fund transfers and fraudulent sales of commercial properties. Beginning in April 2022 and through April 2024, Hazens Xinnan grossly violated the terms of the Loan Agreements regarding fund usage and supervision, cumulatively misappropriating loans and supervised funds in the amount of CNY 1,595,412,044.41, equivalent to USD 229,951,045.57, to repay enormous debts of other projects of Hazens Group and its affiliates and for other purposes.

7. Until the date of the filing of this Complaint, Hazens Xinnan has only repaid CNY 300,130,000, equivalent to USD 43,258,547.25, under the Loan Agreements, with the remaining matured loan principal totaling CNY 1,635,418,308.22, equivalent to USD 235,717,256.39. Under the Guarantees, Yuan and Rao are jointly and severally liable for the full amount owed by Hazens Xinnan.

8. To evade his obligations under the Loan Agreements and avoid personal liability under the Guarantees, Yuan conspired with all other Defendants and perpetrated an extensive international fraud scheme whereby they misappropriated the loan funds, engaged in fraudulent transfers, and transferred or concealed their personal assets to avoid their obligations to Plaintiff. Defendants coordinated this fraudulent scheme across multiple jurisdictions in an effort to place their assets beyond the reach of creditors and to frustrate any collection by Plaintiff. As part of this scheme, Defendants made fraudulent transfers of real property, personal property, and other assets to third parties, including Rao and Sun, without adequate consideration and with the intent to hinder, delay, or defraud creditors.

9. The principal co-conspirator and receiver of the fraudulently transferred assets and property is Defendant Sun, whom Yuan married in California while still married to Rao in China. Yuan and Sun were in a marital relationship and held themselves out as husband and wife during at least the period from October 1, 2007 to June 12, 2024. Yuan concealed this marital relationship

with Sun from CIB throughout the loan application process and the performance of the Loan Agreements.

10. At or around the time Yuan entered the Loan Agreements and Guarantees, and in an effort to shield assets that he had fraudulently transferred to Rao and Sun, Yuan strategically divorced both wives to create additional barriers for creditor recovery. Yuan divorced Rao on or about September 12, 2023, and he subsequently divorced Sun in or about 2024. These divorces were timed to coincide with Yuan's increasing financial difficulties and potential liability under the Loan Agreements and Guarantees. The strategic timing of these divorces, combined with the extensive asset transfers that had occurred at or about the time of the divorces, demonstrates Yuan's sophisticated and calculated approach to asset concealment and creditor avoidance.

11. At all relevant times, Yuan owns or owned several real estate properties in the State of California. As a part of the aforementioned fraudulent scheme, Yuan waived and relinquished his marital interests in these real properties by transferring said interests to Sun and/or Rao through interspousal transfer deeds or quitclaim deeds. In addition to these properties, Yuan fraudulently transferred a substantial amount of monetary funds to Sun, so that Sun could either purchase the real property in her individual capacity or cause entities controlled, owned, or managed by Sun, including but not limited to VSGL, to purchase the real property to her benefit. As a result of the fraudulent transfers, Sun (individually or through entities including but not limited to VSGL) owns or owned at least twelve real properties with an aggregate value of approximately $29.56 million.

12. Yuan is also the controlling person and ultimate beneficial controlling shareholder of several entities currently registered in the State of California, including without limitation Defendants Metainfinity, Metanova, San Yi US, and Hazens Rosemead. These entities hold substantial real property interests in three hotels and an office building in the State of California.

13. In or about 2020, at least a portion of these Defendants' hotel business equity was divested to the individual ownership of Yuan in his capacity as the controlling person of the entities and is no longer consolidated into Hazens Group's financial statements. Thereafter, Defendants conspired to fraudulently transfer Yuan's interests in these entities and hotel and office building assets to parties including but not limited to Sun.

14. Notwithstanding these transfers and each Defendant's nominal corporate separateness, all of the entity Defendants function as alter egos of either Yuan or Sun, and operate as a common enterprise for Yuan and Sun's benefit and for the purpose of hindering, delaying, and defrauding CIB and other creditors.

15. CIB seeks the value of these fraudulent transfers under the California Uniform Voidable Transactions Act ("UVTA") and common law. Each of the transfers at issue were part of Yuan and the Defendants' international fraudulent scheme, which they orchestrated for their own benefit and to the detriment of CIB and Yuan's other creditors. CIB also seeks damages and equitable relief, including without limitation restitution of unjust enrichment, imposition of a constructive trust, a temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining and restraining Defendants and their agents, representatives, employees, or attorneys from transferring, selling, conveying, encumbering, assigning, or otherwise disposing of real property identified further below and/or the proceeds of any transfer of the same until such time as Plaintiff's claims concerning these transfers are adjudicated.

**PARTIES**

16. Plaintiff CIB is a Chinese bank with its principal place of business in Shenzhen City, Guangdong Province, People's Republic of China. CIB is a creditor of Hazens Xinnan, Yuan, and Rao in the total amount of at least CNY 1,635,418,308.22, equivalent to USD 235,717,256.39.

17. Defendant Sun is a California resident who maintains a residential address at 980 Winston Avenue, San Marino, CA 91108. Sun was married to Yuan in California. No later than October 1, 2007, Yuan and Sun were married and/or began representing themselves as husband and wife. Sun is the controlling person and owner of VSGL. Before Sun moved to the United States from China and married Yuan no later than October 1, 2007, Sun was Yuan's secretary in Hazens Group. Yuan divorced Sun in 2024 in an effort to shield his assets that he had fraudulently transferred to Sun.

18. Defendant VSGL is a California limited liability company with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. VSGL was established by Sun on or about October 26, 2017 to hold real estate property on her behalf.

19. Sun is the organizer of VSGL and served as CEO of VSGL. Sun is currently the manager of VSGL.

20. Defendant Metainfinity is a California corporation with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. Metainfinity is a subsidiary owned and controlled by Yuan or Hazens Group. Metainfinity owns the E-Central Downtown Los Angeles Hotel. Yuan and Sun hold leadership roles in Metainfinity. At least a portion of the beneficial ownership interests in Metainfinity and its hotel assets have been transferred to Yuan, which interests have subsequently been fraudulently transferred to third parties, including Sun, as part of a scheme to hinder, delay, or defraud creditors. Yuan fraudulently transferred his interests in Metainfinity to third parties, including Sun.

21. Defendant Metanova is a California limited liability company with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. Metanova is a subsidiary owned and controlled by Yuan or Hazens Group. Metanova owns the Sheraton Gateway Los Angeles Hotel. Yuan and Sun hold various leadership roles in Metanova. At least a portion of the beneficial ownership interests in Metanova and its hotel assets have been transferred to Yuan, which interests have subsequently been fraudulently transferred to third parties, including Sun, as part of a scheme to hinder, delay, or defraud creditors. Yuan fraudulently transferred his interests in Metanova to third parties, including Sun.

22. Defendant San Yi US is a California corporation with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. San Yi US is a subsidiary owned and controlled by Yuan or Hazens Group. San Yi US owns the Sheraton Los Angeles San Gabriel Hotel. Yuan and Sun hold leadership roles in San Yi US. At least a portion of the beneficial ownership interests in San Yi US and its hotel assets have been transferred to Yuan, which interests have subsequently been fraudulently transferred to third parties, including Sun, as part of a scheme to hinder, delay, or defraud creditors. Yuan fraudulently transferred his interests in San Yi US to third parties, including Sun.

23. Defendant Hazens Rosemead is a California corporation with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. Hazens Rosemead is a subsidiary owned

and controlled by Yuan or Hazens Group. Hazens Rosemead owns an office building in Los Angeles County. Yuan fraudulently transferred his interest in Hazens Rosemead to third parties, including Sun, as part of a scheme to hinder, delay, or defraud creditors.

24. Defendant BHG is a California corporation with its principal place of business at 135 E. Live Oak Avenue, Arcadia, CA 91006. BHG is a subsidiary owned and controlled by Yuan or Hazens Group. BHG is a hotel management company that manages the hotel properties owned by Defendants Metainfinity, Metanova, and San Yi US.

25. Defendants John Does 1-20 are persons whose names and addresses are unknown but are residents of the United States. The John Doe Defendants are beneficiaries and/or subsequent transferees of the fraudulent transfers described herein.

## JURISDICTION AND VENUE

26. This Court has personal jurisdiction over each Defendant pursuant to Section 410.10 of the California Code of Civil Procedure and the Due Process Clause of the United States Constitution.

