# EXHIBIT 6

**YAEN IRREVOCABLE TRUST 2021**

**January 12, 2021**

DSG Wealth and Trust Law, Inc.
1340 Valley Vista Drive #200
Diamond Bar, CA 91765

# YAEN IRREVOCABLE TRUST 2021

## Article One
## Establishing the Trust

The date of this Irrevocable Trust Agreement is January 12, 2021. The parties to the agreement are Fuer Yuan (the "Grantor"), and Celia Wen Sun a.k.a Wen Sun (the "Trustee").

I intend that this agreement create a valid trust under the laws of California and under the laws of any state in which any trust created under this agreement is administered. The terms of this trust agreement prevail over any provision of California law, except those provisions that are mandatory and may not be waived.

### Section 1.01 Identifying the Trust

The trust may be referred to as "Celia Wen Sun, Trustee of the YAEN Irrevocable Trust 2021 dated January 12, 2021."

For the purpose of transferring property to the trust, or identifying the trust in any beneficiary or pay-on-death designation, any description referring to the trust will be effective if it reasonably identifies the trust. Any description that contains the date of the trust, the name of at least one initial or successor Trustee and an indication that the Trustee is holding the trust property in a fiduciary capacity will be sufficient to reasonably identify the trust.

### Section 1.02 Reliance by Third Parties

From time to time, third parties may require documentation to verify the existence of this agreement, or particular provisions of it, such as the name or names of the Trustee or the powers held by the Trustee. To protect the confidentiality of this agreement, the Trustee may use an affidavit or a certification of trust that identifies the Trustee and sets forth the authority of the Trustee to transact business on behalf of the trust in lieu of providing a copy of this agreement. The affidavit or certification may include pertinent pages from this agreement, such as title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by the Trustee with respect to the representations contained in the affidavit or certification of trust. A third party relying upon an affidavit or certification of trust shall be exonerated from any liability for actions the third party takes or fails to take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with the Trustee shall not be required to inquire into the terms of this agreement or the authority of the Trustee, or to see to the application of funds or other property received by the Trustee. The receipt from the Trustee for any money or property paid, transferred or delivered to the Trustee will be a sufficient discharge to the person or persons paying,

transferring or delivering the money or property from all liability in connection with its application. A written statement by the Trustee is conclusive evidence of the Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by the Trustee asserting the Trustee's authority or seeking to effectuate a transfer of property to or from the trust.

**Section 1.03 An Irrevocable Trust**

This Trust is irrevocable, and I cannot alter, amend, revoke, or terminate it in any way.

**Section 1.04 Transfers to the Trust**

I transfer to the Trustee the property listed in Schedule A, attached to this agreement, to be held on the terms and conditions set forth in this instrument. I retain no right, title or interest in the income or principal of this trust or any other incident of ownership in any trust property.

By execution of this agreement, the Trustee accepts and agrees to hold the trust property described on Schedule A. All property transferred to the trust after the date of this agreement must be acceptable to the Trustee. The Trustee may refuse to accept any property. The Trustee shall hold, administer and dispose of all trust property accepted by the Trustee for the benefit of the beneficiaries in accordance with the terms of this agreement.

**Section 1.05 Statement of My Intent**

I am creating this trust with the intent that assets transferred to the trust be held for the benefit of my trust beneficiaries on the terms and conditions set forth in this agreement. In order to maximize the benefit to my trust beneficiaries, I give the Trustee broad discretion with respect to the management, distribution and investment of assets in my trust. My specific objectives in creating this trust include, but are not limited to:

> Any gift made to the trust be treated as a completed gift for federal estate and gift tax purposes;
>
> The assets of the trust estate be excluded for federal estate tax purposes from my gross estate, my spouse's gross estate, and the gross estates of my trust beneficiaries except to the extent that the grant or exercise of a power of appointment is treated as a general power of appointment; and
>
> The assets in this trust not be subject to the claims of my creditors and any beneficiary's creditors.

All provisions of this agreement are to be construed to accomplish these objectives. Accordingly, no power enumerated herein or accorded to trustees generally pursuant to law, singly or as a whole, shall be construed: (A) To enable us (i) to vote any stock described in IRC section 2036(b) which may at any time be directly or indirectly given to any trust hereunder; (ii) to possess or exercise any power of appointment with respect to any such trust; (iii) to exercise or retain any power described in IRC section 2036(a) or (b) or IRC section 2038; (iv) if either or both of us is the insured under any policy of insurance held by any trust hereunder, to exercise any incident of ownership within the meaning of IRC

section 2042 with respect to that policy held by the trust; (v) to receive any distributions on behalf of a beneficiary (regardless of our relationship to the beneficiary); or (vi) to possess or exercise any rights or discretion granted to a beneficiary hereunder; and

(B) To permit any trust distribution which would have the effect of discharging any legal obligation of ours (including any obligation that we may have at any time relating to the support and/or education of any beneficiary hereunder).

Any trustee or beneficiary has the right at any time to release, renounce or disclaim any right, power or interest that might be construed or deemed to defeat these objectives.

As to any stock described in IRC section 2036(b) that is owned by the trust, the Trust Protector shall appoint an Investment Trustee (who cannot be the Grantor) to have the power to vote such stock, and such power to vote such stock shall supersede any other party's right to vote such stock. The Investment Trustee's authority is limited to voting on behalf of the Trust with respect to any stock described in IRC section 2036(b) which may at any time be directly or indirectly given to the Trust, and shall include no other powers or responsibilities. The Investment Trustee shall serve until the earliest occurrence of the following events: (1) the Investment Trustee's resignation; (2) the Investment Trustee's death; (3) the Investment Trustee's incapacity; or (4) the Trust Protector's removal of such Investment Trustee. Upon the occurrence of any of these events, the voting power shall revert to the then-serving trustee of the Trust, or if such trustee will violate any provision of the Trust, then to another Investment Trustee.

**Section 1.06 Not a Grantor Trust**

I intend that I not be taxed as owner of any portion of this trust for federal income tax purposes and that I not be treated under Subpart E of Part I of Subchapter J of Chapter 1 of the Internal Revenue Code as the owner of any Trust created hereunder. In furtherance of this intent, I shall have the right at any time to release, renounce or disclaim any right, power or interest herein which might be construed or deemed to defeat my intentions. All provisions of this trust agreement are to be construed consistent with this intent, unless this section is specifically stricken by the Trust Protector and the trust agreement is otherwise modified by the Trust Protector to cause me to be taxed as owner of the trust for federal income tax purposes. Unless the Trust Protector affirmatively exercises the Trust Protector's power to transfer a trust hereunder to a foreign jurisdiction, no court, other than a court within the United States, shall exercise primary supervision over the administration of any Trust hereunder and no person, other than a United States person, shall have the authority to control any substantial decision of any Trust hereunder within the meaning of Section 7701(a)(30)(E) of the Internal Revenue Code.

**(a) Transactions for Less than Adequate Consideration**

No one may buy, exchange, or otherwise deal with any trust income or principal for less than full and adequate consideration in money or money's worth.

**(b) No Power to Borrow without Adequate Interest or Security**

Notwithstanding any other provision of this trust that may seem to the contrary, neither I nor any Trustee nor any entity in which I have a substantial interest may borrow from any trust created under this agreement, either directly or indirectly, without adequate interest or security. Any loan made to me must be made as exclusively determined by an Independent Trustee, or as directed by the Trust Protector.

**(c) Specific Administrative Powers Exercisable Only in Fiduciary Capacity**

If any trust created under this agreement includes corporate shares or other securities in which the holdings of the Grantor and the trust are significant from the viewpoint of voting control, only an Independent Trustee, or a Trustee under the express written direction of the Trust Protector, may vote or direct the voting of those corporate shares or other securities. Further, if the trust funds or assets include stocks or securities of entities in which the holdings of the Grantor and the trust are significant from the viewpoint of voting control, only an Independent Trustee, or a Trustee under the express written direction of the Trust Protector—by direction or by veto—may control the investments or reinvestments of the trust.

No one may compel the Trustee to exchange trust property by substituting other property of equivalent value. The Trustee is not required to surrender any trust assets if substitute assets are offered, regardless of the relative value of the assets.

**(d) No Payment of Life Insurance Premiums from Trust Income**

The Trustee may not use the income of this trust to pay the premiums on any life insurance policies insuring my life or my spouse's life. The Trustee may use other assets of the trust to pay such premiums.

## Article Two

## My Beneficiaries

I am married to Celia Wen Sun (aka Wen Sun). Any reference in this agreement to "my spouse" is a reference to Celia Wen Sun.

I have two children with Celia Wen Sun. They are:

Hera Yuan, born on 01/16/2008 and

Eric Yuan, born on 07/10/2010.

I also have another child from a prior relationship. His name is:

Yuan Rao, born on 07/08/1989.

All references in this agreement to "my children" or "my child" are references only to Hera Yuan, Eric Yuan, and any other children between Celia Wen Sun and me. References in this agreement to "my descendants" refer to descendants borne by Celia Wen Sun and me together.

I am not providing for Yuan Rao under this agreement, except as provided to heirs at law in Article 8.

The "lifetime beneficiaries" of the trust are Celia Wen Sun and my children borne together with Celia Wen Sun.

## Article Three

## Trustee Succession Provisions

### Section 3.01 Resignation of a Trustee

A Trustee may resign by giving written notice to me. If I am incapacitated or deceased, a resigning Trustee shall give written notice to the Trust Protector if any is then serving. If, however, no Trust Protector is then serving, a resigning Trustee shall give written notice to the Income Beneficiaries of the trust and to any other then-serving Trustee.

Upon the resignation, the next named successor or successors to the resigning Trustee will serve in the order listed. If no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office shall govern.

### Section 3.02 Trustee Succession

This Section governs the removal and replacement of the Trustees. At all times, any trustee of this trust must be a U.S. resident and any trustee who is no longer a U.S. resident shall be considered to have declined to serve as trustee as of the date he or she is no longer a U.S. resident, but if he or she thereafter reinstates his or her U.S. residency and otherwise fulfills the requirements for serving as trustee, he or she may serve as trustee.

**(a) THIS SECTION INTENTIONALLY LEFT BLANK**

**(b) Appointment of Successor Trustees**

Celia Wen Sun shall serve as the initial sole trustee. Upon Hera Yuan having reached age 26, she shall automatically serve as Co-Trustee with Celia Wen Sun. When Eric Yuan reaches age 26, he shall then also automatically serve as Co-Trustee with Hera Yuan and Celia Wen Sun. If any of them is unable or unwilling to serve, then the other(s) of them shall continue to so serve.

**(c) Trustees of the Separate Trusts**

Celia Wen Sun shall serve as Co-Trustee with her Children in each of their separate trusts until each child has reached age 40, wherein Celia Wen Sun shall then automatically resign as Co-Trustee, with the intent for that child to serve as sole Trustee. For future Descendants after the Children, the Primary Beneficiary of the separate trust, at any time after attaining the age of 26, may appoint himself or herself as a Co-Trustee of his or her separate trust or may serve as sole Trustee of the trust and may name any one or more individual or corporate fiduciaries to serve as current or successor Trustee or Co-Trustee who is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code.

If the interest of a beneficiary would be merged into a life estate or an estate for years because the beneficiary is serving as sole Trustee, the beneficiary must appoint a Co-Trustee to avoid such merger. Similarly, if the interest of a beneficiary becomes, or is likely to become, subject to the claims of any creditor or to legal process as a result of serving as sole Trustee the beneficiary must appoint an Independent Trustee to serve as Co-Trustee.

Notwithstanding the foregoing provisions, however, the Primary Beneficiary of any trust administered as a Supplemental Needs Trust under this agreement may not appoint himself or herself at any time as a Co-Trustee of his or her separate trust and may not serve as sole Trustee of his or her separate trust.

