KING & WOOD LLP
Yan Ge (State Bar #236566)
geyan@cn.kingandwood.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kingandwood.com
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285

Vincent Filardo Jr. (*pro hac vice*)
Vincent.filardo@us.kingandwood.com
600 5th Avenue, 27th Floor
New York, NY 10020
Telephone: +1 347 926 7570

SPERTUS, JOSEPHS & MINNICK, LLP
Kevin J. Minnick (State Bar #269620)
kminnick@spertuslaw.com
617 W. 7th St., Ste 200
Los Angeles, CA 90017
Telephone: +1 213 205 6520

*Attorneys For Petitioner Industrial Bank Co., Ltd. Shenzhen Branch*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INDUSTRIAL BANK CO., LTD. SHENZHEN BRANCH,

Petitioner,

v.

FUER YUAN,

Respondent.

Case No. 2:26-cv-01256-ODW-ADS

Judge: Otis D. Wright II

**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY**

Date Action Filed: February 7, 2026
Hearing Date: December 7, 2026
Time: 1:30 p.m.
Courtroom: 5D
Judge: Hon. Otis D. Wright II

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioner seeks limited discovery on one issue: whether Respondent Fuer Yuan owns the three Hotels[1] upon which the Court's quasi in rem jurisdiction rests. (MTD Order 2:6-8, 10:3-5.) Yuan states that he will contest his ownership of the Hotels at the merits stage and argue that the Petition be dismissed if he can prove that he does not own the Hotels. (Opp. 5:12-15; MTD Order 10 n.2.) Yuan asks the Court to decide his ownership without any discovery, in reliance on the questionable documents that he and his former wife, Celia Wen Sun ("Sun"), choose to file.

The record, as it currently stands, establishes why the Court should not trust Yuan's self-serving assertions and dubious documents. Yuan told the Court—under oath—that the three companies holding title to the Hotels (the "Companies") "are owned by a Chinese holding company of which Mr. Yuan has no direct or indirect ownership interest." (Dkt. 13 at 24:10-13; *see* Dkt. 13-1, ¶ 7.) Sun's exhibits, however, show that Yuan personally acquired the equity in those Companies, directly or through a parent, in 2020 and 2023, then assigned it to Sun as trustee "without consideration and in order to change formal title only." (Dkt. 26-7 at 72, 74-75, 77; Dkt. 26-9 at 2, 4-5.) Remarkably, Sun's motion offers yet *another* version, in which Yuan is a purported "nominee owner" for his son (MTI 11:15-24), which her own exhibits contradict. What is clear is that ownership is disputed, and the records that would resolve it have not been produced.

Yuan's position is that he may withhold documents, and pick and choose those in his possession, custody, or control that he believes will establish during merits briefing that he does not own the Hotels, and thereafter Petitioner may respond with no

---

[1] Capitalized terms not defined here have the meanings given in Petitioner's Motion ("Mot."). "Opp." is Yuan's Opposition (Dkt. 33), "MTI" is Sun's Motion to Intervene (Dkt. 26), and "Yu Reply Decl." is the Reply Declaration of Yiren Yu. "RFP" refers to Petitioner's proposed Requests for Production to Yuan (Yu Decl. Ex. B). Docket citations are to ECF page numbers.

access to the full record of relevant documents. Of course, a party that puts a jurisdictional fact in issue may not block its opponent's reasonable attempt to answer through discovery. Yuan is a proper source of the discovery. He signed every relevant ownership document. Nor should this discovery be left to Petitioner's fraudulent-transfer action in Los Angeles Superior Court (the "State Action"). There, Sun has refused to produce ownership documents, some of which she later filed in this action. Moreover, the State Action defendants have argued that discovery in that action should await resolution of the intervention motion filed here.

At bottom, each request is limited to the ownership of the Hotels, and each one Yuan challenges concerns a transaction, person, or entity that the record already identifies. The requested Limited Discovery is warranted.

## II. ARGUMENT

### A. Yuan's Submissions Establish That Ownership Is Disputed and Cannot Be Resolved Because the Record Is Incomplete

Discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023). Both reasons exist here.