27. Defendant Sun is a California resident residing in San Marino, California, located in the County of Los Angeles.

28. Defendants VSGL, Metainfinity, Metanova, San Yi US, Hazens Rosemead, LLC, and BHG are California entities with principal places of business in the County of Los Angeles.

29. The causes of action alleged herein arise out of and relate to Defendants’ conduct within the State of California and Defendants’ interests in various properties located within the State of California.

30. Accordingly, assertion of personal jurisdiction against each of the Defendants is reasonable and fair.

31. The Court has subject matter jurisdiction over this dispute because Plaintiff seeks damages in excess of $35,000.

32. Venue is proper in this Court because each Defendant does business, resides, or has its principal place of business in this County.

## FACTUAL BACKGROUND

### A. The Loan Agreements and Guarantees

33. Non-party Hazens Group is a Chinese real-estate development group company with its principal place of business in Shenzhen City, Guangdong Province, People's Republic of China. Yuan is the Chairman and ultimate beneficial controlling shareholder of Hazens Group. Yuan caused Hazens Group to open a number of subsidiaries in the State of California which holds substantial property interests in three luxury hotels and an office building in the State of California.

34. Non-party Hazens Xinnan is a Chinese company with its principal place of business in Shenzhen City, Guangdong Province, People's Republic of China. Yuan is the Chairman and ultimate beneficial controlling shareholder of Hazens Xinnan. Hazens Xinnan is a subsidiary of Hazens Group.

35. During the period in or about 2020 to 2024, in regard to the urban renewal unit project for the Xinnan Elementary School Area, Pinghu Street, Longgang District, Shenzhen City (the "Project"), Hazens Xinnan entered into three Project Financing Loan Agreements with CIB on January 16, 2020, February 25, 2022, and October 29, 2024. *See* Exhibits 1 at p. 39[2], Exhibit 2 at p. 38, and Exhibit 3 at p. 42. The Loan Agreements provide for staged project development financing.

#### a. First Loan Agreement and Guarantees

36. On January 16, 2020, Hazens Xinnan entered into the first Project Financing Loan Agreement with CIB for demolition financing ("First Loan Agreement"). *See* Exhibit 1 at p. 39. Pursuant to the First Loan Agreement, Hazens Xinnan agreed to repay the principal amount of CNY 900,000,000, equivalent to USD 129,719,430.00, according to the repayment schedule set forth in Article 8, *see* Exhibit 1 at p. 15-16[3], with interest at the rate calculated pursuant to the calculation methods as specified in Article 5, *see* Exhibit 1 at p. 7-9. The maturity date of the loan is February 20, 2024, pursuant to Article 4 of the First Loan Agreement. *See* Exhibit 1 at p. 5.

---

[2] All page numbers of exhibits cited herein refer to the page numbers in the English translation of the exhibits.

[3] Pursuant to Article 8 of the First Loan agreement, Hazens Xinnan is required to repay RMB 10,000 each on August 21, 2020, February 21, 2021, August 21, 2021, February 21, 2022, August 21, 2022, February 21, 2023, August 21, 2023, and RMB 699,930,000 on February 20, 2024. *See* Exhibit 1 at p. 15.

37. Following the execution of the First Loan Agreement and based upon applications submitted by Hazens Xinnan in accordance with Article 6 of the First Loan Agreement, which sets forth the disbursement conditions, CIB disbursed CNY 899,621,718.25, equivalent to USD 129,664,907.23, under the First Loan Agreement to Hazens Xinnan. *See* Exhibit 1 at p. 9-13.

38. In connection with the First Loan, Yuan and Rao provided guarantees for the First Loan by entering into separate Guarantee Agreements with CIB (respectively, "Yuan First Loan Guarantee" and "Rao First Loan Guarantee"). *See* Exhibit 4 at p. 18, Exhibit 5 at p. 18. Pursuant to Article 4 of the Yuan First Loan Guarantee and the Rao First Loan Guarantee, Yuan and Rao respectively agreed to provide joint and several liability guarantees for all obligations of Hazens Xinnan under the First Loan Agreement. *See* Exhibit 4 at p. 4-5, Exhibit 5 at p. 4-5.

39. Yuan and Rao, as each other's spouses, executed "Special Undertaking by Guarantor's Spouse" in each other's respective Guarantees regarding the First Loan Agreement, whereby each spouse agreed to provide joint and several liability guarantees using marital community property for all obligations of Hazens Xinnan under the First Loan Agreement. *See* Exhibit 4 at p. 18, Exhibit 5 at p. 18.

40. In addition, in connection with the Loan Extension Agreement for the First Loan Agreement, on February 23, 2025, Yuan and Rao, in their capacity as each other's spouses, executed additional commitments in a Supplemental Agreement with CIB whereby each spouse agreed to provide joint and several liability guarantees using marital community property for all obligations of Hazens Xinnan under the First Loan Agreement. *See* Exhibit 6.

41. Yuan and Rao had already divorced prior to February 23, 2024, when they executed the Supplemental Agreement. By representing themselves as spouses and executing spousal commitments after their divorce, Yuan and Rao deliberately misled and defrauded CIB regarding their marital status and the legal effect of their commitments. The signature purporting to be that of Rao on the February 23, 2024 Supplemental Agreement is not authentic and may have been executed by Yuan.

**b. Second Loan Agreement and Guarantees**

42. On February 25, 2022, Hazens Xinnan entered into the second Project Financing Loan Agreement with CIB for secondary development financing ("Second Loan Agreement"). *See* Exhibit 2 at p. 38. Pursuant to the Second Loan Agreement, Hazens Xinnan agreed to repay the principal amount of CNY 1 billion, equivalent to USD 144,132,700.00, according to the repayment schedule set forth in Article 8, *see* Exhibit 2 at p. 16[4], with interest at the rate calculated in accordance with the calculation methods as specified in Article 5, *see* Exhibit 2 at p. 8-11. The maturity date of the loan is April 6, 2025, pursuant to Article 4 of the Second Loan Agreement. *See* Exhibit 2 at p. 7.

43. Following the execution of the Second Loan Agreement and based upon applications submitted by Hazens Xinnan in accordance with Article 6 of the Second Loan Agreement, which sets forth the disbursement conditions, CIB disbursed 786,548,566.60, equivalent to USD 113,367,368.59, under the Second Loan Agreement to Hazens Xinnan. *See* Exhibit 2 at p. 11-15.

44. In connection with the Second Loan Agreement, Yuan provided a guarantee by entering into a Guarantee Agreement with CIB ("Yuan Second Loan Guarantee"). Pursuant to Article 4 of the Yuan Second Loan Guarantee, Yuan agreed to provide joint and several liability guarantees for all obligations of Hazens Xinnan under the Second Loan Agreement. *See* Exhibit 7 at p. 4-5.

**c. Third Loan Agreement and Guarantees**

45. On October 29, 2024, Hazens Xinnan entered into the third Project Financing Loan Agreement with CIB for delivery guarantee financing ("Third Loan Agreement"). *See* Exhibit 3 at p. 42. Pursuant to the Third Loan Agreement, Hazens Xinnan agreed to repay the principal amount of CNY 510 million, equivalent to USD 73,507,677.00, according to the repayment schedule set forth in Article 8, *see* Exhibit 3 at p. 18-19[5], with interest calculated pursuant to the calculation

[4] Pursuant to Article 8 of the Second Loan Agreement, after disbursement, Hazens Xinnan shall repay RMB 10,000 of loan principal every six months, with the remaining balance to be paid in full in a lump sum at maturity. *See* Exhibit 2 at p. 16.

[5] Pursuant to Article 8 of the Third Loan Agreement, after disbursement, Hazens Xinnan shall repay RMB 10,000 of loan principal every six months, with the remaining balance to be paid in full in a lump sum at maturity. *See* Exhibit 3 at p. 18-19.

methods as specified in Article 5, *see* Exhibit 3 at p. 9-12. The maturity date of the loan is October 31, 2027, pursuant to Article 4 of the Third Loan Agreement. *See* Exhibit 3 at p. 8.

46. Following the execution of the Third Loan Agreement and based upon applications submitted by Hazens Xinnan in accordance with Article 6 of the Third Loan Agreement, which sets forth the disbursement conditions, CIB disbursed CNY 249,378,023.37, equivalent to USD 35,943,527.83, under the Third Loan agreement to Hazens Xinnan. *See* Exhibit 3 at p. 12-15.

47. In connection with the Third Loan Agreement, Yuan provided a guarantee by entering into a Guarantee Agreement with CIB ("Yuan Third Loan Guarantee"). Pursuant to Article 4 of the Yuan Third Loan Guarantee, Yuan agreed to provide joint and several liability guarantees for all obligations of Hazens Xinnan under the Third Loan Agreement. *See* Exhibit 11 at p. 4-5.