**(d) Removal by Beneficiaries**

If I am incapacitated or following my death, the Primary Beneficiary may remove a Trustee with or without cause.

A Trustee may be removed under this subsection only if, on or before the effective date of removal, the person or persons having the right of removal appoint an individual or a corporate fiduciary that simultaneously commences service as Trustee. The Trustee so appointed may not be related or subordinate to the person or persons having the right of removal within the meaning of Section 672(c) of the Internal Revenue Code.

If the Primary Beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative, other than me, may act on behalf of the beneficiary.

Notwithstanding the foregoing, no beneficiary shall remove Celia Wen Sun without cause as long as she is willing and able to serve as trustee.

**(e) Default of Designation**

If the office of Trustee of a trust created under this agreement is vacant and no designated Trustee is able and willing to act, the Trust Protector designated under the provisions of Section 4.09(e) (if any) may appoint an individual or corporate

fiduciary to serve as the successor Trustee. If the Trust Protector is unable or unwilling to act, the Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code to serve as successor Trustee. In the case of a minor or incapacitated beneficiary, the beneficiary's parent or Legal Representative, other than me, may act on behalf of the beneficiary.

Any beneficiary or the beneficiary's Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy remaining unfilled after a period of 30 days. By making the appointment, the court does not thereby acquire any jurisdiction over the trust, except to the extent necessary for making the appointment.

In the event of a Trustee vacancy due to resignation, however, the foregoing provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

**Section 3.03 Trustee Removal by Trust Protector**

At any time during my life or after my death the Trust Protector designated under the provisions of Section 4.09(e) may remove and appoint any Trustee as provided in Section 4.09(e) of this agreement.

**Section 3.04 Notice of Removal and Appointment**

Notice of removal must be in writing and delivered to the Trustee being removed, along with any other then-serving Trustees. The notice of removal will be effective in accordance with its provisions.

Notice of appointment must also be in writing and delivered to the successor Trustee and any other then-serving Trustees. The appointment will become effective at the time of acceptance by the successor Trustee. A copy of the notice should be attached to this agreement.

**Section 3.05 Appointment of a Co-Trustee**

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. That Co-Trustee will serve only as long as the Trustee who appointed the Co-Trustee (or, if the Co-Trustee was named by more than one Trustee acting together, by the last to serve of those Trustees) serves, and the Co-Trustee will not become a successor Trustee upon the death, resignation, or incapacity of the Trustee who appointed the Co-Trustee, unless so appointed under the terms of this agreement. Although the Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of the Co-Trustee and the appointing Trustee cannot exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time with or without cause.

**Section 3.06 Corporate Fiduciaries**

Any corporate fiduciary serving under this agreement as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Section 672(c) of the Internal Revenue Code.

**Section 3.07 Incapacity of a Trustee**

If any individual Trustee becomes incapacitated, it will not be necessary for the incapacitated Trustee to resign as Trustee. A written declaration of incapacity by the Co-Trustee, if any, or, if none, by the party designated to succeed the incapacitated Trustee will terminate the trusteeship. If the Trustee designated in the written declaration objects, in writing, to termination of the trusteeship within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trustee must be obtained before the trusteeship will be terminated. The Trustee objecting to termination of trusteeship must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity or the trusteeship will be terminated without the physician's written opinion.

The provisions of Section 12.06(g) of this agreement govern the determination of a Trustee's incapacity by a physician and the Trustee's obligations to submit to examination and provide necessary releases.

**Section 3.08 Appointment of Independent Special Trustee**

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, the Trust Protector, or the Trustee if no Trust Protector is then serving, shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee with respect to this property or provision. The appointed Independent Special Trustee must not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). Any Trust Protector then serving may revoke this appointment at any time.

An Independent Special Trustee shall exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by the Trust Protector or a Trustee, as the case may be, in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice to the Trust Protector or Trustee, as the case may be. Notice of resignation will be effective in accordance with the terms of the notice.

**Section 3.09 Rights and Obligations of Successor Trustees**

Each successor Trustee serving under this agreement, whether corporate or individual, will have all of the title, rights, powers and privileges granted to the initial Trustee named under this agreement. In addition, each successor Trustee is subject to all of the restrictions imposed upon, as well as all obligations and duties, both discretionary and ministerial, given to the initial Trustee named under this agreement.

**Section 3.10 Tiebreaker**

If, by reason of their failure to agree, the trustees shall be unable to exercise a power or discretion conferred on them by this instrument, or to take any other appropriate or necessary action, the person designated tiebreaker (hereinafter "tiebreaker") shall have the power to direct the trustees in writing with respect to the manner in which that power or discretion shall be exercised or not exercised. The trustees shall promptly comply with any written direction received from the tiebreaker pursuant to this provision and shall incur no liability to any interested party for following that direction, or for failing to act in the absence of any such direction. During any period in which this trust requires a tiebreaker to act and no tiebreaker is then serving or designated to serve, we confer upon the Trust Protector the power to appoint a tiebreaker.

No tiebreaker will be responsible or liable to anyone for any direction or advice proffered in good faith, and shall be indemnified from the Trust Estate and held harmless from any liability of any nature for such direction/advice. The tiebreaker shall be deemed to have acted in good faith on behalf of the trust if the tiebreaker acted in a manner reasonably believed by the tiebreaker to be in the best interests of the trust and its beneficiaries. Notwithstanding the foregoing, a tiebreaker shall not be indemnified or reimbursed with respect to any expense, loss, damage, or claim incurred by reason of any direction or advice proffered with gross negligence, in bad faith, or with reckless indifference to the interests of the beneficiaries.

The Trust Protector shall be entitled to appoint and remove the tiebreaker at any time, except a tiebreaker specifically identified by name in this trust by a Grantor shall not be removed without cause.

## Article Four

## Trust Protector Provisions

**Section 4.01 Provisions for Trust Protector**

The Trust Protector's purpose is to direct the Trustee in matters concerning the trust, and to assist in achieving my objectives as expressed by the other provisions of my estate plan if needed. Any Trust Protector and any party with the power to appoint and remove trust protectors must be a corporate fiduciary or an individual who is not related or subordinate to me, while I am still living, or to any beneficiary within the meaning of Internal Revenue Code Section 672(c), and must not be an adverse party within the meaning of Internal Revenue Code Section 672(b). Neither I nor my spouse, nor any trust beneficiaries, nor any person who has contributed to the trust may serve as a Trust Protector at any time under this instrument.

**Section 4.02 Designation of Trust Protector**

HAIKUN LIU (hereinafter "HAIKUN") shall have the power to appoint, remove, and replace Trust Protectors (including the power to appoint or reappoint itself as Trust Protector at any time).

In addition, HAIKUN may appoint another party to exercise the power to appoint, remove, and replace a Trust Protector at any time, and such parties shall be a corporate fiduciary or individual of a type described in the first paragraph of this section, and shall have the same powers and be subject to the same restrictions as apply to HAIKUN (including the same power to appoint a party to appoint/remove Trust Protectors, and including the power to appoint themselves as Trust Protectors). Any reference to HAIKUN in this Article Four as the appointer and remover of the Trust Protector shall also refer to any party nominated by HAIKUN to exercise the power to appoint and remove a Trust Protector, and such parties shall also have the power to nominate it's successor who must be a corporate fiduciary or individual of a type described in Section 4.01. If a party resigns as Trust Protector, he or she may nevertheless retain the power to appoint and remove Trust Protectors if he or she otherwise held such power and has not expressly released such power.

During any period in which this trust requires a Trust Protector to act and no Trust Protector is then serving, if the party with the power to appoint and remove trust protectors is unable, unwilling, or otherwise fails to make the appointment after 30 days, any Trustee or beneficiary may petition a court of competent jurisdiction to appoint a Trust Protector.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

For each power and authority granted to a Trust Protector in this instrument, unless the capacity is otherwise specifically stated, the Trust Protector's authority is conferred in a nonfiduciary capacity.

**Section 4.03 Removal of a Trust Protector**

This Section establishes the means by which a Trust Protector is removed during the term of any trust created under this instrument.

**(a) Removal by HAIKUN**

I appoint HAIKUN to remove any Trust Protector serving under this instrument with or without cause.

If HAIKUN is unable or unwilling to remove any Trust Protector, then any beneficiary may petition a court of competent jurisdiction to remove any then-serving Trust Protector. The court may only remove a Trust Protector for cause as

determined by the court. The court removing a Trust Protector may appoint successor Trust Protectors to replace the removed Trust Protector immediately. The court acting to remove and replace a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Protector.

**(b) No Removal by Trustees**

No Trustee may remove a Trust Protector.

**Section 4.04 Resignation of a Trust Protector**

A Trust Protector may resign by giving written notice to me. If I am deceased, a Trust Protector may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by me or by the trust's Primary Beneficiary. A resigning Trust Protector is not liable or responsible for the act of any successor Trust Protector.

A party with the power to appoint and remove Trust Protectors may resign on the same terms and conditions.

**Section 4.05 Incapacity of a Trust Protector**

If any individual Trust Protector becomes incapacitated, the incapacitated Trust Protector need not resign as Trust Protector. Any then-serving Trust Protector or the immediately eligible successor Trust Protector may provide a written declaration that a Trust Protector is incapacitated.

The written declaration of the Trust Protector's incapacity will terminate the Trust Protector's service. If the Trust Protector designated in the written declaration objects in writing to termination of the Trust Protector's service within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trust Protector must be obtained before the Trust Protector's service will be terminated. The Trust Protector objecting to termination of the Trust Protector's service must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity, or the Trust Protector's service will be terminated without the physician's written opinion.

The provisions of Section 12.06(g) of this instrument govern the determination of a Trust Protector's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 12.06(g) governs the Trust Protector's obligations to submit to examination and provide necessary releases.

**Section 4.06 Authority of Successor Trust Protectors**

Any successor Trust Protector has all the authority of any predecessor Trust Protector, but is not responsible for the predecessor's acts, omissions, or forbearances.

**Section 4.07 Trust Protector Standard of Conduct**

To the extent that I have provided in this instrument that a Trust Protector holds any power or authority in a fiduciary capacity, the Trust Protector has no general duty to monitor or remain informed about the trust. Specifically, the Trust Protector has no duty to investigate the Trustee's actions or inactions, to audit the trust's books, to review the trust's investments, or to evaluate the trust portfolio's performance, unless a trust beneficiary or some other interested party:

> files a written complaint with the Trust Protector alleging a breach of trust and detailing the matters the Trust Protector should investigate, audit, review, or evaluate; or
>
> requests an action that I have authorized the Trust Protector to perform.

If the Trust Protector possesses the power to direct, consent to, or veto the actions of a Trustee described in the written complaint, I direct that the Trust Protector defer to the Trustee's judgment except in those instances in which the Trust Protector can find no rational basis for the Trustee's actions, omissions, or forbearances. The Trust Protector will only suffer liability for an omission or forbearance if:

> the trust suffers monetary loss and the Trust Protector made no reasonable inquiry when alerted that the Trustee might have breached the Trustee's fiduciary duties; or
>
> even if the Trust Protector made a reasonable inquiry, no other reasonable person would have failed to take action against the Trustee under those circumstances.

If the Trust Protector chooses to direct, veto, or consent to an action of the Trustee, I intend that the Trust Protector exercise the authority with the same degree of care, skill, competence, and good judgment that a Trustee would exhibit in exercising those powers.

The Trust Protector (or the party appointing or removing trust protectors) is not liable for any action, omission, or forbearance in the absence of an affirmative showing by clear and convincing evidence of bad faith by the Trust Protector to any of the beneficiaries.