Yuan declared that he "was a director" of two British Virgin Islands holding companies (the "BVI Companies"), and that after late 2019 he "no longer had any involvement in the operations or management of the U.S. companies," apart from a federal investigation. (Dkt. 13-1, ¶¶ 8, 11.) His motion to dismiss denies any "direct or indirect ownership interest" in the "Chinese holding company" that owns the Companies. (Dkt. 13 at 24:10-13.) None of the documents he submitted disclosed that he had ever owned the Companies—which he did, and appears to still own through proxies.

Sun's exhibits in support of the MTI, in which Yuan has joined (Opp. 8:26-27), record a different history. By agreements effective November 1, 2020, the BVI Companies transferred to Yuan 100% of Metainfinity, Inc. (then Jia Yuan USA Co., Inc.) and Metanova, LLC (then Hazens Investment, LLC). (Dkt. 26-7 at 74, 77.) Yuan signed both agreements as transferee and *also signed the Metanova agreement for the transferor*. (*id*.) By an agreement stated to be effective in 2023, Jia Yuan Holdings Company Limited transferred to Yuan 100% of San Yi Funding Company, LLC, the sole owner of San Yi US Investment Company, Inc. Yuan *signed for both sides*, and for the transferor as "Fuer Yuan CEO." (Dkt. 26-9 at 5; MTI 11:5-7.) Yuan then assigned these interests to Sun, as trustee of the YAEN Irrevocable Trust (the "Trust"), of which *he is the grantor*, on January 12, 2021 and May 3, 2023, each time "without consideration and in order to change formal title only." He acknowledged the 2023 assignment before a notary public in Los Angeles County. (Dkt. 26-7 at 72, 75; Dkt. 26-9 at 4, 6; MTI 12:14-16.) Sun now says that Yuan's son acquired the Companies in December 2019, and that Yuan only "briefly became nominee owner" to transfer them to the Trust. (MTI 11:15-24.) Her own exhibits provide otherwise: the transfer agreements describe the BVI Companies, not Yuan's son, as the "registered and beneficial owner." (Dkt. 26-7 at 74, 77; Dkt. 26-9 at 2.) Yuan's false declaration mentions no son, no trust, and no period in which he ever owned the Companies.

All these exhibits corroborate the evidence submitted by Petitioner on which the Court exercised jurisdiction. Ms. Binying Zhuang testified that the Hotels no longer appeared in the 2020 annual report of the Hazens Group, and the contact designated under Yuan's Guarantee Agreements confirmed they "had been transferred to Respondent Fuer Yuan's personal ownership." (Dkt. 20-1, ¶¶ 4-6; MTD Order 9:3-7.) The November 2020 agreements transferring two of the Companies to Yuan corroborate that testimony.

These submitted exhibits also omit the documents that would show whether Yuan kept an interest after he assigned the equity to Sun as trustee, namely the Companies' own records of who has owned and controlled the Hotels and received their income since the assignments. Whether Yuan's assignments changed "formal title only," as they state, or ended his ownership, as he now contends, cannot be established on this record. Petitioner's position on ownership is thus not "a mere hunch" or "bare allegations in the face of specific denials." *Yamashita*, 62 F.4th at 507.

### B. Neither the Summary Nature of Confirmation, the MTD Order, Nor Petitioner's Prima Facie Showing Justifies Deciding Ownership Without Discovery

Neither the "summary" character of confirmation proceedings (Opp. 11:5-18), nor the MTD Order (Opp. 11:19-28), nor Petitioner's prima facie showing (Opp. 12:21-13:12) justifies deciding ownership without discovery.[2]

Courts grant jurisdictional discovery in confirmation proceedings. Yuan concedes that in *Dardana Ltd. v. A.O. Yuganskneftegaz*, 317 F.3d 202 (2d Cir. 2003), the Second Circuit "remanded for discovery limited to the respondents' assets in the jurisdiction, for the sole purpose of deciding whether property alone could support quasi in rem jurisdiction." (Opp. 18:20-23.) That is the same discovery sought here.

---

[2] None of Yuan's remaining authorities involved an award creditor's specific requests on a jurisdictional fact that the Court has found prima facie established and that Sun's own exhibits corroborate. *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000), and *Imperial Ethiopian Government v. Baruch-Foster Corp.*, 535 F.2d 334, 336-37 (5th Cir. 1976), addressed discovery sought by the losing party to attack an award. *Terracom v. Valley National Bank*, 49 F.3d 555, 562 (9th Cir. 1995), addressed discovery sought on "bare allegations in the face of specific denials." In *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006), discovery was immaterial "[a]s a matter of law." In *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022), the plaintiff did not explain how discovery would help; here, Petitioner has filed its proposed requests and shown they are tailored to establishing the key disputed issue (Yu Decl. Exs. B-G). And in *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070-71 (9th Cir. 2014), discovery could not have established jurisdiction, whereas here it can. Yuan concedes that the cases are distinguishable. (Opp. 12:4-6, 13:6-7, 14:7-8.)