48. Prior to executing the guarantee for the Third Loan Agreement, Yuan represented to CIB that Yuan had divorced Rao and provided documentation consisting of a Divorce Agreement signed on September 8, 2023, *see* Exhibit 8, and a Divorce Certificate registered on September 12, 2023. *See* Exhibit 9.

49. In addition, on October 28, 2024, one day prior to the execution of the Third Loan Agreement, Yuan provided CIB with a "Marital Status Declaration" pursuant to which Yuan declared, "I, <u>Yuan Fu'er</u> . . . am currently <u>divorced and have not remarried</u>. If this information is untrue, I voluntarily bear all legal liabilities arising therefrom." *See* Exhibit 10.

50. Yuan and Rao entered into the Guarantees intending to induce CIB to grant the Loans and enter into the Loan Agreements with Hazens Xinnan. CIB relied upon the creditworthiness and financial capacity of Yuan and Rao, and their Guarantees secured by individual property and marital community property, in making its decision to extend credit under the Loan Agreements. The Guarantees are essential components of the credit facility and constitute material consideration for CIB's agreement to disburse the loan proceeds.

51. The cumulative total amount of principal loan funds disbursed by CIB under the three Loan Agreements is approximately CNY 1,935,548,308.22, equivalent to USD 278,975,803.64.

**B. <u>Hazens Xinnan Misappropriated Loan Funds and Defaulted on the Loans</u>**

52. During the loan application process and subsequent performance of the Loan Agreements, Hazens Xinnan misappropriated loan funds and violated fund supervision terms through "reverse lending" schemes and fraudulent property sale transactions. Thereafter, Hazens Xinnan defaulted on the loans.

**a. Hazens Xinnan's Unlawful Use of Loan Funds**

53. Loan funds totaling CNY 811,013,950.57, equivalent to USD 116,893,630.43, disbursed by CIB to Hazens Xinnan were unlawfully used, including through Hazens Xinnan's diversion of the funds for unauthorized and undisclosed uses in violation of Article 10.2(2)(c) of each Loan Agreement. *See* Exhibit 1 at p. 20, Exhibit 2 at p. 20, Exhibit 3 at p. 23.

54. Of the those funds referenced in paragraph 53, CNY 412,000,000, equivalent to USD 59,382,672.40, was unlawfully used to repay obligations to other entities; CNY 398,200,000, equivalent to USD 57,393,641.14, was unlawfully transferred to Hazens Group; and the remaining funds were unlawfully used as working capital in Hazens Xinnan's accounts, all in violation of the fund use restrictions set forth in Section 10.2(2)(c) of each of the Loan Agreements. *See* Exhibit 1 at p. 20, Exhibit 2 at p. 20, Exhibit 3 at p. 23.

55. Hazens Xinnan orchestrated a series of fraudulent property sale transactions during the period from November 2022 through April 2024, misappropriating the units of the Project to benefit other projects within the Hazens Group. Hazens Xinnan purportedly sold 121 residential units from the Project to third parties and executed pre-sale contracts for such units, but in fact, these pre-sale transactions were fraudulent rather than bona fide sales transactions, and the purported purchasers of the units were strawmen that did not make any payments. Of these units, 51 were used to offset unpaid debts of other project companies within Hazens Group, and 70 were provided as guarantees securing loans to Hazens Group. The aggregate registered value of the 121 residential units is approximately CNY 784,398,093.84, equivalent to USD 113,057,415.14.

56. In total, Hazens Xinnan and Hazens Group misappropriated loan funds of the Project and supervised funds totaling CNY 1,595,412,044.41, equivalent to USD 229,951,045.57.

**b. Hazens Xinnan Defaults**

57. As a result of the aforementioned unlawful and fraudulent conduct committed by Hazens Xinnan, it defaulted on all three Loan Agreements.

58. As of the filing date of this Complaint, Hazens Xinnan has repaid only CNY 300,130,000, equivalent to USD 43,258,547.25, of the total loan principal, in violation of the repayment obligations set forth in Article 8 of each respective Loan Agreement. *See* Exhibit 1 at p. 15-17, Exhibit 2 at p. 16-17, Exhibit 3 at p. 18-20.

59. The remaining overdue loan principal under all three agreements totals approximately CNY 1,635,418,308.22, equivalent to USD 235,717,256.39.

60. Article 12 and 14.2 of each Loan Agreement require that when Hazens Xinnan fails to repay the loans pursuant to the repayment schedules or misappropriates the loaned funds in violation of the Loan Agreements, the entire unpaid principal balance, together with accrued interest and fees, becomes immediately due and payable. *See* Exhibit 1 at p. 27-31, Exhibit 2 at p. 27-30, Exhibit 3 at p. 31-35. Pursuant to Article 14.2(6) of each Loan Agreement, CIB has the right to require Hazens Xinnan to pay overdue penalty interest if the loan becomes overdue, to require the borrower to pay misappropriation penalty interest if Hazens Xinnan misappropriates the loan funds, and to require Hazens Xinnan to pay compound interest on unpaid interest (including interest before and after loan maturity, misappropriation penalty interest, and overdue penalty interest). *See* Exhibit 1 at p. 30, Exhibit 2 at p. 29-30, Exhibit 3 at p. 34.

61. Pursuant to the Guarantees, Yuan and Rao (with respect to the First Loan) and Yuan individually (with respect to the Second and Third Loans) are jointly and severally liable for the foregoing obligations under the respective Loan Agreements. *See* Exhibit 4 at p. 4-5, Exhibit 5 at p. 4-5, Exhibit 7 at p. 4-5.

62. Accordingly, Plaintiff CIB is a creditor of Yuan with valid claims against him, as those terms are defined by Cal. Civ. Code § 3439.01.

**c. Related Arbitration Proceedings**

63. In view of the aforementioned circumstances, CIB commenced two separate arbitration proceedings at the Shenzhen Court of International Arbitration against the principal debtor, Hazens Xinnan, and the guarantors, including Yuan and Rao, with respect to the First Loan

Agreement and Second Loan Agreement. The arbitration proceedings were initiated pursuant to Article 19.2 of the First Loan Agreement and Second Loan Agreement, Section 16.2 of the Yuan First Loan Guarantee and the Rao First Loan Guarantee, and Article 15.2 of the Yuan Second Loan Guarantee. *See* Exhibit 1 at p. 33, Exhibit 2 at p. 32-33, Exhibit 4 at p. 15, Exhibit 5 at p. 15, Exhibit 7 at p. 16.

64. The Shenzhen Court of International Arbitration accepted both arbitration cases on March 5, 2025.

65. The Shenzhen Court of International Arbitration has rendered arbitral awards in both cases in favor of CIB, finding on September 30, 2025, that Yuan and Rao are liable to CIB under the First Loan Agreement, the Yuan First Loan Guarantee, and the Rao First Loan Guarantee, and finding on September 29, 2025, that Yuan is liable to CIB under the Second Loan Agreement and the Yuan Second Loan Guarantee. The amounts granted by the Awards equate to at least CNY 1,452,058,988.8 as of December 26, 2024, which is equivalent to USD 209,289,182.62.

**C. <u>Yuan's Marriages to Rao and Sun</u>**

66. Non-Party Rao is a Canadian resident. Yuan married Rao on or about August 10, 1987, and the two divorced on or about September 12, 2023.

67. During the same period of time that Yuan was married to Rao, Yuan was also married to Sun in California. Yuan and Sun were in a marital relationship and held themselves out as husband and wife during at least the period October 1, 2007 to June 12, 2024.

68. Yuan deliberately concealed this marital relationship from CIB throughout the loan application process and performance of the Loan Agreements.

69. Yuan's marriage to Sun is evidenced by multiple real property title documents from 2007 to 2024, in which Yuan signed as Sun's husband on quitclaim deeds and other transfer documents, waived his spousal rights to various properties in order to facilitate fraudulent transfers of interests in real property so that such properties would be titled solely in Sun's name.

70. Yuan and Sun actively facilitated and participated in a conspiracy whereby they agreed to and implemented a multi-faceted scheme so that Yuan would fraudulently transfer substantial assets to Sun.

71. Yuan entered into this second marriage as part of a premeditated scheme to facilitate the fraudulent transfer of assets to Sun. The marriage was necessary to further their conspiracy, as it allowed Yuan to place substantial assets under Sun's nominal control while maintaining actual beneficial ownership and control, thereby attempting to shield such assets from enforcement by CIB and other creditors.