**Section 4.08 Indemnification of Trust Protector**

I recognize that some persons or institutions may be reluctant to serve as Trust Protector without indemnification by the trust for potential liability. Therefore, I direct that the Trustee may expend the trust assets to defend any claim brought against any Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the trust's value. If any claim brought against a Trust Protector

is successful and the Trust Protector is shown to have acted in bad faith, the Trustee may seek reimbursement from that Trust Protector using any legal or equitable means available to the Trustee for the value of any trust assets used to defend the Trust Protector.

Any Trust Protector is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith. This must be done even if the cost of the Trust Protector's defense would exhaust the trust's value.

This Section applies to any currently serving Trust Protector and for claims brought against any former Trust Protector in connection with his or her acts, omissions, or forbearances in regard to the trust while serving as Trust Protector.

A party with the power to appoint and remove Trust Protectors shall be indemnified on the same terms and conditions.

**Section 4.09 Trust Protector Powers**

The Trust Protectors designated under the provisions of the following Subsections have the powers and authorities described in each respective Subsection.

**(a) Power to Amend or Modify the Instrument**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (a).

The Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector.

Notwithstanding any other provision of this instrument, the Trust Protector may not amend or modify any power or provision of the trust so as to expand the Trust Protector's existing powers, authorities, or discretions. But the previous provision does not prevent the Trust Protector from making amendments to correct scrivener's errors as to the Trust Protector's powers, authorities, and discretions, or to amend the trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trust Protector remain legally binding and valid under state and federal law.

Any amendment made by the Trust Protector will be binding and conclusive on all persons interested in the trust, unless the amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector. The Trust Protector may not be liable for any consequences of amending or not amending the trust. Any amendment must be made in writing and signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the Primary Beneficiaries and Trustees of the amended trust.

Specifically, and not in limitation of the Trust Protector's general authority of modification or amendment, the Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to grant any trust beneficiary of any trust created under this instrument the unlimited and unrestricted testamentary general power to appoint all or any portion of the principal and undistributed income of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. The Trust Protector may require the beneficiary to first obtain the Trust Protector's consent as a condition to exercising this power. Any testamentary power of appointment granted by the Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by the Trust Protector throughout that beneficiary's lifetime. I suggest that the Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it appears that it may reduce overall taxes.

Any testamentary power of appointment granted by the Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by any then serving Trust Protector during the life of the beneficiary to whom the power was granted.

Specifically, and not in limitation of the Trust Protector's general authority of modification or amendment, the Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to add or modify terms of any trust created under this instrument so that the trust will protect the financial resources governed by this instrument and comply with the Grantor's intent that the trust assets not be considered income or resources for all entitlement benefits from any government agency, such as Social Security Disability payments, Medicare, Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special-purpose benefits for which the beneficiary is eligible.

The Trust Protector authorized to act with respect to this Subsection (a) holds the powers and authorities of this Subsection (a) in a nonfiduciary capacity.

**(b) Power to Change the Governing Law and Situs of Administration**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (b).

The Trust Protector may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 12.05 of this instrument.

The Trust Protector authorized to act with respect to this Subsection (b) holds the powers and authorities of this Subsection (b) in a nonfiduciary capacity.

**(c) Power to Terminate a Trust**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (c).

The Trust Protector may terminate this trust or any trust created under this instrument at any time as more specifically set forth in Section 10.18 of this instrument.

The Trust Protector authorized to act with respect to this Subsection (c) holds the powers and authorities of this Subsection (c) in a nonfiduciary capacity.

**(d) Power to Decant a Trust**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (d).

The Trust Protector may appoint the property subject to the Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector, and as more specifically set forth in Section 10.02 of this instrument.

The Trust Protector authorized to act with respect to this Subsection (d) holds the powers and authorities of this Subsection (d) in a nonfiduciary capacity.

**(e) Power to Remove and Appoint Trustees**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (e).

The Trust Protector may remove any Trustee (other than my spouse) of any trust created under this instrument at any time, with or without cause, except that the Trust Protector may not remove or prevent from serving any trustee specifically identified in this trust by name without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee. A Trust Protector may not appoint any then-serving Trust Protector as a Trustee.

If the Trust Protector removes a Trustee, notice of removal must be made in writing and delivered to the Trustee being removed and any other then-serving Trustees. The removal of the Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Protector's power to remove and replace a Trustee does not limit or otherwise negate the power of the beneficiaries to remove and replace a Trustee.

The Trust Protector authorized to act with respect to this Subsection (e) holds the powers and authorities of this Subsection (e) in a fiduciary capacity.

**(f) Powers to Direct the Trustee**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (f).

The Trust Protector may direct the Trustee in administering the trust and trust property as authorized under this instrument. In the event of any conflict in direction between the Trust Protector and an Advisor, the Trustee is directed to follow the direction of the Trust Protector, and is indemnified and held harmless for any action taken under the Trust Protector's direction.

**(1) Managing and Relocating Assets**

The Trust Protector may direct the Trustee to keep any trust assets or any evidence of asset ownership in any state or country, and to relocate any assets, records, or other evidence of asset ownership to any other state or country as determined by the Trustee.

**(2) Consolidating and Diversifying Asset Management**

The Trust Protector may direct the Trustee to:

consolidate management of any trust's assets with any other trust that has similar terms, conditions, and beneficiaries; or

sever or otherwise diversify the management of any trust's assets.

**(3) Delegating Trustee's Authority**

The Trust Protector may direct the Trustee to delegate any discretionary or mandatory duties or powers to another fiduciary, to any person other than the Grantor, or to any other person who is not prohibited from exercising the delegated power. The delegation of power will be effective for the duration and scope as specified in writing by the delegating Trustee.

If any duties or powers are delegated to another fiduciary, the delegating fiduciary will have no further responsibility with respect to the exercise of the delegated duties or powers as long as the delegation remains in effect.

The delegating Trustee may revoke any delegation of duties or powers under this provision at any time. Revocation will be

effective on the date the written notice of revocation is delivered to the designee.

**(4) Employing Professionals, Agents, and Employees**

The Trust Protector may direct the Trustee to retain, appoint, employ, or remove any accountants, attorneys, investment or other advisors, agents, clerks, and employees at will. The Trustee may enter into compensation agreements, pay compensation or fees of individuals or corporate service providers, and delegate authority to employed individuals or other service providers.

**(5) Life Insurance Powers**

The Trust Protector may direct the Trustee in all matters concerning life insurance payable to the trust. Specifically, the Trust Protector may direct the Trustee to:

> enter into any form of split-dollar arrangement with respect to insurance, including any split-dollar arrangement with another trust of which any Trustee of this trust is acting as a Trustee, even if the arrangement constitutes an act of self-dealing;
>
> pay premiums on any life insurance policy held by the trust;
>
> exercise all options, rights, elections, and privileges under any life insurance policies, including collecting any proceeds payable to the Trustee;
>
> modify, exchange, surrender, or cancel any insurance policies;
>
> borrow from and pledge any life insurance policy in connection with a loan;
>
> assign and distribute any rights under any life insurance policy to or for the benefit of any trust beneficiary;
>
> direct the disposition of dividends or surplus;
>
> convert any life insurance policies into different forms of insurance; and
>
> elect any methods of settlement of life insurance proceeds.

The Trust Protector authorized to act with respect to this Subsection (f) holds the powers and authorities of this Subsection (f) in a nonfiduciary capacity.

**(g) Power to Construe the Terms of This Instrument**

The general Trust Protector designated according to the other provisions of this Article is also authorized to act with respect to this Subsection (g).

The Trust Protector may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Protector is to ensure that the instrument is construed in a manner consistent with my estate planning objectives.

The Trust Protector authorized to act with respect to this Subsection (g) holds the powers and authorities of this Subsection (g) in a nonfiduciary capacity.

**(h) Executing Documents Denoting Authority**

The Trust Protector may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Protector or the Trustee. All parties dealing with the Trust Protector and the Trustee may rely on statements and documents made by the Trust Protector and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Protector and the Trustee, assertions made by the Trust Protector will control, and any assertion made by the Trustee will be disregarded to the extent of the conflict.

**Section 4.10 Limitation on Trust Protector Powers**

A Trust Protector may not exercise any power or discretion in favor of the Trust Protector, for the Trust Protector's benefit, or for the benefit of any person to whom the Trust Protector is related or subordinate within the meaning of Internal Revenue Code Section 672(c). My intent is that nothing in this instrument be construed in any manner that would cause the Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Protector or any related party from receiving reasonable fees for services rendered to the Trust.

If the Trust Protector exercises any one of the powers granted in Section 4.09(b), Section 4.09(c), or Section 4.09(d), the Trust Protector must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Protector under this agreement, the Trust Protector should make reasonable inquiry into any matter or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

**Section 4.11 Trust Protector May Release Powers**

Acting on behalf of itself and all successor Trust Protectors, a Trust Protector may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Protector at any time.

**Section 4.12 Trust Protector Considered to Have Consented**

If any provision of this Article requires the consent or approval of a Trust Protector before a Trustee can act and the Trust Protector does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Protector will be considered to have given consent or approval for the Trustee's proposed action.

**Section 4.13 Trust Protector Compensation**

Any Trust Protector (or any party with the power to appoint or remove trust protectors) serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

the market rate for similar services in the jurisdiction in which the Trust Protector serves;

the breadth and nature of the powers, authorities, and discretions granted to the Trust Protector;

the amount of time the Trust Protector will likely devote to overseeing the trust and the Trustee; and

the trust property's current value and the projected amount of appreciation.

The Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including reasonable travel expenses.

Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services, the Trust Protector is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Protector's ordinary compensation as Trust Protector.

**Section 4.14 Right to Examine Trust Records**

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Protector at all reasonable times.

**Section 4.15 Employment of Professionals**

Any Trust Protector may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Protector's duties. The Trust Protector may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Protector may reasonably compensate an individual or entity employed to assist or advise the Trust Protector, regardless of any other relationship existing between the individual or entity and the Trust Protector.

The Trust Protector may direct and the Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Protector deems advisable. The Trust Protector may direct payment of compensation to an individual or entity employed to assist or advise the Trust Protector without diminishing the compensation to which the Trust Protector is entitled under this instrument. A Trust Protector who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Protector may nonetheless receive the Trust Protector's share of the compensation paid to the entity.

## Article Five

## Administration of Trust Property

Until the youngest child reaches age 30, the Trustee shall administer the trust as provided in this Article.

**Section 5.01 Contributions Held in a Single Trust**

Until the youngest child reaches age 30, the Trustee shall retain all contributions to my trust in a single trust for the benefit of the lifetime beneficiaries while they are all living, or if either of Hera Yuan and Eric Yuan is deceased with surviving descendants, the deceased beneficiary's share shall be distributed to his or her descendants, per stirpes. For purposes of this Article, "contribution" includes a gift to the trust. The Trustee shall administer the trust as follows:

**(a) Distribution of Income and Principal**

The Trustee may distribute income or principal of the trust to the beneficiaries, as follows:

**(1) Distribution of Income and Principal to the Trust Beneficiaries**

The Independent Trustee may distribute as much income of the trust to or for the benefit of any beneficiary as the Independent Trustee

determines advisable for any purpose. If there is no Independent Trustee, the Trustee may distribute as much income to or for the benefit of any beneficiary as the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, or support.

Subject to the foregoing, the Independent Trustee may distribute any remaining portion of trust property (including principal and any undistributed income) to or for the benefit of any beneficiary as the Independent Trustee determines advisable for any purpose. If there is no Independent Trustee, the Trustee may distribute as much of the remaining trust property to or for the benefit of any beneficiary as the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, or support. In making distributions, the Trustee may distribute net income, principal, or both.