The MTD Order does not prescribe a procedure that disallows discovery. Footnote 2 therein states a consequence of proof that has yet to be produced—"*if* during merits briefing, Yuan proves that he does not own the Hotels" (MTD Order 10 n.2 (emphasis added))—not that Yuan's proof should go untested. Recognizing this, the Court deferred the merits schedule pending this Motion (Dkt. 25). Moreover, the Court did not rule on Petitioner's earlier request for discovery (Opp. 12:17-20), and the record has changed since then: Yuan has announced that he will contest ownership (Dkt. 24 at 2 & n.1), and Sun's exhibits contradict the account he gave on the motion to dismiss. In *Laub v. U.S. Department of Interior*, 342 F.3d 1080 (9th Cir. 2003), the Ninth Circuit reversed where the district court decided a jurisdictional fact first raised in a reply brief without the discovery the plaintiffs requested, holding that "discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed." *Id.* at 1092-93.

Petitioner's prima facie showing does not make discovery unnecessary. (Opp. 12:21-13:12.) If Yuan accepts that the showing suffices, he should concede ownership of the Hotels. He does not. He intends to attempt to rebut it at the merits stage. (Opp. 11:19-23.) Having "put the issue in question," Yuan does "not have the option of blocking the reasonable attempt" of Petitioner to answer his rebuttal through discovery. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 709 (1982). Without discovery, Petitioner cannot sufficiently respond to Yuan's hand-picked documents. It would severely prejudice Petitioner to require it to contest Yuan's position on ownership without access to any relevant discovery from him.

**C. Discovery Should Come from Yuan and the Companies, Not the State Action**

Yuan was a party to every transaction in the record. He formed the Companies (MTD Order 2:4-8); personally acquired their equity, directly or through a parent, in

2020 and 2023; executed the transfer agreements for both parties to it; and, as grantor of the Trust, assigned that equity to Sun as trustee in 2021 and 2023. (Section II.A.)[3]

No party document custodian is more relevant than Yuan. He holds and should have maintained all the documents necessary to explain those transactions, and which would establish his interest in them after the purported transfers. Therefore, Petitioner's proposed document requests seek only documents in Yuan's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1) (Yu Decl. Ex. B, Instr. 6). Petitioner's proposed interrogatories and deposition concern the transfers Yuan executed (*id.* Exs. C, G), including assignments purportedly made "in order to change formal title only."

The Companies keep the registers and minutes that record who owns them. The proposed subpoenas for those records do not, as Respondent asserts, "treat the entities as Yuan's alter egos" (Opp. 15:1). Rule 45 allows discovery of documents in the possession, custody, or control of non-parties without such a showing. Fed. R. Civ. P. 45(a)(1)(A)(iii). In any event, Sun's proposed intervention is not a reason to defer discovery from Yuan and the Companies. Whether or not Sun's motion is granted, Yuan and the Companies hold the records sought here (*cf.* Opp. 14:17-15:2).

Moreover, discovery in the State Action is not a substitute for discovery from Yuan under Rule 26(b)(2)(C)(i). (Opp. 15:3-27.) Yuan, who took part in every transaction at issue, is not a party to the State Action (Dkt. 26-2). Party discovery from him there is not available.[4]

Further, the State Action defendants, including Sun and the Companies, have produced no document concerning the transfers of the Companies' equity to Yuan or

---

[3] The Opposition's assertion that "Yuan has had no involvement in the U.S. companies' operations since 2019" (Opp. 14:1-4; *see* Opp. 8:24-26) is contradicted by those transactions, among much else in the record.