**D. <u>Yuan Strategically Divorced Rao and Sun to Shield Fraudulently Transferred Assets</u>**

72. At or about the time Yuan entered into the Loan Agreements and Guarantees, and in an effort to shield his assets that he had fraudulently transferred to Rao and Sun, Yuan strategically divorced both of his wives to create additional legal barriers to creditor recovery.

73. Yuan divorced Rao on or about September 12, 2023, as evidenced by the divorce certificate and Divorce Agreement provided to CIB. Yuan subsequently divorced Sun in 2024. These divorces were timed to coincide with Yuan's purported financial difficulties and imminent liability under the Loan Agreements and Guarantees, and were intended to convert what was previously marital community property into separate property of the former spouses, in an effort to create obstacles for CIB and other creditors seeking to recover assets that had been fraudulently transferred during the respective marriages.

**E. <u>Yuan Fraudulently Transferred Real Property</u>**

74. Documents collected by Plaintiff identify several fraudulent transfers of real property. These real properties were transferred from Yuan to Sun for no consideration, to deceive and harm CIB and other creditors.

75. On June 12, 2024, Yuan transferred his interest in real property located at 8780 Depot Road #207 and #308, Lynden, WA 98264 ("Lynden Property") through a quitclaim deed to Sun for no consideration while CIB was a creditor with valid claims. This transfer of interest completely divested Yuan of any interest he had held in the Lynden Property.

76. On November 28, 2023, Yuan transferred his interest in real property located at 2880 Josephine Drive, Henderson, NV 89044 ("Henderson Property") through a quitclaim deed to Rao for no consideration while CIB was a legitimate creditor with valid claims. This transfer of interest completely divested Yuan of any interest he had held in the Henderson Property. Yuan signed the

quitclaim deed transferring the Henderson Property in the capacity of a spouse, but Yuan and Rao's Divorce Certificate indicates that the divorce had been finalized on September 12, 2023, more than two months before the Henderson Property transfer. Rao sold the Henderson Property on November 30, 2023, two days after Yuan made the transfer through the quitclaim deed.

77. On November 26, 2013, Yuan transferred his interest in real property located at 879 Michigan Boulevard #L, Pasadena, CA 91107 ("Pasadena Property") through an interspousal transfer grant deed to Sun for no consideration. This transfer of interest completely divested Yuan of any interest he had held in the Pasadena Property.

78. On November 12, 2013, Yuan transferred his interest in real property located at 980 Winston Avenue, San Marino, CA 91108 ("San Marino Property") through an interspousal transfer grant deed to Sun for no consideration. This transfer of interest completely divested Yuan of any interest he had held in the San Marino Property. The San Marino Property was then transferred on May 10, 2018, by Sun to The Sunshine Trust, which is a revocable trust, where Sun is the beneficiary. Yuan and Sun are currently residing at the San Marino Property.

79. On October 2, 2007, Yuan transferred his interest in real property located at 4222 92nd Avenue SE, Mercer Island, WA 98040 ("Mercer Island Property") through a quitclaim deed to Sun for no consideration. This transfer of interest completely divested Yuan of any interest he had held in the Mercer Island Property. Yuan had just purchased the Mercer Island Property on October 1, 2007, at a purchase price of $1,400,000 USD. Sun later sold the Mercer Island Property on September 19, 2024.

**F. <u>Yuan Fraudulently Transferred Funds to Sun for Purchase of Real Property</u>**

80. In addition to the fraudulent transfers of the real property identified herein, Yuan fraudulently transferred substantial amounts to Sun with the intent to hinder, delay, or defraud CIB, while CIB has been a creditor of Yuan.

81. Sun received the fraudulently transferred funds from Yuan and deposited those funds into Sun's personal bank accounts.

**a. Sun Purchased Real Property Using the Fraudulently Transferred Funds**

82. Sun thereafter utilized the fraudulently transferred funds received from Yuan to acquire real property, including but not limited to the following properties:

83. On October 21, 2024, Sun purchased the real property located at 511 South El Molino Avenue #17, Pasadena, CA 91101.

84. On January 11, 2024, Sun purchased the real property located at 8548 E. Fairview Avenue, San Gabriel, CA 91775.

85. On January 31, 2023, Sun purchased the real property located at 1458 Hampton Road, San Marino, CA 91108.

86. On March 16, 2021, Sun purchased the real property located at 250 South De Lacey Ave #303, Pasadena, CA 91105.

**b. Sun Caused VSGL to Purchase Real Property Using the Fraudulently Transferred Funds**

87. Sun also transferred a portion of the fraudulently obtained funds from her personal accounts to VSGL, a limited liability company in which Sun serves as manager and CEO and was the organizer at the time of incorporation.

88. VSGL served as a critical member of the fraudulent scheme and conspiracy by acting as a conduit for Yuan's fraudulent transfers of monetary funds to Sun, and by using such funds to acquire additional real estate assets that would be more difficult for creditors to identify and reach.

89. Sun thereafter caused VSGL to utilize the fraudulently transferred funds received from Sun to acquire real property, including but not limited to the following properties:

90. On May 31, 2024, Sun caused VSGL to purchase the real property located at 412 Middlebury Court, Claremont, CA 91711.

91. On May 9, 2024, Sun caused VSGL to purchase the real property located at 529 Richbrook Drive, Claremont, CA 91711.

92. On November 28, 2017, Sun caused VSGL to purchase the real property located at Parcels 5369-018-020 and 5369-018-002, San Gabriel, CA 91776.

**G. Defendants Conspired and Yuan Fraudulently Transferred His Interests in Entities in California to Sun**

93. Yuan is the ultimate beneficial controlling shareholder of multiple entities, including but not limited to Metainfinity, Metanova, San Yi US, and Hazens Rosemead. These entities own substantial real estate assets in California, including three hotels located in Los Angeles County: the E-Central Downtown Los Angeles Hotel (f/k/a the Luxe City Center Hotel, "E-Central Hotel"), Sheraton Gateway Los Angeles Hotel ("Sheraton Gateway Hotel"), and Sheraton Los Angeles San Gabriel ("Sheraton San Gabriel Hotel"), and one office building located at 135 E. Live Oak Avenue, Arcadia, CA 91006. According to assessments by the Los Angeles County Assessor's Office, the 2025 assessed values of the three hotels are $121.5 million, $113 million, and $108 million respectively, for a total assessed value of $342.5 million.

94. The beneficial ownership interests in the hotel assets owned by Metainfinity, Metanova, and San Yi US have been divested and transferred to Yuan's individual ownership. These hotel assets no longer appear in the corporate filings, financial statements, or public disclosures of Hazens Group or other related entities within the Hazens enterprise system.

95. Defendants Sun, VSGL, Metainfinity, Metanova, San Yi US, Hazens Rosemead, and BHG engaged in a coordinated conspiracy with Yuan intended to hinder, delay, and defraud CIB and other creditors through the systematic transfer of Yuan's assets beyond the reach of legitimate creditor claims. This conspiracy concerns the coordinated participation of multiple Defendants who agreed to and actively facilitated the fraudulent transfer scheme alleged herein.

96. Metainfinity, Metanova, San Yi US, Hazens Rosemead, and BHG actively facilitated and participated in the conspiracy by coordinating with Yuan and Sun to effectuate the fraudulent transfer of Yuan's beneficial ownership interests in the entities, including without limitation Yuan's interests in the hotel and office building assets, from Yuan to Sun and other nominees. These Defendants allowed Yuan and Sun to rotate through various executive positions within their organizations, permitted the use of shared addresses and management personnel to obscure true ownership and control, and acquiesced in the systematic transfer of interest in assets from Yuan's direct and/or indirect ownership to Sun's nominal control.



- 18 -

97. The conspiracy is further evidenced by the timing of the transfers in relation to the execution and performance of the Loan Agreements and Guarantees and their ultimate defaults, the use of common personnel and addresses across all Defendant entities, the systematic rotation of official titles between Yuan and Sun, and the maintenance of operational control by Yuan's known associates even after the transfers to Sun. Each Defendant knew or should have known that the transfers were designed to hinder, delay, or defraud creditors, yet each actively participated in or facilitated the scheme for their mutual benefit.

98. The conspiracy has placed valuable assets worth hundreds of millions of dollars beyond the apparent reach of CIB and other creditors, while maintaining Yuan's beneficial enjoyment of those assets.

**a. Yuan is the Ultimate Beneficial Owner and Controlling Shareholder of the Entities**

99. Yuan's identity as the ultimate beneficial controlling shareholder of each of the Defendant entities is established through multiple sources.