All distributions of principal from any Independent Trustee or Trustee shall be further limited to the stated annual maximums below, subject to the beneficiary's age and a cost of living adjustment on January 1 of every calendar year hereinafter:

(i) No principal distributions at all before a beneficiary reaches age 18;

(ii) Up to Five Hundred Thousand Dollars ($500,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 18 and 24; and only one distribution per year, either at the younger age or older age;

(iii) Up to Eight Hundred Thousand Dollars ($800,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 25 and 29; and only one distribution per year, either at the younger age or older age;

(iv) Up to One Million Dollars ($1,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 30 and 34; and only one distribution per year, either at the younger age or older age;

(v) Up to Two Million Dollars ($2,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 35 and 39; and only one distribution per year, either at the younger age or older age; and

(vi) No principal limitations after beneficiary has reached age 40.

Celia Wen Sun shall be removed as a beneficiary from all common trusts and separate share trusts upon Eric Yuan reaching age 30.

If either of Hera Yuan or Eric Yuan is deceased with surviving descendants, the deceased beneficiary's share shall be distributed to his or her descendants, per stirpes.

In determining the advisability or necessity of making distributions, the Trustee may consider other income or resources that are available to the beneficiaries outside of the trust and are known to the Trustee.

**(2) Unequal Distributions Authorized**

The Trustee may make distributions to or for the benefit of one or more trust beneficiaries to the complete exclusion of the other beneficiaries. The Trustee may make distributions to beneficiaries in equal or unequal amounts according to their respective needs.

Before making any distribution or allocation of income or principal to a beneficiary, the Trustee may require a refunding agreement or may withhold any portion of the distribution or allocation until final determination or release of any claim or lien against the beneficiary.

**(b) Allocation of Distributions to Lifetime Beneficiaries**

If any distribution is made to or for the benefit of a beneficiary, the amount of the distribution will be charged against the trust as a whole, and not against any individual benefit the beneficiary may ultimately receive. But if a distribution of principal is made to a lifetime beneficiary who holds a presently-exercisable power of withdrawal, the distribution will be deemed to be an exercise of the beneficiary's power to withdraw to the extent of the distribution. The beneficiary's remaining power to withdraw, if any, will be reduced by the amount of the distribution.

Any net income not distributed is to be accumulated and added to the principal of the trust.

**(c) No Discharge of a Legal Obligation**

Under no circumstances may the Trustee make any distribution to any beneficiary in a manner that would discharge any of my legal obligations. Further, no distribution may be made that would discharge any of my spouse's legal obligations.

**Section 5.02 Administration Upon My Death or My Spouse's death**

Upon the youngest child having reached age 30, the Trustee shall administer the remaining trust property as provided in Article Seven.

## Article Six

## RESERVED AND INTENTIONALLY LEFT BLANK

## Article Seven

## Administration of Remaining Trust Property

Upon the youngest child having reached age 30 or for future distributions to descendants, the Trustee shall administer the remaining trust property as provided in this Article.

### Section 7.01 The Common Trust

If my youngest living child has not attained 30, then until my youngest child has attained 30 years of age, the Trustee shall hold the remaining trust property in a common trust (the "Common Trust") for the benefit of my living children and the living descendants of any deceased children.

If each of my living children has attained 30 years of age, the Trustee shall administer the remaining trust property as provided in the Sections that follow this Section.

There is no Primary Beneficiary of the Common Trust and for purposes of the Common Trust, references in this agreement to the Primary Beneficiary will instead refer to a majority of my children.

The Trustee shall administer the Common Trust as follows:

**(a) Distribution of Income and Principal**

The Independent Trustee may distribute to any one or more of my living children and the living descendants of any deceased children as much of the net income and principal of the Common Trust as the Independent Trustee may determine advisable for any purpose. If there is no Independent Trustee, the Trustee shall distribute to any one or more of my living children and the living descendants of any deceased children as much of the income and principal of the Common Trust as the Trustee determines is necessary or advisable for their health, education, maintenance, or support.

All distributions of principal from any Independent Trustee or Trustee shall be further limited to the stated annual maximums below, subject to the beneficiary's age and a cost of living adjustment on January 1 of every calendar year hereinafter:

(i) No principal distributions at all before a beneficiary reaches age 18;

(ii) Up to Five Hundred Thousand Dollars ($500,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 18 and 24; and only one distribution per year, either at the younger age or older age;

(iii) Up to Eight Hundred Thousand Dollars ($800,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 25 and 29; and only one distribution per year, either at the younger age or older age;

(iv) Up to One Million Dollars ($1,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 30 and 34; and only one distribution per year, either at the younger age or older age;

(v) Up to Two Million Dollars ($2,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 35 and 39; and only one distribution per year, either at the younger age or older age; and

(vi) No principal limitations after beneficiary has reached age 40.

When determining whether or not to make distributions under this subsection, I request, but do not require, that the Trustee consider both the respective needs of my beneficiaries and the other income and resources available to my beneficiaries. The Trustee may make unequal distributions among my beneficiaries or make distributions to some but not all of my beneficiaries due to any disparity in resources or need.

Unless specifically designated as an advancement by the Trustee as provided in subsection (b), distributions to a beneficiary will not be considered advances and will not to be charged against the share to which the beneficiary may be entitled under other provisions of this agreement.

Any undistributed net income is to be accumulated and added to the principal of the Common Trust.

**(b) Advancements**

The Independent Trustee may make advancements by distributing principal of the Common Trust to any of my children for the following purposes:

to permit a child to pursue graduate school or other higher education after college;

To permit a child to enter into or engage in a business or profession;

To permit a child to purchase a personal residence; or

To pay the expenses of a beneficiary's first wedding.

Before making an advancement to any child, I request, but do not require, that the Independent Trustee consider the respective needs and requirements of all of the beneficiaries of the Common Trust.

The Independent Trustee shall designate any distribution made under this subsection as an advancement. A determination by the Independent Trustee as to whether a distribution is for an advancement under this subsection or is a distribution under subsection (a) is conclusive on all persons.

**(c) Guidelines for Discretionary Distributions**

It is my desire that to the extent that it is reasonably practical, the Trustee exercise its discretion in making discretionary distributions of income and principal from the Common Trust to ensure that my younger children are provided with the same advantages that may have been provided for my older children.

**(d) Provisions for Guardians**

If a child of mine resides in the home of a guardian or relative, the Trustee shall furnish as much property of the Common Trust as the Trustee deems necessary or advisable to assist the guardian or relative in providing comfortable care and housing for my child.

For example, the Trustee may furnish trust property to the guardian or relative to purchase a more suitable home in which to accommodate my child or to improve the home of the guardian or relative for the purpose of accommodating my child. The Trustee may also furnish trust property to the guardian or relative to purchase personal property that is necessary or desirable to care for my child.

Notwithstanding anything in this agreement to the contrary, if the guardian or relative is also serving as a Trustee under this agreement, another Trustee, other than the guardian or relative, shall exercise the discretion permitted under this subsection. The guardian or relative has no authority and is not permitted to participate in any decision to furnish trust property as provided in this subsection.

**(e) Termination of the Common Trust**

The Common Trust will terminate when each of my living children has reached the age of 30 years. Upon termination, the Trustee shall administer the remaining trust property as provided in the Sections that follow.

**Section 7.02 Division of Remaining Trust Property**

The Trustee shall divide the remaining trust property into separate shares for my descendants, *per stirpes*.

Specific only to the initial division of trust property from Celia Wen Sun to her children, Celia Wen Sun shall have sole and absolute discretion to allocate trust property, without any consent needed from any Co-Trustees.

**(a) Adjustments for Advancements**

In determining the value of the share for each child, the Trustee shall add to the value of the remaining trust property the value of all advancements, if any, made from the Common Trust under Section 7.01(b). The resulting total will be used to calculate the value of the shares created under this Section.

The Trustee shall reduce the share of each child by the value of all advancements, if any, made to the child from the Common Trust under Section 7.01(b). In making a reduction of any share for an advancement made from the Common Trust under Section 7.01(b), the Trustee shall use the value of the property distributed as of the date of its distribution. The share of any descendant of a deceased child will be reduced *pro rata* by any distribution made to the beneficiary's parent. Advancements shall only take into account distributions under Section 7.01(b), and no other sections.

If the amount of the reduction exceeds the value of the share of any beneficiary, that beneficiary will receive nothing, but that beneficiary will not have a duty to refund any advancement that exceeds the value of the beneficiary's share, and the remaining beneficiaries' shares will be reduced pro rata to account for the shortfall.

**(b) Separate Shares**

The Trustee shall administer the share for each descendant as a separate share for the benefit of the descendant as provided below.

**Section 7.03 Administration of the Separate Trusts**

The Trustee shall administer the trust for each child as provided in this Section:

**(a) Distributions of Net Income**

The Independent Trustee may distribute as much income of the trust to or for the benefit of any beneficiary as the Independent Trustee determines advisable for any purpose. If there is no Independent Trustee, the Trustee may distribute as much income to or for the benefit of any beneficiary as the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, or support.

**(b) Distributions of Principal**

The Trustee, other than an Interested Trustee, may distribute to the beneficiary as much of the principal of the beneficiary's trust as such Trustee may determine advisable for any purpose. If there is no Trustee that is not an Interested Trustee,

the Trustee shall distribute to the beneficiary as much principal of the beneficiary's trust as the Trustee determines is necessary or advisable for the health, education, maintenance, or support of the beneficiary.

All distributions of principal from any Independent Trustee or Trustee shall be further limited to the stated annual maximums below, subject to the beneficiary's age and a cost of living adjustment on January 1 of every calendar year hereinafter:

(i) No principal distributions at all before a beneficiary reaches age 18;

(ii) Up to Five Hundred Thousand Dollars ($500,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 18 and 24; and only one distribution per year, either at the younger age or older age;

(iii) Up to Eight Hundred Thousand Dollars ($800,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 25 and 29; and only one distribution per year, either at the younger age or older age;

(iv) Up to One Million Dollars ($1,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 30 and 34; and only one distribution per year, either at the younger age or older age;

(v) Up to Two Million Dollars ($2,000,000) per beneficiary, cumulatively per annum, when a beneficiary is between ages 35 and 39; and only one distribution per year, either at the younger age or older age; and

(vi) No principal limitations after beneficiary has reached age 40.

**(c) Guidelines for Discretionary Distributions**

In making discretionary distributions to the beneficiary, it is my desire to provide for the beneficiary's well-being and happiness. Although I request that the Trustee consider the other known resources available to the beneficiary before making distributions, I also request that the Trustee be liberal in making any distributions to the beneficiary. I acknowledge that the principal of the trust established for the beneficiary may be exhausted in making such distributions.

**(d) Lifetime Power of Appointment of Principal**

During the beneficiary's lifetime, the Trustee shall distribute as much of the principal of the beneficiary's trust to or among one or more of my descendants as the beneficiary from time to time directs in writing. The beneficiary may not exercise this power for the purpose of discharging his or her legal obligations or otherwise for his or her pecuniary benefit.

The beneficiary may not exercise this lifetime limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors, or the creditors of his or her estate. I intend that this lifetime power of appointment be a limited

power of appointment and not a general power of appointment as defined in Section 2041 of the Internal Revenue Code.

**(e) Distribution Upon the Death of the Beneficiary**

Subject to the terms of the next paragraph, the beneficiary shall have the testamentary general power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at the beneficiary's death among my descendants and the creditors of the beneficiary's estate. The beneficiary shall have the sole and exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, creditors, or creditors of the beneficiary's estate from the "limited share" of the beneficiary's trust. For purposes of this power of appointment, the "limited share" of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or which, in the absence of the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share shall be the beneficiary's entire trust.