[4] Petitioner has not—as Respondent asserts—conceded in the State Action that Yuan does not own the Hotels. (Opp. 6:25-28, 9:11-14.) Its complaint there alleges that the transfers to Sun "are nominal in nature and designed to create the appearance of Sun's ownership while preserving Yuan's actual beneficial ownership and control." (Dkt. 26-2 at 27, ¶ 150.)

to the Trust. Sun has refused to produce those documents there, but filed some of them here in support of the MTI. *On April 23, 2026*, Petitioner asked Sun for "[a]ll DOCUMENTS RELATING TO any contemplated or accomplished transfers of any rights or interests, including ownership, . . . in the HOTELS," and for all documents relating to any transfer of each Company's equity "to or by YOU." (Yu Reply Decl. Ex. H, RFP Nos. 57, 61, 65, 77.) Sun's Exhibits 3 through 8 are responsive to those requests. Sun responded to each request with boilerplate objections, without further explanation, and none of those exhibits appears in the State Action defendants' limited productions; Sun first disclosed them with her MTI on November 2, 2026. (*Id.* Ex. I, Resp. to RFP Nos. 57, 61, 65, 77; *id.* ¶ 9.) The State Action defendants have asserted that they intend to move "to stay the state case pending [this proceeding's] resolution" (Dkt. 26-3 at 6, ¶ 18), and on October 16, 2026, their counsel recorded their position "that discovery should not proceed until the intervention and stay motions are resolved" (Yu Reply Decl. Ex. J, item 5). Yuan and Sun are obviously coordinating their efforts to delay discovery of relevant responsive documents until after their utility to Petitioner is either diminished or destroyed.

In any event, documents produced by the State Action defendants may not be used in this proceeding. The parties' Stipulation for Protective Order in the State Action confines documents designated "CONFIDENTIAL" to "the evaluation, preparation for and/or litigation of this action." It permits their disclosure only to listed persons, or to others with the designating party's "prior written consent" or "pursuant to a related court order." (*Id.* Ex. K ¶¶ 9, 9.A(ix), 21.) The defendants designated nearly all of their production as "CONFIDENTIAL." (*Id.* ¶ 8.)

This coordinated effort creates a deliberate impasse: Yuan argues that Petitioner should be limited to the State Action for ownership discovery. There, Sun refuses to produce that discovery arguing that discovery should wait until Sun's intervention

motion here is decided and the stay motion she intends to file in the State Action is resolved, and then confines what she produced in the State Action to that action.

Controlling authority does not permit that impasse. "[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," and federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation omitted). In *Ernest Bock, LLC v. Steelman*, 76 F.4th 827 (9th Cir. 2023), the Ninth Circuit reversed a stay of a lender's federal suit against guarantors who had allegedly moved assets into trusts and entities, holding that "a *Colorado River* stay cannot issue when, as here, federal litigation will be fully resolved only if parallel state court proceedings end in one of several possible outcomes." *Id.* at 832. Deferring discovery here to a state action that cannot confirm the awards, and to which Yuan is not a party (Opp. 15:12-22), would be a stay of the kind *Ernest Bock* forbids.

**D. The Proposed Limited Discovery Is Confined to Ownership**

The Limited Discovery is confined to "the ownership of the Hotels, including any Ownership Interest Yuan holds or has held in the Hotels, however held, and the ownership of the California Entities." (Yu Decl. Ex. B, Instr. 1.)

Each request that Yuan challenges (Opp. 17:3-18:3) concerns a transaction, person, or entity that the record already identifies. The defined Relevant Period commences in January 2019, as does Sun's account of the transfers, which she asserts began with a December 2019 Framework Agreement. (MTI 11:15-18.) The family-member requests (RFP Nos. 4, 12) concern Yuan's son and former wife, the persons through whom, she claims, the equity passed. (MTI 11:15-12:23.) The "Upstream Entity" request (RFP No. 13) asks Yuan to identify the companies that hold or held interests in the Companies. His motion to dismiss relied on one of them, a "Chinese holding company" (Dkt. 13 at 24:10-13), and Sun's MTI identifies five such Chinese

and BVI companies (MTI 10:15-20). The definition of "You" reasonably includes "nominees, and trustees" (Yu Decl. Ex. B, Def. No. 2) given that Sun identifies Yuan as a "nominee owner", and she took the equity as trustee (MTI 11:23; Dkt. 26-7 at 72). RFP No. 6 seeks the Hazens Group's annual reports and consolidation schedules only "to the extent they reflect the inclusion or removal of any Hotel or any California Entity," the evidence that would test Ms. Zhuang's testimony, as Yuan says he wishes to do. (Opp. 14 n.1.)[5]