100. First, a Non-Prosecution Agreement ("NPA") entered into between Jia Yuan USA Co., Inc. (later renamed Metainfinity) and the United States Attorney's Office for the Central District of California on October 5, 2020, including its main text and attachments, bears Yuan's signature in his capacity as Chairman on behalf of Jia Yuan USA Co., Inc.

101. According to the NPA and the accompanying Statement of Facts, Yuan is the Chairman of Hazens Group. Yuan became interested in expanding business operations to the United States beginning in 2010 and ultimately caused Hazens Group to establish four "subsidiaries" in the United States, namely Metainfinity, Metanova, San Yi US, and Hazens Rosemead, for real estate acquisition, operation, and redevelopment purposes.

102. Second, on March 5, 2025, non-party Legend Strategy International Holdings Group Company Limited ("Legend"), a Cayman Islands company under Yuan's actual control, issued a rights offering prospectus. According to the description in the prospectus, the document was registered with the Hong Kong Companies Registry. The rights offering prospectus identifies Yuan as the ultimate beneficial controlling shareholder of Hazens Group and Hazens Holdings Group

(Shenzhen) Co., Ltd. ("Hazens Holdings"), and states that Hazens Group operates and manages several hotels in the United States through subsidiaries.

103. Thus, Yuan is the actual controlling shareholder and ultimate beneficial owner of Hazens Group, and in turn is the actual controlling shareholder and ultimate beneficial owner of the subsidiaries, including but not limited to Metainfinity, Metanova, San Yi US, and Hazens Rosemead.

***i. Yuan's Ownership Interest in and Actual Control of Metainfinity***

104. The following documents further establish that Metainfinity (formerly known as Jia Yuan USA Co., Inc.) is actually owned and controlled by Yuan:

105. The filing documents for the E-Central Hotel show that Yuan's son, Ryan Yuan a/k/a Yuan Rao, as the authorized agent of Jia Yuan USA Co., Inc., executed a series of documents for the acquisition of the E-Central Hotel before a notary public on July 30, 2014, including an Assignment and Assumption of Ground Lease.

106. In a memorandum issued by the Board of Commissioners of the Los Angeles Community Redevelopment Agency in 2017, Metainfinity was identified as a project company of Shenzhen Hazens Real Estate Group Co., Ltd.

107. Between in or about February and May 2018, Yuan, acting in the capacity of manager and CEO representative, executed agreements on behalf of Jia Yuan USA Co., Inc. as borrower with CITIC Bank (International), using the E-Central Hotel as collateral and signing a deed of trust valued at $190 million. In these agreements, Sun was listed as the communication contact person for Jia Yuan USA Co., Inc.

108. An agreement signed by Yuan on May 23, 2018, indicates that Jia Yuan USA Co., Inc. is a wholly owned subsidiary of Jia Yuan Holdings Company Limited ("JYHCL"). According to JYHCL's corporate filing records in the British Virgin Islands and Hong Kong, the company was established in the BVI and registered in Hong Kong, with two directors: Anru Yuan (Yuan's elder brother) and Yuepeng Ji.

109. Yuepeng Ji's registered correspondence address is listed as an office located in the Hezheng Land Building in Shenzhen (13A, Hezheng Land Building, No. 3022 Qiaoxiang Road,

Xiang'an Community Xiangmihu Sub-District, Futian District, Shenzhen, China). Upon investigation, multiple Hazens-affiliated companies, including Hazens Group, Hazens Holdings, and Shenzhen Jiayuan Group Co., Ltd., maintain addresses within the same building.

110. On June 25, 2019, Yuan, acting in the capacity of CEO on behalf of Jia Yuan USA Co., Inc., executed another deed of trust for a revolving line of credit using the E-Central Hotel as collateral, with East West Bank ("EWB") as the lender.

***ii. Yuan's Ownership Interest in and Actual Control of Metanova***

111. In connection with Metanova (formerly known as Hazens Investment, LLC), the following documents further establish Yuan's ownership and control:

112. A hotel transfer grant deed notarized on November 15, 2013, identifies Yuan on the first page as the tax document recipient for Hazens Investment, LLC.

113. On June 10, 2022, Sun, acting as manager on behalf of Hazens Investment, LLC, executed a $55 million deed of trust with EWB, using the Sheraton Gateway Hotel as collateral.

114. On October 31, 2013, Yuan, acting as manager on behalf of Hazens Investment, LLC, executed a $55 million deed of trust with Wing Lung Bank ("WLB") as the borrowing party, using the Sheraton Gateway Hotel as collateral.

115. On May 23, 2016, Yuan, acting as manager, executed another deed of trust with WLB for a $20 million revolving line of credit on behalf of Hazens Investment, LLC.

116. On November 16, 2018, Yuan, again acting as manager, executed an amendment agreement with WLB on behalf of Hazens Investment, LLC to extend and modify the terms of the aforementioned 2013 loan.

117. The law firm Jeffer Mangels Butler & Mitchell, which represented Hazens Investment, LLC in the acquisition of the Sheraton Gateway Hotel, published an article on its website in 2014 stating that Hazens Investment, LLC was a subsidiary of "Shenzhen Hazens Real Estate Group Co. Ltd.," one of China's top 100 construction companies.

***iii. Yuan's Ownership Interest and Actual Control of San Yi US***

118. Regarding San Yi US (formerly known as Jia Jia US Investment Company, Inc.), the following documents establish Yuan's ownership and control:

119. A hotel transfer grant deed notarized on March 23, 2015, and a "Correction Grant Deed" notarized on April 6, 2015, both identify Yuan on the first page as the tax document recipient for Jia Jia USA Investment Company, Inc.

120. On June 5, 2015, Sun executed a grant deed on behalf of the then-named Jia Jia US Investment Company, Inc., "transferring" the Sheraton San Gabriel Hotel to San Yi US (the renamed Jia Jia US Investment Company, Inc.). The first page of the deed identifies Yuan as the tax document recipient for San Yi US.

121. On July 11, 2022, and June 13, 2024, Teddy Yang (who on information and belief is a core member of Yuan's operational team in the United States) executed deeds of trust on behalf of San Yi US on two separate occasions.

***iv. Yuan's Ownership Interest and Actual Control of Hazens Rosemead***

122. Regarding Hazens Rosemead, the following documents and facts establish Yuan's ownership and control.

123. Hazens Rosemead owns the office building located at 135 E. Live Oak Avenue, Arcadia, CA 91006. This office building serves as the registered address for Hazens Rosemead, Metainfinity, Metanova, San Yi US, and other Hazens-affiliated entities and is the central hub of the California business operations of the Hazens enterprise which is under Yuan's control.

124. Sun serves as a manager of Hazens Rosemead according to the company's April 10, 2024 Statement of Information.

125. Corporate filings further demonstrate that Hazens Rosemead is managed by the same network of individuals who control Yuan's other California entities.

126. Monica Vu, who served as both a manager and agent for service of process for Hazens Rosemead, is identified in the NPA as the General Counsel of Hazens Group, directly linking Hazens Rosemead to Yuan's broader corporate empire.

127. The coordinated control structure is further evidenced by the appointment of Carol Liu as the agent for service of process for Hazens Rosemead. Carol Liu simultaneously serves as the registered agent and manager/member of Metanova and as the registered agent for multiple

other Yuan-controlled entities, including Paramount Regional Center Manager, LLC, Meta Holdings USA, Inc., American Vista San Gabriel Fund, L.L.C., and VSGL.

128. Additionally, Haikun Liu serves as Financial Manager of Hazens Rosemead, while also holding executive positions at a number of entities affiliated with Hazens Group, including without limitation CEO, CFO, and director of Meta Holdings USA, Inc., CFO and registered agent of Yaen Foundation, registered agent of Jia Xin Investment LLC, and director of BHG, which is the entity that manages the E-Central Hotel, Sheraton Gateway Hotel, and Sheraton San Gabriel Hotel.

129. This extensive overlap in management personnel across Yuan's various entities demonstrates the unified control structure and the coordinated nature of the business operations.

***v. Joint Management of the Entities by Yuan and His Affiliates***

130. Yuan and Sun hold key executive positions across Metainfinity, Metanova, San Yi US, and Hazens Rosemead, further demonstrating their coordinated control of these entities.

131. According to Metainfinity's most recent statement of information filed in 2024, Sun serves as Metainfinity's CEO and CFO, while the statement of information filed in 2023 shows that Yuan held the positions of CEO and CFO. In Metainfinity's initial registration documents filed in 2014, Sun was designated as the agent to accept service of process and Yuan held the position of president.