Insofar as any part of the beneficiary's trust shall not be effectively appointed, the Trustee shall distribute the remaining unappointed balance *per stirpes* in trusts to the descendants of the beneficiary. If the beneficiary has no living descendants, the Trustee shall distribute the balance of the trust property *per stirpes* in trusts to the descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if no such descendant is then living, *per stirpes* in trusts to my descendants. The Trustee shall administer the trusts under the same terms as the beneficiary's trust.

If I have no living descendants, the Trustee shall distribute the balance of the trust property as provided in Article Eight.

## Article Eight

## Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of my trust estate, the whole portion of my remaining trust estate shall be distributed 100% to those persons who would inherit it had I died intestate owning the property, as determined and in the proportions provided by the laws of California then in effect.

## Article Nine

## Distributions to Underage and Incapacitated Beneficiaries

### Section 9.01 THIS SECTION INTENTIONALLY LEFT BLANK

### Section 9.02 Underage and Incapacitated Beneficiaries

If the Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 30 years of age or who is incapacitated as defined in Section 12.06(g), the Trustee may make the distribution by any one or more of the methods described in Section 9.03. Alternatively, the Trustee may retain the trust property in a separate trust to be administered by the Trustee under Section 9.04.

I request that before making a distribution to a beneficiary, the Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

### Section 9.03 Methods of Distribution

The Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 9.02 in any one or more of the following methods:

The Trustee may distribute trust property directly to the beneficiary.

The Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

The Trustee may distribute trust property to any person or entity, including the Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

The Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

The Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

### Section 9.04 Retention in Trust

The Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 9.02 as follows.

**(a) Distribution of Net Income and Principal**

The Trustee, other than an Interested Trustee, may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as the Trustee may determine advisable for any purpose. If there is no then-serving Trustee that is not an Interested Trustee, the Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, or support. Any undistributed net income will be accumulated and added to principal.

**(b) Right of Withdrawal**

When the beneficiary whose trust is created under this Section either reaches 30 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

**(c) Distribution upon the Death of the Beneficiary**

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate. The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, the Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, the Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, the Trustee shall distribute the balance of the trust property as provided in Article Eight.

**Section 9.05 Application of Article**

Any decision made by the Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

## Article Ten

## Trust Administration

**Section 10.01 Distributions to Beneficiaries**

Whenever this trust authorizes or directs the Trustee to make a net income or principal distribution to a beneficiary, the Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. The Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

The Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by the Trustee. The Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that the Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

The Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

**Section 10.02 Trust Decanting; Power to Appoint in Further Trust**

The Trust Protector may appoint the property subject to the Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector. Any trust established by the Trust Protector and funded by the exercise of the power granted under this Section must meet these requirements:

> the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;
>
> the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and
>
> the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction, fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Trust Protector's powers granted under this Section.

**Section 10.03 Beneficiary's Status**

Until the Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, the Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

The Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. The Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

**Section 10.04 No Court Proceedings**

The Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If the Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

I request that any questions or disputes that arise during the administration of this trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act. Each interested party involved in the dispute, including any Trustee involved, may select an arbiter and, if necessary to establish a majority decision, these arbiters may select an additional arbiter. The decision of a majority of the arbiters selected will control with respect to the matter.

**Section 10.05 No Bond**

The Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

**Section 10.06 Exoneration of the Trustee**

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee. Absent clear and convincing evidence of willful bad faith on the part of the Trustee, the Trustee is exonerated from any liability for the acts, omissions, or forbearances of any

Trust Protector and from any liability for the Trustee's own acts, omissions, or forbearances directed by the Trust Protector.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

The Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien.

**Section 10.07 Limitations on Trustee Liability**

I recognize that some individuals and institutions may be reluctant to serve as Trustee because of a concern about potential liability. Therefore, I direct that any individual or corporate fiduciary that serves as the Trustee will not incur any liability by reason of any error of judgment, mistake of law, or action or inaction of any kind in connection with the administration of any trust created under this trust, unless the Trustee's decision is shown by clear and convincing evidence to have been made in bad faith.

Any individual or corporate fiduciary currently serving as the Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee, even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Any individual or corporate fiduciary that formerly served as the Trustee is entitled to reimbursement from the trust estate for any expenses, including attorney's fees and litigation costs reasonably incurred to defend any claim brought against the Trustee even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Except for cases of willful misconduct or gross negligence on the Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector will be considered to have been made in good faith for this Section's purposes.

**Section 10.08 Trustee Compensation**

An individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule. Any Trustee serving as a Trustee under this agreement may from time to time waive all or any amount of compensation in that Trustee's discretion.

A Trustee may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

**Section 10.09 Employment of Professionals**

The Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trustee's duties. The Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trustee may reasonably compensate an individual or entity employed to assist or advise the Trustee, regardless of any other relationship existing between the individual or entity and the Trustee.

The Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as the Trustee deems advisable. The Trustee may compensate an individual or entity employed to assist or advise the Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trustee may still receive the Trustee's share of the compensation paid to the entity.

**Section 10.10 Exercise of Testamentary Power of Appointment**

A testamentary power of appointment granted under this trust may be exercised by a will, living trust or other written instrument specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

The Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if the Trustee has no knowledge of the existence of a will, living trust or other written instrument exercising the power within three months after the beneficiary's death.

**Section 10.11 Determination of Principal and Income**

The Trustee shall determine how all Trustee fees, disbursements, receipts, and wasting assets will be credited, charged, and apportioned between principal and income in a fair, equitable, and practical manner. The Trustee may allocate capital gain to income rather than principal.

The Trustee may set aside from trust income reasonable reserves for taxes, assessments, insurance premiums, repairs, depreciation, obsolescence, depletion, and the equalization of payments to or for the beneficiaries. The Trustee may select appropriate accounting periods for the trust property.

**Section 10.12 Trust Accounting**

Except to the extent required by law, the Trustee is not required to file accountings in any jurisdiction. The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period.

In the absence of fraud or obvious error, assent by all Income Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of an Income Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

A beneficiary may object to an accounting provided by the Trustee only by giving written notice to the Trustee within 180 days after the Trustee provides the accounting. Any beneficiary who does not submit a timely written objection is considered to assent to the accounting.

The Trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection. The Trustee is not required to furnish any information regarding the trust to anyone other than a beneficiary. The Trustee may exclude any information the Trustee determines is not directly applicable to the beneficiary receiving the information. This in no way limits the right of the Trust Protector to examine an accounting.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 180 days after the Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

**Section 10.13 Action of Trustees and Delegation of Trustee Authority**

If two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the terms of the Trustees' appointment provide otherwise. If more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

If the Trustees are unable to agree on a matter for which they have joint powers, I request that the matter be settled by mediation and then by arbitration, if necessary, in accordance with the Uniform Arbitration Act. Each of the Trustees may select an arbiter and these arbiters may select an additional arbiter, if necessary to establish a majority decision. The decision of a majority of the arbiters will control with respect to the matter.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records.

After doing so, the dissenting Trustee must then act with the other Trustees in any way necessary or appropriate to effect the majority decision.

Subject to the limitations set forth in Section 11.24, any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to the Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

**Section 10.14 Trustee May Disclaim or Release Any Power**

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

**Section 10.15 Trustee May Execute a Power of Attorney**

The Trustee may appoint any individual or entity to serve as the Trustee's agent under a power of attorney to transact any business on behalf of the trust or any other trust created under this trust.

**Section 10.16 Additions to Separate Trusts**

If upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, the Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of administration, the distribution will be treated as though it had been an original part of the second trust.

**Section 10.17 Authority to Merge or Sever Trusts**

The Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. The Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, the Trustee may shorten the period during which this trust subsists to comply with Section 12.01, if necessary, to effect the merger. But if a merger does not appear feasible, the Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

The Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate

account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. The Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, the Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before the Trustee exercises the power.

**Section 10.18 Authority to Terminate Trusts**

The Trust Protector may terminate any trust created under this trust at any time, if the Trust Protector determines that administering a trust created under this trust is no longer economical. Once distributed, the Trustee will have no further responsibility with respect to that trust property. The Trustee will distribute the trust property from a terminated trust in this order:

> to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then
>
> if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares the Trust Protector determines.

But if a Trust Protector is not then serving, only an Independent Trustee will possess the power to terminate any trust created under this trust, and the Independent Trustee can act only as authorized and with the specific powers and discretions permitted under this Section.

**Section 10.19 Merger of Corporate Fiduciary**

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

**Section 10.20 Funeral and Other Expenses of Beneficiary**

Upon the death of an Income Beneficiary, the Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property. This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

The Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being

required to see to the application of the payment. The Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

**Section 10.21 Generation-Skipping Transfer Tax Provisions**

If any trust created under this trust would be partially exempt from generation-skipping transfer tax after the intended allocation of Available GST Exemption to the trust, then the Trustee may divide the partially exempt trust so that the allocation of Available GST Exemption can be made to a trust that will be entirely exempt from generation-skipping transfer tax. If the Trustee chooses to divide a trust that would otherwise be a partially exempt trust, the Trustee must create and administer the separate trusts as provided in this Section.

**(a) Division into Exempt and Non-Exempt Trusts**

The Trustee shall divide the property of the otherwise partially-exempt trust into two separate trusts, the *exempt trust* and the *nonexempt trust*. The exempt trust will consist of the largest fractional share of the otherwise partially exempt trust's total assets that will permit the exempt trust to be entirely exempt from generation-skipping transfer tax. The *nonexempt trust* will consist of the balance of the otherwise partially exempt trust's total assets.

To compute the fractional share, the Trustee will use asset values as finally determined for transfer tax purposes. The Trustee must then apply the fraction to the assets at their actual value on the effective date or dates of distribution so that the actual value of the fractional share resulting from the application of the fraction will include fluctuations in the trust property's value.

**(b) Administration of the Trusts**

The Trustee shall administer the exempt and nonexempt trusts created under this Section as separate and independent trusts, but under the same terms as the original trust. To the extent possible, the Trustee should make distributions to a non-skip person as defined by Internal Revenue Code Section 2613 from the nonexempt trust and distributions to a skip person as defined by Section 2613 from an exempt trust. The Trustee may designate names for the exempt and nonexempt trusts.

If an exempt trust and a nonexempt trust are further divided under the terms of this trust, the Trustee may allocate property from the exempt trust first to the trust from which a generation-skipping transfer is more likely to occur.

**(c) Expression of My Intent**

My intent is to minimize the application of the generation-skipping transfer tax to the trust property, but not to affect the total amount of trust property to which any

beneficiary may be entitled under this trust. This trust must be construed and interpreted to give effect to this intent.

**(d) Additions of Property to Exempt and Non-Exempt Trusts**

If at any time any property that has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be added to a trust with property that has an inclusion ratio of zero, then the Trustee will instead hold the property in a separate trust on the same terms and conditions as the original trust.

**(e) Re-Allocation**

If the Trustee's determination of whether a trust in this trust is partially, entirely, or not exempt from GST taxes is later incorrect (for example, if the Congress by law or the Service by regulation or ruling applies the generation-skipping transfer tax retroactively to the trust), the Trustee may re-allocate the assets as of the initial division date, as provided in this Section.

**Section 10.22 Independent Trustee May Confer Testamentary Power of Appointment**

During the Primary Beneficiary's lifetime, the Independent Trustee may grant the Primary Beneficiary a testamentary power to appoint all or part of the Primary Beneficiary's trust or trust share to the creditors of the Primary Beneficiary's estate. The Independent Trustee may require that the Primary Beneficiary obtain the consent of the Independent Trustee granting the power, as a condition for the exercise of the power. Any testamentary power of appointment granted by the Independent Trustee may only be exercised personally by the beneficiary, must be exercised in writing and may be revoked at any time during the lifetime of the Primary Beneficiary to whom the power was given. I suggest that the Independent Trustee exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it may reduce overall taxes.

## Article Eleven
## The Trustee's Powers

**Section 11.01 Introduction to Trustee's Powers**

Except as otherwise specifically provided in this trust, the Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of California or any other jurisdiction whose law applies to this trust. The powers set forth in the California Probate Code §§ 16200-16249 are specifically incorporated into this trust.