RFP Nos. 5 and 10 ask whom the Companies identified as their owner, and who received their income, after the assignments. That is the evidence courts use to decide whether a transfer changed formal title only. In *Fourth Investment LP v. United States*, 720 F.3d 1058 (9th Cir. 2013), the Ninth Circuit explained that a nominee is "one who holds bare legal title to property for the benefit of another," and that the overarching question is whether the transferor "exercised active or substantial control over the property." *Id.* at 1066, 1070 (citations omitted). In *Orix Re Holdings, LLC v. Collier*, 2025 WL 2683986 (C.D. Cal. Aug. 20, 2025), a guarantor had assigned his interest in an LLC to his wife as trustee of a family trust. Deeds of trust and a state filing he later signed as member were "significant evidence that he is, still, an LLC member, and that the Assignment and Acceptance had no legal effect or consequence." *Id.* at *2-3. Yuan's proposed limit to "the current record title and equity ownership" (Opp. 20:5-7) would exclude this evidence.

Contrary to Yuan's assertion, the reservation in footnote 2 of the Motion does not enlarge any request. It concerns use of the answers, including "in any amended petition," which the Court has permitted. (Mot. 8 n.2; MTD Order 13:18-19.) The use

[5] Yuan's request for "mutual" discovery of Ms. Zhuang (Opp. 14 n.1) is unwarranted, because the MTD Order was not, as Yuan contends, "entirely premised" on her declaration. The MTD Order also relied on the non-prosecution agreement that Yuan signed, and it overruled each objection to Ms. Zhuang's declaration. (MTD Order 9:7, 9:18-10:2.) Sun's exhibits filed with the MTI corroborate her testimony: Yuan personally acquired the Companies' equity. (Section II.A.)

restriction that Yuan proposes (Opp. 20:9-11) is baseless, unwarranted, and should be rejected.

Further, the discovery is not unduly burdensome. *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987), on which Yuan relies, upheld a district court's power to order a foreign party to produce evidence abroad, and cautioned only against "unnecessary, or unduly burdensome, discovery." *Id.* at 539-40, 546; *see* Opp. 19:7-16. The proposed document requests concern transactions to which Yuan was a party (and in several instances, the *only* party) and which he executed; the proposed deposition may be taken by videoconference (Yu Decl. Ex. G) if Yuan is unavailable in California. There is no meaningful burden for producing such discovery, particularly where Yuan has represented that he intends to offer his own evidence responsive to these requests.

## III. CONCLUSION

Petitioner respectfully requests that the Court grant the Motion and authorize the Limited Discovery.

Dated: November 23, 2026

Respectfully submitted,
KING & WOOD LLP

By: <u>/s/ *Yan Ge*</u>

Yan Ge (State Bar #236566)
geyan@cn.kingandwood.com
Yiren Yu (State Bar #341245)
yiren.yu@us.kingandwood.com
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: +1 650 858 1285
Facsimile: +1 650 858 1226

Vincent Filardo Jr. (*pro hac vice*)
Vincent.filardo@us.kingandwood.com
600 5th Avenue, 27th Floor
New York, NY 10020
Telephone: +1 347 926 7570

SPERTUS, JOSEPHS & MINNICK, LLP

Kevin J. Minnick (State Bar #269620)
kminnick@spertuslaw.com
617 W. 7th St., Ste 200
Los Angeles, CA 90017
Telephone: +1 213 205 6520

*Attorneys For Petitioner*
*Industrial Bank Co., Ltd. Shenzhen Branch*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Petitioner Industrial Bank Co., Ltd. Shenzhen Branch, certifies that this brief contains 3,297 words, which complies with the word limit of L.R. 11-6.1 and with the 3,300-word limit for replies in Section VII of the Judge's Procedures of the Honorable Otis D. Wright II.

Dated: November 23, 2026

/s/ *Yan Ge*

Yan Ge

## CERTIFICATE REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

The undersigned certifies that this submission uses generative artificial intelligence. If generative artificial intelligence was used, following drafting, I reviewed, revised, and supplemented all portions of the brief, including those that were informed by the use of Artificial Intelligence or based on prior templates. I independently verified the factual and legal accuracy of the content and confirmed that all arguments and authorities were appropriate to the issues presented.

Dated: November 23, 2026

/s/ *Yan Ge*

Yan Ge