132. According to Metanova's statement of information filed in 2024, Sun serves as Metanova's CEO and manager, while its 2023 statement of information shows Sun held the manager position, with the CEO position listed as vacant.

133. San Yi US's statements of information filed in 2025 and 2024 both list Sun as San Yi US's CEO and CFO, while its 2023 statement of information shows Yuan held the positions of CEO and CFO. In San Yi US's initial registration documents filed in 2015, Sun was designated as the corporate secretary.

134. According to Hazens Rosemead's April 10, 2024 Statement of Information, Sun serves as a manager of Hazens Rosemead.

135. In addition, the E-Central Hotel, Sheraton Gateway Hotel, and Sheraton San Gabriel Hotel are all operated and managed by BHG.

136. Corporate filing records show that BHG's current CFO, Teddy Yang, has served or concurrently serves as CFO, secretary, registered agent, manager, and/or member of multiple Hazens-affiliated US entities, including Hazens Imports Co., Inc., Paramount Regional Center Manager, LLC, Meta Holdings USA, Inc. (formerly "Jia Yuan Holding USA, Inc."), Metainfinity, San Yi US, and VSGL, working alongside Yuan and Sun in these entities.

137. The coordinated management structure is further demonstrated by the fact that Metainfinity, Metanova, San Yi US, Hazens Rosemead, BHG, and multiple other Hazens-affiliated entities all share the same registered address at 135 E. Live Oak Avenue, Arcadia, CA 91006. This office building is owned by Hazens Rosemead, LLC, which is controlled by Yuan through the same network of affiliated individuals, including Sun as manager and the same personnel who manage his other entities.

138. By controlling both the shared office facility and the entities that operate from it, Yuan has created a centralized command structure that allows for coordinated decision-making, shared resources, and unified operations while maintaining the facade of separate corporate entities. The strategic control of this shared business facility provides Yuan with operational oversight of all entities while creating the false appearance that the entities are independent businesses that merely happen to share office space, when in reality they function as integrated components of Yuan's coordinated asset concealment scheme.

139. This pattern of overlapping management, shared personnel, and common registered addresses demonstrates that Yuan maintains actual control and beneficial ownership of these entities despite attempts to obscure such control through the rotation of official titles between Yuan and Sun and the use of multiple corporate entities managed by the same core team of individuals.

**b. Metainfinity, Metanova, San Yi US, Hazens Rosemead, BHG, and VSGL Operate as a Single Business Enterprise**

140. Metainfinity, Metanova, San Yi US, Hazens Rosemead, BHG, and VSGL operate as a single integrated business enterprise rather than as separate corporate entities.

141. All of these entities share a registered address at 135 E. Live Oak Avenue, Arcadia, CA 91006, with the office building located at this address owned by Hazens Rosemead under Yuan's control.

142. The entities share common management personnel, including: Yuan, who has served in executive roles across the Hazens-affiliated entities; Sun, who has served as CEO and CFO of Metainfinity, CEO and manager of Metanova, manager of Hazens Rosemead, and manager of VSGL; Teddy Yang, who has served as CFO and other positions across multiple entities, including Metainfinity, San Yi US, and VSGL; Carol Liu, who has served as registered agent for Metanova, Hazens Rosemead, VSGL, and several other affiliated companies; and Haikun Liu, who has served as Financial Manager of Hazens Rosemead while holding executive positions in several other affiliated companies and serving as director of BHG.

143. The entities share common operational resources, with all hotel properties owned by Metainfinity, Metanova, and San Yi US managed under the unified management of BHG, which is also registered at 135 E. Live Oak Avenue, Arcadia, CA 91006.

144. The entities have integrated their resources and operations to such an extent that they function as mere adjuncts of one another, with Hazens Rosemead providing the operational headquarters, Metainfinity, Metanova, and San Yi US holding the hotel assets, BHG acting as manager, and all entities coordinating together to effectuate transfers of beneficial ownership interests as directed by Yuan.

145. All of these entities exist solely for the benefit of Yuan's personal gain and collectively constitute a single sham business enterprise designed to conceal assets and defraud creditors. An inequitable result would occur if these acts were treated as those of separate corporations alone, because this would allow Yuan to shield assets through the use of corporate forms that serve no independent business purpose other than asset concealment, while maintaining unified beneficial ownership and operational control over the entire enterprise for his personal enrichment and avoidance of legitimate creditors' claims.

**c. Yuan Fraudulently Transferred His Interests in the Entities to Sun**

146. Defendants orchestrated a conspiracy so that Yuan could transfer his interests in entities including but not limited to Metainfinity, Metanova, San Yi US, and Hazens Rosemead to parties including but not limited to Sun, in an effort to further obscure his beneficial ownership and place assets beyond the reach of creditors, including CIB.

147. The facts demonstrating Sun's increasing role in acting for these companies include: (a) Sun's assumption of CEO and CFO roles at Metainfinity in 2024, replacing Yuan who held those positions in 2023; (b) Sun's designation as CEO and manager of Metanova in 2024; (c) Sun's continued service as CEO and CFO of San Yi US in 2024 and 2025; (d) Sun's position as manager of Hazens Rosemead in 2024; (e) Sun's execution of significant financial transactions on behalf of these entities, including the $55 million deed of trust with EWB in 2022 for Metanova; and (f) Sun's consistent designation as the primary contact person and authorized representative for various corporate filings and agreements across multiple entities.

148. Sun does not have ownership interests in Hazens Group, Hazens Holdings, Hazens Xinnan, or other Hazens-affiliated entities in China or related companies. Sun does not appear in any corporate records, employment records, or public filings associated with Hazens Group, Hazens Holdings, Hazens Xinnan, or other Chinese entities within the Hazens enterprise system.

149. The timing of Sun's expanded authority and apparent ownership acquisition coincides with Yuan's increasing financial difficulties and guarantee obligations to CIB, indicating these transfers were made with the intent to hinder, delay, or defraud CIB. Sun lacks any apparent independent business justification or financial capacity to acquire and manage hundreds of millions of dollars in hotel assets, indicating that the transfers to Sun were made for inadequate consideration or as part of a nominee arrangement.

150. Despite the formal transfer of titles and apparent authority to Sun, Yuan continues to exercise actual control over the entities through trusted associates such as Teddy Yang, Monica Vu, Carol Liu, and Haikun Liu, and through the maintained operational structure of the enterprises. This pattern indicates that the transfers to Sun are nominal in nature and designed to create the appearance of Sun's ownership while preserving Yuan's actual beneficial ownership and control.

151. The coordinated nature of these transfers across multiple entities, the lack of consideration flowing from Sun to Yuan, Sun's lack of independent connection to the underlying business enterprise, and the timing relative to Yuan's guarantee obligations to CIB constitute clear badges of fraud evidencing Yuan's intent to place assets beyond the reach of creditors while maintaining beneficial ownership and control through nominee arrangements.

## H. Yuan Is Legally Insolvent Because of the Fraudulent Transfers

152. Yuan had been legally insolvent and apparently unable to repay the loan amounts owed to CIB even before making the fraudulent transfers described herein. Yuan's current total debts, including the Guarantee obligations under the Loan Agreements totaling approximately CNY 1,635,418,308.22, equivalent to USD 235,717,256.39, exceeded Yuan's ability to pay from legitimate sources even prior to the transfers.

153. Despite Yuan's pre-existing insolvency and inability to satisfy creditor obligations, Yuan proceeded to transfer substantial assets including real property, beneficial ownership interests in the hotel and office building assets, and monetary funds to Sun and VSGL without receiving reasonably equivalent value in return. Yuan's financial condition has been further exacerbated as a direct result of the fraudulent transfers described herein, and Yuan lacks sufficient remaining assets to satisfy the Guarantee obligations owed to CIB.

154. Yuan's current total debts, including the Guarantee obligations under the Loan Agreements totaling approximately CNY 1,635,418,308.22, equivalent to USD 235,717,256.39, exceed the fair market value of Yuan's remaining disclosed assets after the fraudulent transfers.

155. Moreover, in November 2025, CIB filed an application for compulsory enforcement of the aforementioned arbitral wards with Guangdong Province Shenzhen Intermediate People's Court after receiving absolutely no payment from Yuan and the other respondents in the arbitration proceedings. After determining that no executable property suitable for disposal was discovered, the Court closed the enforcement proceeding, but ruled that CIB retains the right to demand that the respondent, including Fuer Yuan, continue fulfilling the debt obligations, and that the respondents remain obligated to continue fulfilling the debt obligations to CIB. The Chinese court closed enforcement proceedings of the arbitral awards against, *inter alia*, Yuan, because it concluded there

were no enforceable assets belonging to them remaining in China[6]. This further demonstrates Yuan's and Defendants' coordinated efforts to place assets beyond CIB's reach. Yuan's persistent failure to satisfy the Awards, coupled with the Chinese court's inability to locate any executable property, strongly suggests that Yuan has been rendered insolvent through deliberate asset transfers intended to evade its obligations to CIB.