The Trustee shall exercise the Trustee powers in the manner the Trustee determines to be in the beneficiaries' best interests. The Trustee must not exercise any power inconsistent with the

beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law. I expressly waive any duty of impartiality for the Trustee as to the beneficiaries.

The Trustee may have duties and responsibilities in addition to those described in this trust. I encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if the Trustee has any questions concerning the duties and responsibilities as Trustee.

**Section 11.02 Execution of Documents by the Trustee**

The Trustee may execute and deliver any written instruments that the Trustee considers necessary to carry out any powers granted in this trust.

**Section 11.03 Investment Powers in General**

The Trustee may invest in any type of investment whether inside or outside the geographic borders of the United States of America and its possessions or territories.

The Trustee may acquire and retain investments not regarded as traditional or suitable assets for trusts, including investments that would be forbidden or regarded as imprudent, improper, or unlawful by the *prudent person* rule, *prudent investor* rule, or any other rule or law that restricts a fiduciary's investment flexibility. The Trustee may invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property. The investment may be in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, limited liability companies, corporations, mutual funds, business trusts, or any other form of participation or ownership. In making investments, the Trustee may disregard:

> whether a particular investment or the collective trust investments will produce a reasonable rate of return or result in the preservation of principal;
>
> whether the acquisition or retention of a particular investment or the collective trust investments are consistent with any duty of impartiality as to the different beneficiaries;
>
> whether the trust is diversified; and
>
> whether any trust investment would traditionally be classified as too risky or speculative for trusts.

I expressly waive any duty to diversify trust assets. I intend to grant sole and absolute discretion to the Trustee and my Investment Adviser, if one is serving, in determining acceptable risk and proper investment strategy.

I intend to modify the *prudent person* rule, *prudent investor* rule, or any other rule or law which restricts a fiduciary's ability to invest, to the extent the rule or law would prohibit an investment because of at least one of the factors listed above or any other factor relating to the nature of the

investment itself. I believe that it is in the beneficiaries' best interests to give the Trustee the broadest possible discretion in managing trust assets.

The Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

**Section 11.04 Banking Powers**

The Trustee may establish any type of bank account in any banking institutions that the Trustee chooses. If the Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. The Trustee may authorize withdrawals from an account in any manner.

The Trustee may open accounts in the name of the Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

**Section 11.05 Business Powers**

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, the Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to the Trustee in this trust.

**(a) No Duty to Diversify**

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, the Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, I, my spouse, my descendants, and the spouses of my descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property. I specifically authorize the Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability. I waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

I recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, I authorize the Trustee to acquire or retain any noncontrolling business interests.

**(b) Specific Management Powers**

The Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection. The Trustee may participate directly in the

conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

The Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), the Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

The Trustee may enter into management trusts and nominee trusts in which the Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

The Trustee, individually, or if the Trustee is a corporate fiduciary, then an employee of the Trustee, may act as a director, general or limited partner, associate, or officer of the business.

The Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. The Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

The Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. The Trustee may subject the trust's principal and income to the risks of the business for any term or period, as the Trustee determines.

For any business in which the trust has an interest, the Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. The Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

The Trustee may select and vote for directors, partners, associates, and officers of the business. The Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

The Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

The Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

The Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. The Trustee may sell or liquidate the business or business interest on terms the Trustee deems advisable and in the best interests of the trust and the beneficiaries. The Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. The Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

The Trustee may exercise all of the business powers granted in this trust even though the Trustee may be personally invested in or otherwise involved with the business.

**(c) Business Liabilities**

If any tort or contract liability arises in connection with the business, and if the trust is liable, the Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by the Trustee.

**(d) Trustee Compensation**

In addition to the compensation set forth in Section 10.08, the Trustee may receive additional reasonable compensation for services in connection with the operation of the business. The Trustee may receive this compensation directly from the business, the trust or both.

**(e) Conflicts of Interest**

The Trustee may exercise all of the powers granted in this trust even though the Trustee may be involved with or have a personal interest in the business.

**Section 11.06 Contract Powers**

The Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that the Trustee deems advisable. The Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

The Trustee may enter into contracts, and may deliver deeds or other instruments, that the Trustee considers appropriate.

**Section 11.07 Common Investments**

For purposes of convenience with regard to the trust property's administration and investment, the Trustee may invest part or all of the trust property jointly with property of other trusts for which the Trustee is also serving as a Trustee. A corporate fiduciary acting as the Trustee may use common funds for investment. When trust property is managed and invested in this manner, the Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

**Section 11.08 Digital Assets**

The Trustee has the authority to access, modify, control, archive, transfer, and delete my digital assets.

Digital assets include my sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

My digital assets may be stored in the cloud or on my own digital devices. The Trustee may access, use, and control my digital devices in order to access, modify, control, archive, transfer, and delete my digital assets—this power is essential for access to my digital assets that are only accessible through my digital devices. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

**Section 11.09 Environmental Powers**

The Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

The Trustee may refuse to accept property if the Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

The Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;
>
> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;

institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;

comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and

employ agents, consultants, and legal counsel to assist the Trustee in these actions.

The Trustee is not liable for any loss or reduction in value sustained by the trust as a result of the Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless the Trustee contributed to that loss through willful misconduct or gross negligence.

The Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of the Trustee's actions to comply with any environmental law, including any reporting requirement.

The Trustee may release, relinquish, or disclaim any power held by the Trustee that the Trustee determines may cause the Trustee to incur individual liability under any environmental law.

**Section 11.10 Farm, Ranch, and Other Agricultural Powers**

The Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

The Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

The Trustee may engage and participate in any government farm program, whether state or federally sponsored.

The Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

The Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

The Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

**Section 11.11 Insurance Powers**

The Trustee may purchase, accept, hold, and deal with as owner, insurance policies on my life, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

The Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. The Trustee may purchase annuities and similar investments for any beneficiary.

The Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. The Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. The Trustee may assign the policy as security for the loan.

The Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

The Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

The Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

The Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, the Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

**Section 11.12 Loans and Borrowing Powers**

The Trustee may make loans to, or guarantee the borrowing of, any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured. But the Trustee may only make loans to me with adequate interest and security.

The Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

The Trustee may borrow money at interest rates and on other terms that the Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

The Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. The Trustee may accept deeds instead of foreclosing.

**Section 11.13 Nominee Powers**

The Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

**Section 11.14 Oil, Gas and Mineral Interests**

The Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

The Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that the Trustee deems advisable.

The Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

The Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

The Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

**Section 11.15 Payment of Property Taxes and Expenses**

Except as otherwise provided in this trust, the Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by the Trustee out of income. If the income is insufficient, then the Trustee may make any payments of property taxes or expenses out of the trust property's principal. The Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

**Section 11.16 Purchase of Assets from and Loans to My Probate Estate**

Upon my death, the Trustee may purchase at fair market value and retain in the form received any property that is a part of my probate or trust estate as an addition to the trust. In addition, the Trustee may make secured and unsecured loans to my probate or trust estate. The Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

The Trustee may not use any trust property for the benefit of my estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in my gross estate for federal estate tax purposes.

**Section 11.17 Qualified Tuition Programs**

The Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, the Trustee may act as contributor, administering the interest by actions including:

designating and changing the designated beneficiary of the interest in the qualified tuition program;

requesting both qualified and nonqualified withdrawals;

selecting among investment options and reallocating funds among different investment options;

making rollovers to another qualified tuition program; and

allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

**Section 11.18 Real Estate Powers**

The Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as the Trustee deems appropriate.

The Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

The Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

The Trustee may enter into contracts to sell real estate. The Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. The Trustee may enter into any contracts, covenants, and warranty agreements that the Trustee deems appropriate.

**Section 11.19 Residences and Tangible Personal Property**

The Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. The Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

The Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. The Trustee may pay for the repair and maintenance of the property.

The Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

The Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that the Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

The Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

**Section 11.20 Retention and Abandonment of Trust Property**

The Trustee may retain any property constituting the trust at the time of its creation, at the time of my death, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. The Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

The Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of the Trustee. On the other hand, the Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

The Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

The Trustee may abandon any property that the Trustee considers of insignificant value.

**Section 11.21 Securities, Brokerage and Margin Powers**

The Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. The Trustee may write and purchase call or put options, and other derivative securities. The Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to the Trustee or to or for a beneficiary's benefit.

The Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. The Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. The Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

The Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. The Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

The Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. The Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. The Trustee may give proxies or powers of attorney that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

**Section 11.22 Settlement Powers**

The Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. The Trustee may release or abandon any claim in favor of the trust.

**Section 11.23 Subchapter S Corporation Stock Provisions**

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

**(a) Electing Treatment as an Electing Small Business Trust**

If the Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, the Trustee shall:

> apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and
>
> administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

**(b) Electing Treatment as a Qualified Subchapter S Trust**

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), the Trustee shall:

> refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;
>
> administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and
>
> maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).

The Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

**(1) Current Income Beneficiary**

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally

holding the S corporation stock, the Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

**(2) Distributions**

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), the Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, the Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, the Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

**(3) Allocation of Income and Expenses**

The Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

**(4) Trust Merger or Consolidation**

Notwithstanding any other provision of this trust that may seem to the contrary, the Trustee may not merge any Qualified Subchapter S Trust with another trust's assets if doing so would jeopardize the qualification of either trust as a Qualified Subchapter S Trust.

**(c) Governance of the Trusts**

The following additional provisions apply to any separate trust created under this Section.

**(1) Protection of S Corporation Status**

The Trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the

Trustee must construe the terms and provisions of this trust in a manner that is consistent with the trust qualifying as an Electing Small Business Trust or as a Qualified Subchapter S Trust. The Trustee must disregard any provision of this trust that cannot be so construed or applied.

**(2) Methods of Distribution**

The Trustee may not make distributions in a manner that would jeopardize the trust's qualification as an Electing Small Business Trust or as a Qualified Subchapter S Trust.

**(3) Disposition of S Corporation Stock**

If the Trustee believes the continuation of any trust would result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the Trustee, other than an Interested Trustee, in addition to the power to sell or otherwise dispose of the stock, has the power to distribute the stock to the person who is then entitled to receive the income from the trust.

**Section 11.24 Limitation on the Trustee's Powers**

All powers granted to Trustees under this trust or by applicable law are limited as set forth in this Section, unless explicitly excluded by reference to this Section.

**(a) An Interested Trustee Limited to Ascertainable Standards**

An Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, or support as described under Internal Revenue Code Sections 2041 and 2514.

**(b) Interested Trustee Prohibited from Acting**

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as the Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

**(c) Exclusive Powers of The Independent Trustee**

Whenever a power or discretion is granted exclusively to the Independent Trustee, then any Interested Trustee who is then serving as the Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under

the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by the Independent Trustee.

**(d) No Distributions in Discharge of Certain Legal Obligations**

The Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

**(e) Insurance Policy on the Life of the Trustee**

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries (excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

**(f) Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

## Article Twelve

## General Provisions

### Section 12.01 Maximum Term for Trusts

Notwithstanding any contrary provisions or unless terminated earlier under other provisions of this trust, each trust created under this trust document will terminate 21 years after the death of the last to die of the descendants of my paternal and maternal grandparents and the descendants of my spouse's paternal and maternal grandparents who are living at the time this agreement is signed.

At that time, the remaining trust property will vest in and be distributed to the persons entitled to receive mandatory distributions of the trust's net income, in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property will vest in and be distributed to the beneficiaries entitled to receive discretionary distributions of the trust's net income, in equal shares.

### Section 12.02 Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust.

### Section 12.03 Contest Provision

The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased me without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:

> contests by a claim of undue influence, fraud, menace, duress, or lack of testamentary capacity, or otherwise objects in any court to the validity of this trust, any trust created under the terms of this instrument, my Will, or any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension, profit-sharing plan, or insurance policy signed by me, (collectively referred to in this Section as *Document* or *Documents*) or any amendments or codicils to any Document;
>
> seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions;

files suit on a creditor's claim filed against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already characterized by a Document;

files a petition to impose a constructive trust or resulting trust on any assets of the trust estate; or

participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of these actions.