156. By systematically transferring these valuable assets without receiving reasonably equivalent value in return, Yuan has deliberately rendered himself unable to satisfy legitimate creditor claims, including those of CIB.

## FIRST CLAIM FOR RELIEF

**(Avoidance of Constructive Voidable Transfer Pursuant to CCP §§ 3439.04, 3439.05, 3439.07, 3439.09) (As Against All Defendants)**

157. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

158. This claim is brought pursuant to California Civil Code sections 3439.04, 3439.05, 3439.07, and 3439.09.

159. Yuan made transfers of real property to Sun, transfers of monetary funds to Sun and VSGL, and transfers of beneficial ownership interests in Metainfinity, Metanova, San Yi US, Hazens Rosemead, and BHG to Sun (collectively, the "Transfers").

160. Yuan did not receive reasonably equivalent value in exchange for the Transfers. The consideration received by Yuan for the Transfers, if any, was substantially less than the fair market value of the transferred assets and interests.

161. At the time of the Transfers, or as a result of the Transfers, Yuan: (a) was insolvent or became insolvent; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, in relation to which any property Yuan retained was unreasonably small; and/or (c) intended to incur, or believed that he would incur, debts that would be beyond Yuan's ability to pay as such debts matured.

---

[6] After the court concluded this enforcement proceeding, the judicial assistant located and seized some funds from the personal accounts of Fuer Yuan and Weiqing Rao through the property investigation system. The specific amount of CNY seized was CNY 5,081,346.54, equivalent to USD 732,388.20.

162. Yuan was insolvent at the time of the Transfers because Yuan's current debts were greater than Yuan's assets at fair valuation, including Yuan's Guarantee obligations under the Loan Agreements totaling approximately CNY 1,635,418,308.22 in principal, equivalent to USD 235,717,256.39.

163. The Transfers constitute voidable transfers under California Civil Code sections 3439.04 and 3439.05.

164. Accordingly, CIB is entitled to: (a) avoidance of the Transfers to the extent necessary to satisfy CIB's claims; (b) an attachment or other provisional remedy against the transferred assets; (c) subject to applicable law, an injunction against further disposition of the transferred assets or of other property of Defendants; (d) appointment of a receiver to take charge of the transferred assets or of other property of Defendants; (e) monetary damages in an amount equal to the value of the fraudulently transferred assets; (f) any other relief the circumstances may require; and (g) reasonable attorney's fees and costs.

165. Defendants' aforementioned conduct was intentional, deceitful, and despicable, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's creditor rights, so as to justify an award of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

**(Avoidance of Actual Voidable Transfer Pursuant to CCP §§ 3439.04, 3439.07, 3439.09) (As Against All Defendants)**

166. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

167. This claim is brought pursuant to California Civil Code sections 3439.04, 3439.07, and 3439.09.

168. Yuan made the Transfers described in the First Claim for Relief above.

169. Yuan made the Transfers with actual intent to hinder, delay, or defraud CIB and other creditors.

170. Yuan's actual intent to hinder, delay, or defraud creditors is evidenced by the following badges of fraud: (a) the Transfers were made to insiders, including Sun, who lacks

independent business connections to the underlying enterprises; (b) Yuan retained possession or control of the transferred property after the Transfers; (c) the Transfers were concealed and were never disclosed to CIB; (d) the Transfers were of substantially all of Yuan's assets; (e) Yuan removed or concealed assets; (f) the value of the consideration received by Yuan was not reasonably equivalent to the value of the transferred assets or interests; (g) Yuan was insolvent or became insolvent shortly after the Transfers were made; and (h) the Transfers occurred shortly before or after Yuan incurred substantial debt obligations.

171. The Transfers constitute voidable transfers under California Civil Code section 3439.04.

172. Accordingly, CIB is entitled to: (a) avoidance of the Transfers to the extent necessary to satisfy CIB's claims; (b) an attachment or other provisional remedy against the transferred assets; (c) subject to applicable law, an injunction against further disposition of the transferred assets or of other property of Defendants; (d) appointment of a receiver to take charge of the transferred assets or of other property of Defendants; (e) monetary damages in an amount equal to the value of the fraudulently transferred assets; (f) any other relief the circumstances may require; and (g) reasonable attorney's fees and costs.

173. Defendants' aforementioned conduct was intentional, deceitful, and despicable, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's creditor rights, so as to justify an award of exemplary and punitive damages.

## THIRD CLAIM FOR RELIEF
**(Avoidance of Voidable Transfer Pursuant to Common Law) (As Against All Defendants)**

174. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

175. Yuan made the Transfers described in the First Claim for Relief above.

176. At the time of the Transfers, Yuan was indebted to CIB pursuant to the Guarantees in an amount of at least CNY 1,635,418,308.22, equivalent to USD 235,717,256.39, exceeding the value of Yuan's remaining assets after the Transfers. Yuan was insolvent at the time of the Transfers because Yuan's total debts exceeded the fair saleable value of Yuan's assets, including

Yuan's obligations under the Guarantee Agreements. Yuan did not receive reasonably equivalent value or fair consideration in exchange for the Transfers. The consideration received by Yuan, if any, was substantially disproportionate to the value of the assets and interests transferred. The Transfers have hindered, delayed, and defrauded CIB in the collection of its claims against Yuan, and have rendered Yuan unable to satisfy CIB's claims.

177. Yuan made the Transfers with intent to hinder, delay, or defraud CIB and other present and future creditors. Yuan's fraudulent intent is evidenced by the badges of fraud alleged herein, including but not limited to: (a) the close relationship between Yuan and the transferees; (b) the secrecy surrounding the transfers; (c) Yuan's retention of possession or control over the transferred assets; (d) the inadequacy of consideration received by Yuan for the Transfers; (e) Yuan's insolvency or threatened insolvency; (f) the timing of the transfers in relation to Yuan's financial difficulties; and (g) Yuan's removal and concealment of assets.

178. Alternatively, the Transfers constitute constructive fraud under common law because Yuan made the Transfers without receiving fair consideration while Yuan was insolvent or while Yuan was engaged in business in relation to which any property Yuan retained was unreasonably small, or while Yuan intended to incur debts beyond Yuan's ability to pay.

179. Accordingly, CIB is entitled to: (a) avoidance of the Transfers to the extent necessary to satisfy CIB's claims; (b) an attachment or other provisional remedy against the transferred assets; (c) subject to applicable law, an injunction against further disposition of the transferred assets or of other property of Defendants; (d) appointment of a receiver to take charge of the transferred assets or of other property of Defendants; (e) monetary damages in an amount equal to the value of the fraudulently transferred assets; (f) any other relief the circumstances may require; and (g) reasonable attorney's fees and costs.

180. Defendants' aforementioned conduct was intentional, deceitful, and despicable, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's creditor rights, so as to justify an award of exemplary and punitive damages.

**FOURTH CLAIM FOR RELIEF**
**(Constructive Trust) (As Against All Defendants)**

181. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

182. Defendants have wrongfully obtained legal title to or possession of property and assets which are subjects of the Transfers that rightfully belong to CIB or should be available to satisfy CIB's claims, including but not limited to: (a) the real property transferred to Sun; (b) the monetary funds transferred to Sun and VSGL; (c) the ownership interest in entities including Metainfinity, Metanova, and San Yi US and interest in assets including but not limited to hotel assets owned by Metainfinity, Metanova, and San Yi US; (d) the properties purchased by VSGL with fraudulently transferred funds; and (e) other assets derived from or purchased with fraudulently transferred property.

183. As a creditor with a valid claim against Yuan who fraudulently transferred the property and assets described above, CIB has a right to, and interest in, the property and assets.

184. Defendants hold legal title to such property under circumstances that make it inequitable for them to retain the beneficial interest therein.

185. It would be inequitable and unjust to permit Defendants to retain the benefits of property obtained through fraudulent transfers designed to hinder, delay, or defraud creditors like CIB.

186. Failure to impose a constructive trust on all property and assets conveyed by or obtained as a result of the Transfers will result in Defendants' unjust enrichment, at CIB's expense, and will permit them to profit from their misconduct. It would be unconscionable for Defendants to retain these property and assets.