The Trustee may defend any violation of this Section at the expense of the trust estate. A *contest* includes any action described above in an arbitration proceeding, but does not include any action described above solely in a mediation not preceded by a filing of a contest with a court.

But during any period in which the laws of the State of California govern the applicability or validity of this provision, California Probate Code Section 21311 will apply, and the Trustee may only enforce this provision against any of these types of contests:

a direct contest brought by any beneficiary without probable cause;

a pleading by any beneficiary to challenge a property transfer on the grounds that the transferor did not own the property at the transfer time; and

any filing of a creditor's claim or prosecution of any action based on the filing of a claim of this kind.

The terms *direct contest*, and *pleading* have the same meanings as set forth in California Probate Code Section 21310. This trust and any trusts created in this instrument are *protected instruments* as provided in California Probate Code Section 21310(e).

**Section 12.04 Effect of Legal Separation or Dissolution of Marriage**

If my spouse or I file a petition for legal separation or dissolution of marriage and unless and until the petition is dismissed, my spouse, her parents, all of her descendants who are not my descendants and all spouses of such persons who are not descendants of my parents will be deemed to have died intestate on the date of the filing for all purposes of this instrument (except Section 12.01, above). Any exercise or exercises of any power of appointment by any person identified in this paragraph that has not become effective prior to the filing date will be null and void. If, however, a court issues any order dismissing a petition described above, and I accept the dismissal of the petition by a written acknowledgement, then the persons identified in this paragraph will no longer be deemed to have died intestate for purposes of this instrument.

**Section 12.05 Changing the Governing Law and Situs of Administration**

At any time, the Trust Protector may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. The Trust Protector may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. The Trust Protector may take action under this Section for any purpose the Trust Protector considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by the Trust Protector, the Trust Protector may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if the Trust Protector does not appoint an Independent Trustee within 30 days of the Trust Protector's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

**Section 12.06 Definitions**

For purposes of this trust, the following terms have these meanings:

**(a) Adopted and Afterborn Persons**

A person in any generation who is legally adopted before reaching 18 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

**(b) Available GST Exemption**

An individual's *Available GST Exemption* means the GST exemption provided in Internal Revenue Code Section 2631 in effect at the time; reduced by the aggregate of any amount of GST exemption allocated to lifetime transfers and any amount of allocations of GST exemption made or treated as made to transfers other than allocations to transfers under this trust.

If, at the time, the individual has made a gift with an inclusion ratio of greater than zero but has not filed a gift tax return and the due date for the gift tax return has not yet passed, that individual's GST exemption is considered to have been allocated to this gift to the extent necessary and possible to exempt the gift from generation-skipping transfer tax.

**(c) Descendants**

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

**(d) Education**

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;
>
> undergraduate and graduate study in any field at a college or university;
>
> specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and
>
> any other curriculum or activity that the Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

**(e) Good Faith**

For the purposes of this trust, a Trustee has acted in good faith if:

> an action or inaction is not a result of intentional wrongdoing;
>
> the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and
>
> an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of my estate as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

**(f) Grantor**

*Grantor* has the same legal meaning as *Settlor*, *Trustor* or any other term referring to the maker of a trust.

**(g) Incapacity**

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

**(1) The Opinion of Two Licensed Physicians**

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

**(2) Court Determination**

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

**(3) Detention, Disappearance, or Absence**

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of the Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with the Trustee.

**(h) Include, Includes, Including**

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

**(i) Income Beneficiary**

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

References to a *majority* refer to a majority of the entire trust collectively until the Trustee allocates property to separate trusts or trust shares. After the Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

**(j) Independent Trustee**

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (l) and includes an Independent Special Trustee appointed under the provisions of Section 3.08.

**(k) Instrument**

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

**(l) Interested Trustee**

The term *Interested Trustee* means a Trustee who:

is a transferor or beneficiary;

is related or subordinate to a transferor or beneficiary;

can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or

can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust during that person's lifetime, including a person whose disclaimer resulted in property passing to the trust. A person is only a transferor during his or her lifetime. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

**(m) Internal Revenue Code and Treasury Regulations**

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to my intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

**(n) Legal Representative or Personal Representative**

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

**(o) Per Stirpes**

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

**(p) Primary Beneficiary**

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

**(q) Shall and May**

Unless otherwise specifically provided in this trust or by the context in which used, I use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of the Trustee, when I use the word *shall* I intend to impose a fiduciary duty on the Trustee. When I use the word *may* I intend to empower the Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When I use the words *may not* in reference to the Trustee, I specifically mean the Trustee *is not permitted to*.

**(r) Trust**

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

**(s) Trustee**

The terms *the Trustee* and *Trustee* refer to the Initial Trustee named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

**(t) Trust Property**

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

**Section 12.07 General Provisions and Rules of Construction**

The following general provisions and rules of construction apply to this trust.

**(a) Multiple Originals; Validity of Paper or Electronic Copies**

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

**(b) Singular and Plural; Gender**

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

**(c) Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d) Governing State Law**

This trust is governed, construed, and administered according to the laws of California, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 12.05.

**(e) Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f) Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

## Article Thirteen

## Special Provisions

**Section 13.01 Substance Abuse**

If the Trustee reasonably believes that a beneficiary (other than us) of any trust routinely or frequently uses or consumes any illegal substance so as to be physically or psychologically dependent upon that substance, or is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist, and if the Trustee reasonably believes that as a result the beneficiary is unable to care for himself or herself, or is unable to manage his or her financial affairs, then all mandatory distributions (including distributions upon termination of the trust) to the beneficiary, all of the beneficiary's withdrawal rights, and all of the beneficiary's rights to participate in decisions concerning the removal and appointment of Trustees will be suspended. In that event, the following provisions will apply:

**(a)** **Testing.** The Trustee may request the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a board certified medical doctor and to consent to full disclosure to the Trustee of the results of all such examinations. The Trustee shall maintain strict confidentiality of those results and shall not disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary. The Trustee may totally or partially suspend all distributions otherwise required or permitted to be made to that beneficiary until the beneficiary consents to the examination and disclosure to the Trustee.

**(b)** **Treatment.** If, in the opinion of the examining doctor, the examination indicates current or recent use of a drug or substance as described above, the examining doctor will determine an appropriate method of treatment for the beneficiary (for example, counseling or treatment on an in-patient basis in a rehabilitation facility) that is acceptable to the Trustee. If the beneficiary consents to the treatment, the Trustee shall pay the costs of treatment directly to the provider of those services from the distributions suspended under this article.

**(c)** **Resumption of Distributions.** The Trustee may resume other distributions to the beneficiary (and the beneficiary's other suspended rights will be restored) when, in the case of use or consumption of an illegal or legal substance, examinations indicate no such use for 6 months and, in all cases, when the Trustee in its discretion determines that the beneficiary is able to care for himself or herself and is able to manage his or her financial affairs.

**(d)** **Disposition of Suspended Amounts.** When other distributions to the beneficiary are resumed, the remaining balance, if any, of distributions that were suspended may be distributed to the beneficiary at that time. If the

beneficiary dies before distribution of those suspended amounts, the Trustee shall distribute the balance of the suspended amounts to the persons who would be the alternate takers of that beneficiary's share (or takers through the exercise of a power of appointment) as otherwise provided in our respective Wills or this Trust Agreement.

(e) **Exoneration**. No trustee (nor any doctor retained by the then-serving trustee) will be responsible or liable to anyone for a beneficiary's actions or welfare. The trustee has no duty to inquire whether a beneficiary or trustee uses drugs or other substances as described in this article. The trustee (and any doctor retained by the then-serving trustee) is to be indemnified from the Trust Estate and held harmless from any liability of any nature in exercising its judgment and authority under this article in good faith, including any failure to request a beneficiary or trustee to submit to medical examination, and including a decision to distribute suspended amounts to a beneficiary or suspend a trustee's trusteeship.

(f) **Tax Savings Provision**. Despite the provisions of this article, the Trustee cannot suspend any mandatory distributions or withdrawal rights that are required for that trust to become or remain a Qualified Subchapter S Trust (unless the Trustee elects for the trust to be an Electing Small Business Trust), or for a trust to which an election has been made under Section 2056(b)(7) of the Code to qualify for the estate tax marital deduction or to qualify for any other federal transfer tax exemption, deduction, or exclusion allowable with respect to that trust.

(g) **Application to Trustees**. The provisions of this ARTICLE 13 shall also apply to our children or any other trustee in their capacity to serve as trustee, so that if any trustee is found to routinely or frequently use or consume any illegal substance so as to be physically or psychologically dependent upon that substance, or is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist, and if, as a result, such trustee is unable to care for himself or herself or is unable to manage his or her financial affairs, he or she shall not serve as trustee until examinations of such trustee indicate no such substance abuse for the time period provided in section 13.01(c) or the then currently serving Trustee or any successor trustee to the then currently serving Trustee (who is not the removed Trustee) in his or her discretion determines that such removed Trustee is able to care for himself or herself and is able to manage his or her financial affairs. If a person is already serving as trustee at the time he or she is suspected of substance abuse, this determination of whether that person has any substance abuse problems which prevent him or her from managing the financial affairs of the trust shall be made by the next Successor Trustee. If there is more than one trustee serving as trustee or successor trustee, then any one such trustee's determination that a trustee should not serve as trustee under this section, along with examination results

indicating current or recent use of a drug or substance as described above, shall be sufficient to suspend the trusteeship as provided in this section, and such suspension shall be determinative. If any trustee is removed under the terms of this section, then the Trustee who was removed shall resume serving as trustee upon such removed Trustee fulfilling the terms and conditions as described in ARTICLE 13 or the then-currently serving Trustee believes the removed Trustee is able to resume serving as trustee.

So, for example, if our second Successor Trustee suspects our first Successor Trustee of abusing any substances, then the second Successor Trustee can require the first Successor Trustee to submit to medical testing, and when the first Successor Trustee fulfills the terms and conditions as described in this ARTICLE 13, or any one of the group consisting of the second Successor Trustee or any other successor trustee to the second Successor Trustee (excluding the removed Trustee) determines the first Successor Trustee is able to serve as trustee, the first Successor Trustee shall be able to resume serving as trustee. The Successor Trustee (and any doctor retained by such Trustee) is to be indemnified from the Trust Estate and held harmless from any liability of any nature in exercising its judgment and authority in good faith under this article.

I have executed this trust on Jan 12, 2021. This Irrevocable Trust Agreement is effective when signed by me, whether or not now signed by a Trustee.

____________________
Fuer Yuan, Grantor

**ATTESTATION CLAUSE**

Each of us declares that on the day and year written below, Fuer Yuan, created and declared this instrument to be an Irrevocable Trust, known as the YAEN Irrevocable Trust 2021 (the "Trust"), that he signed the Trust in our presence, that each of us, in his presence and at his request, and in the presence of each other, have signed our names as attesting witnesses. We also declare that each of us is now more than eighteen years of age, is a competent witness, and resides at the address set forth after his or her name.

We also declare that at the time of our attestation of this Trust, Fuer Yuan was, to our best knowledge and belief, of sound mind and memory, eighteen years of age or older, and that this Trust was not procured by duress, menace, fraud, misrepresentation, constraint or undue influence.

Executed on 01/12/2021 at location Shen Zhen.

| | |
|---|---|
| __________ Signature | No 16. Block C, HeZheng MingYuan, Xin Wen Rd, Street Address |
| Pan Yong Print Name | Futian Dist, Shen Zhen, GuangDong, PRC City, Province, Country |
| __________ Signature | No 16. Block C, HeZheng MingYuan, Xin Wen Rd, Street Address |
| Nie Weidong Print Name | Futian Dist, Shen Zhen, Guang Dong, PRC City, Province, Country |

刘小红

Celia Wen Sun, Trustee

**ATTESTATION CLAUSE**

Each of us declares that on the day and year written below, Celia Wen Sun, signed and accepted this instrument, known as the YAEN Irrevocable Trust 2021 (the "Trust"), in our presence. That each of us, in her presence and at her request, and in the presence of each other, have signed our names as attesting witnesses. We also declare that each of us is now more than eighteen years of age, is a competent witness, and resides at the address set forth after his or her name.

We also declare that at the time of our attestation of this Trust, Celia Wen Sun was, to our best knowledge and belief, of sound mind and memory, eighteen years of age or older, and that this Trust was not procured by duress, menace, fraud, misrepresentation, constraint or undue influence.

Executed on Jan, 12th, 2021 at location Arcadia, California.

刘海鲲
Signature

135 E. Live Oak Ave.
Street Address

Haikun Lin
Print Name

Arcadia, California, USA
City, Province, Country

Xindai Wu
Signature

135 E. Live Oak Ave.
Street Address

Xindai Wu
Print Name

Arcadia. California, USA.
City, Province, Country

## Schedule A

Ten Dollars Cash

**ASSIGNMENT OF STOCK CERTIFICATES OF**
**JIA YUAN USA CO., INC**

FUER YUAN, without consideration and in order to change formal title only, transfers and assigns to CELIA WEN SUN, Trustee of the YAEN IRREVOCABLE TRUST 2021 dated 6/12/2021, all of his shares in JIA YUAN USA CO., INC, subject to all rights and privileges in the Bylaws applicable to the Shareholder(s).

This assignment was executed by me this day, 6/12/2021, at location Shen Zhen, and is effective immediately.

FUER YUAN

CONSENT OF SECRETARY

The undersigned hereby consents to the assignment of the corporate shares.

JIA YUAN USA CO., INC

By: ______________________
Secretary

**ATTESTATION CLAUSE**

Each of us declares that on the day and year written below, FUER YUAN, created and declared this instrument to be an Assignment of Stock Certificates (the "Assignment") created for the Irrevocable Trust, known as the YAEN IRREVOCALBE TRUST 2021, that he signed the Assignment in our presence, that each of us, in his presence and at his request, and in the presence of each other, have signed our names as attesting witnesses. We also declare that each of us is now more than eighteen years of age, is a competent witness, and resides at the address set forth after his or her name.

We also declare that at the time of our attestation of this Assignment, FUER YUAN was, to our best knowledge and belief, of sound mind and memory, eighteen years of age or older, and that this Assignment was not procured by duress, menace, fraud, misrepresentation, constraint or undue influence.

Executed on 01/12/2021 at location Shen Zhen.

[signature] No 16, Block C, He Zheng Ming Yuan, Xin Wen Rd.
Signature Street Address

Pan Yong Futian Dist, Shen Zhen, Guang Dong, PRC
Print Name City, Province, Country

[signature] No 16, Block C, He Zheng Ming Yuan, Xin Wen Rd.
Signature Street Address

Nie Weidong Futian Dist, Shen Zhen, Guang Dong, PRC
Print Name City, Province, Country

## SHARES TRANSFER AGREEMENT

This Shares Transfer Agreement (the "Agreement") is effective November 1, 2020.

**BETWEEN:** **Jia Yuan Holdings Company Limited** (the "Transferor"), a company organized and existing under the laws of British Virgin Islands, with its office located at:

No.16 Block C, He Zheng Ming Yuan, Xin Wen Road, Futian District, Shenzhen Guangdong, China 518034

**AND:** **Fuer Yuan** (the "Transferee"), a Chinese national and resident of Shenzhen, China, with home address at:

No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040

**WHEREAS:**

1. The undersigned Transferor is the registered and beneficial owner of 1,975 common stock shares (100% of outstanding shares) in the capital stock of **Jia Yuan USA Co., Inc.**, a Delaware corporation.

2. The undersigned Transferor wishes to transfer the said shares to Transferee pursuant to certain company reorganization plan.

**NOW THEREFORE, FOR VALUE RECEIVED,** the undersigned Transferor hereby assigns and transfers unto the Transferee 1,975 common stock shares of Jia Yuan USA Co., Inc. registered in the name of the undersigned Transferee on the book of Jia Yuan USA Co., Inc.

**IN WITNESS WHREREOF**, each party to this Agreement has cause it to be executed, at No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040, on the date indicated above.

**TRANSFEROR**

[signature]

Authorized Signature
**Jia Yuan Holdings Company Limited**

Anru Yuan
Print Name and Title

**TRANSFEREE**

[signature]

**Fuer Yuan**

**ASSIGNMENT OF STOCK CERTIFICATES OF**
**HAZENS INVESTMENT, LLC**

FUER YUAN, without consideration and in order to change formal title only, transfers and assigns to CELIA WEN SUN, Trustee of the YAEN IRREVOCABLE TRUST 2021 DATED 01/12/2021, all of his right, title, and membership interest in HAZENS INVESTMENT, LLC, subject to all rights and privileges in the Operating Agreement applicable to the Members.

This assignment was executed by me this day, 01/12/2021, at location Shen Zhen, and is effective immediately.

FUER YUAN

CONSENT OF MANAGER

The undersigned hereby consents to the assignment of the membership interest.

HAZENS INVESTMENT, LLC

By: ______________________
Managing Member

**ATTESTATION CLAUSE**

Each of us declares that on the day and year written below, FUER YUAN, created and declared this instrument to be an Assignment of Membership Interest (the "Assignment") created for the Irrevocable Trust, known as the YAEN IRREVOCALBE TRUST 2021, that he signed the Assignment in our presence, that each of us, in his presence and at his request, and in the presence of each other, have signed our names as attesting witnesses. We also declare that each of us is now more than eighteen years of age, is a competent witness, and resides at the address set forth after his or her name.

We also declare that at the time of our attestation of this Assignment, FUER YUAN was, to our best knowledge and belief, of sound mind and memory, eighteen years of age or older, and that this Assignment was not procured by duress, menace, fraud, misrepresentation, constraint or undue influence.

Executed on 9/2/2021 at location Shen Zhen.

[signature]
Signature

Pan Yong
Print Name

No16, Block C, HeZheng Ming Yuan, Xin Wen Rd.,
Street Address

Futian Dist, Shen Zhen, GuangDong, PRC
City, Province, Country

[signature]
Signature

Nie Weidong
Print Name

No16, Block C, HeZheng Ming Yuan, XinWen Rd.,
Street Address

Futian Dist, Shen Zhen, GuangDong, PRC
City, Province, Country

# LLC INTEREST TRANSFER AGREEMENT

This LLC Interest Transfer Agreement (the "Agreement") is effective November 1, 2020,

**BETWEEN:** **Hezheng Holdings Company Limited** (the "Transferor"), a company organized and existing under the laws of British Virgin Islands, with its office located at:

No.16 Block C, He Zheng Ming Yuan, Xin Wen Road, Futian District, Shenzhen, Guangdong, China 518034

**AND:** **Fuer Yuan** (the "Transferee"), a Chinese national and resident of Shenzhen, China, with home address at:

No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040

**WHEREAS:**

1. The undersigned Transferor is the registered and beneficial owner of 100% limited liability interest in **Hazens Investments, LLC**, a California limited liability company.

2. The undersigned Transferor wishes to transfer the said 100% limited liability interest to Transferee pursuant to certain company reorganization plan.

**NOW THEREFORE, FOR VALUE RECEIVED**, the undersigned Transferor hereby assigns and transfers unto the Transferee 100% limited liability company interest of Hazens Investments, LLC registered in the name of the undersigned Transferee on the book of Hazens Investments, LLC.

**IN WITNESS WHREREOF**, each party to this Agreement has cause it to be executed at No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040 on the date indicated above.

**TRANSFEROR**

[signature]

Authorized Signature
Hezheng Holdings Company Limited

Fuer Yuan
Print Name and Title

**TRANSFEREE**

[signature]

Fuer Yuan

**ASSIGNMENT OF STOCK CERTIFICATES OF**
**JIA YUAN HOLDING USA, INC.**

FUER YUAN, without consideration and in order to change formal title only, transfers and assigns to CELIA WEN SUN, Trustee of the YAEN IRREVOCABLE TRUST 2021 dated January 12, 2021, all of his shares in JIA YUAN HOLDING USA, INC., subject to all rights and privileges in the Bylaws applicable to the Shareholder.

This assignment was executed by me this day, 01/12/2021, at location Shen Zhen, and is effective immediately.

FUER YUAN

CONSENT OF SECRETARY

The undersigned hereby consents to the assignment of the corporate shares.

JIA YUAN HOLDING USA, INC.

By: ______________________
Secretary

**ATTESTATION CLAUSE**

Each of us declares that on the day and year written below, FUER YUAN, created and declared this instrument to be an Assignment of Stock Certificates (the "Assignment") created for the Irrevocable Trust, known as the YAEN IRREVOCALBE TRUST 2021, that he signed the Assignment in our presence, that each of us, in his presence and at his request, and in the presence of each other, have signed our names as attesting witnesses. We also declare that each of us is now more than eighteen years of age, is a competent witness, and resides at the address set forth after his or her name.

We also declare that at the time of our attestation of this Assignment, FUER YUAN was, to our best knowledge and belief, of sound mind and memory, eighteen years of age or older, and that this Assignment was not procured by duress, menace, fraud, misrepresentation, constraint or undue influence.

Executed on 01/12/2021 at location Shen Zhen.

[signature]
Signature

Pan Yong
Print Name

No 16. Block C. Hezheng Ming Yuan, Xin Wen Rd,
Street Address

Futian Dist, ShenZhen, GuangDong. PRC
City, Province, Country

[signature]
Signature

Nie Weidong
Print Name

No 16. Block C. Hezheng Ming Yuan, Xin Wen Rd
Street Address

Futian Dist, ShenZhen, GuangDong, PRC
City, Province, Country

# SHARES TRANSFER AGREEMENT

This Shares Transfer Agreement (the "Agreement") is effective December 17, 2020.

**BETWEEN:** **Jia Yuan Holdings Company Limited** (the "Transferor"), a company organized and existing under the laws of British Virgin Islands, with its office located at:

No.16 Block C, He Zheng Ming Yuan, Xin Wen Road, Futian District, Shenzhen Guangdong, China 518034

**AND:** **Fuer Yuan** (the "Transferee"), a Chinese national and resident of Shenzhen, China, with home address at:

No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040

**WHEREAS:**

1. The undersigned Transferor is the registered and beneficial owner of 120 common stock shares (100% of outstanding shares) in the capital stock of **Jia Yuan Holding USA, Inc.,** a California corporation.

2. The undersigned Transferor wishes to transfer the said shares to Transferee pursuant to certain company reorganization plan.

**NOW THEREFORE, FOR VALUE RECEIVED,** the undersigned Transferor hereby assigns and transfers unto the Transferee 1,975 common stock shares of Jia Yuan USA Co., Inc. registered in the name of the undersigned Transferee on the book of Jia Yuan USA Co., Inc.

**IN WITNESS WHREREOF**, each party to this Agreement has cause it to be executed, at No.1 Xiangmihu, Yuyuan No12, Xiangmei Road, Futian District, Shenzhen, Guangdong, China 518040, on the date indicated above.

**TRANSFEROR**

[signature]

Authorized Signature
**Jia Yuan Holdings Company Limited**

Auru Yuan

Print Name and Title

**TRANSFEREE**

[signature]

**Fuer Yuan**