187. Therefore, CIB requests that the Court order Defendants to hold the property and assets which are subject to the Transfers in a constructive trust for CIB.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**(Civil Conspiracy) (As Against All Defendants)**

188. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

189. Defendants Sun, VSGL, Metainfinity, Metanova, San Yi US, Hazens Rosemead, BHG, and others formed and participated in a conspiracy with the common design and purpose to hinder, delay, and defraud CIB and other creditors of Yuan through systematic fraudulent transfers and asset concealment schemes.

190. Each Defendant agreed to participate in and actively furthered the conspiracy by engaging in coordinated conduct designed to achieve the wrongful objective of placing valuable assets beyond the reach of creditors while maintaining beneficial ownership and control for Yuan's personal benefit.

191. All Defendants conspired and actively facilitated the Transfers as part of a coordinated scheme to hinder, delay, and defraud CIB and other creditors. Yuan and Sun coordinated their actions as undisclosed spouses, while VSGL served as a conduit for fraudulently transferred funds. Metainfinity, Metanova, San Yi US, and Hazens Rosemead participated by allowing the systematic transfer of beneficial ownership interests in the real estate assets from Yuan to Sun and other nominees. BHG participated as a member of the single business enterprise operated by Yuan and his affiliates. Each Defendant knew or should have known that the Transfers were designed to place assets beyond the reach of creditors, yet actively participated in or facilitated the fraudulent scheme, making them jointly and severally liable for the resulting harm to CIB.

192. In furtherance of the conspiracy, Defendants committed numerous wrongful acts, including: (a) fraudulent transfers of real property, monetary funds, and beneficial ownership interests; (b) misrepresentation of marital status and asset ownership; (c) creation and maintenance of nominee arrangements and sham corporate structures; (d) coordination of asset transfers and corporate position rotations; and (e) systematic concealment of beneficial ownership and control relationships.

193. Each Defendant knew of the conspiracy's wrongful purpose and willfully participated by providing substantial assistance and encouragement to achieve the common objective of creditor fraud and asset concealment.

194. As a direct and proximate result of the conspiracy, CIB has been damaged in an amount to be proven at trial, including but not limited to the value of assets wrongfully transferred and placed beyond CIB's reach.

195. Each Defendant is jointly and severally liable for all damages caused by the conspiracy and the wrongful acts committed in furtherance thereof.

**SIXTH CLAIM FOR RELIEF**
**(Aiding and Abetting) (As Against Celia Wen Sun a/k/a Wen Sun a/k/a Celia Sun, Valley SG Landplus, LLC, Metainfinity, Inc., Metanova, LLC, San Yi Us Investment Company, Inc., Hazens Rosemead, LLC, and Burgeon Hotel Group Corp.)**

196. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

197. Yuan committed fraudulent transfers of assets with actual intent to hinder, delay, and defraud creditors, constituting primary wrongful conduct as alleged herein.

198. Defendants Sun, VSGL, Metainfinity, Metanova, San Yi US, Hazens Rosemead, BHG, and others had actual knowledge that Yuan was engaging in fraudulent transfers designed to place assets beyond the reach of creditors, including CIB.

199. Despite such knowledge, each Defendant provided substantial assistance to Yuan's fraudulent transfer scheme by: (a) accepting transferred assets as nominees or transferees; (b) facilitating ownership transfers; and (c) participating in the systematic concealment of Yuan's continuing beneficial ownership and control.

200. All Defendants substantially assisted the Transfers as part of a coordinated scheme to hinder, delay, and defraud CIB and other creditors. Sun coordinated her actions with Yuan as Yuan's undisclosed spouse, while VSGL served as a conduit for fraudulently transferred funds. Metainfinity, Metanova, San Yi US, and Hazens Rosemead substantially assisted the Transfers by allowing the systematic transfer of beneficial ownership interests in hotel and office building assets from Yuan to Sun and other nominees. BHG participated as a member of the single business enterprise operated by Yuan and his affiliates. Each Defendant knew or should have known that the Transfers were designed to place assets beyond the reach of creditors, yet substantially assisted in or

facilitated the fraudulent scheme, making them jointly and severally liable for the resulting harm to CIB.

201. Each Defendant acted with the intent to assist and encourage Yuan's fraudulent transfer activities, knowing that such assistance would help Yuan avoid his creditor obligations and place valuable assets beyond the reach of legitimate claims.

202. Each Defendant's substantial assistance was a factor in enabling Yuan to successfully execute the fraudulent transfer scheme and conceal assets from creditors.

203. As a direct and proximate result of Defendants' aiding and abetting Yuan's fraudulent transfers, CIB has been damaged in an amount to be proven at trial, including the value of all assets fraudulently transferred and the costs incurred in attempting to recover such assets.

204. Each Defendant who aided and abetted Yuan's fraudulent transfer scheme is jointly and severally liable for all damages proximately caused by such wrongful conduct.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment) (As Against Celia Wen Sun a/k/a Wen Sun a/k/a Celia Sun, Valley SG Landplus, LLC, and John Does 1-20)**

205. CIB incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

206. Defendants have been unjustly enriched at the expense of CIB by receiving and retaining property, assets, and benefits through fraudulent transfers from Yuan for which they did not provide adequate consideration.

207. Specifically, Sun has been unjustly enriched by receiving the real property, monetary funds, and beneficial ownership interests in valuable hotel and office building assets without providing adequate consideration to Yuan. VSGL has been unjustly enriched by receiving monetary funds from Sun that were originally fraudulently transferred from Yuan, and by using such funds to acquire real property.

208. It would be inequitable and unjust to permit Defendants to retain such benefits without compensating CIB for the corresponding detriment suffered because Defendants obtained

those benefits through wrongful acts, including fraudulent transfers made with the intent to hinder, delay, and defraud CIB.

209. CIB is entitled to restitution from Defendants in an amount equal to the value of the benefits unjustly retained, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants Celia Wen Sun, Metainfinity, Inc., Metanova, LLC, San Yi US Investment Company, Inc., Valley SG Landplus, LLC, Hazens Rosemead LLC, Burgeon Hotel Group Corporation, and John Does 1-20, as follows:

A. For a judgment declaring that all of the Transfers of property and assets from Yuan to Sun, VSGL, and other Defendants or third parties constitute voidable transfers under California Civil Code of Procedure sections 3439.04 and 3439.05;

B. For avoidance of all such transfers to the extent necessary to satisfy CIB's claims;

C. For monetary damages against all Defendants, jointly and severally, in an amount equal to the value of the fraudulently transferred assets;

D. For restitution from all Defendants in an amount equal to the value of the benefits they unjustly obtained through their fraudulent transfer scheme;

E. For disgorgement of all benefits received by Defendants through their fraudulent transfer scheme;

F. For attachment or other provisional remedies against all assets subject to the Transfers;

G. For appointment of a receiver to take charge of the transferred assets and other property of Defendants and hold such property subject to the resolution of CIB's claims;

H. For an order enjoining the transferees of the proceeds from each of the Transfers identified above from disposing or otherwise further transferring the wrongfully transferred assets;

I. For a temporary restraining order, preliminary injunction, and/or injunction enjoining and restraining the Defendants and their agents, representatives, employees, or attorneys from transferring, selling, conveying, encumbering, assigning, or otherwise disposing of the proceeds of

the Transfers identified above and any benefits and/or proceeds derived therefrom or from making any further claim to the same adverse to Plaintiff, whether by legal action or otherwise;

J. For an order declaring that the Defendants, as transferees of each of the Transfers identified above, are constructive trustees of the voidable transferred assets and benefits obtained, or proceeds derived from the same and requiring the transferees to disgorge and turnover the same to CIB;

K. For an order imposing equitable liens against all property subject to the Transfers as security for satisfaction of CIB's claims;

L. For an order holding that Metainfinity, Metanova, San Yi US, Hazens Rosemead, and BHG form a single business enterprise and an order treating the assets held by each of the entities as available for satisfaction of CIB's claims against each of the other Defendants;

M. For punitive and exemplary damages in an amount determined to be just and necessary to make an example of and punish Defendants' behavior;

N. For an award of attorneys' fees and costs according to proof;

O. For pre-judgment and post-judgment interest on all monetary awards; and

P. For such other and further relief this Court finds just and proper under the circumstances.

Dated: February 6, 2026

Respectfully submitted,
KING & WOOD MALLESONS LLP

By: /s/ *Ge Yan*

Yan Ge (State Bar #236566)
Ellis E. Herington (State Bar #343085)
Yiren Yu (State Bar #341245)
geyan@cn.kwm.com
ellis.herington@us.kwm.com
yiren.yu@us.kwm.com
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025

Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

Attorneys for Plaintiff
INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH